**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOAQUIN ORELLANA CASTANEDA,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; John F. Kelly, Secretary, U.S. Department of Homeland Security, *in his official* capacity; Elaine C. Duke, Deputy Secretary, U.S. Department of Homeland Security, *in her official* capacity; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; Thomas D. Homan, Acting Director, U.S. Immigration and Customs Enforcement, *in his official capacity*; Matthew T. Albence, Executive Associate Director, U.S. Immigration and Customs Enforcement, *in his official capacity*; COUNTY of SUFFOLK; Steven Bellone, County Executive, County of Suffolk, *in his official* capacity; SUFFOLK COUNTY SHERIFF'S OFFICE; Vincent F. DeMarco, Sheriff, Suffolk County Sheriff's Office, *in his official capacity*; and other individuals in charge to be identified,<br><br>*Defendants*. | Case No. 17-cv-4267<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Joaquin Orellana Castaneda, ("Mr. Orellana"), by and through his attorneys, hereby brings his Complaint against Defendants, U.S. Department of Homeland Security, John F. Kelly, Elaine C. Duke, U.S. Immigration and Customs Enforcement, Thomas D. Homan, Matthew T. Albence, County of Suffolk, Steven Bellone, Suffolk County Sheriff's Office, Vincent F. DeMarco, and other individuals in charge to be identified (collectively, "Defendants"), and alleges as follows:

**STATEMENT OF THE CASE**

1. On April 26, 2017, Defendant United States Immigration and Customs Enforcement ("ICE") obtained custody of Plaintiff, Mr. Orellana, in knowing reliance on an unconstitutional

scheme deployed by Defendant Suffolk County Sheriff's Office ("SCSO"), at ICE's request, to maintain custody over Mr. Orellana beyond his scheduled release date simply for ICE's administrative convenience, without the required statutory, judicial, or constitutional authority to do so.

2. Though Mr. Orellana paid the bail set by the local district court, the SCSO unlawfully extended his detention, and ICE has yet to release him from its custody since then.

3. By this complaint ("Complaint"), Mr. Orellana challenges ICE's policy and practice of issuing detainers requesting that federal, state, and local law enforcement agencies continue to detain individuals well after any other basis for custody has expired, simply for ICE's administrative convenience. ICE's statutory authority to issue detainers without a judicially authorized arrest warrant is expressly limited, as set forth in 8 U.S.C. § 1357(d), 8 U.S.C. § 1226(c), and 8 U.S.C. 1357(a), to situations other than the instant case. As detailed below, ICE's issuance of these detainers ("ICE detainers") regularly exceeds its statutory authority.

4. By this Complaint, Mr. Orellana also challenges the policy and practice of the SCSO and its officials of complying with these ICE detainers by detaining individuals without judicial authorization well past the time when they were due to be released, policies that led to Mr. Orellana being so harshly, and unjustly, deprived of his freedom, his family and his livelihood, all deprivations he seeks to remedy by this action. This detention, unsupported by probable cause and without due process protections, violates Mr. Orellana's rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution and under the First Article of the New York Constitution.

5. ICE justified its detainer request based solely on its initiation of an investigation to determine whether Mr. Orellana was subject to removal from the United States. ICE did not accompany Mr. Orellana's detainer with a judicial arrest warrant or a final removal order.

6. On information and belief, ICE has no procedures in place to ensure that the subjects of detainers receive adequate notice of the detainers' terms. Moreover, even though the detainer form states that "the alien must be served with a copy of this form," neither ICE nor SCSO provided Mr. Orellana with a copy of his ICE detainer until several days after it was issued. Nor did ICE provide Mr. Orellana with any practical means to challenge the ICE detainer lodged against him.

7. Mr. Orellana seeks damages under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(a), under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, and under the First Article of the New York Constitution for the violation of his rights.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 because it arises under the Constitution and the laws of the United States. This Court also has supplemental jurisdiction over this action's New York Constitution claim pursuant to 28 U.S.C. § 1367 because those claims are so related to the claims arising under the Constitution and laws of the United States that they form part of the same case or controversy under Article III of the United States Constitution.

