# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

JOAQUIN ORELLANA CASTANEDA and
GERMAN HERNANDEZ ARGUETA,

on behalf of themselves  and all others similarly
situated

       *Plaintiffs-Petitioners*,

          v.

U.S. DEPARTMENT OF HOMELAND
SECURITY; Secretary, U.S. Department of
Homeland Security, *in his/her official* capacity;
Elaine C. Duke, Acting Secretary, U.S.
Department of Homeland Security, *in her official*
capacity; U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT; Thomas D. Homan, Acting
Director, U.S. Immigration and Customs
Enforcement, *in his official capacity*; Matthew T.
Albence, Executive Associate Director, U.S.
Immigration and Customs Enforcement, *in his*
*official capacity*; COUNTY of SUFFOLK; Steven
Bellone, County Executive, County of Suffolk, *in*
*his official* capacity; SUFFOLK COUNTY
SHERIFF'S OFFICE; Vincent F. DeMarco,
Sheriff, Suffolk County Sheriff's Office, *in his*
*official capacity*; and other individuals in charge to
be identified,

       *Defendants-Respondents*.
_____

Case No. 2:17-cv-04267-JFB-ARL

**AMENDED COMPLAINT AND**
**PETITION FOR WRIT OF**
**HABEAS CORPUS**

**JURY TRIAL DEMANDED**

Plaintiffs, Joaquin Orellana Castaneda ("Mr. Orellana") and German Hernandez Argueta

("Mr. Hernandez"), by and through their  attorneys, hereby bring this Amended Complaint against

Defendants, U.S. Department of Homeland Security, the Secretary of the U.S. Department of

Homeland Security, Elaine C. Duke, U.S. Immigration and Customs Enforcement, Thomas D.

Homan, Matthew T. Albence, County of Suffolk, Steven Bellone, Suffolk County Sheriff's Office,

Vincent F. DeMarco, and other individuals in charge to be identified (collectively, "Defendants"),

and allege as follows:

## STATEMENT OF THE CASE

1.      By this amended complaint ("Complaint"), Plaintiffs-Petitioners ("Plaintiffs") challenge ICE's policy and practice of issuing detainers requesting that federal, state, and local law enforcement agencies continue to detain individuals well after any other basis for custody has expired, simply for the administrative convenience of ICE.  ICE's statutory authority to issue detainers without a judicially authorized arrest warrant is expressly limited, as set forth in 8 U.S.C. § 1357(d), 8 U.S.C. § 1226(c), and 8 U.S.C. 1357(a), to situations other than those involved in the instant case.  As detailed below, ICE's issuance of these detainers ("ICE detainers") regularly exceeds its statutory authority.

2.      By this Complaint, Plaintiffs also challenge the policy and practice of the SCSO and its officials of complying with these ICE detainers by detaining individuals without judicial authorization well past the time when they were due to be released, policies that led to Plaintiffs being so harshly, and unjustly, deprived of their freedom, their families and their livelihoods, all deprivations they seek to remedy by this action.  These detentions, unsupported by a judicial determination of probable cause and without due process protections, violate Plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution and under the First Article of the New York Constitution.

3.      On or about April 27, 2017, Defendant United States Immigration and Customs Enforcement ("ICE") obtained custody of Plaintiff Mr. Orellana, in knowing reliance on an unconstitutional scheme deployed by Defendant Suffolk County Sheriff's Office ("SCSO"), at ICE's request, to maintain custody over Mr. Orellana beyond his scheduled release date simply for ICE's administrative convenience, without the required statutory, judicial, or constitutional authority to do so.

4.      Though Mr. Orellana paid the bail set by the local district court, the SCSO unlawfully extended his detention to transfer custody of his person to ICE, in whose custody he has continuously remained to date.

5.      Similarly, on July 2, 2017, Plaintiff Mr. Hernandez was arrested by the Suffolk County Police and remanded to the custody of the SCSO.  Upon information and belief, Defendant ICE subsequently issued a detainer requesting that SCSO maintain custody over Mr. Hernandez for an additional 48 hours beyond his scheduled release date, without the required statutory, judicial, or constitutional authority to do so.  Upon disposition of Mr. Hernandez's criminal case, at which time he should have been released, he was instead remanded back to the custody of SCSO.  Upon information and belief, ICE will take custody of him in the next 48 hours, absent relief from this Court.

6.      ICE justified its detainer requests based solely on its initiation of investigations to determine whether Plaintiffs were subject to removal from the United States.  ICE did not accompany Plaintiffs' detainers with a judicial arrest warrants or final removal orders.

