UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X
JOAQUIN ORELLANA CASTANEDA,

                                 Plaintiffs,                           Docket No.: 17cv4267

                 -against-

U.S. DEPARTMENT OF HOMELAND SECURITY;
John F. Kelly, Secretary, U.S. Department of Homeland
Security, in his official capacity; Elaine C. Duke, Deputy
Secretary, U.S. Department of Homeland Security, in her
official Capacity; U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT; Thomas D. Homan, Acting Director,
U.S. Immigration and Customs Enforcement, in his official
capacity; Matthew T. Albence, Executive Associate Director,
U.S. Immigration and Customs Enforcement, in his official
capacity; COUNTY OF SUFFOLK; Steven Bellone, County
Executive, County of Suffolk; SUFFOLK COUNTY
SHERIFF'S OFFICE; Vincent F. DeMarco, Sheriff, Suffolk
County Sheriff's Office, in his official capacity; and other
individuals in charge to be identified,

                                 Defendants.
--------------------------------------------------------------------------X

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

---

                                 DENNIS M. BROWN
                                 Suffolk County Attorney
                                 Attorney for Defendants
                                 H. Lee Dennison Building
                                 100 Veterans Memorial Highway
                                 P.O. Box 6100
                                 Hauppauge, New York 11788-0099

                 By:       Megan O'Donnell
                            Assistant County Attorney

Dated: Hauppauge, New York
           November 3, 2017

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

STATEMENT OF FACTS AS ALLEGED IN COMPLAINT . . . . . . . . . . . . . . . . . . . . . 5

POINT I
          THE STATUTORY SCHEME OF IMMIGRATION DETAINERS . . . . . . . . . .  7

POINT II
          THE DETENTION OF PLAINTIFFS WAS SUPPORTED BY
          PROBABLE CAUSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

POINT III
          THE COLLECTIVE KNOWLEDGE DOCTRINE IS APPLICABLE
          TO COMMUNICATIONS BETWEEN THE DHS AND THE SCSO . . . . . . . . . .15

POINT IV
          COOPERATION BETWEEN DHS AND THE SCSO IS LAWFUL . . . . . . . . . .  19

POINT V
          PLAINTIFFS FAIL TO STATE ANY DUE PROCESS VIOLATION . . . . . . . . . . . . . .23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

i

Federal Cases

*Arizona v. U.S.*,
   132 S.Ct. 2492 (2012) ...................................................................................... passim

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................... 4

*B.D. v. DeBuono*,
   130 F.Supp.2d 401 (S.D.N.Y.2000) ................................................................... 24

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................... 4

*Brigham City, Utah v. Stuart*,
   547 U.S. 398, 126 S. Ct. 1943, (2006) ............................................................... 13

*Brown v. City of New York*,
   201 F. Supp. 3d 328 (E.D.N.Y. 2016) ................................................................ 14

*Brown v. Graham*,
   470 Fed.Appx. 11 (2d Cir.2012) ........................................................................ 24

*City of El Cenizo v. City of Austin*,
   2017 WL 4250186 (5th Cir. Sept. 25, 2017)..................................................... 22

*Cox v. Warwick Valley Cent. Sch. Dist.*,
   654 F.3d 267 (2d Cir.2011) ................................................................................ 25

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir.2010) .......................................................................... 4, 6, 7

*Doran v. Eckold*,
   409 F.3d 958 (8th Cir. 2005) .............................................................................. 16

*Evans v. Solomon*,
   681 F.Supp.2d 233 (E.D.N.Y. 2010) ................................................................. 14

*Faulkner v. Beer*,
   463 F.3d 130 (2d Cir.2006) .................................................................................. 4

*Fiedler v. Incandela*,
   222 F. Supp. 3d 141 (E.D.N.Y. 2016) ................................................................ 14

*Figueroa v. Mazza*,
   825 F.3d 89 (2d Cir. 2016) ................................................................................. 13

*Galarza v. Szalczyk*,
   745 F.3d 634 (3rd Cir. 2014)....................................................................... 10, 11

*Harris v. Mills*,
   572 F.3d 66 (2d Cir. 2009) ................................................................................... 4

*Heien v. North Carolina*,
   135 S.Ct. 530 (2014) ........................................................................................... 14

*Mendoza v. United States Immigration & Customs*,
   *Enf't*, 849 F.3d 408 (8th Cir. 2017) ...................................................... 15, 16, 21

*Miller v. O'Bryan*,
   498 F.Supp.2d 548 (N.D.N.Y. 2007) ................................................................ 14

*Miranda-Olivares v. Clackamas Co.*,
   2014 WL 1414305 (D. Oregon 2014) ............................................................... 10

*Morales v. Chadbourne*,
   2014 WL 554478 (D. Rhode Island 2014) ....................................................... 10

*Natale v. Town of Ridgefield*,
   170 F.3d 258 (2d Cir.1999) ............................................................................... 25

*Norton v. Town of Islip*,
   97 F. Supp. 3d 241 (E.D.N.Y. 2015) ................................................................ 24

*Riley v. California*,
   134 S.Ct. 2473 (2014) ...................................................................................... 13

*Rogers v. Powell*,
   120 F.3d 446 (3d Cir.1997) ............................................................................... 17

*Roy v. County of Los Angeles et. al.*, 12-CV-9012,
   2017 WL 2559616 (C.D.California June 12, 2017) .......................................... 12

*Santos v. Frederick Cnty. Bd. of Comm'rs*,
   725 F.3d 451 (4th Cir.2013) .............................................................................. 22

*Simpson v. City of New York*,
   793 F.3d 259 (2d Cir. 2015) .............................................................................. 13

*Sira v. Morton*,
   380 F.3d 57 (2d Cir. 2004)……………………………………………………..4

State Cases

*Brown v. State of New York*,
   89 N.Y.2d 172, 652 N.Y.S.2d 223 (1996) ....................................................... 14

*People v. Currie*,
   131 A.D.3d 1265, 16 N.Y.S.3d 866 (2d Dep't 2015) ....................................... 15

*People v. Gittens*,
   211 A.D.2d 242, 627 N.Y.S.2d 435 (2d Dept.1995) ........................................ 17

*People v. Guthrie*,
   25 N.Y.3d 130 (2015) ...................................................................................... 14

*People v. Lypka*,
   36 N.Y.2d 210, 366 N.Y.S.2d 622 (1975) ....................................................... 18

*People v. Robinson*,
   97 N.Y.2d 341 (2001) ...................................................................................... 14

*People v. Rosario*,
   78 N.Y.2d 583 (1991) ................................................................................. 15, 18

*People v. Xirum,*
  45 Misc.3d 785 (Sup. Ct. Kings Co. 2014) ................................................................ 17


