UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
− − − − − − − − − − − − − − − − − −— − − − − − − − − − − – X

JOAQUIN ORELLANA CASTANEDA and
GERMAN HERNANDEZ ARGUETA,
on behalf of themselves and all others similarly                    Docket No. CV-17-4267
situated                                                                           (Bianco, J.)
                                        Plaintiffs-Petitioners,                (Lindsay, M.J.)


            v.


U.S. DEPARTMENT OF HOMELAND SECURITY,
*et al.*,

                                        Defendants-Respondents.

− − − − − − − − − − − − − − − − −— − − − − − − − − − − X



## MEMORANDUM OF LAW IN SUPPORT OF
## FEDERAL DEFENDANTS' MOTION TO DISMISS
## PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)




CHAD A. READLER
*Acting Assistant Attorney General*

WILLIAM C. PEACHEY                               BRIDGET M. ROHDE
*Director*, Office of Immigration Litigation         *Acting United States Attorney*
District Court Section

EREZ REUVENI                                             JOSEPH A. MARUTOLLO
*Assistant Director*                                       *Assistant United States Attorney*
U.S. Department of Justice                           271 Cadman Plaza East
Civil Division,                                             Brooklyn, NY 11201
450 5th Street NW                                       Tel: 718-254-6288
Washington, D.C. 20530                              joseph.marutollo@usdoj.gov
Tel: 202-307-4293
erez.r.reuveni@usdoj.gov

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

BACKGROUND .....................................................................................................2

    A.    Federal law authorizes states and localities to aid federal immigration
        enforcement, including by cooperating with detainers .....................................2

    B.    Factual and procedural background ...............................................................5

        1.    Plaintiff Joaquin Orellana Castaneda .................................................5

        2.    Plaintiff German Hernandez Argueta ..................................................6

        3.    The Present Action ...............................................................................7

STANDARDS OF REVIEW .....................................................................................8

ARGUMENT ...........................................................................................................9

I.    Plaintiffs' claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) ...............9

    A.    Plaintiff Hernandez's habeas claim is moot ...................................................10

    B.    Plaintiffs lack Article III standing to seek prospective equitable relief..........10

    C.    Counts III-V of the Amended Complaint must be raised in removal
        proceedings ..................................................................................................11

    D.    Plaintiff Castaneda is collaterally estopped from raising Count III-V in this
        case ..............................................................................................................14

II.    Even if the Court had jurisdiction, Plaintiffs' claims would need to be dismissed
    under Fed. R. Civ. P. 12(b)(6) ..................................................................................15

    A.    Cooperation with detainers is consistent with Federal and New York law.....15

        1.    Federal law ........................................................................................15

        2.    State law ............................................................................................16

    B.    ICE's detainer policy, and Suffolk County's cooperation with that policy, is
        consistent with the Fourth Amendment (Count III) .......................................19

    C.    ICE's detainer policy is consistent with the INA (Count IV).........................23

**D.**     **Plaintiffs' lack any plausible basis to challenge ICE's detainer policy or the issuance of their detainers on Fifth Amendment Grounds (Count V)** ............24

**CONCLUSION** ....................................................................................................................25

**CERTIFICATE OF SERVICE** ........................................................................................26

# TABLE OF AUTHORITIES

## CASE LAW

*Abel v. United States*,
  362 U.S. 217 (1960) ....................................................................................... 19, 20, 23

*Abiuso v. Donahoe*,
  No. 12-CV-1713, 2015 WL 3487130 (E.D.N.Y. June 3, 2015) ........................................ 9

*Aguilar v. United States Immigration & Customs Enf't,*,
  510 F.3d 1 (1st Cir. 2007) ................................................................................. 12, 13

*Ali v. Mukasey*,
  529 F.3d 478 (2d Cir. 2008) ..................................................................................... 14

*Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*,
  436 F.3d 82 (2d Cir. 2006) ........................................................................................ 8

*Arizona v. United States*,
  567 U.S. 387 (2012) .......................................................................................... *passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................... 9

*Atwater v. City of Lago Vista*,
  532 U.S. 318 (2001) ................................................................................................ 17

*Baez v. Pinker*,
  673 Fed. Appx. 50 (2d Cir. 2016) ........................................................................... 24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................... 8

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
  402 U.S. 313 (1971) ................................................................................................ 14

*Bryant v. City of New York*,
  404 F.3d 128 (2d Cir. 2005) .................................................................................... 24

*Christopher v. Sussex Cnty.*,
  77 A.3d 951 (Del. 2013) .......................................................................................... 18

*City of El Cenizo, Texas v. Texas*,
  No. 17-50762, 2017 WL 4250186 (5th Cir. Sept. 25, 2017) .................................. 15, 21

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ............................................................................................. 10, 11

*City of New York v. United States,*
   179 F.3d 29 (2d Cir. 1999) ...........................................................................................16

*Clark v. Suarez Martinez,*
   543 U.S. 371 (2005) .......................................................................................................2

*Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma,*
   644 F. Supp. 2d 1177 (N.D. Cal. 2009) .........................................................................3

*Commonwealth v. Leet,*
   537 Pa. 89 (1994) ....................................................................................................17, 18

*Delgado v. Quarantillo,*
   643 F.3d 52 (2d Cir. 2011) ...........................................................................................12

*Demore v. Kim,*
   538 U.S. 510 (2003) .....................................................................................................35

*Dep't of Pub. Safety & Corr. Servs. v. Berg,*
   342 Md. 126 (1996) ................................................................................................17, 18

*Deutsch v. United States,*
   943 F. Supp. 276 (W.D.N.Y. 1996) .............................................................................10

*Doyle v. Midland Credit Management, Inc.,*
   722 F.3d 78 (2d Cir. 2013) .............................................................................................8

*Escobar v. Holder,*
   2010 U.S. Dist. LEXIS 31875 (D Minn. March 9, 2010) .......................................13, 24

*Galarza v. Szalczyk,*
   745 F.3d 634 (3d Cir. 2014) .........................................................................................16

*Gonzalez v. Hasty,*
   802 F.3d 212 (2d Cir. 2015) .........................................................................................25

*Harris v. Nassau County,*
   2016 WL 3023265 (E.D.N.Y. May 23, 2016) ...............................................................9

*Heath v. United States Parole Com.,*
   788 F.2d 85 (2d Cir. 1986) ...........................................................................................24

*Henriquez v. Ashcroft,*
   269 F. Supp. 2d 106 (E.D.N.Y. 2003) .........................................................................10
*J.E.F.M. v. Lynch,*
   837 F.3d 1026 (9th Cir. 2016) ...........................................................................12, 13, 14

*Janfeshan v. U.S. Customs & Border Prot.*,
 No. 16-6915, 2017 U.S. Dist. LEXIS 151058 (E.D.N.Y.  Aug. 21, 2017)..........................23

*Jama v. Dep't of Homeland Sec.*,
 760 F.3d 490 (6th Cir. 2014) ...........................................................................................13

*Lewis v. Casey*,
 518 U.S. 343 (1996) .........................................................................................................11

*Lia v. Saporito*,
 909 F. Supp. 2d 149 (E.D.N.Y. 2012) ...............................................................................9

*Lin v. U.S. Dep't of Homeland Sec.*,
 2017 WL 818416, (E.D.N.Y. Mar. 1, 2017) (Chen, J.), *aff'd*, 2017 WL 4685533 (2d Cir. Oct. 19, 2017) ...............................................................................................................................12

*Lin v. U.S. Dep't of Homeland Sec.*,
 2017 U.S. Dist. LEXIS 29065, (E.D.N.Y Mar 1, 2017)....................................................13

*Liu v. Phillips*,
 234 F.3d 55 (1st Cir. 2000)...............................................................................................22

*Lopez v. United States Immigration & Customs Enf't,*,
 758 F.2d 1390 (10th Cir. 1985) ........................................................................................19

*Lora v. Shanahan*,
 804 F.3d 601 (2d Cir. 2015) .............................................................................................24

*Luna v. Holder*,
 637 F.3d 85 (2d Cir. 2011) ...............................................................................................13

*Lunn v. Commonwealth*,
 477 Mass. 517 (2017) .......................................................................................................28

*Mahon v. Ticor Title Ins. Co.*,
 683 F.3d 59 (2d Cir.  2012) ..............................................................................................11

*Makarova v. United States*,
 201 F. 3d 110 (2d Cir. 2000) ..............................................................................................9

*Manigault v. Springs*,
 199 U.S. 473 (1905) .........................................................................................................16

*Marsh v. United States*,
 29 F.2d 172 (2d Cir. 1928) ...............................................................................................17

*Martinez v. Holder*,
 2014 WL 351906 (D.N.J. July 16, 2014) ..........................................................................13

*Martinez-Medina v. Holder*,
  673 F.3d 1029 (9th Cir. 2011) ............................................................................21