9. This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred, and continue to occur, in this District.

11. Venue is also proper in this judicial district because Plaintiff resides in this District.

## PARTIES

12.     At the time this action was commenced, Plaintiff Joaquin Orellana Castaneda was a 34-year old citizen of Guatemala residing in the United States and detained at the Bergen County Jail in Hackensack, New Jersey under the authority of ICE.  Mr. Orellana was and is a resident of Suffolk County, New York,

13.     Mr. Orellana was arrested in the early morning hours of April 23, 2017 in Central Islip, New York, and questioned by members of the Suffolk County police department as to his immigration status.  That same day, Mr. Orellana was brought before a Suffolk County judge, who set Mr. Orellana's bail at $1000 and remanded him to the custody of the SCSO.  Mr. Orellana spent the remainder of the day and night at Yaphank Correctional Facility ("Yaphank") in Yaphank, New York.

14.     The next day, April 24, 2017, Mr. Orellana was interviewed by ICE agents while under SCSO custody at Yaphank.  Mr. Orellana was told that if he paid his bail, then he would be released and would eventually have to appear at an immigration hearing.  That same day, Mr. Orellana's cousin paid Mr. Orellana's bail.  A true and correct copy of the bail receipt is attached hereto as Exhibit A.

15.     However, no one informed Mr. Orellana that his bail had been paid, and SCSO continued to hold Mr. Orellana at Yaphank pursuant to an ICE detainer after his bail had been paid. SCSO did not serve Mr. Orellana with a copy of the detainer at that time. A true and correct copy of Mr. Orellana's detainer and accompanying I-200 administrative warrant is attached hereto as Exhibit B.  Though it is dated April 24, 2017, the certificate of service at the bottom is blank.

16.     On April 25, 2016, while Mr. Orellana remained at Yaphank, a member of SCSO told him that there was a change in his paperwork, and gave no further explanation.  The next day,

4

April 26, 2017, Mr. Orellana was transferred from Yaphank to the Riverhead Correctional Facility ("Riverhead") in Riverhead, New York.

17. Upon information and belief, on or about April 27, 2017 (and certainly well after Mr. Orellana should have been released from custody due to the payment of his bail), Mr. Orellana was transferred into ICE's custody, and taken from Riverhead to ICE's Varick Street Detention Center ("Varick Street") in New York, New York. There, Mr. Orellana was questioned by ICE agents and given forms to sign. Those forms included another copy of the I-200 warrant that had accompanied his detainer, but this time the I-200 was dated (by the ICE officer, not by Mr. Orellana) April 26, 2017. A true and correct copy of this second I-200 is attached hereto as Exhibit C. Later that night, Mr. Orellana was transferred from Varick Street to the Bergen County Jail.

18. Defendant U.S. Department of Homeland Security ("DHS") is a federal cabinet agency, a Department of the Executive Branch of the United States Government, and is an agency within the meaning of 5 U.S.C. § 552(f). DHS houses the office of ICE and ICE's division of Enforcement and Removal Operations, the entities which issue the I-247 immigration detainers to federal, state, and local law enforcement. DHS is ultimately responsible for how immigration regulations are applied and the approval of the use of the standard I-247 detainer form under which purported authority the Plaintiff was detained. DHS and/or its employees, agents, or representatives are involved in the violations of constitutional and statutory rights alleged herein.

19. Defendant John F. Kelly ("Kelly") is the Secretary of DHS. Defendant Kelly is, among other responsibilities, charged with the constitutional and lawful implementation of the Immigration and Nationality Act, 8 U.S.C. §§ 1101, *et seq.*, and with the administration of the division of Immigration and Customs Enforcement. He is sued in his official capacity.

20. Defendant Elaine C. Duke ("Duke") is the Deputy Secretary of the DHS. Defendant Duke is, among other responsibilities, charged with the constitutional and lawful implementation of the Immigration and Nationality Act, 8 U.S.C. §§ 1101, *et seq.*, and with the administration of the division of Immigration and Customs Enforcement. She is sued in her official capacity.

21. Defendant ICE is a subdivision of DHS. ICE is an agency within the meaning of 5 U.S.C. § 552(f). ICE and/or its employees, agents, or representatives are involved in the violations of constitutional and statutory rights alleged herein.