7.      On information and belief, ICE has no procedures in place to ensure that the subjects of detainers receive adequate notice of the detainers' terms.  Moreover, even though the detainer form states that "the alien must be served with a copy of this form," neither ICE nor SCSO provided Mr. Orellana with a copy of his ICE detainer until several days after it was issued. When Mr. Orellana did finally receive a copy of his detainer, it was written only in English, a language Mr. Orellana does not speak.  As of the filing of this Amended Complaint, Mr. Hernandez has not been provided with a copy of his detainer at all.  Nor did ICE provide Plaintiffs with any practical means to challenge the ICE detainers lodged against them.

8.      Plaintiffs seek damages under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(a), under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, and under the First Article of the New York Constitution for the violation of their rights.

9.      Plaintiff Mr. Hernandez also seeks on his behalf and on behalf of similarly situated individuals, who have immigration detainers lodged against them, declaratory and injunctive relief under the Administrative Procedures Act, 5 U.S.C. §706(a), under the Fourth, Fifth, and Tenth Amendments for the ongoing violation of their rights, or, in the alternative, habeas corpus relief.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 because it arises under the Constitution and the laws of the United States.  This Court also has supplemental jurisdiction over this action's New York Constitution claim pursuant to 28 U.S.C. § 1367 because those claims are so related to the claims arising under the Constitution and laws of the United States that they form part of the same case or controversy under Article III of the United States Constitution.

11.     This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

12.     This Court has authority to grant injunctive relief in this action pursuant to 5 U.S.C. § 702 and Rule 65 of the Federal Rules of Civil Procedure.

13.     Alternatively, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 2241.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred, and continue to occur, in this District.

15.     Venue is also proper in this judicial district because Plaintiff resides in this District.

## PARTIES

16.    At the time this action was commenced, Plaintiff Joaquin Orellana Castaneda was a 34-year old resident of Suffolk County detained at the Bergen County Jail in Hackensack, New Jersey under the authority of ICE.

17.    Seeking to escape crime and violence in his native country, Mr. Orellana made his way to the United States in 2005, and settled in Suffolk County, New York.  He works at a nursery that sells plants wholesale to retail stores, and lives modestly so as to send as much of his earnings as possible to family members back home.

18.    Mr. Orellana was arrested in the early morning hours of April 23, 2017 in Central Islip, New York, for violations of the Vehicle and Traffic Law. That same day, Mr. Orellana was brought before a Suffolk County judge, who set Mr. Orellana's bail at $1000 and remanded him to the custody of the SCSO.  Mr. Orellana spent the remainder of the day and night at Yaphank Correctional Facility ("Yaphank") in Yaphank, New York.

19.    The next day, April 24, 2017, Mr. Orellana was interviewed by ICE agents while under SCSO custody at Yaphank.  Mr. Orellana was told that if he paid his bail, then he would be released and would eventually have to appear at an immigration hearing.  That same day, Mr. Orellana's cousin paid Mr. Orellana's bail.  A true and correct copy of the bail receipt is attached hereto as Exhibit A.

20.    However, no one informed Mr. Orellana that his bail had been paid, and SCSO continued to hold Mr. Orellana at Yaphank pursuant to an ICE detainer after his bail had been paid. SCSO did not serve Mr. Orellana with a copy of the detainer at that time. A true and correct copy of Mr. Orellana's detainer and accompanying I-200 administrative warrant is attached hereto as Exhibit B.  Though it is dated April 24, 2017, the certificate of service at the bottom is blank.

21.    On April 25, 2016, while Mr. Orellana remained at Yaphank, a member of SCSO told him that there was a change in his paperwork, and gave no further explanation.  The next day, April 26, 2017, Mr. Orellana was transferred from Yaphank to the Riverhead Correctional Facility ("Riverhead") in Riverhead, New York.

22.    Upon information and belief, on or about April 27, 2017 (and certainly well after Mr. Orellana should have been released from custody due to the payment of his bail), Mr. Orellana was transferred into ICE's custody, and taken from Riverhead to ICE's Varick Street Detention Center ("Varick Street") in New York, New York. There, Mr. Orellana was questioned by ICE agents and given forms to sign.  Those forms included another copy of the I-200 warrant that had accompanied his detainer, but this time the I-200 was dated (by the ICE officer, not by Mr. Orellana) April 26, 2017. A true and correct copy of this second I-200 is attached hereto as Exhibit C. Later that night, Mr. Orellana was transferred from Varick Street to the Bergen County Jail.

23.    At the time this action was commenced, Plaintiff German Hernandez Argueta was a 22-year-old resident of Suffolk County, detained by the SCSO.