## Statutes

8 U.S.C. 1357(a) ................................................................................................................ 1
8 U.S.C. 1373(c) .............................................................................................................. 20
8 U.S.C. § 1103(a)(10) .................................................................................................... 19
8 U.S.C. § 1226(a) ............................................................................................................ 8
8 U.S.C. § 1226(c) ............................................................................................................ 1
8 U.S.C. § 1252c(a) ......................................................................................................... 19
8 U.S.C. § 1324(c) ........................................................................................................... 19
8 U.S.C. § 1357 ................................................................................................................. 2
8 U.S.C. § 1357(d) ............................................................................................................ 1
8 U.S.C. § 1357(g) ......................................................................................... 8, 19, 23, 25
8 U.S.C. § 1357(g)(10) ............................................................................................... 19, 22
8 U.S.C. § 1357(g)(10)(A) .............................................................................................. 19
8 U.S.C. § 1357(g)(10)(B) .............................................................................................. 20
8 U.S.C. § 1644 ............................................................................................................... 19
8 U.S.C. §§ 1103(a)(3), 1226(a) and (c), 1231(a), and 1357(d) ...................................... 12
8 U.S.C. §§ 1226 or 1231(a) ........................................................................................... 11
8 U.S.C.A. 1357(a)(1) ...................................................................................................... 7
N.Y. County Law § 650 (McKinney) ............................................................................... 17
§ 1357(a)(1)(2) ................................................................................................................. 8
§ 1357(a)(1), (2) ............................................................................................................... 8
§ 1357(g)(1)-(9) ................................................................................................................ 8


## Rules

F.R.C.P. 10(c) .................................................................................................................... 4


## Regulations

8 C.F.R. § 287.7(a) ............................................................................................................ 9
8 C.F.R. §§ 236.1, 241.2, 287.5 ...................................................................................... 12


## Other Authorities

2 *LaFave, Search and Seizure* § 3.5 ............................................................................... 15
32 *Carmody-Wait* 2d § 177:30 ....................................................................................... 15

## PRELIMINARY STATEMENT

Plaintiffs, Joaquin Orellana Castaneda ("Orellana") and German Hernandez Argueta ("Hernandez"), bring an Amended Complaint ("*Am. Compl.*") against  Defendants, U.S. Department of Homeland Security, the Secretary of the U.S. Department of Homeland Security, Elaine C. Duke, U.S. Immigration and Customs Enforcement, Thomas D. Homan, Matthew T. Albence, (collectively "Federal Defendants") and the County of Suffolk, Steven Bellone, Suffolk County Sheriff's Office, Vincent F. DeMarco, (collectively, "County Defendants").   In the Amended Complaint, Plaintiffs challenge ICE's policy and practice of issuing detainers requesting that federal, state, and local law enforcement agencies to detain individuals, for no more than 48 hours, for the purpose of ICE to assume custody of the subject of the detainer.  The detainer, in itself, communicates to the local law enforcement agency (relative to this discussion, the Suffolk County Sheriff's Office, hereinafter "SCSO") that there is probable cause that the detainee is subject to removal from the United States under federal immigration law.  The detainer is accompanied by a warrant for the arrest of the detainee, issued by an ICE pursuant to law.  (8 U.S.C. § 1357(d), 8 U.S.C. § 1226(c), and 8 U.S.C. 1357(a)).

Plaintiffs claim that their detentions pursuant to the detainers and accompanying administrative warrants are unsupported by a judicial determination of probable cause and without due process protections, and violate Plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution and under the First Article of the New York Constitution.  (*Am. Compl.*, First, Second and Third Causes of Action);  Plaintiffs also seek class certification. (*Am. Compl* ¶¶ 52, 53).  Among other demands, Plaintiffs demand this Court Issue an injunction ordering Defendants not to detain any individual solely on the basis of an immigration detainer, and enter judgment declaring that Defendants' detention of Plaintiffs and

1

other members of the proposed Class and Sub-Class was unauthorized by statute and contrary to law. (*Am. Compl*. "Wherefore Clause").

Pertinent to the County Defendants,[1] Plaintiffs challenge the purported policy and practice of the SCSO to comply with ICE detainers.  Contrary to Plaintiffs' argument, the County does not simply and blindly honor detainers.  The policy and practice of the SCSO is to cooperate with federal immigration authorities pursuant to 8 U.S.C. § 1357, such that the SCSO will temporarily detain a subject that is the subject of a legally sufficient I-200 administrative warrant for arrest, lawfully issued upon probable cause that the subject is removable from the United States, sand stating the basis for the probable cause.  This policy decision is consistent with federal statute and constitutional law (see, *Arizona v. U.S*., 132 S.Ct. 2492 (2012)).  This policy is sound, in that it reduces unplanned apprehensions outside the courthouse or correctional facility, and discourages DHS to seize state defendants before the conclusion of their pending matters, ensuring the criminal cases are complete.  Most pertinent to this discussion, the actions of the SCSO in not a unilateral action of the SCSO.  Rather, it is done at the sole request and direction of ICE, to whom the federal government has bestowed the statutory duty to identify, apprehend, and remove illegal aliens from the United States.

As more fully articulated below, there is there is legal, regulatory, and constitutional authority for ICE's issuance of detainers and accompanying administrative warrants, as were issued in the instant case.  Second, the SCSO's detention of the Plaintiffs is supported by probable cause – the detainers facially stated there was probable cause that the subjects were removable from the United States, that DHS intends to assume custody of the individual within no more than 48 hours, and each detainer was accompanied by a facially valid administrative

---

[1] To the extent that any legal or factual argument made by the Federal Defendants is applicable to those made by the County Defendants, the County Defendants herby adopts each as if cited herein.

arrest warrant which included the basis for the probable cause.  Further, there is nothing in the New York State constitution that requires a stricter or different probable cause predicate for the detention, than is addressed by the Fourth Amendment to the United States Constitution.  The touchstone for the seizure is "reasonableness."

Both federal law and New York law support the application of the collective knowledge doctrine (or fellow officer rule), such that the SCSO may lawfully detain an individual based upon DHS's conclusion that probable cause exists, and DHS's communication of that fact to the SCSO in the detainer and administrative warrant.  The cooperation that SCSO provides the federal government in honoring the detainers with accompanying warrants is lawful, and there is nothing to suggest otherwise.  The federal government specifically calls for the cooperation of local law enforcement agencies in certain circumstances, and such cooperation can be memorialized in writing, or not.  Suffolk County concedes it may not unilaterally arrest individuals to enforce federal immigration laws, however, our courts have never held that local law enforcement agencies may not cooperate with the federal government, at their direction and request, so that DHS may safely and prudently assume custody of those whom they have heretofore issued a warrant for arrest.