*Mayor of New York v. Miln*,
  36 U.S. 102 (1838) ..............................................................................................17

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) ..............................................................................16

*Mendez v. Feather*,
  2016 WL 1618098 (D. Or. March, 29, 2016) ......................................................13

*Mendoza v. United States Immigration & Customs Enf't*,
  849 F.3d 408 (8th Cir. 2017) ..............................................................................22

*Moreno v. Napolitano*,
  213 F. Supp. 3d 999 (N.D. Ill. 2016) ..................................................................23

*Nasious v. Two Unknown B.I.C.E. Agents*,
  657 F. Supp. 2d 1218 (D. Colo. 2009), aff'd, 366 F. App'x 894 (10th Cir. 2010) ............................24

*New Windsor Volunteer Ambulance Corp. v. Meyers*,
  442 F.3d 101 (2d Cir. 2006) ...............................................................................25

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ............................................................................................10

*Oyeniran v. Holder*,
  672 F.3d 800 (9th Cir. 2012) ..............................................................................14

*People v. Clark*,
  629 N.Y.S.2d 700 (N.Y. App. Div. 4th Dep't 1995) ..........................................18

*People v. Holloway*,
  691 N.Y.S.2d 583 (N.Y. App. Div. 3d Dep't 1999) ...........................................18

*People v. Xirum*,
  993 N.Y.S.2d 627 (N.Y. Sup. Ct. 2014) .......................................................18, 22

*Qiao v. Lynch*,
  672 Fed. Appx. 134 (2d Cir. 2017) ..........................................................11, 12, 13

*Rajah v. Mukasey*,
  544 F.3d 427 (2d Cir. 2008) ..........................................................................13, 25

*Rosario v. New York City*,
  No. 12-4795, 2013 U.S. Dist. LEXIS 69410 (S.D.N.Y. May 15, 2013) .............25

*Roy v. Cnty. of Los Angeles,*
  No. 13-4416, 2017 WL 2559616 (C.D. Cal. June 12, 2017) ....................20

*Santos v. Frederick Cnty. Bd. of Comm'rs,*
  725 F.3d 451 (4th Cir. 2013) ....................................................15

*Sherman v. U.S. Parole Comm'n,*
  502 F.3d 869 (9th Cir. 2007) ....................................................20

*Spencer v. Kemna,*
  523 U.S. 1 (2003) .................................................................11

*Spinella v. Esperdy,*
  188 F. Supp. 535 (S.D.N.Y. 1960) .............................................20

*State v. Stahl,*
  838 P.2d 1193 (Wy. 1992) ......................................................17

*Sturges v. Crowninshield,*
  17 U.S. (4 Wheat.) 122 (1819) ................................................17

*Themeus v. United States DOJ,*
  643 Fed. App'x 830 (11th Cir. 2016) .....................................10, 25

*Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc.,*
  757 F. Supp. 2d 218 (E.D.N.Y. 2010) ........................................14

*United States v. Bernacet,*
  724 F.3d 269 (2d Cir. 2013) ...................................................21

*United States v. Bowdach,*
  561 F.2d 1160 (5th Cir. 1977) .................................................17

*United States v. Colon,*
  250 F.3d 130 (2d Cir. 2002) ...................................................22

*United States v. Hensley,*
  469 U.S. 221 (1985) .............................................................22

*United States v. Janik,*
  723 F.2d 537 (7th Cir. 1983) .................................................17

*United States v. Lucas,*
  499 F.3d 769 (8th Cir. 2007) .................................................20

*United States v. McDonald,*
  606 F.2d 552 (5th Cir. 1979) .................................................22

*United States v. Ovando-Garzo,*
  752 F.3d 1161 (8th Cir. 2014)................................................................................15

*United States v. Phillips,*
  834 F.3d 1176 (11th Cir. 2016)..............................................................................19

*United States v. Polito,*
  583 F.2d 48 (2d Cir. 1978) ............................................................................... 18, 22

*United States v. Santana-Garcia,*
  264 F.3d 1188 (10th Cir. 2001)..............................................................................17

*United States v. Swarovski,*
  557 F.2d 40 (2d Cir. 1977) .....................................................................................18

*Van Stuyvesant v. Holder,*
  2014 U.S. Dist. LEXIS 39602 (S.D.N.Y. March 21, 2014) ...................................10

*Virginia v. Moore,*
  553 U.S. 164 (2008) ......................................................................................... 19, 21

## FEDERAL STATUTES

5 U.S.C. § 706(2)(A)-(D) .............................................................................................23

6 U.S.C. § 211 ................................................................................................................3

8 U.S.C. § 1103(a)(3) .....................................................................................................4

8 U.S.C. § 1226 ..............................................................................................................4

8 U.S.C. § 1226(a) ................................................................................................ 2, 3, 23

8 U.S.C. § 1226(c) ..........................................................................................................3

8 U.S.C. § 1226(c)(1) ......................................................................................................2

8 U.S.C. § 1231 ............................................................................................................23

8 U.S.C. § 1231(a) ...................................................................................................... 3, 4

8 U.S.C. § 1231(a)(1)(A) .................................................................................................2

8 U.S.C. § 1231(a)(2) ......................................................................................................2

8 U.S.C. § 1252 ............................................................................................................11

8 U.S.C. § 1252(a)(5) ................................................................................................11

8 U.S.C. § 1252(a)(2)(D) ..................................................................................... 12, 13

8 U.S.C. § 1252(b)(9) ......................................................................................11,12, 13

8 U.S.C. § 1357(a) ......................................................................................................23

8 U.S.C. § 1357(a)(1) ...................................................................................................2

8 U.S.C. § 1357(a)(2) ........................................................................................ 2, 8, 23

8 U.S.C. § 1357(d) ......................................................................................................23

8 U.S.C. § 1357(g) .........................................................................................................2

8 U.S.C. § 1357(g)(10) .......................................................................................3, 15, 19

28 U.S.C. § 2241 ........................................................................................................10

## FEDERAL REGULATIONS

8 C.F.R. § 236.1 ...........................................................................................................4

8 C.F.R. § 236.1(c)(8) ................................................................................................25

8 C.F.R. § 236.1(d)(1) ................................................................................................25

8 C.F.R. § 241.2 ...........................................................................................................4

8 C.F.R. § 287.3(d) ....................................................................................................25

8 C.F.R. § 287.5 ...........................................................................................................4

8 C.F.R. § 287.7(a) .......................................................................................................3

8 C.F.R. § 287.7(d) .......................................................................................................3

## STATE STATUES

N.Y. Crim. Proc. Law § 2.10 .....................................................................................18

N.Y. Crim. Proc. Law § 2.20 .....................................................................................18

# FEDERAL RULES FOR CIVIL PROCEDURE

Fed. R. Civ. P. 4.1(b) ........................................................................................................................19

# MISCELLANEOUS

ICE Form I-247A (Immigration Detainer – Notice of Action), (Last visited Nov 9, 2017),
    https://www.ice.gov/sites/default/files/documents/Document/2017/I-247A.pdf.......................4

ICE Policy No. 10074.2 ¶¶ 2.4, 2.5, (Last visited Nov 9, 2017)
    https://www.ice.gov/detainer-policy.................................................................................4

## INTRODUCTION

This Court should dismiss Plaintiffs' challenge to the federal government's lawful and important cooperation with Suffolk County in federal immigration enforcement efforts.

To the extent that they sue Federal Defendants, Plaintiffs claim that U.S. Immigration and Customs Enforcement's (ICE) issuance of immigration detainers—requests to local law enforcement to notify ICE of a removable alien's impending release and to temporarily hold such aliens so that ICE may take custody of the alien in a secure environment—violates the federal Constitution (the Fourth and Fifth Amendments) and exceeds ICE's authority under the Immigration and Nationality Act (INA). Purporting to represent a class of aliens previously subject to detainers and aliens currently detained as a result of detainers, Plaintiffs seek a declaration requiring their release from custody, a declaration that ICE detainers are unlawful, and prospective injunctive relief barring Suffolk County's cooperation with ICE detainers in the future.

Plaintiffs are entitled to none of that relief. Among other threshold jurisdictional barriers, Plaintiffs lack Article III standing to seek declaratory and injunctive relief on any of their claims because they cannot demonstrate any real and immediate possibility that they will again be subject to the same alleged conduct. And Plaintiffs must raise their federal claims—as one plaintiff already has—in their immigration proceedings, which provide the exclusive forum for those claims.

Plaintiffs' claims would also fail on the merits. ICE's use of detainers—and Suffolk County's cooperation with them—complies with the Fourth Amendment, the Fifth Amendment, and the INA. The INA authorizes—and the Constitution permits—the brief detentions requested by immigration detainers, because those detentions are supported by a federal probable-cause determination (reflected in a warrant) that the subject is removable from the United States.

For these reasons, the Court should dismiss all of the claims against the federal government.