22. Defendant Thomas D. Homan ("Homan") is the Acting Director of the U.S. Immigration and Customs Enforcement. Defendant Homan is, among other responsibilities, charged with the constitutional and lawful implementation of the Immigration and Nationality Act, 8 U.S.C. §§ 1101, *et seq.*, and with the administration of the division of Immigration and Customs Enforcement. He is sued in his official capacity.

23. Defendant Matthew T. Albence ("Albence") is the Executive Associate Director of the U.S. Immigration and Customs Enforcement. Defendant Albence is, among other responsibilities, charged with the constitutional and lawful implementation of the Immigration and Nationality Act, 8 U.S.C. §§ 1101, *et seq.*, and with the administration of the division of Immigration and Customs Enforcement. He is sued in his official capacity.

24. Defendant County of Suffolk ("County") is a duly constituted municipal corporation of the State of New York. Upon information and belief, the County has direct authority over Defendant SCSO. The County and/or its employees, agents or representatives are involved in the violations of constitutional and statutory rights alleged herein.

25. Defendant Steven Bellone ("Bellone") is the County Executive of the County of Suffolk. Defendant Bellone is, among other responsibilities, charged with the administration of the County of Suffolk. He is sued in his official capacity.

26. Defendant SCSO is an entity, agency, department, and/or subdivision of the County. The SCSO and/or its employees, agents or representatives are involved in the violations of constitutional and statutory rights alleged herein.

27. Defendant Vincent F. DeMarco ("DeMarco") is the Sheriff of Suffolk County and presides over the Suffolk County Sheriff's Office as its chief executive officer. He has held this position since November 8, 2005. Upon information and belief, Defendant DeMarco has direct authority over the SCSO. He is sued in his official capacity.

## FACTUAL ALLEGATIONS

28. Pursuant to 8 U.S.C. § 1103(a), DHS, through its division of ICE, purports to have the authority to issue detainers in accordance with the intent and requirements of the Immigration and Nationality Act ("INA").

29. SCSO has stated that its policy—unlike that of many other law enforcement agencies—is to comply with detainer requests by holding the individuals in question for up to 48 hours past the time when they would otherwise be released to allow ICE to decide whether to take custody of a detainee and then take custody of those it chooses.

30. For its part, and according to its Acting Director, Thomas Homan, as of June 13, 2017 ICE has increased the issuance of detainers 75 percent compared with the same time period in 2016. Relatedly, a Washington Post article reports that ICE has deputized over 40 local law enforcement agencies to help ICE enforce immigration law, and that besides conducting its own searches, ICE uses a fingerprint-sharing program to learn when an undocumented immigrant has been arrested by state or local authorities.

7

31. On the detainer that was issued against Mr. Orellana, ICE officials justified continued detention of Mr. Orellana on the sole ground that "there is reason to believe that the subject is a removable alien," which is a civil, not a criminal, violation of the INA. The detainer requests that SCSO:

> **Maintain custody** of the alien for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from your custody to allow DHS to assume custody. The alien **must be served with a copy of this form** for the detainer to take effect.

32. Mr. Orellana's detainer was not issued pursuant to a warrant of arrest in removal proceedings or a deportation order. Furthermore, on information and belief ICE had no particularized reasons to believe that the specific detainee at issue was likely to escape before a warrant could be obtained for his arrest the only circumstance in which ICE may detain an alien without a warrant. *See* 8 U.S.C. § 1357(a)(2). The completed detainer lists no such particularized reasons.

33. Neither ICE nor SCSO provides an administrative procedure for challenging the issuance of a detainer. Likewise, the Board of Immigration Appeals (BIA) has ruled that it does not have jurisdiction to consider challenges to detainers because it has found that individuals held on detainers are not in federal immigration custody.