24.    Mr. Hernandez fled his home due to gang threats and violence.  He left his mother and sisters in 2014 at the age of 19, and came to live with his aunt and her family in Suffolk County. Mr. Hernandez works in landscaping and snow removal, and sends money to his mother and sisters to help support them.

25.    On or about June 1, 2017, Suffolk County police approached Mr. Hernandez at a 7-11 and asked his name without any objective credible reason, founded suspicion, or legal basis to do so. Frightened and taken aback by the arbitrary questioning, he stammered out a friend's name instead of his own.  The police officers searched Mr. Hernandez's pockets.  They discovered a money transfer receipt (from sending money to his mother earlier that day), and saw that the name

on the receipt was different from the name Mr. Hernandez had told them.  Mr. Hernandez admitted

that he had been scared and that the name on the receipt was his real name.  The officers arrested

him for false impersonation and took him to the precinct for the day.  He was taken to court the

following day and arraigned, released on his own recognizance, and given a date to return to court.

26.    Mr. Hernandez inadvertently lost the paper with his court date and could not

remember when he was to return.  Then, on July 2, 2017, Suffolk County police (who had a photo

of Mr. Hernandez in their hands) questioned him at a gas station where he was sitting with a friend,

and asked his name.  Mr. Hernandez was afraid that he was in trouble for missing his court date,

and again gave a friend's name.  The police arrested him again for false impersonation and took

him to the local precinct.  He was eventually arraigned before a Suffolk County judge, who set bail

at $500 and remanded him to the custody of the SCSO.

27.    On July 3, 2017, Mr. Hernandez was transferred to Yaphank, where he currently

remains.  While in the custody of the SCSO, he was questioned by ICE agents stationed at the jail

about his immigration status, and given English forms to sign.  Mr. Hernandez refused to sign the

forms, and was not provided with copies.

28.    On August 18, 2017, Mr. Hernandez pled guilty to disorderly conduct, a violation,

and was sentenced to time already served. However, instead of releasing Mr. Hernandez, SCSO

retained him in custody pursuant to the detainer request issued by ICE.  Within 48 hours, absent

relief from this Court, SCSO will transfer custody of Mr. Hernandez to ICE.

29.    Defendant U.S. Department of Homeland Security ("DHS") is a federal cabinet

agency,  a Department of the Executive Branch of the United States Government, and is an agency

within the meaning of 5 U.S.C. § 552(f).  DHS houses the office of ICE and ICE's division of

Enforcement and Removal Operations, the entities which issue the I-247 immigration detainers to

federal, state, and local law enforcement. DHS is ultimately responsible for how immigration regulations are applied and the approval of the use of the standard I-247 detainer form under which purported authority the Plaintiff was detained. DHS and/or its employees, agents, or representatives are involved in the violations of constitutional and statutory rights alleged herein.

30.    Defendant Secretary of DHS ("Secretary") is, among other responsibilities, charged with the constitutional and lawful implementation of the Immigration and Nationality Act, 8 U.S.C. §§ 1101, *et seq.*, and with the administration of the division of Immigration and Customs Enforcement. He/she is sued in his/her official capacity.

31.    Defendant Elaine C. Duke ("Duke") is the Acting Secretary of the DHS. Defendant Duke is, among other responsibilities, charged with the constitutional and lawful implementation of the Immigration and Nationality Act, 8 U.S.C. §§ 1101, *et seq.*, and with the administration of the division of Immigration and Customs Enforcement. She is sued in her official capacity.

32.    Defendant ICE is a subdivision of DHS. ICE is an agency within the meaning of 5 U.S.C. § 552(f). ICE and/or its employees, agents, or representatives are involved in the violations of constitutional and statutory rights alleged herein.

33.    Defendant Thomas D. Homan ("Homan") is the Acting Director of the U.S. Immigration and Customs Enforcement. Defendant Homan is, among other responsibilities, charged with the constitutional and lawful implementation of the Immigration and Nationality Act, 8 U.S.C. §§ 1101, *et seq.*, and with the administration of the division of Immigration and Customs Enforcement. He is sued in his official capacity.

34.    Defendant Matthew T. Albence ("Albence") is the Executive Associate Director of the U.S. Immigration and Customs Enforcement. Defendant Albence is, among other responsibilities, charged with the constitutional and lawful implementation of the Immigration and

Nationality Act, 8 U.S.C. §§ 1101, *et seq.*, and with the administration of the division of Immigration and Customs Enforcement.  He is sued in his official capacity.

35.     Defendant County of Suffolk ("County") is a duly constituted municipal corporation of the State of New York.  Upon information and belief, the County has direct authority over Defendant SCSO.  The County and/or its employees, agents or representatives are involved in the violations of constitutional and statutory rights alleged herein.