Thus it was not unreasonable for the SCSO to hold Plaintiffs for (no more than) 48 hours as requested in the detainer, which was accompanied by a lawfully issued and facially valid administrative arrest warrant, supported by probable cause.  Since the detentions were reasonable, there is no Fourth Amendment violation.  Moreover, because the SCSO has a strong governmental interest in honoring DHS's detainer requests, and since each Plaintiff was given notice of the detention and an opportunity to be heard, the SCSO did not violate Plaintiffs' due process rights.

## STANDARD OF REVIEW

To withstand a motion to dismiss, a complaint must contain factual allegations that "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citations omitted). The Court's determination as to whether the claims plausibly state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

Generally, when considering a Rule 12(b)(6) motion to dismiss, the Court's attention is "limited to consideration of the Complaint itself." *Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir.2006). However, "[a] complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (internal quotation marks and citations omitted.); see also F.R.C.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Thus, so long as there is no dispute regarding authenticity, accuracy or relevance, the Court may consider extrinsic evidence attached to the complaint, incorporated by reference or integral to the complaint. *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir.2010).

In the instant case, the County Defendants ask this Court to consider certain documents that are "outside" the complaint. First, the County Defendants' have provided the ICE detainer and accompanying warrant upon which Plaintiff Hernandez was taken into custody by ICE agents. (*Co. Defs' Ex. B*). This transfer of custody occurred on August 18, 2017 at about 9:39 p.m., the same day that Plaintiff pled guilty to his underlying criminal charge, and was sentenced

to time served.  (*Co. Def's Ex. E; Fed. Def's Ex. M*).  The amended complaint speaks only of Plaintiff Hernandez being "subject to" a detainer and arrest warrant -- not that ICE had actually and already assumed custody of Plaintiff Hernandez.  See, *Am. Compl.*, ¶ 28.  These documents are important to the Court's analysis as they show that the SCSO detained Plaintiff, on a valid and lawful detainer and accompanying arrest warrant, for less than 48 hours.

The County Defendants also submit to this Court dispositive documentation that shows the date and time Plaintiff Orellana was taken into custody by ICE.  This is submitted because the amended complaint alleges that Plaintiff Orellana was taken into ICE custody "on or about April 27, 2017" and that he was transferred to ICE custody *more than* 48 hours after he made bail.  (*Am. Compl.*, ¶¶ 17, 22).  That allegation may be easily disposed, as the County Defendants have provided documentary proof in the form of business records (and explanatory affidavit), as to the length of time Plaintiff was actually detained by Suffolk County – less than 48 hours.  (*Co. Defs' Exs. C & F*).  Nevertheless, these documents do not preclude consideration of the instant motion, as Plaintiffs' letter to this Court, filed October 10, 2017, argued "even if one were to assume (for the sake of argument only) that … SCSO held them for less than 48 hours, their detention would still have been unlawful." [DE 18].  Thus, the arguments advanced by Plaintiffs to undermine the constitutionality of immigration detainers does not appear dependent upon the length of detention, and their argument will not change should this Court consider the extrinsic documents.  The County Defendants submit them as it is simply the better practice for this Court to render a decision based upon an accurate fact.

## STATEMENT OF FACTS AS ALLEGED IN THE AMENDED COMPLAINT

In the early morning hours of April 23, 2017 Plaintiff Orellana was arrested for violations of the Vehicle and Traffic Law.  (*Am. Compl.*, ¶18).  That same day, Mr. Orellana was brought

before a Suffolk County judge, who set Mr. Orellana's bail and remanded him to the custody of the SCSO. (*Am. Compl.*, ¶ 18)  The next day, Plaintiff Orellana was interviewed by ICE agents while under SCSO custody at [the] Yaphank [jail].  (*Am. Compl.*, ¶19).  That same day, Plaintiff Orellana's cousin paid Plaintiff's bail.  Plaintiffs' *Exhibit B* purports to be a detainer and accompanying I-200 administrative warrant, dated April 24, 2017.  (*Am. Compl.*, ¶20).  The certificate of service at the bottom is blank. (*Id.*).  Plaintiff alleges that "on or about April 27, 2017 (and certainly well after Mr. Orellana should have been released from custody due to the payment of his bail), Mr. Orellana was transferred into ICE's custody, and taken from Riverhead to ICE's Varick Street Detention Center ("Varick Street") in New York, New York."  (*Am. Compl.*, ¶22).  However, the business records of the SCSO show that Plaintiff Orellana was taken into custody by ICE on April 26, 2017 at 5:03 a.m. (*Co. Defs' Exs. C & F*).  "On or about April 27, 2017" while in ICE's custody at the Varick Street Detention Center, Plaintiff was given an administrative warrant dated April 26, 2017, which is attached as Plaintiffs' *Exhibit C*.

Moreover, even though the detainer form states that "the alien must be served with a copy of this form," Plaintiff Orellana alleges that "neither ICE nor SCSO provided Mr. Orellana with a copy of his ICE detainer until several days after it was issued. When Mr. Orellana did finally receive a copy of his detainer, it was written only in English, a language Mr. Orellana does not speak. As of the filing of this Amended Complaint, Mr. Hernandez has not been provided with a copy of his detainer at all.  Nor did ICE provide Plaintiffs with any practical means to challenge the ICE detainers lodged against them."  (*Am. Compl.*, ¶7)

As to Plaintiff Hernandez, on or about June 1, 2017, Plaintiff Hernandez was arrested and charged by a member of the Suffolk County Police for false impersonation.  (*Am. Compl.*, ¶25). Though the complaint avers to an unlawful police encounter, Plaintiff Hernandez does not

challenge the validity of the arrest in the Amended Complaint. Plaintiff Hernandez was arraigned, released on his own recognizance, and given a court date to return to court. (*Am. Compl.*, ¶25). Plaintiff Hernandez did not return to court, and thereafter, on July 2, 2017 after once again giving a false name to the police, was arrested and charged with false personation. (*Am. Compl.*, ¶26). At that point, the Court set bail and remanded him to the custody of the SCSO. (*Id.*) While in the custody of the SCSO, Plaintiff Hernandez was questioned by ICE agents stationed at the jail about his immigration status, and given English forms to sign. Mr. Hernandez refused to sign the forms, and was not provided with copies. (*Am. Compl.*, ¶27). On August 18, 2017, Mr. Hernandez pled guilty to disorderly conduct, a violation, and was sentenced to time already served. However, instead of releasing Plaintiff Hernandez, the SCSO detained him pursuant to a detainer request issued by ICE. (*Id.*).

Defendant Steven Bellone ("Bellone")[2] is the County Executive of the County of Suffolk, charged with the administration of the County, and sued in his official capacity. (*Am. Compl.*, ¶36) Defendant Vincent F. DeMarco ("DeMarco") is the Sheriff of Suffolk County, presides over the Suffolk County Sheriff's Office as its chief executive officer, and is sued in his official capacity. (*Am. Compl.*, ¶38) It is alleged that the SCSO and/or its agents are involved in the violations of constitutional and statutory rights alleged herein. (*Am. Compl.*, ¶37).