1

## BACKGROUND

This case arises from Suffolk County's cooperation with federal immigration detainers issued

by ICE. Such cooperation is authorized by the INA and consistent with federal law.

**A. Federal law authorizes states and localities to aid federal immigration enforcement, including by cooperating with detainers**

The federal government has "broad, undoubted power over the subject of immigration and

the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). This includes authority to

interview, arrest, and detain removable aliens. *See* 8 U.S.C. § 1226(a) (Secretary of Homeland Security

may issue administrative arrest warrants and may arrest and detain aliens pending removal decision);

*id.* § 1226(c)(1) (Secretary "shall take into custody" aliens who have committed certain crimes when

"released"); *id.* § 1231(a)(1)(A), (2) (Secretary may detain and remove aliens ordered removed); *id.*

§ 1357(a)(1), (2) (authorizing certain warrantless interrogations and arrests).[1]

Although the federal government possesses broad power over immigration, enforcing the laws

concerning removable aliens is a formidable challenge. To meet that challenge, the federal government

works with state and local governments. These efforts are critical to enabling the federal government

to identify and remove the hundreds of thousands of criminal aliens who violate immigration laws

each year. Federal law contemplates and authorizes these cooperative efforts. Congress has authorized

the Department of Homeland Security (DHS) to enter into cooperative agreements with States and

localities. *See* 8 U.S.C. § 1357(g). Under these agreements, trained and qualified state and local officers

may, "subject to the direction and supervision of the [Secretary]," *id.* § 1357(g)(3), perform specified

immigration enforcement functions relating to investigating, apprehending, and detaining aliens. *Id.*

§ 1357(g)(1)-(9). Even without a formal agreement, States and localities may "communicate with the

[Secretary] regarding the immigration status of any individual" or "cooperate with the [Secretary] in

---

[1] Following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" are now read to mean the Secretary. *Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

the identification, apprehension, detention, or removal of aliens not lawfully present in the United States," *id.* § 1357(g)(10), when that cooperation is pursuant to a "request, approval, or other instruction from the Federal Government," *Arizona*, 567 U.S. at 410. Such cooperation may include: "provid[ing] operational support in executing a warrant"; "allow[ing] federal immigration officials to gain access to detainees held in state facilities"; "arrest[ing] an alien for being removable"; and "responding to requests for information about when an alien will be released from their custody." *Id.* The INA permits such cooperation whether it is directed by state statute (or local ordinance) or is implemented *ad hoc* by a local sheriff. *See id.* at 413.

States and localities frequently cooperate with federal immigration enforcement by responding to federal requests for assistance, often contained in detainers issued by ICE, a component of DHS responsible for immigration enforcement in the interior of the country.[2] A detainer notifies a State or locality that ICE intends to take custody of a removable alien who is detained in state or local criminal custody, and asks the State or locality to cooperate with ICE in that effort. A detainer asks a State or locality to cooperate in two main respects: (1) by notifying ICE of the alien's release date; and (2) by holding the alien for up to 48 hours, based on ICE's determination that it has probable cause that the alien is removable, until it can take custody. *See* 8 C.F.R. § 287.7(a), (d) (describing notification of release and request for temporary detention).[3]

DHS's detainer form, Form I-247A, sets forth the basis for DHS's determination that it has probable cause to believe that the subject is a removable alien. The form states that DHS's probable-cause finding is based on: (1) a final order of removal against the alien; (2) the pendency of removal proceedings against the alien; (3) biometric confirmation of the alien's identity and a records match in

---

[2] U.S. Customs and Border Protection (CBP), another DHS component, also issues detainers, not all of which require probable cause. 6 U.S.C. § 211. CBP's detainers are not the subject of this lawsuit, so this brief does not address them.
[3] This is authorized by 8 U.S.C. §§ 1103(a)(3), 1226(a) and (c), 1231(a), and 1357(d). *See Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma*, 644 F. Supp. 2d 1177, 1199 (N.D. Cal. 2009).

federal databases that indicate, by themselves or with other reliable information, that the alien either lacks lawful immigration status or, despite such status, is removable; or (4) the alien's voluntary statements to an immigration officer, or other reliable evidence that the alien either lacks lawful immigration status or, despite such status, is removable. Form I-247A at 1, https://www.ice.gov/sites/default/files/documents/Document/2017/I-247A.pdf.   The detainer form specifies that the State or locality should "[m]aintain custody of the alien for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from your custody." Form I-247A at 1 (emphasis in original). Moreover, the form states that the "alien must be served with a copy of this form for the detainer to take effect" and that the existence of the detainer "should not impact decisions about the alien's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters." *Id.* The form encourages local law enforcement and the subject of the detainer himself to contact ICE's Law Enforcement Support Center with "any questions or concerns" about a detainer request. *Id.*

As of April 2, 2017, detainers must be accompanied by a signed administrative warrant of arrest issued under 8 U.S.C. §§ 1226 or 1231(a). *See* ICE Policy No. 10074.2 ¶¶ 2.4, 2.5, https://www.ice.gov/detainer-policy. That arrest warrant—either a Form I-200, Warrant for Arrest of Alien (issued for aliens not yet subject to a removal order) or a Form I-205, Warrant of Removal/Deportation (issued for aliens subject to a final removal order)—is issued by an supervisory immigration officer and sets forth the basis for that officer's probable-cause determination. *See* 8 C.F.R. §§ 236.1, 241.2, 287.5 (describing officers who may issue such warrants and when); ICE Policy No. 10074.2 ¶ 5.2. ICE may issue a detainer to a law enforcement agency only when that agency has arrested the alien for a criminal offense in an exercise of its independent arrest authority. *Id.* ¶ 2.5. ICE policy also provides that a detainer may not be "based upon the initiation of an investigation" and "may not establish probable cause of alienage and removability, for purposes of detainer issuance,

solely based on evidence of foreign birth and the absence of records in available databases." *Id.* ¶ 2.6.

### B. Factual and procedural background

#### 1. *Plaintiff Joaquin Orellana Castaneda*

At about 4:15 a.m. on April 23, 2017, officers of the Suffolk County Police Department (SCPD) arrested Joaquin Orellana Castaneda in Islip, New York, for driving while intoxicated. *See* SCPD Arrest Report, annexed to the Declaration of Joseph Marutollo (Marutollo Decl.) as Ex. A.[4] The officers had observed Castaneda driving through a steady red light, driving on the sidewalk, and otherwise failing to stay in his lane. *Id.* Standardized field sobriety tests indicated intoxication. *Id.* Castaneda was detained in the custody of the Suffolk County Sherriff's Office (SCSO). *See* SCSO Bail and Fine Receipt, Ex. B; Order to Remand and Produce Defendant for Court Appearance, Ex. C. The next day, April 24, ICE officers interviewed Castaneda. *See* Am. Compl. (ECF 12) ¶ 19. Based on Castaneda's voluntary statements and other reliable evidence, ICE had probable cause to believe that he lacked lawful immigration status and was subject to removal as an individual present in the U.S. without having been inspected and admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i); Immigration Detainer-Notice of Action, Ex. D. At around 12:15 p.m.[5] that day, ICE provided SCSO with a detainer, signed by an ICE deportation officer. *See* Ex. D. At the same time, ICE provided SCSO with an administrative warrant for Castaneda's arrest, signed by an ICE supervisory officer. *See* Warrant for Arrest of Alien, Ex. E. ICE also issued a Notice to Appear (NTA). *See* Castaneda NTA, Ex. F.

At 4:12 p.m. that day, Castaneda posted bond with SCSO, but was not released. *See* Ex. B; *see also* ECF Compl. (ECF 1-12). SCSO notified ICE that, at this time, Castaneda remained in detention "only" due to ICE's detainer and arrest warrant, and requested that ICE make arrangements for a "pick-up no later than 48 hours of this notification." Suffolk County Notice of Custody, Ex. G. Less

---

[4] All cited exhibits are attached to the Marutollo Declaration unless otherwise stated.
[5] *Cf.* Ex. B (listing the time-stamp on the detainer as 12:22 p.m.) and Compl. Ex. 2, ECF 1-13 (same, 12:14 p.m.).

than 48 hours later, at 5:03 a.m. on April 26, Castaneda was released to ICE. *See* Castaneda Suffolk County Discharge Notification, Ex. H. That day, Castaneda received the NTA and a notice stating basis for ICE's custody determination. *See* Ex. F; Notice of ICE Custody Determination, Ex. I.

On August 25, an immigration judge (IJ) denied Castaneda's request for release on bond, finding that Castaneda posed a danger to society because of DWI charges. *See* IJ Denial, Ex. J. Castaneda moved to terminate his proceedings, or, alternatively, to suppress evidence obtained by ICE based on the detainer, alleging that ICE's actions violated his Fourth and Fifth Amendment rights and exceeded their statutory authority under the INA. *See* Brief, Ex. K. On October 17, an IJ denied the motions and ordered him removed to Guatemala. *See* IJ Order, Ex. L. Castaneda may appeal that decision to the Board of Immigration Appeals, and ultimately, the Second Circuit.