34. The detainer contains a paragraph entitled "notice to the detainee," which reads as follows:

> The Department of Homeland Security (DHS) has placed an immigration detainer on you. An immigration detainer is a notice to a law enforcement agency that DHS intends to assume custody of you (after you otherwise would be released from custody) because there is probable cause that you are subject to removal from the United States under federal immigration law. DHS has requested that the law enforcement agency that is currently detaining you maintain custody of you for a period not to exceed 48 hours beyond the time when you would have been released based on your criminal charges or convictions. **If DHS does not take you into custody during this additional 48 hour period, you should contact your**

8

**custodian** (the agency that is holding you now) **to inquire about your release. If you believe you are a United States citizen or the victim of a crime, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.**

35.     Thus, even if Mr. Orellana had timely received a copy of his detainer (which he did not) this notice does not constitute adequate due process. Among other things, the inclusion of a hotline number on a notice (written in a language Mr. Orellana does not speak) for certain specific problems, even if Mr. Orellana had been able to call it, did not afford him an adequate opportunity to challenge his detention.

36.     The detainer form states that ICE "requests" that SCSO detain the individual for an additional 48 hours so that ICE can assume direct, physical custody of the individual. However, the regulation cited on the detainer form mandates that any local law enforcement agency, like the SCSO, detain the individual on ICE's behalf. The regulation states: "such [criminal justice] agency *shall* maintain custody of the alien for a period not to exceed 48 hours . . . in order to permit assumption of custody by [ICE]." 8 C.F.R. § 287.7(d) (emphasis added). This regulation, as set forth below, violates the United States and New York Constitution and exceeds the statutory authority pursuant to which it is promulgated.

37.     The SCSO is well aware that numerous state and federal courts have found law enforcement agencies liable for Fourth Amendment violations where they have held individuals pursuant to detainers. Indeed, in or about 2014, Suffolk County's own attorney advised local authorities against the honoring of detainers unless accompanied by a judicial warrant.

38.     In or about February 2017, the New York State Sheriffs' Association (of which SCSO is a member) commissioned a comprehensive review of the relevant case law in light of the issuance by ICE of its new detainer form. The Association's report concluded that "[s]heriffs should not detain persons beyond their normal release date based on a federal detainer warrant, *even*

9

*if accompanied by an order of deportation or removal, unless there is also a judicial warrant.*" (emphasis added). A true and correct copy of the Sheriffs' Association Report and analysis is attached hereto as Exhibit D.

39. The SCSO, undeterred, has continued to comply with detainers, and, as in the case of Mr. Orellana, to detain individuals even beyond the time requested under the detainer. The SCSO appears similarly untroubled by the New York State Attorney General's earlier conclusion (which post-dates the introduction of the new detainer forms) that "[a]bsent a judicial warrant, [local law enforcement agencies] should honor ICE or [Customs and Border Protection] detainer requests only in limited, specific circumstances," meaning "a showing of probable cause that the individual *committed a crime* or that an exception to the probable cause requirement applies." (emphasis added) A true and correct copy of the New York State Attorney General's report is attached hereto as Exhibit E.

40. In short, the SCSO knows, or has reason to know, that complying with detainers is unlawful. Thus, its continued honoring of ICE detainers is a willful violation of Plaintiff's statutory and constitutional rights.

### FIRST CAUSE OF ACTION:

### Violation of 5 U.S.C. § 706(2)(A)-(D)
### (Against ICE, DHS, Kelly, Duke, Homan, Albence)

41. The allegations contained in paragraphs 1 through 40 above are repeated and alleged as though fully set forth herein.

42. 5 U.S.C. § 706(2)(A)-(D) requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

[or] without observance of procedure required by law."

43.     ICE's failure (under the supervision of DHS) to restrict its issuance of detainers to its authority under the INA caused Mr. Orellana significant prejudice by depriving him of his liberty.

44.     ICE's failure (under the supervision of DHS) to issue detainers in accordance with due process protections required by the relevant provisions of the INA (8 U.S.C. § 1226(a), 8 U.S.C. § 1357(a)(2) and 8 U.S.C. § 1357(d)) caused Mr. Orellana significant pain and suffering by depriving him of his liberty.  In particular, ICE's failure (under the supervision of DHS) to obtain judicial warrants prior to detaining Mr. Orellana, and failure to demonstrate any particularized reason to believe that Mr. Orellana was likely to flee before such a warrant could be obtained, violates 8 U.S.C. § 1357(a)(2).

45.     ICE's application (under the supervision of DHS) of the immigration detainer regulations and issuance of detainers against Mr. Orellana exceeded ICE's statutory authority in violation of 5 U.S.C. § 706(2)(A)-(D).