36.     Defendant Steven Bellone ("Bellone") is the County Executive of the County of Suffolk.  Defendant Bellone is, among other responsibilities, charged with the administration of the County of Suffolk.  He is sued in his official capacity.

37.     Defendant SCSO is an entity, agency, department, and/or subdivision of the County.  The SCSO and/or its employees, agents or representatives are involved in the violations of constitutional and statutory rights alleged herein.

38.     Defendant Vincent F. DeMarco ("DeMarco") is the Sheriff of Suffolk County and presides over the Suffolk County Sheriff's Office as its chief executive officer.  He has held this position since November 8, 2005.  Upon information and belief, Defendant DeMarco has direct authority over the SCSO.  He is sued in his official capacity.

## FACTUAL ALLEGATIONS

39.     Pursuant to 8 U.S.C. § 1103(a), DHS, through its division of ICE, purports to have the authority to issue detainers in accordance with the intent and requirements of the Immigration and Nationality Act ("INA").

40.     SCSO has stated that its policy—unlike that of many other law enforcement agencies—is to comply with detainer requests by holding the individuals in question for up to 48 hours past the time when they would otherwise be released to allow ICE to decide whether to take custody of a detainee and then take custody of those it chooses.

41.     For its part, and according to Defendant Homan, as of June 13, 2017 ICE has increased the issuance of detainers 75 percent compared with the same time period in 2016. Relatedly, a Washington Post article reports that ICE has deputized over 40 local law enforcement agencies to help ICE enforce immigration law, and that besides conducting its own searches, ICE uses a fingerprint-sharing program to learn when an undocumented immigrant has been arrested by state or local authorities.

42.     On the detainer that was issued against Plaintiffs, ICE officials justified continued detention of Plaintiffs on the sole ground that "there is reason to believe that the subject is a removable alien," which is a civil, not a criminal, violation of the INA.  The detainer requests that SCSO:

> **Maintain custody** of the alien for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from your custody to allow DHS to assume custody. The alien **must be served with a copy of this form** for the detainer to take effect.

43.     Plaintiffs' detainers were not issued pursuant to warrants of arrest in removal proceedings or a deportation orders.   Furthermore, on information and belief ICE had no particularized reasons to believe that the specific detainees at issue were likely to escape before warrants could be obtained for their arrest—the only circumstance in which ICE may detain an alien without a warrant.  *See* 8 U.S.C. § 1357(a)(2).  The completed detainers list no such particularized reasons.

44.     Neither ICE nor SCSO provides an administrative procedure for challenging the issuance of a detainer.  Likewise, the Board of Immigration Appeals (BIA) has ruled that it does not have jurisdiction to consider challenges to detainers because it has found that individuals held on detainers are not in federal immigration custody.

45.     The detainers contain a paragraph entitled "notice to the detainee," which reads as

follows:

> The Department of Homeland Security (DHS) has placed an immigration detainer on you. An immigration detainer is a notice to a law enforcement agency that DHS intends to assume custody of you (after you otherwise would be released from custody) because there is probable cause that you are subject to removal from the United States under federal immigration law. DHS has requested that the law enforcement agency that is currently detaining you maintain custody of you for a period not to exceed 48 hours beyond the time when you would have been released based on your criminal charges or convictions. **If DHS does not take you into custody during this additional 48 hour period, you should contact your custodian** (the agency that is holding you now) **to inquire about your release. If you believe you are a United States citizen or the victim of a crime, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.**

46.     Thus, even if Plaintiffs had timely received a copy of their detainers (which they did not) this notice does not constitute adequate due process.  Among other things, the inclusion of a hotline number on a notice (written in a language Plaintiffs do not speak) for certain specific problems, even if Plaintiffs had been able to call it, did not afford them an adequate opportunity to challenge their detention.

47.     The detainer forms state that ICE "requests" that SCSO detain the individual for an additional 48 hours so that ICE can assume direct, physical custody of the individual.  However, the regulation cited on the detainer form mandates that any local law enforcement agency, like the SCSO, detain the individual on ICE's behalf.  The regulation states: "such [criminal justice] agency *shall* maintain custody of the alien for a period not to exceed 48 hours . . . in order to permit assumption of custody by [ICE]."  8 C.F.R. § 287.7(d) (emphasis added).  This regulation, as set forth below, violates the United States and New York Constitutions and exceeds the statutory authority pursuant to which it is promulgated.

48.     The SCSO is well aware that numerous state and federal courts have found law enforcement agencies liable for Fourth Amendment violations where they have held individuals

pursuant to detainers.  Indeed, in or about 2014, Suffolk County's own attorney advised local authorities against the honoring of detainers unless accompanied by a judicial warrant.