**POINT I        THE STATUTORY SCHEME OF IMMIGRATION DETAINERS**

The federal government has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). This power includes authority to interrogate suspected aliens (8 U.S.C.A. 1357(a)(1)); authority to detain and

---

[2] Plaintiffs indicated their willingness to dismiss as to County Defendants Bellone and DeMarco, as each were sued only in their official capacity, and these claims are merely duplicative of claims against the County. [DE 18]. Therefore this motion will only address the claims against Suffolk County.

arrest removable aliens under 8 U.S.C. § 1226(a) ("Secretary of Homeland Security may issue administrative arrest warrants and may arrest and detain aliens pending removal decision"); the authority to "take into custody" aliens who have committed certain crimes when "released" (1226(c)(1)(A),(2)); authority to detain and remove aliens ordered removed (§ 1357(a)(1)(2)); and the authority to make warrantless arrests and interrogations (§ 1357(a)(1), (2)).

Federal law contemplates and authorizes state and local authorities to cooperate with federal authorities in order to accomplish the daunting task.   Specifically, Congress has authorized the Department of Homeland Security ("DHS") to enter into cooperative agreements with States and local authorities. *See* 8 U.S.C. § 1357(g). These agreements may be formal and in writing (§ 1357(g)(1)-(9).  These agreements may also be informal, not in writing, and *ad hoc.* States and local authorities may "communicate with the [Secretary] regarding the immigration status of any individual" or "cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States," *id.* § 1357(g)(10).  This cooperation has been approved by the Unites States Supreme Court, so long as that cooperation is pursuant to a "request, approval, or other instruction from the Federal Government," *Arizona*, *supra*, 567 U.S. at 410.  The Immigration and Nationality Act (INA) permits such cooperation whether it is directed by state statute, or is implemented *ad hoc* by a local sheriff. *Id.* at 410-413.

One way local authorities may cooperate with federal immigration enforcement is by responding to a federal request for assistance in the form of a federal immigration detainer issued by ICE.  ICE is a part of DHS which is responsible for immigration enforcement in the interior of the United States.  An immigration detainer notifies the State or local law enforcement agency (LLEA) that ICE intends to take custody of a removable alien who is detained in state or local criminal custody, and asks the State or locality to cooperate with ICE in that effort.

8

A detainer requests that the LLEA cooperate in two ways: (1) by notifying ICE of the alien's release date; and (2) by holding the alien for up to 48 hours to permit DHS to take custody, based on ICE's determination that it has probable cause that the alien is removable.  *See* 8 C.F.R. § 287.7(a).  LLEA's can choose to comply with one request, both requests, or neither.

DHS's detainer form, Form I-247A, sets forth the basis for DHS's determination that it has probable cause to believe that the subject is a removable alien. The form states that DHS's probable-cause finding is based on: (1) a final order of removal against the alien; (2) the pendency of removal proceedings against the alien; (3) biometric confirmation of the alien's identity and a records match in federal databases that indicate, by themselves or with other reliable information, that the alien either lacks lawful immigration status or, despite such status, is removable; or (4) the alien's voluntary statements to an immigration officer, or other reliable evidence that the alien either lacks lawful immigration status or, despite such status, is removable. (Form I-247A at 1).

Although LLEA's had cooperated with federal immigration detainers for decades without incident, the landscape began to change starting in 2012, after the United States Supreme Court's holding in *Arizona v. U.S.*, *supra*.  There the Court analyzed the federal government's historical and broad authority relating to matters of immigration enforcement, and held, among other things, that state and local actors were prohibited from unilaterally effecting arrests for immigration violations.  Thereafter, and contrary to the plain language in an immigration detainer that the LLEA "shall" detain the alien for no more than 48 hours, courts began holding that immigration detainers were merely requests for assistance – not mandates by federal authorities upon LLEA's.  Moreover, any LLEA's "blanket" policy of honoring all detainers

(including detainers unsupported by probable cause) was found to violate the Fourth Amendment.

So, for example in *Morales v. Chadbourne*, 2014 WL 554478 ((Dis. R.I. 2014) the federal district court of Rhode Island held a plaintiff had stated a plausible constitutional claim against a LLEA for instituting a policy that honored all immigration detainers, including detainers that were unsupported by probable cause.  There the Court noted, "One needs to look no further than the Detainer itself to determine that there was no probable cause to support its issuance. The Detainer specifically stated that [plaintiff] should be held solely because an investigation of her status in the United States had been initiated." *Id*., at *5.

In *Miranda-Olivares v. Clackamas Co*., 2014 WL 1414305 the district court for Oregon found liability in the LLEA's holding of a detainee based solely on a detainer, as opposed to probable cause, stating "[T]he ICE Detainer alone did not demonstrate probable cause to hold [plaintiff].  It stated only that an investigation "has been initiated" to determine whether she was subject to removal from the United States." *Id.*, at *11.   And in *Galarza v. Szalczyk*, 745 F.3d 634 (2014), the Third Circuit similarly held an immigration detainer did not compel state or local LEAs to detain suspected aliens subject to removal – thus opening the door to liability should the LLEA have held the detainee based on less than probable cause.

In light of the changing landscape, in April 2017, DHS changed their regulations and forms, such that federal ICE officers making a detainer request to a LLEA must use Form I-247A.  The new form gives notice that ICE intends to assume custody of a removable alien in the LLEA's custody.  (U.S. ICE Policy No. 10074.2: §2.1; §3.1 (Mar. 24, 2017)).  Through such a detainer request, ICE requests that a LLEA (1) notify DHS as soon as practicable before an alien is released and (2) maintain custody of the alien for up to 48 hours beyond that preexisting

release date so that DHS may assume custody.  (U.S. DHS, Immigration Detainer – Notice of Action, DHS Form I-247A (3/17)).  Detainers also invite the LLEA to contact ICE's Law Enforcement Support Center when "the alien" in the officer's custody "may be the victim of a crime," when the local officer "want[s] the alien to remain in the United States for a law enforcement purpose," or when the local officer has "any other questions or concerns about this matter." (Form I-247A at 1).

This new ICE detainer communicates to a LLEA that DHS has determined that probable cause exists that the subject is a removable alien, and sets forth the basis for DHS's determination that it has probable cause to believe that the subject is a removable alien.  The form states that DHS's probable-cause finding is based on: (1) a final order of removal against the alien; (2) the pendency of removal proceedings against the alien; (3) biometric confirmation of the alien's identity and a records match in federal databases that indicate, by themselves or with other reliable information, that the alien either lacks lawful immigration status or, despite such status, is removable; or (4) the alien's voluntary statements to an immigration officer, or other reliable evidence that the alien either lacks lawful immigration status or, despite such status, is removable. (Form I-247A at 1).  The explicit representation of probable cause is made in all detainer requests, and ICE officers must check one of the four boxes that indicates ICE's basis for the probable cause. *Id.*; see also, ICE Policy 10074.2 §2.4 (requiring, as of April 2017, that ICE officers "must establish probable cause to believe that the subject is an alien who is removable from the United States before issuing a detainer" and requiring that detainers be accompanied by an administrative warrant).