### 2.  *Plaintiff German Hernandez Argueta*

On July 2, 2017, SCPD arrested German Hernandez Argueta, also known as "Jose Amilcar Romero," for false personation and for "creat[ing] a hazardous or physically offensive condition by some act which served no legitimate purpose." Suffolk County District Court Transcript, Aug. 18, 2017, Ex M; Hernandez NTA, Ex. N; Hernandez Arrest Report, Ex. O.[6] Hernandez was detained in SCSO's custody pursuant to his arrest. *See* Hernandez Order to Remand and Produce Defendant for Court Appearance, Ex. P. While in custody, ICE officers interviewed Hernandez. *See* Am. Compl. ¶ 27. Based on Hernandez's voluntary statements and other reliable evidence, ICE had probable cause to believe that Hernandez lacked lawful U.S. immigration status and was subject to removal under 8 U.S.C. § 1182(a)(6)(A)(i). *See* Ex. N. On July 7, ICE issued Hernandez an NTA. *See* Ex. L. That same day, ICE provided SCSO with a detainer, signed by a deportation officer (*see* Detainer, Ex. O), and an

---

[6] Hernandez was previously arrested by SCPD for false personation after identifying himself as "Jose Salmenton" in connection with SCPD's investigation of Hernandez for an outstanding bench warrant. *See* June 1, 2017 Arrest Report, Ex. U. On June 2, 2017, Hernandez was released on his own recognizance by Suffolk County criminal court. *See* June 2, 2017 Order, Ex. V. Hernandez was then arrested on July 2, 2017. *See* Ex. O.

administrative warrant for Hernandez's arrest, signed by a supervisory deportation officer (*see* Warrant for Arrest of Alien, Ex. R).

On August 18, Hernandez pleaded guilty to disorderly conduct in Suffolk County criminal court and was sentenced to time-served. *See* Ex. M. That day Hernandez was transferred from SCSO custody to ICE custody, pending the outcome of his removal proceedings. *See* Hernandez Suffolk County Discharge Notification, Ex. S. During the course of his removal proceedings, an IJ granted Hernandez released from ICE custody on bond of $6,000. *See* October 24, 2017 Order, Ex. T. To date, he has not posted bond.

### 3. *The Present Action*

Castaneda filed suit on July 18, 2017, against Suffolk County and the federal government (DHS, ICE, and several ICE officials in their official capacity). Castaneda alleged that ICE's detainer policy violated his Fourth and Fifth Amendment rights and exceeded ICE's statutory authority. Compl. ¶¶ 41-63. On August 18, Castaneda filed an amended complaint that added Hernandez as a plaintiff and added a habeas claim.

As to the federal government, Plaintiffs now make four claims. *First*, Hernandez, on behalf of himself and others similarly situated, alleges that he is being held in custody in violation "of the Constitution," and is entitled to release in habeas. Am. Compl. ¶¶ 75; *see id.* ¶¶ 75-79 (Count III). *Second*, Castaneda and Hernandez allege, on behalf of themselves and others similarly situated, that their detention in response to an ICE detainer and administrative warrant "violat[es] the Fourth Amendment prohibition against unreasonable searches and seizures," *id.* ¶ 81, because they were temporarily detained "without a warrant" and were not "brought before a neutral magistrate for a probable cause hearing within 48 hours of arrest." *Id.* ¶ 84; *see id.* ¶¶ 81-85 (Count III). *Third*, on behalf of themselves and those similarly situated, Plaintiffs allege that ICE exceeds its statutory authority in issuing detainers because ICE did not "obtain judicial warrants prior to detaining Plaintiffs" or

"demonstrate any particularized reason to believe that Plaintiffs were likely to flee before such a warrant could be obtained," in violation of "8 U.S.C. § 1357(a)(2," which governs when a warrantless arrest by ICE may occur. *Id.* ¶ 89; *see id.* ¶¶ 87-90 (Count IV). *Fourth*, Plaintiffs, on behalf of themselves and those similarly situated, allege that "ICE's issuance of detainers [] without requiring that subjects of a detainer receive effective notice of the detainer" or providing "a proper mechanism by which subjects of a detainer may challenge the issuance of a detainer against them . . . deprived them of their liberty without due process of law." *Id.* ¶¶ 94-95; *see id.* ¶¶ 93-96 (Count V). As to Suffolk County, Plaintiffs also allege similar Fourth Amendment and due process claims, *id.* ¶¶ 65-85, and violations of Art. 1 of the New York Constitution, which includes New York's analogue to the Fourth Amendment. *Id.* ¶¶ 60-64 (Counts I-III). Plaintiffs appear to seek a declaratory judgment stating that Defendants' actions and practices violate the Fourth and Fifth Amendments and the INA; injunctive relief barring Defendants from committing those alleged violations again; and money damages. *Id.*, Prayer for Relief. Plaintiffs have since waived their money damages claims as to federal defendants. *See* Letter to Court (ECF 17) at 1.

## STANDARDS OF REVIEW

Dismissal "under Rule 12(b)(1) is proper when the district court lacks the statutory or constitutional power to adjudicate" the case. *Doyle v. Midland Credit Management, Inc.*, 722 F.3d 78, 80 (2d Cir. 2013). Plaintiffs bear the burden of showing, by a preponderance of the evidence, that the Court has subject-matter jurisdiction over their claims. *See Makarova v. United States*, 201 F. 3d 110, 113 (2d Cir. 2000). The Court may refer to evidence outside the pleadings without converting the motion to one for summary judgment. *See, e.g., Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.8 (2d Cir. 2006).

Dismissal under Rule 12(b)(6) is proper if the complaint lacks sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the

Court accepts well-pleaded factual allegations as true, "mere conclusory statements" and "'legal conclusion[s] couched as . . . factual allegation[s]'" are "disentitle[d] . . . to th[is] presumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009). In adjudicating a Rule 12(b)(6) motion, the Court may consider: "facts alleged in the complaint and documents attached to it or incorporated in it by reference[;] documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference[;] documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint[;] [or] facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Abiuso v. Donahoe*, No. 12-CV-1713, 2015 WL 3487130, *3 (E.D.N.Y. June 3, 2015) (Bianco, J.). "Agency determinations and administrative findings are public records of which a court may properly take judicial notice," *Lia v. Saporito*, 909 F. Supp. 2d 149, 161 (E.D.N.Y. 2012), as are "arraignments, arrest reports, criminal complaints and indictments, and certificates of disposition," *Harris v. Nassau County*, 2016 WL 3023265, *3 (E.D.N.Y. May 23, 2016). Defendants rely on such documents incorporated into the amended complaint by reference or subject to judicial notice in this motion.

## ARGUMENT

Plaintiffs allege that ICE's use of detainers violates the Fourth Amendment (Count III), caused Hernandez's unlawful detention (Count III), violates the Fifth Amendment (Count V), and exceeds ICE's statutory authority (Count IV). Each claim fails at the threshold—both because Plaintiffs lack Article III standing to seek prospective relief and because this Court otherwise lacks jurisdiction over each claim. And Plaintiffs would lose on the merits. Cooperation with ICE detainers is consistent with the Fourth and Fifth Amendments, and the INA authorizes ICE's use of detainers.

**I.      Plaintiffs' claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1)**

To start, this Court should dismiss the claims as to the Federal Defendants. Hernandez's habeas claim is moot, Plaintiffs lack Article III standing to seek prospective or declaratory relief on

their other claims, and Castaneda is collaterally estopped from pursuing his claims.

### A.   Plaintiff Hernandez's habeas claim is moot

Hernandez alleges in Count III that he and others similarly situated "are held, or have been held," subject to "immigration detainers," and seeks his release through a writ for habeas corpus, pursuant to 28 U.S.C. § 2241. Am. Compl. ¶¶ 75-79. This claim fails because Hernandez ceased being in Suffolk County custody on August 18, 2017.  Ex. S. HE has been in ICE custody since that date, has not posted bond, although will be released if he does. An alien's release from custody premised on an immigration detainer moots any habeas challenge to that detainer. *See, e.g.*, *Themeus v. United States DOJ*, 643 Fed. App'x 830, 832 (11th Cir. 2016); *Van Stuyvesant v. Holder*, 2014 U.S. Dist. LEXIS 39602, *6 (S.D.N.Y. March 21, 2014).[7] The Court should therefore dismiss this aspect of Count III.