46.     As an actual and proximate result of ICE's statutory violations, under the supervision of DHS, Mr. Orellana has suffered a significant deprivation of his liberty without due process of law and has been damaged as a result.

## SECOND CAUSE OF ACTION:

### Violation of the Fourth Amendment of the United States Constitution
### (Against All Defendants)

47.     The allegations contained in paragraphs 1 through 46 above are repeated and alleged as though fully set forth herein.

48. Mr. Orellana challenges Defendants' deprivation of his "rights, privileges, or immunities secured by the Constitution and laws" under color of state and local law pursuant to 42 U.S.C. § 1983.

49. Mr. Orellana has been held in violation of the Constitution of the United States. Mr. Orellana was held solely on the basis of the ICE detainer issued in his name. SCSO (under the supervision of County) had no legal authority to continue to hold Mr. Orellana in custody after his brother paid his bail.

50. Immigration detainers lack any standards guiding their issuance. The detainer issued to SCSO (under the supervision of County) regarding Mr. Orellana was not issued by ICE (under the supervision of DHS) according to any legal standard. It was not issued based on evidence demonstrating reasonable suspicion, probable cause, or any other ground. Defendants' continued detention of Mr. Orellana thus deprived him of his liberty without probable cause.

51. SCSO's continued detention of Mr. Orellana (under the supervision of County) violated his Fourth Amendment constitutional right to be free from unreasonable seizure and Mr. Orellana has been damaged as a result.

**Fourth Amendment Violation: Detention Without a Hearing**
**(Against All Defendants)**

52. The allegations contained in paragraphs 1 through 51 above are repeated and alleged as through fully set forth herein.

53. Mr. Orellana has been held in violation of the Fourth Amendment prohibition against unreasonable searches and seizures.

54. Immigration detainers issued by ICE (under the supervision of DHS) purport to require state and local law enforcement officials to hold individuals in custody, without any basis

12

in state law and solely as a means of enforcing federal civil immigration statutes, for up to 48 hours. *See* 8 C.F.R. § 287.7.

55. Upon the payment of Mr. Orellana's bail, SCSO's legal basis to detain him ended. Defendants' continued detention of Mr. Orellana constituted the equivalent of a new arrest.

56. Because of this, and the fact that immigration detainers are not warrants issued upon probable cause, these detainer procedures violate the Fourth Amendment's requirement that an individual arrested without a warrant be brought before a neutral magistrate for a probable cause hearing within 48 hours of arrest, irrespective of weekends or holidays.

57. Mr. Orellana was not brought before a neutral magistrate for a probable cause hearing. Upon information and belief, Defendants have no process for bringing individuals subject to detainers before a neutral magistrate for a probable cause hearing within 48 hours. Defendants' detention of Mr. Orellana therefore violated his Constitutional right to be free from unreasonable seizures and he has been damaged as a result.

### THIRD CAUSE OF ACTION:

### Violation of the Fifth Amendment of the United States Constitution
### (Against ICE, DHS, Kelly, Duke, Homan, Albence)

58. The allegations contained in paragraphs 1 through 57 above are repeated and alleged as though fully set forth herein.

59. ICE's issuance of detainers (under the supervision of DHS) based solely on a determination that there is reason to believe an individual is an alien subject to removal caused Mr. Orellana significant pain and suffering by depriving him of his liberty without due process of law.

60. ICE's issuance of detainers (under the supervision of DHS) without requiring that subjects of a detainer receive effective notice of the detainer caused Mr. Orellana to suffer substantial prejudice without affording him an opportunity to be heard prior to the deprivation.

13

61. ICE's failure (under the supervision of DHS) to provide a proper mechanism by which subjects of a detainer may challenge the issuance of a detainer against them caused Mr. Orellana substantial prejudice by depriving him of his liberty without due process of law.

62. ICE's detainer regulations, policies, practices, acts, and omissions (under the supervision of DHS) caused significant deprivation of Mr. Orellana's liberty without due process of law in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.

63. As a proximate result of ICE's unconstitutional detainer regulations, policies, practices, acts, and omissions, under the supervision of DHS, Mr. Orellana has suffered, and continues to suffer, a significant deprivation of his liberty without due process of law and he has been damaged as a result.