49.     In or about February 2017, the New York State Sheriffs' Association (of which SCSO is a member) commissioned a comprehensive review of the relevant case law in light of the issuance by ICE of its new detainer form.  The Association's report concluded that "[s]heriffs should not detain persons beyond their normal release date based on a federal detainer warrant, *even if accompanied by an order of deportation or removal, unless there is also a judicial warrant.*" (emphasis added).  A true and correct copy of the Sheriffs' Association Report and analysis is attached hereto as Exhibit D.

50.     The SCSO, undeterred, has continued to comply with detainers, and, as in the case of Plaintiffs, to detain individuals even beyond the time requested under the detainer.  The SCSO appears similarly untroubled by the New York State Attorney General's earlier conclusion (which post-dates the introduction of the new detainer forms) that "[a]bsent a judicial warrant, [local law enforcement agencies] should honor ICE or [Customs and Border Protection] detainer requests only in limited, specific circumstances," meaning "a showing of probable cause that the individual *committed a crime* or that an exception to the probable cause requirement applies." (emphasis added) A true and correct copy of the New York State Attorney General's report is attached hereto as Exhibit E.

51.     In short, the SCSO knows, or has reason to know, that complying with detainers is unlawful.  Thus, its continued honoring of ICE detainers is a willful violation of Plaintiffs' statutory and constitutional rights.

## CLASS ACTION ALLEGATIONS

52.     Pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2) and/or (c)(4), Plaintiffs, seek to represent a class (the "Class") consisting of:

All persons who were, are, or will be detained by SCSO (a) on the basis of an ICE detainer in which ICE requested SCSO to continue to detain the individual after SCSO's detention authority has otherwise expired; and (b) where ICE has not (prior to service of such detainer) served a judicially authorized warrant of arrest for removal proceedings.

53.    Pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiff Mr. Hernandez seeks to represent a sub-class (the "Sub-Class") consisting of:

All persons who are or will be detained by SCSO (a) and against whom ICE has an active immigration detainer in which ICE requested SCSO to continue to detain the individual after SCSO's detention authority has otherwise expired; and (b) where ICE has not (prior to service of such detainer) served judicially authorized warrant of arrest for removal proceedings.

54.    The Class seeks declaratory relief—and the Sub-Class seeks declaratory and injunctive relief—that prohibits the detention of any individual by local law enforcement agencies on the basis of an ICE detainer and otherwise eliminates or remedies Defendants-Respondents' application of immigration detainer regulations, policies, practices, acts, and omissions that are depriving Plaintiffs of their liberty in violation of their rights.  The Class also seeks monetary damages to compensate Plaintiffs for this unlawful detention.

55.    The proposed Class and Sub-Class are very numerous.  In FY2009, at least 223,297 individuals detained by ICE (approximately 60% of ICE's FY2009 detention population) were first stopped, arrested, or criminally convicted by local law enforcement agencies. *See* Dora Schriro, ICE, *Immigration Detention Overview and Recommendations* at 11-12 (Oct. 6, 2009).  According to testimony given by Defendant Homan before the House Committee on Appropriations, Subcommittee on Homeland Security, ICE has issued 78,176 detainers in the current fiscal year—a figure up 75 percent compared with the same time period in 2016.

56.    Joinder of all Class and Sub-Class members is impracticable.  Because ICE continuously lodges detainers against individuals and assumes physical custody of those held on detainers, the membership of the Class and Sub-Class changes constantly.

All individuals who would fall within the Class and Sub-Class Definitions have had ICE detainer regulations, policies, practices, acts, and omissions applied against them, causing unlawful deprivation of liberty in violation of their rights.  There are questions of law or fact common to all Class and Sub-Class members, including, but not limited to:

- Whether ICE has exceeded its statutory authority (APA, 5 U.S.C. § 706(2)) in placing detainers on Class and Sub-Class members, including whether promulgation of 8 C.F.R. § 236.1(a) and 8 C.F.R. § 287.7 exceed the limits of the Constitution and/or ICE's statutory authority;

- Whether ICE's issuance of a detainer instructing further detention based solely on a determination that there is reason to believe the Class or Sub-Class member is an alien subject to removal violates the Fourth Amendment of the United States Constitution;

- Whether ICE's issuance of a detainer without a prior or concurrent service of a Notice to Appear or other charging document, an administrative arrest warrant, an order of deportation, or a particularized determination that the alien in question is likely to flee before a warrant can be obtained as per 8 U.S.C. § 1357(a)(2) violates the Fourth Amendment of the United States Constitution;