The new ICE detainer must now be must be accompanied by a signed administrative warrant of arrest issued under 8 U.S.C. §§ 1226 or 1231(a). (ICE Policy No. 10074.2 ¶¶ 2.4, 2.5).

11

The arrest warrant is in the form of I-200 (Warrant for Arrest of Alien, issued for aliens not yet subject to a removal order) or a Form I-205, (Warrant of Removal/Deportation issued for aliens subject to a final removal order).  These arrest warrants are issued by an executive immigration officer and sets forth the basis for that officer's probable-cause.  (8 U.S.C. §§ 1103(a)(3), 1226(a) and (c), 1231(a), and 1357(d)); see also, 8 C.F.R. §§ 236.1, 241.2, 287.5 (describing who and when arrest warrants may issue).

It is noteworthy that a recent decision issued by the federal district court in the Central District of California, supports the constitutionality of Congress's delegation of a probable cause determination to an executive officer such as an ICE agent, as opposed to an immigration judge, a magistrate, or a federal district court judge.  In *Roy v. County of Los Angeles et. al*., 12-CV-9012, 2017 WL 2559616 (C.D.California June 12, 2017), a case in which a detainee challenged ICE's policy of issuing detainers without a prompt hearing before a magistrate, the court specifically held "the Court finds that it is not unconstitutional under the Fourth Amendment for the Legislature to delegate a probable cause determination to an executive officer, such as an ICE agent, rather than to an immigration, magistrate, or federal district court judge.  No court has held to the contrary; rather, … courts frequently defer to the Legislature and the executive's authority in creating and implementing appropriate detainment and removal procedures in the immigration context." *Id*., at *10.  Although this court was not addressing, specifically, whether detainment itself is generally constitutional, this holding supports the statutory, constitutional, and regulatory authority for ICE's authority to issue immigration detainers, and to establish procedures which aid to implement detainers.  A request for assistance from a LLEA, through service of an immigration detainer and accompanying arrest warrant, is one such procedure to implement ICE's authority over immigration.

**POINT II**     **THE DETENTION OF PLAINTIFFS WAS SUPPORTED**
                **BY PROBABLE CAUSE**

The ultimate touchstone of any fourth amendment claim is the reasonableness of the search or seizure.  *Riley v. California*, 134 S.Ct. 2473, 2482 (2014).  "Because the Fourth Amendment's ultimate touchstone is reasonableness, the warrant requirement is subject to certain exceptions.  *Brigham City, Utah v. Stuart*, 547 U.S. 398, 398, 126 S. Ct. 1943, 1944, (2006). One such exception is probable cause.  See, *Figueroa v. Mazza,* 825 F.3d 89, 99 (2d Cir. 2016) ("The existence of probable cause to arrest-even for a crime other than the one identified by the arresting officer-will defeat a claim of false arrest under the Fourth Amendment."); see also *Simpson v. City of New York,* 793 F.3d 259, 265 (2d Cir. 2015) ("A finding of probable cause is a complete defense to false arrest claims").

An ICE detainer communicates to a law-enforcement agency that "DHS has determined that probable cause exists that the subject is a removable alien."  All detainer request now explicitly document that probable cause has been made by an ICE official, and ICE officers check a box which further documents the basis for their finding of probable cause.  The detainers and accompanying warrants in the instant case clearly delineated the probable cause and the basis for the probable cause.  See, *Co. Def's Exs. B & D*.

Moreover, the Fourth Amendment does not change because of the actor who carries out the detention.  As stated above, the touchstone is not the particular government actor who carried out the detention, but whether the detention was supported by probable cause – i.e., the reasonableness of the detention.  If probable cause supports the detention and the detention is reasonable, there is no Fourth Amendment violation.

Further, the probable cause analysis is the same whether done under the U.S. constitution or the New York State constitution.  As noted by other federal judges, "Article I, § 12 of the New

13

York State Constitution is a verbatim adoption of the Fourth Amendment of the United States Constitution." *Brown v. City of New York*, 201 F. Supp. 3d 328, 332 (E.D.N.Y. 2016). Therefore, a search or seizure based on probable cause does not violate the Fourth Amendment of the U.S. constitution, nor does it violate the New York State constitution.  Likewise, in *Fiedler v. Incandela*, 222 F. Supp. 3d 141, 167–68 (E.D.N.Y. 2016), the Court noted that "[T]he New York Court of Appeals has held that a plaintiff may 'pursue a state constitutional tort claim for damages for violations of the right to be free of unreasonable searches and seizures under Article I, § 12 of the New York constitution." *Id.* (citing E*vans v. Solomon*, 681 F.Supp.2d 233, 255 (E.D.N.Y. 2010) (citing *Brown v. State of New York*, 89 N.Y.2d 172, 191–92, 652 N.Y.S.2d 223 (1996)).  However, probable cause still defeats a claim for an unreasonable seizure under the state constitution.  "Under New York law, "a search or seizure based on probable cause does not violate" the New York State Constitution. " *Fiedler, id*. (citing *Brown*, *supra*, at 332); *see also Miller v. O'Bryan*, 498 F.Supp.2d 548, 555 (N.D.N.Y. 2007) (dismissing illegal search and seizure claims arising under the New York Constitution where probable cause existed).

New York courts have similarly held that the touchstone of any claim for illegal search or seizure is "reasonableness."  The New York Court of Appeals has unequivocally stated "As this Court has previously explained, any exercise of police power under the Fourth Amendment of the United States Constitution and our State constitutional corollary must be reasonable—a seizure by the police may not be arbitrary." *People v. Guthrie*, 25 N.Y.3d 130, 133, <u>reargument denied,</u> 25 N.Y.3d 1191 (2015) (citing *People v. Robinson,* 97 N.Y.2d 341, 353 (2001); *see also Heien v. North Carolina,* 135 S.Ct. 530, 536 (2014)).  It stands to reason that although the New York Constitution does grant broader rights than the U.S. constitution, in this context the Court's analysis is the same – a seizure supported by probable cause is reasonable and thus lawful.