### B.   Plaintiffs lack Article III standing to seek prospective equitable relief

Separate from Hernandez's mootness problem, both Castaneda and Hernandez lack Article III standing to raise claims for prospective equitable relief—both injunctive and declaratory—on behalf of themselves or anyone else. Even if a party has standing to obtain damages to redress *past* injury, an individual asserting constitutional violations must demonstrate that he is "likely to suffer future injury from" the challenged conduct in order to justify prospective equitable relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). That showing requires demonstrating a "likelihood of substantial and immediate irreparable injury," *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974), *i.e.*, a demonstration that the plaintiff faces "a real and *immediate* threat that he again" will suffer the same alleged harm. *Lyons*, 461 U.S. at 105. Plaintiffs fail to allege any likelihood that they *will again* be subject to an ICE detainer acted upon by Suffolk County. And such a showing in any event would require showing they are likely to be arrested *yet again* for new *criminal* conduct, which cannot support standing

---

[7] Hernandez may not seek to establish custody based on the detainer request for purposes of habeas jurisdiction as to ICE *before* ICE in fact took custody of him. *See, e.g.*, *Henriquez v. Ashcroft*, 269 F. Supp. 2d 106, 109 (E.D.N.Y. 2003); *Deutsch v. United States*, 943 F. Supp. 276, 279 (W.D.N.Y. 1996) (citing 10 cases in this Circuit).

because Plaintiffs "themselves are able--and indeed required by law--to prevent such a possibility from occurring." *Spencer v. Kemna*, 523 U.S. 1, 15 (2003). They accordingly cannot "show[] that the police [are] likely to do this to [them] again"—as they must to seek prospective injunctive or declaratory relief. *Lyons*, 461 U.S. at 107. And Plaintiffs may not rely on alleged injury to unnamed putative class members. They "must allege and show that they *personally* have been injured, not that injury has been suffered by other, unidentified" individuals. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) (same). They cannot do that, so they lack standing.

### C. Counts III-V of the Amended Complaint must be raised in removal proceedings

Apart from the habeas claim, Counts III, IV, and V allege, respectively, that the detainers issued to Plaintiffs violated the Fourth Amendment, violated the Fifth Amendment, and exceeded ICE's statutory authority. Am. Compl. ¶¶ 74-97. The INA provides that Plaintiffs must raise such claims in their pending removal proceedings—before the immigration court, before the Board of Immigration Appeals, and (if need be) before the Second Circuit. *See* 8 U.S.C. §§ 1252(a)(5), (b)(9), (d). The INA does not permit them to raise these claims in district court.

The INA, in 8 U.S.C. § 1252, strictly circumscribes federal district court jurisdiction over the decisions and actions related to removal proceedings. *See, e.g., Qiao v. Lynch*, 672 Fed. Appx. 134, 134-35 (2d Cir. 2017). In particular, "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States [] shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). Separately, 8 U.S.C. § 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of" such an order. "[T]hese provisions limit judicial review to determinations whose substance is 'inextricably linked' to final orders of removal, and then only by courts of appeals," and preclude district court review of issues "inextricably

linked to the removal proceedings, as well as any removal order that may ultimately result from [] those proceedings." *Qiao*, 672 Fed. Appx. at 135; *see J.E.F.M. v. Lynch*, 837 F.3d 1026, 1029-30 (9th Cir. 2016) (provisions "mean that any issue—whether legal or factual—arising from any removal-related activity can be reviewed only through the [administrative-review] process"); *Aguilar v. ICE*, 510 F.3d 1, 9 (1st Cir. 2007) (similar).

Section 1252(b)(9) "aims to consolidate 'all questions of law and fact' that 'arise from' either an 'action' or a 'proceeding' brought in connection with the removal of an alien." *Aguilar*, 510 F.3d at 9. Even if a legal or factual issue does not arise from the initiation of a removal proceeding in a technical sense—for example, because the issue precedes initiation of removal proceedings—where resolution of that issue necessarily affects the ultimate resolution of an alien's removability from the United States, that issue is inextricably intertwined with removal proceedings and must be raised in the first instance in those proceedings. *See Delgado v. Quarantillo*, 643 F.3d 52, 54 (2d Cir. 2011) (no jurisdiction over claims where relief requested effectively "render[s] the [removal] order" that may ultimately issue "invalid"); *accord Lin v. U.S. Dep't of Homeland Sec.*, 2017 WL 818416, *4 (E.D.N.Y. Mar. 1, 2017) (Chen, J.), *aff'd*, 2017 WL 4685533 (2d Cir. Oct. 19, 2017)  ("Following *Delgado*, courts routinely dismiss cases where the requested relief would lead, or be a prerequisite, to invalidation of a removal order"). And notably, the INA makes clear that notwithstanding any other provision of law, courts of appeal reviewing immigration proceedings may always address "constitutional claims or questions of law" arising from those proceedings. *See* 8 U.S.C. § 1252(a)(2)(D).

These provisions make clear that Counts III-V must be brought in the administrative review process. Addressing Counts III-V necessarily "require consideration of the merits of [Plaintiffs'] eligibility for removal." *Qiao*, 672 Fed. App'x at 135. This is because Plaintiffs may raise identical claims in their removal proceedings. Aliens may move to terminate their removal proceedings or suppress evidence in those proceedings based on alleged violations of the Fourth and Fifth Amendments, and

statutory or regulatory violations. *See Rajah v. Mukasey*, 544 F.3d 427, 441, 446-47 (2d Cir. 2008). Indeed, Castaneda did just that on August 14, 2017, by filing a motion to terminate his removal proceedings based on identical allegations of unlawful conduct flowing from issuance of his detainer by ICE. *See* Ex. K. The immigration court denied the motion in full, necessarily reasoning that Castaneda failed to demonstrate that his removal proceedings were initiated in violation of the Fourth or Fifth Amendments or in violation of ICE's regulatory authority. Ex. L. Thereafter, the Court issued a final order of removal, which necessarily depends on Castaneda's failure to succeed on his motion to terminate. Ex. L. Were this Court to adjudicate the same claims and reach a different conclusion than the IJ, it would necessarily issue a decision impacting the ultimate "merits of [Plaintiffs'] eligibility for removal. *Qiao*, 672 Fed. App'x. at 135; *Lin*, 2017 U.S. Dist. LEXIS 29065, *12-13.

Accordingly, given that these same claims bear upon, and are inextricably intertwined with, any ultimate resolution of Plaintiffs' removability, those claims must be raised in the immigration court in the first instance, and, following exhaustion of administrative remedies, may be raised in the court of appeals.[8] And given that 8 U.S.C. § 1252(a)(2)(D) provides for review of *any* legal question in those proceedings, those proceedings provide an adequate forum for review of Plaintiffs' claims, even if review occurs *after* exhaustion of administrative remedies.[9] *See Luna v. Holder*, 637 F.3d 85, 91 (2d Cir.

---

[8] *See, e.g., Mendez v. Feather*, 2016 WL 1618098, *2 (D. Or. March, 29, 2016) (detainer challenge "inextricably intertwined with his pending removal proceedings" and there is no "final order of removal"); *Martinez v. Holder*, 2014 WL 351906, *2 (D.N.J. July 16, 2014) (no jurisdiction if "immigration detainer exists but has not been the product of administrative hearings, let alone a final order"); *Escobar v. Holder*, 2010 U.S. Dist. LEXIS 31875, *8-9 (D. Minn. March 9, 2010) (challenge to "detainer . . . not ripe because ICE has not yet attempted to remove him"); *Arias v. ICE*, 2008 U.S. Dist. LEXIS 34072, *18-20 (D. Minn. 2008) (finding claims similar to Plaintiffs' here subject to section 1252(b)(9)).

[9] To the extent that Plaintiffs suggest that the possibility that they may not secure identical *remedies* in removal proceedings means section 1252(b)(9) should not apply, that claim is without merit. The absence of a desired form of relief "cannot overcome a clear statutory prescription against district court review." *J.E.F.M.*, 837 F.3d at 1038. Congress may regulate the jurisdiction of the lower federal courts, and the Supreme Court has not found "constitutional difficulties in congressional abrogation of certain remedies as long as others are left intact." *Aguilar*, 510 F.3d at 17 (collecting cases). Likewise, Plaintiffs may not circumvent "congressionally mandated exhaustion requirements by demanding remedies that the administrative procedures cannot grant." *Id.* So long as *some* remedy is available in removal proceedings, that remedy is sufficient for purposes of section 1252(b)(9). If "[f]urther administrative relief is available in the removal proceeding," it does not matter whether there are "legal and practical differences between" the relief available in judicial versus administrative forums. *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 494 (6th Cir. 2014).

13

2011); *J.E.F.M.*, 837 F.3d at 1029-30 (fact that alien could raise claims in removal proceedings meant they could not argue that the claim channeling provisions "foreclose[d] all meaningful judicial review" and district court lacked jurisdiction over such claims).