## FOURTH CAUSE OF ACTION:

### Violation of the Fourteenth Amendment of the United States Constitution
### (Against SCSO, County, Bellone, and DeMarco)

64. The allegations contained in paragraphs 1 through 63 above are repeated and alleged as though fully set forth herein.

65. Due process principles forbid the infringement of fundamental liberty interests, unless the infringement is narrowly tailored to serve a compelling government interest.

66. The continued unauthorized detention of an individual in the absence of any standards guiding the issuance of the detainer is not narrowly tailored to serve a compelling government interest. As he was detained by SCSO (under the supervision of County) past the point of his judicially authorized release, Mr. Orellana's fundamental liberty interests guaranteed by the Fourteenth Amendment's substantive due process protections were violated.

67. Due process further requires that the government be constrained before it acts in a way that deprives individuals of "liberty" interests protected under the Due Process Clause of the Fourteenth Amendment.

68. Detainers issued by ICE purport to require state and local law enforcement officials to hold individuals in custody, without any basis in state law, standards guiding their issuance, or any judicial review, solely as a means of enforcing federal civil immigration statutes, for up to 48 hours, excluding weekends and government holidays. *See* 8 C.F.R. § 287.7.

69. The Due Process Clause protects against the deprivation of liberty interests without the due process of law and requires notice and an opportunity to be heard prior to the deprivation as well as a method by which to challenge the deprivation. Mr. Orellana was provided with none of these, in violation of his due process rights.

70. Mr. Orellana's private liberty interest is overwhelming. The risk that he has been deprived of his liberty erroneously is high due to the fact that no court of law has adjudicated the lawfulness of SCSO's continued detention (under the supervision of County) of individuals past their scheduled release date.

71. Interpreting immigration detainers as authorizing Defendants' continued unauthorized detention of Mr. Orellana without judicial review violates the procedural due process rights guaranteed by the Fourteenth Amendment and Mr. Orellana has been damaged as a result.

**FIFTH CAUSE OF ACTION:**

**Violations of the First Article of the New York Constitution**
**(Against SCSO, County, Bellone, and DeMarco)**

72. The allegations contained in paragraphs 1 through 71 above are repeated and alleged as though fully set forth herein.

15

73. By virtue of the acts described above, SCSO and County deprived Mr. Orellana of liberty without due process of law in contravention of the First Article of the New York Constitution.

74. The acts and conduct of the servants, representatives, agents, and employees of SCSO and County were the direct and proximate cause of injury and damage to Mr. Orellana and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

75. SCSO and County are liable for the above-mentioned actions of their agents, representatives, servants, and/or employees under the doctrine of *respondeat superior*.

76. As a result of the foregoing, Mr. Orellana was severely and seriously injured, both bodily and mentally, suffered a loss of enjoyment of life, loss of liberty, experienced pain and suffering, emotional distress, great humiliation, costs and expenses, economic loss and other damages, and was otherwise damaged and injured.

## PRAYER FOR RELIEF

**WHEREFORE,** Mr. Orellana prays that this Court grant the following relief:

(1) Enter a judgment declaring that Defendants' detention of Mr. Orellana was unauthorized by statute and contrary to law;

(2) Award compensatory damages in an amount to be determined at trial;

(3) Award pre-judgment and post-judgment interest at the maximum legal rate;

(4) Award reasonable costs and attorney's fees; and

(5) Grant any other and further relief that this Court may deem fit and proper.

Dated: New York, New York
July 18, 2017

**WINSTON & STRAWN LLP**
*Counsel for Plaintiff*

By: */s/ Aldo A. Badini*

                    Aldo A. Badini
                    Margaret Ciavarella
                    Frank S. Restagno
                    200 Park Avenue
                    New York, New York 10166
                    (212) 294-6700
                    abadini@winston.com
                    mciavarella@winston.com
                    frestagno@winston.com

                    **LATINOJUSTICE PRLDF**
                    *Counsel for Plaintiff*

By:    Juan Cartagena
         Jose Perez
         99 Hudson Street, 14th Floor
         New York, New York 10013
         (212) 219-3360
         jcartagena@latinojustice.org
         jperez@latinojustice.org