- Whether ICE's issuance of an immigration detainer without providing Class and Sub-Class members an adequate means of challenging detainers violates the Fifth Amendment of the United States Constitution;

- Whether SCSO's detention of a Class or Sub-Class member based only on a detainer as described above violates the Fourth and Fourteenth Amendments of the United States Constitution and/or the First Article of the New York Constitution;

- Whether SCSO's detention of a Class or Sub-Class member pursuant to a detainer without providing or requiring notice to the Class or Sub-Class member violates the Fourteenth Amendments of the United States Constitution and/or the First Article of the New York Constitution; and

- Whether SCSO's detention of a Class or Sub-Class member pursuant to a detainer without providing the Class or Sub-Class member an adequate means of challenging detainers violates the Fourteenth Amendment of the United States Constitution and/or the First Article of the New York Constitution.

57.    Given the commonality of the questions shared by all Class and Sub-Class members, prosecuting separate claims as to individual Class and Sub-Class members would establish incompatible standards of conduct for Defendants and the adjudications as to individual Class and Sub-Class members' claims might be dispositive of the interests of other Class and Sub-Class

members, thus substantially impairing their ability to protect their interests.

58.     Defendants have acted and intend to act in a manner adverse to the rights of the proposed Class and Sub-Class, making final declaratory relief appropriate with respect to the Class as a whole, and making final declaratory and injunctive relief appropriate with respect to the Sub-Class.

59.     Plaintiffs' counsel are experienced in class action, civil rights, and immigrants' rights litigation.  Plaintiffs' counsel will fairly and adequately represent the interests of the Class and Sub-Class.

## FIRST CAUSE OF ACTION:

### Violations of the First Article of the New York Constitution
### (Against SCSO, County, Bellone, and DeMarco)

60.     The allegations contained in paragraphs 1 through 59 above are repeated and alleged as though fully set forth herein.

61.     By virtue of the acts described above, SCSO and County deprived Plaintiffs and other members of the proposed Class and Sub-Class of liberty without due process of law in contravention of the First Article of the New York Constitution.

62.     The acts and conduct of the servants, representatives, agents, and employees of SCSO and County were the direct and proximate cause of injury and damage to Plaintiffs and other members of the proposed Class and Sub-Class and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

63.     SCSO and County are liable for the above-mentioned actions of their agents, representatives, servants, and/or employees under the doctrine of *respondeat superior*.

64.     As a result of the foregoing, Plaintiffs and other members of the proposed Class and Sub-Class were severely and seriously injured, both bodily and mentally, suffered a loss of

enjoyment of life, loss of liberty, experienced pain and suffering, emotional distress, great humiliation, costs and expenses, economic loss and other damages, and were otherwise damaged and injured.

## SECOND CAUSE OF ACTION:

### Violation of the Fourteenth Amendment of the United States Constitution (Against SCSO, County, Bellone, and DeMarco)

65.     The allegations contained in paragraphs 1 through 64 above are repeated and alleged as though fully set forth herein.

66.     Due process principles forbid the infringement of fundamental liberty interests, unless the infringement is narrowly tailored to serve a compelling government interest.

67.     The continued unauthorized detention of an individual in the absence of any standards guiding the issuance of the detainer is not narrowly tailored to serve a compelling government interest.  As they were detained by SCSO (under the supervision of County) past the point of their judicially authorized release, the fundamental liberty interests of Plaintiffs and other members of the proposed Class and Sub-Class guaranteed by the Fourteenth Amendment's substantive due process protections were violated.

68.     Due process further requires that the government be constrained before it acts in a way that deprives individuals of "liberty" interests protected under the Due Process Clause of the Fourteenth Amendment.

69.     Detainers issued by ICE purport to require state and local law enforcement officials to hold individuals in custody, without any basis in state law, standards guiding their issuance, or any judicial review, solely as a means of enforcing federal civil immigration statutes, for up to 48 hours, excluding weekends and government holidays. *See* 8 C.F.R. § 287.7.

70.     The Due Process Clause protects against the deprivation of liberty interests without the due process of law and requires notice and an opportunity to be heard prior to the deprivation as well as a method by which to challenge the deprivation.  Plaintiffs and other members of the proposed Class and Sub-Class were provided with none of these, in violation of their due process rights.

71.     The private liberty interests of Plaintiffs and other members of the proposed Class and Sub-Class are overwhelming.  The risk that they have been deprived of their liberty erroneously is high due to the fact that no court of law has adjudicated the lawfulness of SCSO's continued detention (under the supervision of County) of individuals past their scheduled release date.