**POINT III**   **THE COLLECTIVE KNOWLEDGE DOCTRINE IS APPLICABLE TO COMMUNICATIONS BETWEEN THE DHS AND THE SCSO**

The Suffolk County Sheriff's Office may constitutionally honor ICE detainer requests that covey probable cause to detain, under the collective knowledge doctrine or fellow officer rule.   In New York State, the fellow officer rule is applied between different agencies, between officials in different states, or between federal and local authorities.   32 *Carmody-Wait* 2d § 177:30.  As explained by the Court of Appeals, "the fellow officer rule has been employed in a variety of circumstances and through the use of various modes of communication including telephone, teletype and computer. The rule has been applied whether the communication was between superior or fellow officers within the same department, different agencies or agencies at different levels within a State and between officials in different States as well as between Federal and State or local authorities." *People v. Rosario*, 78 N.Y.2d 583, 588–89, (1991) (citing 2 *LaFave, Search and Seizure* § 3.5[b], at 9).   The pertinent inquiry in all situations has been directed to the nature and reliability of the information possessed by the person or agency transmitting the information.  *Id.*; see also, *People v. Currie*, 131 A.D.3d 1265, 16 N.Y.S.3d 866 (2d Dep't 2015), leave to appeal denied, 26 N.Y.3d 1144, 2016 WL 1059025 (2016) (Police had probable cause to arrest the defendant, following an investigatory stop, upon learning from a computer check that there was an open warrant for his arrest in another state).

The collective knowledge doctrine has been applied in the context of communications between ICE agents and local law enforcement agencies such as the SCSO.   In *Mendoza v. United States Immigration & Customs Enf't,* 849 F.3d 408, 419 (8th Cir. 2017), plaintiff Mendoza was a naturalized United States citizen who used a name different from his full birth name.   Upon his arrest following traffic matters, and due to a series of administrative, but reasonable errors, ICE agent Justin Osterberg lodged a detainer request with the County Jail.

15

Upon learning of the error that plaintiff Mendoza was not the same individual whom Osterberg believed to be a removable alien, Osterberg cancelled the detainer well before the 48-hour hold deadline.   Plaintiff sued Osterberg and County officials, claiming numerous constitutional violations.   In *Mendoza*, the Eighth Circuit reviewed the facts leading to Osterberg's determination that probable cause existed, and noted Osterberg had arguable probable cause, and affirmed the granting of qualified immunity.   Noteworthy, the Eight Circuit affirmed the granting of qualified immunity to the local jail actors too, holding "[a]s discussed above, Osterberg had arguable probable cause to issue the ICE detainer based on his training, as well as information from [plaintiff] and [the law enforcement service center].   The County employees were entitled to rely on Osterberg's probable cause determination."   *Id*., at 419 (relying on *Doran v. Eckold*, 409 F.3d 958, 965 (8th Cir. 2005)(law enforcement may reasonably rely on information from other law enforcement).   In *Mendoza,* the Eighth Circuit determined that, as to the County officials, "there was no violation of Mendoza's constitutional rights, and the County employees are or would be entitled to qualified immunity." *Id*.

Courts are inclined to adopt and apply the collective knowledge doctrine so long as there is "some degree of communication between the officer who possesses the incriminating knowledge and the officer who does not." *United States v. Banks,* 514 F.3d 769, 776 (8th Cir.2008); see also *United States v. Parra,* 402 F.3d 752, 766 (7th Cir.2005) ("Agent Hehr, who arrested Correa, was in constant communication with Agent Becka and Agent Chamulak. On this basis, we find the collective knowledge doctrine applicable[.]" see also, *United States v. Lee,* 962 F.2d 430, 435 (5th Cir.1992) ("[P]robable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest, when there is 'some degree of communication between the two.'")

16

Local courts have likewise held that the collective knowledge doctrine is applicable to immigration detainers.  Specifically in *People v. Xirum*, 45 Misc.3d 785 (2014), the Supreme Court, Kings County, determined that the detainer requesting the local jail to detain the defendant for, at most, 48 hours was lawful in light of the fact that the Fourth Amendment requires that seizures be objectively reasonable in light of the facts and circumstances.  There the court held that

> Similar to the fellow officer rule that permits detention by one police officer acting on probable cause provided by another, the DOC had the right to rely upon the very federal law enforcement agency charged   under  the  law  with  "the identification, apprehension, and removal of illegal aliens from the United States."  *Arizona v. United States,*132 S.Ct. 2492, 2500, 183 L.Ed.2d 351 (2012). The DOC works closely on Riker's Island with ICE who has verified through the defendant's fingerprints that defendant, in fact, is subject to an order of removal or deportation. *See e.g. People v. Gittens,* 211 A.D.2d 242, 627 N.Y.S.2d 435 (2d Dept.1995). *Id.* at 791.

Courts also focus on whether the law enforcement officers initiating the search or arrest, on whose instructions or information the actual searching or arresting officers relied had information that would provide reasonable suspicion or probable cause to search or arrest the suspect.  *United States v. Colon*, 250 F.3d 130, 135–36 (2d Cir. 2001); see also *Rogers v. Powell,* 120 F.3d 446 (3d Cir.1997) ("The legality of a seizure based solely on statements issued by fellow officers depends on whether the officers who issued the statements possessed the requisite basis to seize the suspect.").

Plaintiffs argue the collective knowledge or fellow officer rule should not apply as the Sheriff and the SCSO has no authority to make arrests based upon violations of civil, rather than criminal law.  First, there is nothing in New York State law that prohibits the Suffolk County Sheriff from cooperation with DHS.  N.Y. County Law § 650 (McKinney) proscribes the power of a sheriff in New York State, specifying that "The sheriff shall perform the duties prescribed

17

by law as an officer of the court and conservator of the peace within the county. He shall perform such additional and related duties as may be prescribed by law and directed by the board of supervisors or the county legislature." Thus no state law prohibits the Suffolk County Sheriff from cooperating with federal authorities in choosing to honor a detainer request that is accompanied by a facially valid administrative arrest warrant, as proscribed in the INA.

Second, New York case law lends support to a liberal extension of the fellow officer rule. For example, in *People v. Rosario*, 78 N.Y.2d 583, 589 (1991) the Court of Appeals applied the doctrine to a case where the communicating officer was an auxiliary officer, who had no statutory authority to arrest. There, the auxiliary officer had communicated the predicate probable cause to police officers, who made the arrest based solely upon the auxiliary officer's information. The Court of Appeals noted "A different result is not required because auxiliary Officer Hernandez is considered a peace officer only under limited circumstances (*see*, CPL 2.10 [26]; L.1951, ch. 784, § 105), and therefore has no power to arrest beyond that of a private citizen." There the Court went on to note that "In *People v. Lypka,* 36 N.Y.2d 210, 366 N.Y.S.2d 622, 326 N.E.2d 294, lack of authority to conduct a warrantless arrest did not deter this Court from determining that the "fellow officer" rule applied to out-of-State law enforcement officers. Similarly, under the facts of this case, Hernandez's lack of authority to make a warrantless arrest should not stand as a bar to applying the "fellow officer" rule to him." *Id.*

In the instant case, there is communication between ICE and the SCSO, in that ICE regularly stations agents within the County's Correctional Facility as they work to identify, apprehend, and remove illegal aliens from the United States. In the absence of state law prohibiting the SCSO's cooperation with DHS, and in light of the fact that the detention of Plaintiffs occurred at the direction, request, and authority of DHS who has the statutory and

constitutional authority to determine probable cause for removal, the fellow officer rule should be applied.   Accordingly, once federal immigration agents developed and communicated probable cause to detain, the SCSO may constitutionally detain at DHS's request.