### D. Plaintiff Castaneda is collaterally estopped from raising Counts III-V in this case

Castaneda is collaterally estopped from bringing his claims against the Federal Defendants because those claims were already litigated and decided in immigration court. *See Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012) (doctrine applies to "administrative agency's determination of certain issues of law or fact"). Collateral estoppel forecloses re-litigation of an issue that was "actually litigated and decided by a court of competent jurisdiction in a prior action . . . between the same parties or their privies." *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008). It "applies when: (1) the issues in both proceedings are identical; (2) the issue in the prior proceeding was actually litigated and actually decided; (3) there was a full and fair opportunity for litigation in the prior proceeding; and (4) the issues previously litigated were necessary to support a valid and final judgment on the merits." *Id.*

Castaneda raised in his administrative proceedings the same constitutional and statutory challenges to the legality of his immigration detainer by moving to terminate his removal proceedings, or, alternatively, to suppress evidence obtained due to the detainer. The IJ rejected these challenges on the merits. Collateral estoppel thus precludes Castaneda's claims because the identical issues—the Fourth and Fifth Amendment and statutory challenges to his detainer—were actually litigated and decided by the immigration court. Castaneda—who was represented by counsel in litigating these issues in immigration court—thus had a full and fair opportunity to litigate the issues he now raises in this case. *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333 (1971). Further, the IJ's decision on Castaneda's claims was necessarily determined antecedent to the IJ's decision that Castaneda was subject to a removal from the United States. *See Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc.*, 757 F. Supp. 2d 218, 226 (E.D.N.Y. 2010) (Bianco, J.).

II.  **Even if the Court had jurisdiction, Plaintiffs' claims would need to be dismissed under Fed. R. Civ. P. 12(b)(6)**

Plaintiff's claims against the Federal Defendants also lack merit. ICE's policy of issuing detainers to removable criminal aliens based on probable cause to believe such aliens are removable from the United States—and Suffolk County's cooperation with that policy—is fully consistent the Fourth Amendment and the INA. And Plaintiffs' Fifth Amendment claim is meritless on its face.

A.  **Cooperation with detainers is consistent with Federal and New York law**

1.  *Federal law*

At the outset, it is undisputed that federal law permits—and does not preempt—state and local cooperation with ICE detainers. The INA provides that state and local officers may "cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(10). Such cooperation is consistent with the INA so long as it is undertaken pursuant to a "request, approval, or other instruction from the Federal Government." *Arizona*, 567 U.S. at 410. Detainers meet that test because they are "request[s] . . . from the Federal Government" to a State or locality to assist its efforts to detain a particular alien, so complying with those requests is necessarily permissible cooperation at the federal government's "request, approval, or other instruction." *Id.* Courts have thus recognized that federal law permits States and localities to cooperate with federal notification and detention requests. *See, e.g., Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 467 (4th Cir. 2013) (detention by state officer lawful when "at ICE's express direction"); *United States v. Ovando-Garzo*, 752 F.3d 1161, 1164 (8th Cir. 2014) (cooperation without "written agreement" is lawful if "not unilateral"). Federal law thus does not preempt Suffolk County's cooperation with detainers supported by a federal warrant. *See City of El Cenizo, Texas v. Texas*, No. 17-50762, 2017 WL 4250186, *1-2 (5th Cir. Sept. 25, 2017) (staying injunction of such a state-wide policy because State "likely to succeed on the merits" of claim that

mandated cooperation is consistent with federal law and Fourth Amendment).[10]

Plaintiffs suggest that such cooperation might violate the Tenth Amendment, based on their view that detainers "require state and local law enforcement officials to hold individuals in custody." Am. Compl. ¶¶ 9, 82. That suggestion is wrong. It is well-settled that detainers are *requests*, and do not compel States and localities to take any action. *See, e.g.*, *Galarza v. Szalczyk*, 745 F.3d 634, 643 (3d Cir. 2014). But whatever limits there may be on federal compulsion of localities, there is no such compulsion as detainers seek voluntary cooperation, not compulsion. And even if the federal government cannot compel cooperation by a locality, the county has authority to require county-wide cooperation with detainers—just as it may impose innumerable other county-wide measures. And Suffolk County may do so without raising preemption concerns. In short, even where the federal government may lack authority to mandate state or local action, States and localities may still use the "powers . . . reserved to the[m]," U.S. Const. amend. X, to accomplish the same end. *See City of New York v. United States*, 179 F.3d 29, 36 (2d Cir. 1999).

    *2.   State law*

Plaintiffs' claim that Suffolk County lacks "any basis in state law" to cooperate with ICE, Am. Compl. ¶ 82, is both irrelevant to the Fourth Amendment claim they have pleaded, Part II.B *infra*, and wrong in any event. States retain inherent authority to cooperate with ICE detainers, and Plaintiffs cannot show that New York has affirmatively relinquished that authority.

Like any other State, New York wields broad "police powers," which are "an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people." *Manigault v. Springs*, 199 U.S. 473, 480 (1905). States did not give up their common law police powers by joining the Union. *See Arizona*, 567 U.S. at 400. The States' status as separate

---

[10] Cases deeming unlawful certain state and local immigration arrests have—unlike here—involved *unilateral* state or local action without an express federal request or direction. *See, e.g.*, *Melendres v. Arpaio*, 695 F.3d 990, 1001 (9th Cir. 2012).

sovereigns means that they possess all residual powers not abridged or superseded by the United States Constitution. *Mayor of New York v. Miln*, 36 U.S. 102, 139 (1838). This residual authority pre-exists any statutory invocation or clarification of that authority by a State's legislature. *See Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 193 (1819) (Marshall, C.J.). And while many state legislatures have, from the earliest days of the Republic, defined and regulated the circumstances under which their officers can effectuate arrests, *see Atwater v. City of Lago Vista*, 532 U.S. 318, 336-38 (2001), such developments have generally been construed to supplement—not supplant—each State's residual, common law authority. *See, e.g.*, *Dep't of Pub. Safety & Corr. Servs. v. Berg*, 342 Md. 126, 137-39 (1996); *Commonwealth v. Leet*, 537 Pa. 89, 96 (1994); *State v. Stahl*, 838 P.2d 1193, 1196 (Wy. 1992). Absent evidence that it "was the clear and manifest purpose of Congress" to abridge those powers, courts "assume that the historic police powers of the States are not superseded." *Arizona*, 567 U.S. at 400.

Thus, it is generally understood that there is no requirement that "before a state law enforcement officer may arrest a suspect for violating federal immigration law, state law must affirmatively authorize the officer to do so," and that such authority is implicitly retained, so long as there is "no state or local law to the contrary." *United States v. Santana-Garcia*, 264 F.3d 1188, 1193-94 (10th Cir. 2001). Rather, the overwhelming consensus is that at common law, a State's inherent police powers are not diminished absent explicit legislative action cabining a state or local peace officer's arrest authority. *See id.*; *United States v. Bowdach*, 561 F.2d 1160, 1167-68 (5th Cir. 1977) (state officers may make arrests based on federal statutes or arrest warrants notwithstanding absence of state statute explicitly and specifically so permitting); *United States v. Janik*, 723 F.2d 537, 548 (7th Cir. 1983) (recognizing state law enforcement officers' implicit authority to arrest suspects for federal offenses, notwithstanding fact that "no Illinois statute explicitly authorized an Illinois officer to arrest"); *cf. Marsh v. United States*, 29 F.2d 172, 174 (2d Cir. 1928) (Hand, J.) (the fact that state statute governing arrest authority does not explicitly authorize a specific arrest does not mean that arrest is not

17

authorized, because it is inappropriate to infer in such circumstances an intent to restrict pre-existing authority to arrest for other offenses); *see also Leet*, 537 Pa. at 96 (holding common law authority not abrogated absent explicit statutory provision to that effect); *Christopher v. Sussex Cnty.*, 77 A.3d 951, 959 (Del. 2013) (similar); *Berg*, 342 Md. at 137-39 (similar).[11]

Applying these principles, the Second Circuit has explained that "New York police officers are authorized to arrest for state and federal offenses [and] to execute federal arrest warrants." *United States v. Polito*, 583 F.2d 48, 51-52 (2d Cir. 1978) (no "warrantless arrest" where "federal warrant" issued and arresting officer is "informed that [seized individual] is its subject"). Indeed, rather than abrogate or limit New York's common law police powers, including authority to effect arrests in cooperation with the federal government, New York law reinforces that authority by providing that all "peace officers," including municipal police and employees of county jails, N.Y. Crim. Proc. Law § 2.10; *People v. Holloway*, 691 N.Y.S.2d 583, (N.Y. App. Div. 3d Dep't 1999), *app. denied*, 93 N.Y.2d 972, (N.Y. 1999), may effect the common law "power to make warrantless arrests." N.Y. Crim. Proc. Law § 2.20. They may also rely on the fact that another law enforcement agency, including *federal* authorities, possesses a warrant that the arresting officer does not. *See United States v. Swarovski*, 557 F.2d 40, 46 (2d Cir. 1977); *People v. Clark*, 629 N.Y.S.2d 700, (N.Y. App. Div. 4th Dep't 1995), *app. denied*, 86 N.Y.2d 792 (N.Y. 1995); *People v. Xirum*, 993 N.Y.S.2d 627, 632 (N.Y. Sup. Ct. 2014).