72.     Interpreting immigration detainers as authorizing Defendants' continued unauthorized detention of Plaintiffs and other members of the proposed Class and Sub-Class without judicial review violates the procedural due process rights guaranteed by the Fourteenth Amendment and Plaintiffs and other members of the proposed Class and Sub-Class have been damaged as a result.

73.     The relief sought by Mr. Hernandez and other members of the proposed Sub-Class is necessary to prevent continued and future injury.

### THIRD CAUSE OF ACTION:

### Violation of the Fourth Amendment of the United States Constitution
### (Against All Defendants)

74.     The allegations contained in paragraphs 1 through 73 above are repeated and alleged as though fully set forth herein.

75.     28 U.S.C. § 2241 empowers this Court to issue a writ of habeas corpus, ordering the production of any person held "in violation of the Constitution or laws or treaties of the United States."  In addition, 42 U.S.C. § 1983 grants Plaintiffs and other members of the proposed Class

and Sub-Class a cause of action to challenge Defendants' deprivation of their "rights, privileges, or immunities secured by the Constitution and laws" under color of state and local law.

76.    Plaintiffs and other members of the proposed Class and Sub-Class are held, or have been held, in violation of the Constitution of the United States.  Plaintiffs, and other members of the proposed Class and Sub-Class were and are held solely on the basis of the ICE detainers issued in their names.  SCSO (under the supervision of County) had no legal authority to continue to hold Plaintiffs, and other members of the proposed Class and Sub-Class in custody after their judicially authorized release.  Moreover, SCSO (under the supervision of County) has no legal authority to continue to hold Mr. Hernandez and other members of the proposed Sub-Class in custody.

77.    Immigration detainers lack any standards guiding their issuance.  The detainers issued to SCSO (under the supervision of County) regarding Plaintiffs and other members of the proposed Class and Sub-Class were not issued by ICE (under the supervision of DHS) according to any legal standard.  They were not issued based on evidence demonstrating reasonable suspicion, probable cause, or any other ground.  Defendants' continued detention of Plaintiffs and other members of the proposed Class and Sub-Class thus deprived them of their liberty without probable cause.

78.    Mr. Hernandez and other members of the proposed Sub-Class are therefore held in the custody of SCSO, but without any basis in law and without any probable cause.

79.    SCSO's continued detention of Plaintiffs and other members of the proposed Class and Sub-Class (under the supervision of County) violated and continue to violate their Fourth Amendment constitutional right to be free from unreasonable seizure and Plaintiffs and other members of the proposed Class and Sub-Class have been damaged as a result.

## Fourth Amendment Violation: Detention Without a Hearing
### (Against All Defendants)

80.     The allegations contained in paragraphs 1 through 79 above are repeated and alleged as through fully set forth herein.

81.     Plaintiffs and other members of the proposed Class and Sub-Class have been held in violation of the Fourth Amendment prohibition against unreasonable searches and seizures.

82.     Immigration detainers issued by ICE (under the supervision of DHS) purport to require state and local law enforcement officials to hold individuals in custody, without any basis in state law and solely as a means of enforcing federal civil immigration statutes, for up to 48 hours. *See* 8 C.F.R. § 287.7.

83.     Upon the judicially authorized release of Plaintiffs and other members of the proposed Class and Sub-Class, Defendants' legal authority to maintain custody of Plaintiffs and other members of the proposed Class and Sub-Class ended or will end.  Defendants' continued detention of Plaintiffs and other members of the proposed Class and Sub-Class constitutes the equivalent of a new arrest.

84.     Because of this, and the fact that immigration detainers are not warrants issued upon probable cause, these detainer procedures violate the Fourth Amendment's requirement that an individual arrested without a warrant be brought before a neutral magistrate for a probable cause hearing within 48 hours of arrest, irrespective of weekends or holidays.

85.     Plaintiffs and other members of the proposed Class and Sub-Class were not brought before a neutral magistrate for a probable cause hearing.  Upon information and belief, Defendants have no process for bringing individuals subject to detainers before a neutral magistrate for a probable cause hearing within 48 hours.  Defendants' detention of Plaintiffs and other members of

the proposed Class and Sub-Class therefore violated their Constitutional right to be free from unreasonable seizures and they have been damaged as a result.

## FOURTH CAUSE OF ACTION:

### Violation of 5 U.S.C. § 706(2)(A)-(D)
### (Against ICE, DHS, Secretary, Duke, Homan, Albence)

86.     The allegations contained in paragraphs 1 through 85 above are repeated and alleged as though fully set forth herein.

87.     5 U.S.C. § 706(2)(A)-(D) requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] without observance of procedure required by law."