**POINT IV      COOPERATION BETWEEN DHS AND THE SCSO IS LAWFUL**

Congress specifically intended for local law enforcement to assist the DHS to enforce federal immigration laws, and has enacted statutes that encourage such cooperation, with and without formal written agreements.   In 8 U.S.C. § 1357(g)(10)(A), Congress expressly provides that no written agreement is required for state and local law enforcement officials to communicate or otherwise cooperate with federal authorities.   Specifically, the law provides:

> Nothing in this subsection [8 U.S.C. § 1357(g)] shall be construed to require an agreement under this subsection in order for any officer or employee of a State or political subdivision of a State -
>
> (A) to communicate with the Attorney General regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States; or
>
> (B) otherwise to cooperate with the Attorney General in the identification, apprehension, *detention*, or removal of aliens not lawfully present in the United States.   8 U.S.C. § 1357(g)(10) (emphasis added).

Other federal statutes evidence Congress's intent that LLEA shall cooperate with federal authorities, such as 8 U.S.C. § 1103(a)(10) (local law enforcement officers to assist in immigration enforcement in the event of an actual or imminent mass influx of aliens arriving off the coast of the US); 8 U.S.C. § 1252c(a) (local law enforcement officers to arrest illegal aliens who have "previously been convicted of a felony in the United States and deported or left the United States after such conviction"); 8 U.S.C. § 1324(c)(local law enforcement to arrest individuals for bringing in and harboring certain aliens); 8 U.S.C. § 1644 (as it relates to public benefits, no "local government entity may be prohibited, or in any way restricted, from sending

to or receiving from [ICE] information regarding the immigration status, lawful or unlawful, or an alien in the United States"); 8 U.S.C. 1373(c)(federal authorities must respond to local inquiries "seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law")

Likewise, courts have recognized the propriety of local law enforcement assisting federal authorities in immigration enforcement.  For example, in *United States v. Quintana*, 623 F.3d 1237 (8th Cir. 2010), a state trooper stopped a motorist for speeding.  The motorist provided a Mexican driver's license, and the trooper was unable to verify the identity of the driver.  The trooper contacted the United States Border Patrol, and thereafter it was determined that the motorist was a removable alien.  The Border Patrol agent requested that the trooper take custody of the motorist.  The trooper brought the alien to the County law enforcement center, and thereafter the federal agent drove two hundred miles to obtain custody of the alien.  Upon a claim that his civil rights were violated, the Eighth Circuit determined that the Border Patrol agent made a showing of probable cause to believe that the motorist was a deportable alien.  More importantly, the trooper "was authorized to assist [the agent] in detaining [the plaintiff]".  *Id.*

The Supreme Court's holding in *Arizona v. United States*, *supra*, confirms the propriety of cooperation between LLEA's and the federal government in the realm of immigration enforcement.  There the Court examined the authority of local and state officers to enforce federal immigration laws, holding that federal law expressly preempts the states to regulate immigration or to enforce immigration laws, *unilaterally*.  The Supreme Court noted that 8 U.S.C. § 1357(g)(10)(B) permits state officers to "cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States."  Though the Court held that "cooperation" did not encompass the unilateral decision by

20

a local officer to enforce immigration laws, it explained

> There may be some ambiguity as to what constitutes cooperation under the federal law; but no coherent understanding of the term would incorporate the *unilateral* decision of state officers to arrest an alien for being removable absent any request, approval, or other instruction from the Federal Government (*Id., supra*, at 410).

With this holding, the Supreme Court rejected the defense that "cooperation" can encompass unilateral decisions made by local law enforcement agents, implicitly reaffirming that state and local law enforcement may lawfully cooperate pursuant to a request, approval, or other instruction from the federal government.  Indeed, a detainer request and accompanying arrest warrant is the embodiment of just such an example.

Other Courts have likewise reaffirmed the propriety of actions taken by LLEA's at the request of the federal government in the realm of immigration enforcement.  For example, in the *United States v. Ovando-Garzo*, a North Dakota trooper initiated a traffic stop of a pickup truck for speeding.  Upon his interaction with the motorist and the passengers, the trooper suspected the passengers were unlawfully present in the United States.  The trooper contacted the Border Patrol for assistance, who informed the trooper that the passengers were illegal aliens.  The federal agent requested the trooper detain the passengers to allow him to arrive to take custody.  Instead, the trooper (who was intending to transport the driver to the local sheriff's office, anyway) offered to transport the passengers to the Sheriff's office where the federal agent could assume custody.  That was done, and the passengers sued for an unauthorized detention.  One passenger, Ovando–Garzo, argued state and local officials "generally have no authority to arrest aliens on the basis of possible removability which Congress has given to trained federal immigration officers." The Eighth Circuit found that argument "meritless," noting

> "although a formal, written agreement is sometimes required for a state official to perform certain functions of a federal immigration officer, no written agreement is required for a state official to cooperate with the Attorney General in identifying,

21

apprehending, and detaining any individual unlawfully present in the United States. *See* 8 U.S.C. § 1357(g)(10). Here, Trooper Pulver's acts—identifying Ovando–Garzo, communicating with the Border Patrol, and detaining Ovando–Garzo until the Border Patrol agent could take custody—were not unilateral and, thus, did not exceed the scope of his authority. *See Arizona v. United States,* ⸺ U.S. ⸺, 132 S.Ct. 2492, 2507, 183 L.Ed.2d 351 (2012) (discussing 8 U.S.C. § 1357(g)(10)); *United States v. Quintana,* 623 F.3d 1237, 1242 (8th Cir.2010) (holding state trooper was authorized to assist federal agent in detaining individual suspected of being unlawfully present in the United States); *cf. Santos v. Frederick Cnty. Bd. of Comm'rs,* 725 F.3d 451, 466–67 (4th Cir.2013) (recognizing local police may detain and transport an alien after express direction of federal officials) (citing *United States v. Guijon–Ortiz,* 660 F.3d 757, 765 (4th Cir.2011) and *United States v. Soriano–Jarquin,* 492 F.3d 495, 496–97 (4th Cir.2007)).
(*U.S. v. Ovando-Garzo*, 752 F.3d 1161, 1164 (8th Cir. 2014))

The Fourth Circuit dealt with this very issue in *Santos v. Frederick*, a case where a local officer seized plaintiff for an immigration warrant prior to confirmation with ICE that the warrant was active.  The Fourth Circuit held the seizure violated the Fourth Amendment because the action of the LLEA was specifically not at the direction or authorization of the federal government.  There the Court noted "*Arizona v. United States* makes clear that under Section 1357(g)(10) local law enforcement officers cannot arrest aliens for civil immigration violations absent, at a minimum, direction or authorization by federal officials…. We conclude that … the deputies' initial seizure of Santos was not directed or authorized by ICE." *Santos v. Frederick Co.*, 725 F.3d 451, 465-66 (4th Cir. 2014).  It is logical to conclude that, had the detention been at the direction or authorization of ICE, the detention would have been legal.