Although Congress could abrogate a State's authority to exercise its police powers, *see Arizona*, 567 U.S. at 400, it has not done so. To the contrary, the INA provides that federal law does not otherwise preempt any state or local power to "to communicate with the Attorney General regarding the immigration status of any individual" or "otherwise to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States,"

---

[11] One State's judiciary has ruled to the contrary, holding that States may not act on their common law police powers absent *affirmative* legislation activating those powers. *See Lunn v. Commonwealth*, 477 Mass. 517, 528-33 (2017). *Lunn* represents the minority view, rests on Massachusetts law, and conflicts with the authorities cited above.

8 U.S.C. § 1357(g)(10), at least where that cooperation follows, as it does here, "a request, approval, or other instruction from the Federal Government." *Arizona*, 567 U.S. at 410.

In light of these authorities, there is no basis for ruling that the absence of a specific, affirmative New York statute authorizing cooperation with federal requests for assistance contained in immigration detainers and administrative warrants means that Suffolk County lacks such authority.

## B. ICE's detainer policy, and Suffolk County's cooperation with that policy, is consistent with the Fourth Amendment (Count III)

Plaintiffs contend that Suffolk County's cooperation with ICE detainers violates the Fourth Amendment. This claim is meritless because: (1) federal officials can (as no party disputes) constitutionally arrest aliens under a federal administrative warrant; (2) the lawfulness of that practice for Fourth Amendment purposes does not change when local officials make such an arrest; and (3) there is no constitutional problem when local officials rely on federal officials' probable-cause determinations.

*First*, although Plaintiffs allege that seizures pursuant to detainers and administrative warrants "constitute[] the equivalent of a new arrest" without a "warrant[] issued upon probable cause," Am. Compl. ¶¶ 83-84, there is no dispute that the Fourth Amendment permits *federal* officers to make civil arrests of aliens based only on probable cause of removability contained in a detainer or administrative warrant. To start, the "Fourth Amendment does not require warrants to be based on probable cause of a crime, as opposed to a civil offense." *United States v. Phillips*, 834 F.3d 1176, 1181 (11th Cir. 2016) (collecting examples, including bench warrants for civil contempt and writs of replevin); *see* Fed. R. Civ. P. 4.1(b) (allowing "order[s] committing a person for civil contempt"). Given that "whether a search or seizure is unreasonable" "begin[s] with history," including "statutes and common law of the founding era," *Virginia v. Moore*, 553 U.S. 164, 168 (2008), that understanding is especially settled in the immigration context. There is "overwhelming historical legislative recognition of the propriety of administrative arrest[s] for deportable aliens." *Abel v. United States*, 362 U.S. 217, 233 (1960); *see Lopez*

*v. INS*, 758 F.2d 1390, 1393 (10th Cir. 1985) (alien "may be arrested by administrative warrant issued without order of a magistrate").

Plaintiffs suggest that Fourth Amendment problems arise when an officer effects an arrest based on probable cause of a civil—as opposed to a criminal—violation. *See* Am. Compl. ¶¶ 82-85. The authorities discussed above rebut that suggestion. Plaintiffs also allege that detainers and administrative warrants "violate the Fourth Amendment's requirement that an individual arrested without a warrant be brought before a neutral magistrate for a probable cause hearing within 48 hours of arrest." *Id.* ¶ 84. They are mistaken. Given the civil context of federal immigration detainers, an executive immigration officer can constitutionally make the necessary probable-cause determination. "[L]egislation giving authority to the Attorney General or his delegate to arrest aliens pending deportation proceedings under an administrative warrant, not a judicial warrant within the scope of the Fourth Amendment," has existed "from almost the beginning of the Nation." *Abel*, 362 U.S. at 234. So "it is not unconstitutional under the Fourth Amendment for the Legislature to delegate a probable cause determination to an executive officer, such as an ICE agent, rather than to an immigration, magistrate, or federal district court judge." *Roy v. Cnty. of Los Angeles*, No. 13-4416, 2017 WL 2559616, *10 (C.D. Cal. June 12, 2017); *see Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 876-80 (9th Cir. 2007) (in immigration context, warrants may be issued "outside the scope of the Fourth Amendment's Warrant Clause"); *United States v. Lucas*, 499 F.3d 769, 777 (8th Cir. 2007) (same); *Spinella v. Esperdy*, 188 F. Supp. 535, 540-41 (S.D.N.Y. 1960) (same).

*Second*, because the Fourth Amendment allows federal immigration officers to arrest and detain based on an administrative warrant attesting to probable cause of removability, state and local officials can do the same when they act at the request or direction of the federal government. The Fourth Amendment does not apply differently when a local official rather than a federal official is arresting or detaining. "The Fourth Amendment's meaning [does] not change with local law enforcement

20

practices." *Virginia*, 553 U.S. at 172. To hold otherwise would cause Fourth Amendment "protections [to] vary if federal officers were not subject to the same statutory constraints as state officers." *Id.* at 176. Thus, if a seizure is legal under the Fourth Amendment when a federal officer effectuates it, then so too when a state or local officer does so, even where state law does not authorize the arrest, because "state restrictions do not alter the Fourth Amendment's protections." *United States v. Bernacet*, 724 F.3d 269, 276-77 (2d Cir. 2013).

Accordingly, Plaintiffs' err in asserting that detainers somehow "require state and local law enforcement officials to hold individuals in custody, without any basis in state law." Am. Compl. ¶ 82. Although New York law does *not* forbid cooperation with detainers, *supra* Part II.ii, even if it did, a police officer's "violation of [state] law [in arresting alien based on a violation of federal immigration law] does not constitute a violation of the Fourth Amendment." *Martinez-Medina v. Holder*, 673 F.3d 1029, 1037 (9th Cir. 2011). And the legality of an arrest made by a state officer is especially certain where, as here, a local officer is not just arresting for a federal offense, but is doing so at and after the express request of the federal government supported by a federal administrative warrant. *See* Exs. E, R. Such arrests are lawful so long as the local officer does not act unilaterally. *See supra* at pp. 15-16 (citing Fourth, Fifth, and Eighth Circuit cases affirming that point). Indeed, the Fifth Circuit recently affirmed this proposition, staying an injunction of a state law that, among other things, required cooperation with federal requests for detention and notification of an alien's release date, because "defendants are likely to succeed on the merits" of their claim that such cooperation does not violate the Fourth Amendment. *El Cenizo*, 2017 WL 4250186, *1-2. When local officers cooperate with ICE detainers, they do not act unilaterally—they act at ICE's request.

*Third*, arrests or detentions based on probable cause may lawfully be made where the probable-cause determination is made by one official (here, a federal ICE officer) and relied on by another official who serves under a different sovereign (here, a local official). Put differently, local officers may

rely on ICE's findings of probable cause, as articulated in a detainer and administrative warrant, to

detain the subject of a detainer when the federal government so requests. Where one officer obtains

an arrest warrant based on probable cause, other officers can make the arrest even if they are "unaware

of the specific facts that established probable cause." *United States v. Hensley*, 469 U.S. 221, 231 (1985).

An officer may thus arrest someone, even when the officer does not know the facts establishing

probable cause, if the "officer reasonably believed that appellant was the subject of a federal arrest

warrant." *McDonald*, 606 F.2d at 553. That the warrant was issued pursuant to federal authority in no

way precludes another sovereign, like a State or locality, from relying on the probable cause

determination made in that warrant. *See, e.g.*, *id.*; *Polito*, 583 F.2d at 51-52.

This rule of collective law-enforcement knowledge applies when "the communication [is]

between federal and state or local authorities," 3 Wayne R. LaFave, SEARCH AND SEIZURE § 3.5(b)

(2016) (collecting cases), including when a state or local officer arrests someone based upon probable

cause from information received from an immigration officer. *See, e.g.*, *Mendoza v. U.S. ICE*, 849 F.3d

408, 419 (8th Cir. 2017) ("County employees . . . reasonably relied on [ICE agent's] probable cause

determination for the detainer"); *Liu v. Phillips*, 234 F.3d 55, 57-58 (1st Cir. 2000) (similar); *People v.*

*Xirum*, 993 N.Y.S.2d at 631 (similar). Therefore, Plaintiffs are wrong to suggest that the Fourth

Amendment permits local law enforcement to effect a seizure in cooperation with federal immigration

officials only when local officers are presented with a warrant issued by a "neutral magistrate." Am.

Compl. ¶ 82. Indeed, an arresting officer "who acts in reliance on [another officer] is not required to

have personal knowledge of the evidence creating a reasonable suspicion." *Henlsey*, 469 U.S. at 231.