88.     ICE's failure (under the supervision of DHS) to restrict its issuance of detainers to its authority under the INA caused Plaintiffs significant prejudice by depriving them of their liberty.

89.     ICE's failure (under the supervision of DHS) to issue detainers in accordance with due process protections required by the relevant provisions of the INA (8 U.S.C. § 1226(a), 8 U.S.C. § 1357(a)(2) and 8 U.S.C. § 1357(d)) caused Plaintiffs significant pain and suffering by depriving them of their liberty.  In particular, ICE's failure (under the supervision of DHS) to obtain judicial warrants prior to detaining Plaintiffs, and failure to demonstrate any particularized reason to believe that Plaintiffs were likely to flee before such a warrant could be obtained, violates 8 U.S.C. § 1357(a)(2).

90.     ICE's application (under the supervision of DHS) of the immigration detainer regulations and issuance of detainers against Plaintiffs exceeded ICE's statutory authority in violation of 5 U.S.C. § 706(2)(A)-(D).

91.    As an actual and proximate result of ICE's statutory violations, under the supervision of DHS, Plaintiffs have suffered a significant deprivation of their liberty without due process of law and have been damaged as a result.  Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein.  The injunctive and declaratory relief sought by Plaintiffs is necessary to prevent continued and future injury.

## FIFTH CAUSE OF ACTION:

### Violation of the Fifth Amendment of the United States Constitution
### (Against ICE, DHS, Secretary, Duke, Homan, Albence)

92.    The allegations contained in paragraphs 1 through 91 above are repeated and alleged as though fully set forth herein.

93.    ICE's issuance of detainers (under the supervision of DHS) based solely on a determination that there is reason to believe an individual is an alien subject to removal caused Plaintiffs and other members of the proposed Class and Sub-Class significant pain and suffering by depriving them of their liberty without due process of law.

94.    ICE's issuance of detainers (under the supervision of DHS) without requiring that subjects of a detainer receive effective notice of the detainer caused Plaintiffs and other members of the proposed Class and Sub-Class to suffer substantial prejudice without affording them an opportunity to be heard prior to the deprivation.

95.    ICE's failure (under the supervision of DHS) to provide a proper mechanism by which subjects of a detainer may challenge the issuance of a detainer against them caused Plaintiffs and other members of the proposed Class and Sub-Class substantial prejudice by depriving them of their liberty without due process of law.

96.    ICE's detainer regulations, policies, practices, acts, and omissions (under the supervision of DHS) caused significant deprivation of liberty of Plaintiffs and other members of the

proposed Class and Sub-Class without due process of law in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.

97.    As a proximate result of ICE's unconstitutional detainer regulations, policies, practices, acts, and omissions, under the supervision of DHS, Plaintiffs and other members of the proposed Class and Sub-Class have suffered, and continue to suffer, a significant deprivation of their liberty without due process of law and they has been damaged as a result.  Plaintiffs and other members of the proposed Class and Sub-Class have no plain, adequate, or complete remedy at law to address the wrongs described herein.  The injunctive and declaratory relief sought by Plaintiffs and other members of the proposed Class and Sub-Class is necessary to prevent continued and future injury.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs and other members of the proposed Class and Sub-Class pray that this Court grant the following relief:

(1)    Issue a Writ of Habeas Corpus requiring Defendants to release Mr. Hernandez and other members of the proposed Sub-Class forthwith;

(2)    Issue an injunction ordering Defendants not to detain any individual solely on the basis of an immigration detainer;

(3)    Enter a judgment declaring that Defendants' detention of Plaintiffs and other members of the proposed Class and Sub-Class was unauthorized by statute and contrary to law;

(4)    Award compensatory damages in an amount to be determined at trial;

(5)    Award pre-judgment and post-judgment interest at the maximum legal rate;

(6)    Award reasonable costs and attorney's fees; and

(7)    Grant any other and further relief that this Court may deem fit and proper.

Dated:    New York, New York
               August 18, 2017

**WINSTON & STRAWN LLP**
*Counsel for Plaintiffs*

By:   /s/ Aldo A. Badini
       Aldo A. Badini
       Margaret Ciavarella
       Frank S. Restagno
       200 Park Avenue
       New York, New York 10166
       (212) 294-6700
       abadini@winston.com
       mciavarella@winston.com
       frestagno@winston.com

**LATINOJUSTICE PRLDF**
*Counsel for Plaintiffs*

By:   Juan Cartagena
       Jose Perez
       99 Hudson Street, 14th Floor
       New York, New York 10013
       (212) 219-3360
       jcartagena@latinojustice.org
       jperez@latinojustice.org