Notably, the Fifth Circuit has indicated that a LLEA's cooperation with DHS in honoring immigration detainers is not unconstitutional.  In *City of El Cenizo v. City of Austin,* 2017 WL 4250186 (5th Cir. Sept. 25, 2017), the Fifth Circuit stayed portions of a district court's injunction of a recent Texas state statute, which, among other requirements, requires law enforcement agencies to "comply with, honor, and fulfill" any immigration detainer request issued by ICE.

The district court ruled the detainer provision likely violates the Fourth Amendment, as it relates to the LLEA's actions.  The district court based its determination on the fact that detainers call for LLEA's to detain based upon the federal agent's probable cause determination that a civil violation had been violated – not a criminal violation.  The Fifth Circuit stayed that stay, finding that the State was likely to succeed on the merits as to the claim challenging the detainer provision.  The new state statute "provides that the local entities to which it is directed may 'not prohibit or materially limit' persons who, in effect, have authority that may impact immigration, from 'assisting or cooperating with a federal immigration officer as reasonable or necessary, including providing enforcement assistance[.]'" *Id.* at *2.  The Fifth Circuit, focusing on that provision, held "nothing in *Arizona v. United States*, 567 U.S. 387 (2012), prohibits such assistance. . . . and the statute on which the district court relied, 8 U.S.C. § 1357(g), provides for such assistance." *Id.*  Thus, while the Fifth Circuit has yet to rule on the merits of the statute, it has nevertheless confirmed the propriety of the Defendants' position, herein, that the United States Constitution does not prohibit the SCSO's cooperation with DHS in honoring a facially valid detainer accompanied by an arrest warrant supported by probable cause.

## V.     PLAINTIFFS FAIL TO STATE ANY DUE PROCESS VIOLATION

In the amended complaint, Plaintiffs allege that the County violated procedural and substantive due process protections afforded under the state and federal constitutions.  (*Am. Compl.*, First and Second Cause of Action).  Plaintiffs argue they were not provided with notice of the detention and an opportunity to be heard, (*Am. Compl.* ¶ 70), and that their detention by the SCSO past the point of their judicially authorized release violated their "substantive due process protections."  (*Am. Compl.* ¶ 67).

Plaintiffs fail to plausibly state a claim for relief.  As to the procedural due process claim, a violation occurs "when the government deprives a person of a protected life, liberty, or property interest without first providing notice and an opportunity to be heard." *B.D. v. DeBuono,* 130 F.Supp.2d 401, 432–33 (S.D.N.Y.2000).  Each Plaintiff was provided with notice and an opportunity to be heard.  The back of each detainer form, which is served on the detainee, describes the "Notice to the Detainee" - that DHS intends to assume custody of the detainee within 48 hours of his/her release from local custody.  The Notice advises the detainee to contact the holding agency [herein, the SCSO] should the transfer of custody not occur, and to contact DHS [at a listed toll free number] should the detainee believe he/she is a citizen of the United States, or is a victim of a crime.  (See, e.g., *Fed. Def's Ex. D*, page 2).  Contrary to Plaintiffs' assertions, the "Notice" is provided in six different languages, including Spanish.  (*Id.*)

Moreover, assuming arguendo that the "Notice" was not served by the SCSO, Plaintiffs nevertheless fail to state a plausible procedural due process violation.  "Courts have routinely rejected claims for procedural due process where the alleged liberty interest was premised only on the government actor's compliance with its own procedures, and not also attendant upon a separately articulable substantive right.  *Norton v. Town of Islip,* 97 F. Supp. 3d 241, 247 (E.D.N.Y. 2015), *recon. den*., (E.D.N.Y. Jan. 21, 2016), *aff'd,* 678 F. App'x 17 (2d Cir. 2017) (relying on *Brown v. Graham,* 470 Fed.Appx. 11, 13 (2d Cir.2012)) (rejecting procedural due process claim premised on liberty interest in "state's compliance with its own prison grievance procedure").

Plaintiffs likewise fail to state a claim for a substantive due process violation.  To state a cognizable claim for a violation of a substantive due process right, a plaintiff must plausibly plead that the state action depriving him of custody was "so shocking, arbitrary, and egregious

that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Cox v. Warwick Valley Cent. Sch. Dist.,* 654 F.3d 267, 275 (2d Cir.2011). As the Second Circuit has stated,  "[s]ubstantive due process is an outer limit on the legitimacy of governmental action. It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action.  Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."  *Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir.1999).

The liberty interest of which Plaintiffs complain is their right to be free from an unreasonable detention.  Yet, as noted in greater detail in **Points II-IV**, Plaintiffs' detention was reasonable.  It was limited in scope (not more than 48 hours), performed by the SCSO at the specific direction and request of DHS pursuant to 8 U.S.C. § 1357(g), and was not performed in contravention of law.  Plus, the local government's interest in honoring detainers is strong.  Honoring detainers allows DHS to safely and prudently assume custody of those whom they have heretofore issued a warrant for arrest.  Honoring detainers discourages DHS agents standing outside the jail house door, attempting to arrest subjects at the same time the subject's family and friends standby.  Honoring detainers helps to prevent arrests at individuals' homes, or public places, where innocent people may be present.  And honoring detainers aid to discourage DHS from assuming custody of an individual prior to the completion of the underlying criminal matter, as New York State has a "public policy and interest in ensuring that defendants' criminal cases are completed." *Xirum*, *supra,* at 632.   For all the reasons stated above, Plaintiffs have failed to plausibly allege a violation of due process, under the state or federal constitution.

## <u>CONCLUSION</u>

For the foregoing reasons, the Complaint must be dismissed against the County of Suffolk in its entirety.

Dated: Hauppauge, New York
            November 9, 2017

<div style="margin-left:40%">

Yours, etc.,

Dennis M. Brown
Suffolk County Attorney
*Attorney for Defendants*
*County of Suffolk, et. al.*
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11788

    *s/Megan O'Donnell*

</div>

By:     Megan O'Donnell
            Assistant County Attorney