All that is required is that "sufficient information to justify the arrest or search was known by other

law enforcement officials initiating or involved with the investigation." *United States v. Colon*, 250 F.3d

130, 134 (2d Cir. 2002). If it were otherwise, then the collective-knowledge doctrine would not exist—

arresting officers could not rely on what other officers tell them, but would instead have to gather all

facts themselves before making an arrest. That is not the law. *See id.*

For these reasons, the Fourth Amendment allows ICE to issue detainers and local officials to detain aliens for up to 48 hours in response to those detainers. ICE's detainer policy—and Suffolk County's cooperation it—is thus valid, and Count III should be dismissed in its entirety.

### C.   ICE's detainer policy is consistent with the INA (Count IV)

Plaintiffs allege that ICE has "fail[ed] . . . to restrict its issuance of detainers to its authority under the INA" by failing to issue detainers consistent with 8 U.S.C. §§ 1226(a), 1357(a)(2), and 1357(d). Am. Compl. ¶ 89. As Plaintiffs allege, "ICE's failure . . . to obtain judicial warrants prior to detaining Plaintiffs, and failure to demonstrate any particularized reason to believe that Plaintiffs were likely to flee before such a warrant could be obtained, violates 8 U.S.C. § 1357(a)(2)." *Id.* ¶ 89. Relying on this allegation, Plaintiffs allege that ICE has violated the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A)-(D). *Id.*, ¶ 89. This claim is substantively duplicative of Count III, and thus cannot serve as the basis for a plausible APA claim. *See, e.g., Janfeshan v. U.S. Customs & Border Prot.*, No. 16-6915, 2017 U.S. Dist. LEXIS 151058, *35-37 (E.D.N.Y.  Aug. 21, 2017).

And the claim is meritless. As explained, ICE has explicit authority to issue, as it did here, warrants of arrest for individuals who are removable from the United States or subject to final orders of removal, and need not procure such a warrant from a judicial authority. *See* 8 U.S.C. §§ 1226(a), 1231; *Abel*, 362 U.S. at 234. Plaintiffs rely on 8 U.S.C. § 1357(a)(2) to suggest that such arrests, even when effected by *federal* officers, may occur only when a federal officer has reason to believe the person is likely to escape before a warrant can be obtained. Am. Compl. ¶ 89. That statute governs only *warrantless* arrests, 8 U.S.C. § 1357(a), and has no application where, as here, ICE issues "a warrant" with the detainer. *See Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1009 (N.D. Ill. 2016) [12] (no finding of

---

[12] The *Moreno* court ultimately endorsed ICE's reliance on administrative warrants issued "in accordance with the applicable statute and regulations" as a basis for detention, Order, ECF No. 239, *Moreno v. Napolitano*, No. 11-5452 (N.D. Ill. Nov. 28. 2016), and rejected a request to limit the holding to judge-issued criminal warrants. *See id.*, ECF No. 254.

flight risk required for issuance of warrant). Because ICE's policy *requires* that warrants accompany

detainers, any claim that ICE violates the INA by failing to issue warrants with detainers is meritless.

**D. Plaintiffs' lack any plausible basis to challenge ICE's detainer policy or the issuance of their detainers on Fifth Amendment Grounds (Count V)**

Plaintiffs claim, finally, that "ICE's issuance of detainers . . . without requiring that subjects of

a detainer receive effective notice of the detainer" or a "proper mechanism by which subjects of a

detainer may challenge the issuance of a detainer against them" violates the Fifth Amendment by

"caus[ing] significant deprivation of liberty of Plaintiffs." Am. Compl. ¶¶ 94-96. That claims fails too.

First, where a party raises both Fourth and Fifth Amendment challenges to the same nexus of

events, the Fifth Amendment claim collapses into the Fourth Amendment claim and cannot serve as

a separate, freestanding claim. *See, e.g.*, *Bryant v. City of New York*, 404 F.3d 128, 135 (2d Cir. 2005).

Second, even assuming a freestanding Fifth Amendment claim were pleaded here, a

prerequisite to any such claim, whether procedural or substantive, is an assertion of a cognizable liberty

interest. *See, e.g.*, *Baez v. Pinker*, 673 Fed. Appx. 50, 52 (2d Cir. 2016). But the mere existence of a

"detainer could not, as a matter of law, constitute a restraint on or deprivation of a liberty interest

upon which a due process violation could be premised." *See Nasious v. Two Unknown B.I.C.E. Agents*,

657 F. Supp. 2d 1218, 1223 (D. Colo. 2009), *aff'd*, 366 F. App'x 894 (10th Cir. 2010). Indeed, the

lodging of any detainer will generally have no "immediate effect upon protected liberty interests,"

because the subject of a detainer is "not entitled to a hearing prior to the execution of the warrant or

to compelled execution of the warrant" on which the detainer relies. *See Heath v. United States Parole*

*Com.*, 788 F.2d 85, 91 (2d Cir. 1986); *see Escobar*, 2010 U.S. Dist. LEXIS 31875, *8-9 ("no support for

the proposition that" alien "is entitled to a hearing before immigration officials send [] a detainer").

This is especially true in the immigration context. Removable aliens lack any due process right

to be free from detention pending resolution of their removal proceedings until such detention

becomes *prolonged*. *See Lora v. Shanahan*, 804 F.3d 601, 614-15 (2d Cir. 2015). Until it does, detention

24

remains "a constitutionally valid aspect of the deportation process," and impinges on no cognizable liberty interest. *Demore v. Kim*, 538 U.S. 510, 523 (2003). That is true whether the custodian of that detention is the federal government or a state or locality. *See, e.g.*, *Rosario v. New York City*, No. 12-4795, 2013 U.S. Dist. LEXIS 69410, *18-19 (S.D.N.Y. May 15, 2013); *Themeus*, 643 Fed. Appx. at 832-33. To be sure, just as Plaintiffs have done in this case, aliens may challenge their ongoing detention in their removal proceedings and seek release on bond. *See, e.g.*, 8 C.F.R. § 236.1(c)(8); 8 C.F.R. § 236.1(d)(1); 8 C.F.R. § 287.3(d). They may also, as Castaneda has done, seek to terminate their removal proceedings based on a pre-removal proceeding "deprivation of fundamental rights," including Fourth and Fifth Amendment rights. *Rajah*, 544 F.3d at 446. But these remedies available in removal proceedings do not create a freestanding due process right to avoid immigration detention. *See Demore*, 538 U.S. at 523. And absent such a cognizable liberty interest, there can be no procedural due process violation in the first place. *See Gonzalez v. Hasty*, 802 F.3d 212, 224 (2d Cir. 2015).

Finally, even assuming *both* a freestanding due process claim *and* that Plaintiffs' detention impacts a *cognizable* liberty interest, the fact remains that Plaintiffs have been accorded procedural due process as a matter of law. Procedural due process requires only "notice and some opportunity to be heard prior to the [alleged] deprivation." *New Windsor Volunteer Ambulance Corp. v. Meyers*, 442 F.3d 101, 115 (2d Cir. 2006). Plaintiffs assert they did not receive notice, but that is contradicted by their concession that they received ICE detainer forms. Am. Compl. ¶¶ 41-45. Those forms provide the "alien must be served with a copy of this form for the detainer to take effect," encourages local law enforcement and the alien to contact ICE's Law Enforcement Support Center with "*any* questions or concerns" about a detainer request, and clearly provides a means for contacting ICE to correct any errors. Form I-247A at 1-2. No more is required, and so their claim fails.

## CONCLUSION

The Court should dismiss Plaintiffs' complaint as to the Federal Defendants in its entirety.

Dated: November 9, 2017                              Respectfully submitted,

CHAD A. READLER
*Acting Assistant Attorney General*

| | |
|---|---|
| WILLIAM C. PEACHEY<br>*Director*, Office of Immigration Litigation<br>District Court Section | BRIDGET M. ROHDE<br>*Acting United States Attorney* |
| By:   /s/Erez Reuveni            <br>EREZ REUVENI<br>*Assistant Director*<br>U.S. Department of Justice<br>Civil Division,<br>450 5th Street NW<br>Washington, D.C. 20530<br>Tel: 202-307-4293<br>erez.r.reuveni@usdoj.gov | By:   /s/Joseph A. Marutollo      <br>JOSEPH A. MARUTOLLO<br>*Assistant United States Attorney*<br>271 Cadman Plaza East<br>Brooklyn, NY 11201<br>Tel: 718-254-6288<br>joseph.marutollo@usdoj.gov |

**CERTIFICATE OF SERVICE**

I certify that on November 9, 2017, I electronically filed the foregoing document with the

Clerk of Court by using the CM/ECF system, which will provide electronic notice and an electronic

link to this document to the attorneys of record for all parties.

<div style="margin-left: 50%;">

/s/ Erez Reuveni
EREZ REUVENI
Assistant Director
U.S. Department of Justice

</div>