# EXHIBIT A



SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION -- SECOND DEPARTMENT

The People of the State of New York ex rel.          Docket No. 2017-12806
Jordan Wells on Behalf of Susai Francis,

       Petitioner.

   -against-

VINCENT F. DEMARCO, Sheriff of Suffolk County,

      Respondent.

---

## MEMORANDUM OF LAW ON BEHALF OF THE
## NEW YORK STATE ATTORNEY GENERAL

ERIC T. SCHNEIDERMAN
*Attorney General*
*State of New York*
120 Broadway, 25th Floor
New York, NY 10271
(212) 416-8019

Dated: January 31, 2018

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...........................................................iii

PRELIMINARY STATEMENT ......................................................1

QUESTIONS PRESENTED .........................................................4

STATEMENT OF THE CASE ......................................................4

    A.   Federal Statutory and Regulatory Background..............4

        1.   Detention requests issued by United States Immigration and Customs Enforcement (ICE)........4

        2.   Written agreements under § 287(g) of the Immigration and Nationality Act (INA) ..................8

    B.   Authority Under New York Law to Arrest for Violations of Federal Law ...............................................10

    C.   Factual Background and Procedural History ...............12

ARGUMENT ...........................................................................15

POINT I

    HOLDING A PERSON AT THE REQUEST OF FEDERAL AUTHORITIES IS AN ARREST UNDER NEW YORK LAW AND A SEIZURE UNDER THE STATE AND FEDERAL CONSTITUTIONS ........15

POINT II

    NEW YORK LAW FORBIDS ARRESTS BASED SOLELY ON AN ICE DETAINER AND ACCOMPANYING ADMINISTRATIVE WARRANT .........20

    A.   State and Local Officers Lack a Statutory or Common-Law Basis to Arrest People Based Solely on Administrative Immigration Warrants....................20

i

## TABLE OF CONTENTS (cont'd)

Page

    B.   The New York Constitution Likely Prohibits State and Local Officers from Arresting People for Civil Immigration Violations.................................................29

POINT III

FEDERAL LAW LIKEWISE PROHIBITS STATE AND LOCAL LAW-ENFORCEMENT OFFICERS FROM ARRESTING A PERSON BASED SOLELY ON AN IMMIGRATION DETAINER AND ACCOMPANYING WARRANT ....................................................................................32

    A.   The INA Authorizes State and Local Officials to Help Enforce Federal Immigration Law Only to the Extent Consistent with State and Local Law.........32

    B.   State and Local Officers Violate Federal Constitutional Protections When Making Arrests Based Solely on ICE Detainers and Accompanying Warrants. ......................................................................37

POINT IV

STATE AND LOCAL OFFICIALS MAY, IN CERTAIN CIRCUMSTANCES, DETAIN THE SUBJECT OF AN ICE DETAINER IF THEY HAVE REASON TO BELIEVE THAT PERSON HAS COMMITTED A FEDERAL CRIME ...........................................42

    A.   If the Subject of a Detainer Is Also the Subject of a Federal Criminal Arrest Warrant, Police Officers May Arrest Him in New York........................................42

    B.   If a New York Police Officer or Peace Officer Has Reason to Believe That the Subject of a Detainer Has Committed a Crime, That Person May Be Arrested Without a Criminal Warrant.........................43

CONCLUSION ..........................................................................45

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Abel v. United States,*
   362 U.S. 217 (1960)......................................................................26

*Arizona v. United States,*
   567 U.S. 387 (2012)............................................................... passim

*Atwater v. City of Lago Vista,*
   532 U.S. 318 (2011).....................................................................43

*Clark v. Martinez,*
   543 U.S. 371 (2005).......................................................................5

*Conergics Corp. v. Dearborn Mid-W. Conveyor Co.,*
   144 A.D.3d 516 (1st Dep't 2016)................................................24

*Galarza v. Szalczyk,*
   745 F.3d 634 (3d Cir. 2014) ..............................................39, 40

*Hartnett v. New York City Transit Auth.,*
   200 A.D.2d 27 (2d Dep't 1994)..................................................24

*Kerman v. City of New York,*
   261 F.3d 229 (2d Cir. 2001) ......................................................31

*Liranzo v. United States,*
   690 F.3d 78 (2d Cir. 2012) ........................................................34

*Lunn v. Commonwealth,*
   477 Mass. 517 (2017)..............................................28, 35, 36, 39

*Marsh v. United States,*
   29 F.2d 172 (2d Cir. 1928) ........................................................23

*Maryland v. Pringle,*
   540 U.S. 366 (2003)..............................................................41, 43

# TABLE OF AUTHORITIES (cont'd)

**Cases**  **Page(s)**

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012) .................................................. 38, 39

*Mendoza v. United States Immigration & Customs Enforcement,*
    849 F.3d 408 (8th Cir. 2017) ................................................ 40, 41

*Morales v. Chadbourne,*
    793 F.3d 208 (1st Cir. 2015) ...................................................... 16

*Payton v. New York,*
    445 U.S. 573 (1980) ....................................................................... 15

*People v. Baily,*
    216 A.D.2d 1 (1st Dep't 1995) ................................................... 19

*People v. Bora,*
    83 N.Y.2d 531 (1994) ................................................................... 15

*People v. Bratton,*
    8 N.Y.3d 637 (2007) ..................................................................... 22

*People v. Current,*
    147 A.D.3d 1235 (3d Dep't 2017) .............................................. 20

*People v. Fisher,*
    76 A.D.3d 1122 (3d Dep't 2010) ................................................ 20

*People v. Floyd,*
    56 Misc. 2d 373 (Sup. Ct. Queens County 1968) ........... 10, 11, 42

*People v. Hamilton,*
    183 A.D. 55 (1st Dep't 1918) ..................................................... 28

*People v. Hernandez,*
    40 A.D.3d 777 (2d Dep't 2007) .................................................. 31

## TABLE OF AUTHORITIES (cont'd)

**Cases**                                                          **Page(s)**

*People v. Hicks,*
    68 N.Y.2d 234 (1986) ................................................... 15

*People v. Hunter,*
    270 A.D.2d 712 (3d Dep't 2000) .................................... 19

*People v. Jackson,*
    286 A.D.2d 688 (2d Dep't 2001) .................................. 18

*People v. Johnson,*
    66 N.Y.2d 398 (1985) ................................................... 30

*People v. LaFontaine,*
    235 A.D.2d 93 (1st Dep't 1997) .................................. 27

*People v. LaFontaine,*
    92 N.Y.2d 470 (1998) ................................... 10, 20, 42

*People v. Lane,*
    102 A.D.2d 829 (2d Dep't 1984) ................................. 19

*People v. LePera,*
    197 A.D.2d 43 (4th Dep't 1994) ................................. 30

*People v. Maldonado,*
    86 N.Y.2d 631 (1995) ................................................. 12

*People v. Montanez,*
    78 A.D.3d 1198 (2d Dep't 2010) ................................ 18

*People v. Ocasio,*
    241 A.D.2d 933 (4th Dep't 1997) ............................... 19

*People v. Phillips,*
    284 N.Y. 235 (1940) .................................................... 28

## TABLE OF AUTHORITIES (cont'd)

**Cases**                                                                     **Page(s)**

*People v. Robinson,*
282 A.D.2d 75 (1st Dep't 2001) ................................ 19

*People v. Robinson,*
97 N.Y.2d 341 (2001) .......................................... 29

*People v. Rosario,*
78 N.Y.2d 583 (1991) ....................................... 43, 44

*People v. Scott,*
79 N.Y.2d 474 (1992) .................................... 29, 30, 31

*People v. Stultz,*
2 N.Y.3d 277 (2004) ........................................... 29

*People v. Williams,*
4 N.Y.3d 535 (2005) ........................................... 22

*People v. Xirum,*
45 Misc. 3d 785 (Sup. Ct. Kings County 2014) .......... 25, 26

*Philips v. Leary,*
114 A.D. 871 (2d Dep't 1906) ................................ 28

*Santos v. Frederick County Bd. of Commrs.,*
725 F.3d 451 (4th Cir. 2013) .......................... 38, 39, 40

*Shadwick v. City of Tampa,*
407 U.S. 345 (1972) ........................................... 27

*United States v. Bowdach,*
561 F.2d 1160 (5th Cir. 1977) ................................ 24

*United States v. Flores-Montano,*
541 U.S. 149 (2004) ........................................... 30

# TABLE OF AUTHORITIES (cont'd)

**Cases**                                                    **Page(s)**

*United States v. Haskin,*
    228 F.3d 151 (2d Cir. 2000) ........................................................ 11

*United States v. Janik,*
    723 F.2d 537 (7th Cir. 1983) ...................................................... 24

*United States v. Ovando-Garzo,*
    752 F.3d 1161 (8th Cir. 2014) .................................................... 36

*United States v. Polito,*
    583 F.2d 48 (2d Cir. 1978) ................................................. 24, 25

*United States v. Swarovski,*
    557 F.2d 40 (2d Cir. 1977) ........................................................ 11

*United States v. United States Dist. Ct. for the E.*
    *Dist. of Mich., S. Div.,*
    407 U.S. 297 (1972) ................................................................... 27

*United States v. Watson,*
    423 U.S. 411 (1976) ................................................................... 28

**Laws**

*State*

C.P.L.
    § 1.20 ..................................................................... 11, 20, 42
    § 2.10 ............................................................................. 11
    § 120.60 ................................................................... 10, 42
    § 140.10 ................................................................... 11, 43
    § 140.25 ................................................................... 11, 43

Penal Law
    § 10.00 ..................................................................... 11, 12
    § 205.00 ........................................................................ 17
    § 205.05 ........................................................................ 17

## TABLE OF AUTHORITIES (cont'd)

**Laws**                                                 **Page(s)**

*Federal*

8 U.S.C.
    § 1103 ....................................................................... 34, 36
    § 1226 ............................................................................... 5
    § 1227 ............................................................................... 4
    § 1231 ............................................................................... 5
    § 1252c ....................................................................... 34, 41
    § 1326 ............................................................................. 41
    § 1357 ...................................................................... passim

8 C.F.R.
    § 241.2 .................................................................... 5, 6, 32
    § 287.5 ................................................................ 5, 6, 32, 34
    § 287.7 ............................................................................. 6

Fed. R. Crim. P. 4 .......................................................... 10

Fed. R. Crim. P. 9 .......................................................... 10

**Miscellaneous Authorities**

Charles E. Hughes, *Arrest and Imprisonment on Civil
    Process, in Report of the Twenty-Eighth Annual Meeting
    of the New York State Bar Association* (1905) .......................... 27

142 Cong. Rec. H2476 (daily ed. Mar. 20, 1996) ...................... 33

DHS, *Guidance on State and Local Governments' Assistance in
    Immigration Enforcement and Related Matters*,
    https://www.dhs.gov/sites/default/files/publications/guidance-
    state-local-assistance-immigration-enforcement.pdf
    (last visited Jan. 30, 2018) ............................................. 36

DHS, *History of ICE*, https://www.ice.gov/history
    (last updated Jan. 3, 2018) ............................................... 6

## TABLE OF AUTHORITIES (cont'd)

**Miscellaneous Authorities**                         **Page(s)**

DHS, Off. of Inspector Gen., *The Performance of 287(g) Agreements* (2010), *available at* https://www.oig.dhs.gov/assets/Mgmt/_-63_Mar10.pdf ........ 9, 34

ICE, Policy No. 10074.2, *Issuance of Immigration Detainers by ICE Immigration Officers* (Mar. 24, 2017), *available at* https://www.ice.gov/sites/default/files/documents/Document/2017/10074-2.pdf (last visited Jan. 30, 2018) ................ 7, 8

Mem. of the Commn. on the Revision of the Penal Law & Crim. Code in Supp. & Explanation of the Proposed Crim. Procedure Law, dated Mar. 1970, *reprinted in* Bill Jacket for ch. 996 (1970), at 8 ........................ 23

Sample DHS Form I-247A (Mar. 2017), *available at* https://www.ice.gov/sites/default/files/documents/Document/2017/I-247A.pdf (last visited Jan. 30, 2018) ............ 7, 8, 16

Sample ICE Form I-200 Warrant of Arrest, https://www.ice.gov/sites/default/files/documents/Document/2017/I-200_SAMPLE.PDF (last visited Jan. 30, 2018) ............... 8

Sample ICE Form I-205 Warrant of Removal/Deportation, https://www.ice.gov/sites/default/files/documents/Document/2017/I-205_SAMPLE.PDF (last visited Jan. 30, 2018) ........................................................ 8

## PRELIMINARY STATEMENT

At the invitation of the Court, the Office of the New York State Attorney General files this memorandum of law to address a legal issue being disputed by the parties: whether New York and federal law permits state and local officials to detain a person based solely on a federal notice stating that the person has committed a civil immigration violation, and a request to detain that person.[1] For the reasons set forth below, such a detention is an invalid arrest under state law and likely also an unconstitutional seizure under the New York and Federal Constitutions.[2]

---

[1] This is a suit for habeas corpus relief brought by petitioner Susai Francis, who claims that the Suffolk County Sheriff's Office held him past the point when he had finished serving his prison sentence on a state-law criminal charge in order to facilitate his transfer to the custody of federal immigration officials. After hearing argument, the Court allowed the parties to submit supplemental briefs and invited the Attorney General of New York and the United States Department of Justice to respond to the parties' submissions.

[2] This brief does not address the circumstance where a person is transferred to federal custody at or before the time he or she would have been free to leave state or local custody—for example, through the relocation of the person to a cell leased by the federal government (see *infra* at 13).

A state or local official effects an arrest when the official keeps a person in custody pursuant to new authority beyond the period of detention supported by the original grounds for custody. Such an arrest is invalid if its sole basis is a request from federal immigration authorities to hold the person because the person is present in this country illegally—conduct that, standing alone, is a civil and not a criminal violation. No New York statute or case law purports to permit such an arrest, and indeed, the New York Constitution likely forbids it.

Moreover, even if New York law did not prohibit such arrests, federal law would still forbid them. The federal Immigration and Nationality Act (INA) allows state and local officials to perform the functions of federal immigration officials only in limited circumstances, such as when acting at the direction of the Secretary of Homeland Security in accordance with agreements under § 287(g) of the INA (codified at 8 U.S.C. § 1357(g)), which provides that state and local officials may not execute civil immigration warrants unless they have received special training. But the federal request here—made through a federal Immigration and Customs Enforcement (ICE)

2

Notice of Action form (commonly known as an "ICE detainer" or a "civil immigration detainer")—does not require that the officers responding to it have had such training or that they act at the Secretary's direction. Further, any attempt to seize a person outside the limited circumstances authorized by federal law likely violates the Fourth Amendment to the Federal Constitution.

Not all arrests in response to federal civil immigration detainers are invalid or unconstitutional, however, because other facts may be present that provide authority for the arrest. Settled law permits state and local officers to arrest on a federal criminal arrest warrant (issued by a judicial officer), and permits warrantless arrests on probable cause to believe that the arrestee has committed a crime. And it permits a law-enforcement officer to act on probable cause imputed from another law-enforcement officer. Accordingly, a state or local law-enforcement officer may arrest the subject of a civil immigration detainer if the official learns that the subject has an outstanding federal criminal arrest warrant, or has probable cause to believe that the subject has committed a crime, including a criminal immigration offense.

## QUESTIONS PRESENTED

1.   Is detention of a person at the request of federal authorities an arrest for purposes of New York law and a seizure under the State and Federal Constitutions?

2.   Do state and local law-enforcement officers lack authority to arrest a person based solely on a request from federal officials and a federal notice that the person has committed a civil immigration violation?

3.   May state and local law-enforcement officers arrest the subject of a federal detainer if they have probable cause to believe that the person has violated federal criminal laws?

## STATEMENT OF THE CASE

### A.  Federal Statutory and Regulatory Background

#### 1.  Detention requests issued by United States Immigration and Customs Enforcement (ICE)

a. The INA identifies certain categories of people as subject to removal. *See* 8 U.S.C. § 1227. "Removal is a civil, not criminal, matter" and, "[a]s a general rule, it is not a crime for a removable

4

alien to remain present in the United States." *Arizona v. United States*, 567 U.S. 387, 396, 407 (2012).

Under the INA, the Secretary of Homeland Security may issue an administrative warrant for the arrest of an apparently removable person "pending a decision on whether" that person "is to be removed from the United States."[3] 8 U.S.C. § 1226(a). The Secretary may also issue administrative arrest warrants for people who have already been adjudicated removable from the United States. *See id.* § 1231(a)(2); 8 C.F.R. § 241.2(a)(1). The Secretary has delegated both types of issuance authority to various federal immigration officials. 8 C.F.R. §§ 241.2(a)(1), 287.5(e)(2). And the Secretary has further provided that various types of "immigration officers who have successfully completed basic immigration law enforcement training" can "execute warrants of arrest for

---

[3] References in the INA to the Attorney General now refer to the Secretary of Homeland Security, and references to the Immigration and Naturalization Service (INS) now correspond to the Department of Homeland Security. *See Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

5

administrative immigration violations," *id.* § 287.5(e)(3), and warrants of removal, *id.* § 241.2(b).

The INA contains separate provisions governing arrests for criminal acts. *See, e.g.,* 8 U.S.C. § 1357(a)(4)–(5).

b. When ICE—an agency within the Department of Homeland Security (DHS)[4]—learns that a removable person is in the custody of another law-enforcement agency, ICE may issue a "detainer," which "advise[s] another law enforcement agency that the Department seeks custody of an alien presently in custody of that agency, for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a). A detainer asks that the other agency inform ICE "prior to the release of the alien," *id.,* and maintain custody of that person for up to forty-eight hours past when the person would be otherwise detained by that agency "in order to permit assumption of custody by the Department," *id.* § 287.7(d).

---

[4] *See* DHS, *History of ICE*, https://www.ice.gov/history (last updated Jan. 3, 2018).

6

ICE notifies law-enforcement agencies of detainers by sending them a form titled "Immigration Detainer—Notice of Action." *See* Sample DHS Form I-247A (Mar. 2017) ("Sample Detainer").[5] The current Notice of Action that ICE uses, Form I-247A, has been in effect since April of last year. *See* ICE, Policy No. 10074.2, *Issuance of Immigration Detainers by ICE Immigration Officers* § 2.1 (Mar. 24, 2017) ("*Immigration Detainers*").[6]

As relevant here, the Notice of Action states that "DHS has determined that probable cause exists that the subject" of the detainer "is a removable alien," and sets forth four potential bases for that determination, none of which suggests that the person has committed a crime. *See* Sample Detainer at 1. The Notice of Action also "request[s]" that the receiving agency notify DHS "as early as practicable" before releasing the person from custody, and that the receiving agency "[m]aintain custody" of the person "for a period not to exceed 48 hours beyond the time when he/she would otherwise

---

[5] *Available at* https://www.ice.gov/sites/default/files/documents/Document/2017/I-247A.pdf (last visited Jan. 30, 2018).

[6] *Available at* https://www.ice.gov/sites/default/files/documents/Document/2017/10074-2.pdf (last visited Jan. 30, 2018).

7

have been released from [the agency's] custody to allow DHS to assume custody." *Id.* (emphasis omitted). As a matter of ICE policy, "all detainers issued by ICE must be accompanied by" either a warrant for the arrest of a person whom an immigration officer believes to be removable or a warrant for removal of a person who has already been designated removable. *Immigration Detainers* § 2.4. Both warrants are issued by an ICE immigration officer, rather than a judge. *Id.* Neither warrant states on its face that the person has committed a crime.[7]

### 2.  Written agreements under § 287(g) of the Immigration and Nationality Act (INA)

Section 287(g) of the INA allows States and their political subdivisions to enter into written agreements that permit any state and local law-enforcement officer "who is determined by the [Secretary] to be qualified to perform the function of an

---

[7] *See* Sample ICE Form I-200 Warrant of Arrest, https://www.ice.gov/sites/default/files/documents/Document/2017/I-200_SAMPLE.PDF (last visited Jan. 30, 2018); Sample ICE Form I-205 Warrant of Removal/Deportation, https://www.ice.gov/sites/default/files/documents/Document/2017/I-205_SAMPLE.PDF (last visited Jan. 30, 2018).

immigration officer in relation to the investigation, apprehension or detention of aliens in the United States" to "carry out such function at the expense of the State or political subdivision and to the extent consistent with State and local law." 8 U.S.C. § 1357(g)(1).

State and local officers performing functions under a 287(g) agreement are "subject to the direction and supervision of" the Secretary. *Id.* § 1357(g)(3). They must also "have received adequate training to carry out the duties of an immigration officer." *Arizona,* 567 U.S. at 409 (citing 8 U.S.C. § 1357(g)(2)). And they must "pass examinations equivalent to those given to ICE officers." DHS, Off. of Inspector Gen., *The Performance of 287(g) Agreements* at 27 (2010) ("*287(g) Report*").[8]

---

[8] *Available at* https://www.oig.dhs.gov/assets/Mgmt/OIG_10-63_Mar10.pdf.

9

### B. Authority Under New York Law to Arrest for Violations of Federal Law

The New York Court of Appeals has held that only those state and local officials authorized to execute criminal arrest warrants under state law may make arrests for federal crimes pursuant to a federal warrant in New York State. *See People v. LaFontaine,* 92 N.Y.2d 470, 475 (1998). That is because when a person is the subject of an arrest warrant for a federal crime, the Federal Rules of Criminal Procedure provide that only "a marshal or other authorized officer" may execute the warrant. Fed. R. Crim. P. 4(c)(1); *see* Fed. R. Crim. P. 9(c)(1)(A) (Rule 4(c)(1)(A) applicable to warrants issued on an indictment or information). New York courts have interpreted "other authorized officer" to mean "any other officer authorized to make an arrest in the particular jurisdiction." *People v. Floyd,* 56 Misc. 2d 373, 376 (Sup. Ct. Queens County 1968), *aff'd,* 33 A.D.2d 795 (2d Dep't 1969), *rev'd on other grounds,* 26 N.Y.2d 558 (1970).[9]

---

[9] *See also* Criminal Procedure Law § 120.60(1) (arrest authority of state police officers); *LaFontaine,* 92 N.Y.2d at 475, 476 (noting

If no federal arrest warrant has issued, state and local law-enforcement officers may still arrest people for federal crimes to the extent the New York Criminal Procedure Law (C.P.L.) permits. *See United States v. Haskin*, 228 F.3d 151, 153 (2d Cir. 2000); *United States v. Swarovski*, 557 F.2d 40, 47–49 (2d Cir. 1977). The C.P.L. allows police officers and peace officers to arrest a person without a warrant only if the officer has reasonable cause to believe that the person has committed a crime or offense.[10] *See* C.P.L. §§ 140.10(1), 140.25(1)–(4). A "crime" is a misdemeanor or a felony. Penal Law § 10.00(6); *see* C.P.L. § 1.20 (incorporating Penal Law § 10.00 definitions into C.P.L.). An "offense" is a crime or any other "conduct for which a sentence to a term of imprisonment or to a fine

---

that "only an officer specially authorized to make arrests in New York can execute a Federal warrant in New York" and concluding that New Jersey officers cannot execute a federal arrest warrant in New York, because C.P.L. § 120.60 does not authorize them to execute arrest warrants in New York (citing *Floyd*, 56 Misc. 2d 373)).

[10] New York law defines "police officer" to include "[s]heriffs, under-sheriffs and deputy sheriffs of counties of New York City" and sworn officers of county police departments. C.P.L. § 1.20(34)(c). Peace officers are distinct from police officers, and include "corrections officers of any state correctional facility or of any penal correctional institution." *Id.* § 2.10(25).

11

is provided" by state or local law or by "any order, rule or regulation of any governmental instrumentality authorized by law to adopt the same." Penal Law § 10.00(1). And in this context, "[r]easonable cause means probable cause." *People v. Maldonado*, 86 N.Y.2d 631, 635 (1995).

C.   Factual Background and Procedural History

On December 11, 2017, petitioner Susai Francis pleaded guilty in Suffolk County District Court to disorderly conduct and was sentenced to time served. *See* Verified Pet. for Writ of Habeas Corpus ¶ 8. That same day, he commenced this original proceeding, seeking a writ of habeas corpus because the officers of the Suffolk County Sheriff's Office refused to release him from the holding cell in District Court despite his having completed the sentence that District Court imposed. *See id.* ¶ 9. According to Francis, the reason for his continued detention was that after his arrest on state-law charges, ICE sent a detainer, accompanied by an administrative warrant for arrest, to the Sheriff's Office. *Id.* ¶ 10. Francis alleged that his detention was an invalid arrest under New York law and an illegal seizure under article I, § 12 of the State Constitution. *Id.*

¶¶ 24–31. Francis named Vincent F. Demarco, the Sheriff of Suffolk County, as the sole respondent.[11]

This Court heard argument the day after Francis filed his petition. In post-argument submissions, Suffolk County informed the Court that although the County does not have a 287(g) agreement, the Suffolk County Correctional Facility has a Detention Services Intergovernmental Agreement with the U.S. Marshals Service. Letter from Leonard G. Kapsalis to Clerk of the Court ("Kapsalis Letter") at 1 (Dec. 12, 2017). That agreement allows the U.S. Marshals Service "to house Federal detainees with the Local Government at the Suffolk County Correctional Facility" in Riverhead, New York. U.S. Dep't of Justice, Detention Servs. Intergovernmental Agreement at 3 (bolded text omitted) (enclosed with Kapsalis Letter). A rider to the Agreement adds ICE as a lessee of jail space. *See* Modification of Intergovernmental Agreement (Oct. 20, 2017) (enclosed with Kapsalis Letter).

---

[11] Errol Toulon, Jr., has since replaced DeMarco as Sheriff. *See* Mem. in Opp. to Pet. for Writ of Habeas Corpus at 1 n.1. Because Suffolk County is the real party in interest, we refer to respondent's positions in this case as those of the County.

13

The County also told the Court that Francis had been transferred from the holding cell in District Court to the Riverhead Correctional Facility and that once at Riverhead, "he was re-written from an 'adult male misdemeanor' to [an] 'adult male warrant,' based on the ICE warrant." Affidavit of Kenneth Bockelman ¶ 4. He "was then placed into the cells at the jail that are rented by ICE from the Suffolk County Sheriff's Office." *Id.* ¶ 5.

The day after oral argument, the Clerk of the Court sent a letter to the parties and to the U.S. Department of Justice and the State Attorney General. The letter allowed the parties to submit supplemental pleadings and memoranda of law, and invited "the Office of the United States Attorney General and the Office of the New York State Attorney General, if so inclined, to submit a memorandum of law in response to the parties' filings." Letter from Hon. Aprilanne Agostino to N.Y. Civ. Liberties Union et al., Dec. 12, 2017.

# ARGUMENT

## POINT I

### HOLDING A PERSON AT THE REQUEST OF FEDERAL AUTHORITIES IS AN ARREST UNDER NEW YORK LAW AND A SEIZURE UNDER THE STATE AND FEDERAL CONSTITUTIONS

Holding a person who is in lawful custody beyond the time authorized, based on an ICE detainer, constitutes a new arrest under New York law. It also is a seizure under both the Fourth Amendment to the U.S. Constitution and article I, § 12 of the State Constitution.

As the Court of Appeals has explained, if a reasonable person would view the actions of a law-enforcement officer as rising to "the level of intrusion" on their "liberty and privacy that constitutes an arrest," then an arrest has occurred. *People v. Hicks*, 68 N.Y.2d 234, 240 (1986). The test for a Fourth Amendment seizure parallels the test for an arrest under New York law. *See People v. Bora*, 83 N.Y.2d 531, 535 (1994) (citing *Hicks*, 68 N.Y.2d at 240); *Payton v. New York*, 445 U.S. 573, 585 (1980) (arrest "is quintessentially a seizure" (quotation marks omitted)).

15

Under these standards, holding a person solely on the basis of an ICE detainer constitutes an arrest. But for the detainer, the person would be free to leave law-enforcement custody. Indeed, ICE's Notice of Action form on its face asks the receiving agency to hold the subject of the notice for forty-eight hours "beyond the time when he/she would *otherwise have been released from your custody.*" Sample Detainer at 1 (emphasis added). And the Notice of Action must be served on the subject of the detainer, signaling to her that she can no longer leave law-enforcement custody. *See id.* Thus, the detainer makes clear that at the moment the receiving agency honors ICE's request, an otherwise free person becomes no longer free to leave.

That transformation is critical. As a federal appellate court has noted, being "kept in custody for a new purpose" after a person "is entitled to release" constitutes "a new seizure for Fourth Amendment purposes." *Morales v. Chadbourne*, 793 F.3d 208, 217 (1st Cir. 2015).

In another matter before this Court involving ICE detainers, the United States has argued that maintaining custody of a person

in response to an ICE detainer is not an arrest under New York law. *See* Statement of Interest by the United States of America at 21, *Matter of Florez Rojas v. Suffolk County Sheriff's Off.*, No. 2017-13213 (2d Dep't Dec. 29, 2017) ("U.S. Stmt. in *Florez Rojas*"). The United States contends that the person simply has her detention continued, as authorized under federal law. *Id.* at 17–22. The United States relies principally on Penal Law § 205.00(2), which provides that for purposes of Penal Law article 205, "'[c]ustody' means restraint by a public servant pursuant to an authorized arrest or an order of a court." According to the United States (U.S. Stmt. in *Florez Rojas* at 21), this definition shows that "physical restraint comes *after* the arrest," so the continued detention of someone already detained cannot constitute an arrest.

Both Penal Law § 205.00(2)'s plain language and the case law interpreting it belie the United States' interpretation. To begin with, the definition the United States cites is limited to Penal Law article 205, *see* Penal Law § 205.00, which includes the crime of an "escape from custody," *id.* § 205.05. The cited definition merely defines the type of custody from which a defendant must abscond

17

to be guilty of escape. *See, e.g.*, *People v. Montanez*, 78 A.D.3d 1198, 1199 (2d Dep't 2010) (evidence supported escape conviction because defendant had been "lawfully arrested" before escaping). The statute does not purport to define what constitutes an "arrest," or when an arrest is "authorized" or "lawful." Nor does the statute define any term for purposes other than use in article 205.

Moreover, the United States' conception of when an arrest occurs is contradicted by the generally accepted concept of de facto arrests—those arrests that occur when lawful temporary restraint ripens into potentially unlawful detention. For instance, this Court has held that officers conducted a de facto arrest when they "stopped defendant on the street," transported him "in a police car to the station," "thoroughly searched his wallet for identification," and "placed him in a locked cell as the police awaited the arrival of the complainant at the station for a showup identification"—all without informing him "that he would be released if he were not arrested." *People v. Jackson*, 286 A.D.2d 688, 688 (2d Dep't 2001). Likewise, in *People v. Lane*, this Court held that an investigatory detention of defendant "ripened into an arrest . . . when defendant

18

was placed in the police car and taken 10 blocks back to the scene of the crime without his consent." 102 A.D.2d 829, 830 (2d Dep't 1984).[12]

Central to these holdings was the conclusion that lawful police custody "ripened into an arrest." *Id.* Thus, an arrest may occur after a law-enforcement official's initial restraint of the defendant, as is the case when local law-enforcement officers further detain the subject of an ICE detainer who would otherwise be released.

Moreover, the United States' interpretation is inconsistent with the observations of many courts that criminal defendants already in jail for one crime may be arrested for another. Under the United States' view, such defendants could not be arrested, because

---

[12] *Accord People v. Robinson*, 282 A.D.2d 75, 82 (1st Dep't 2001) (police "turned [a] lawful stop into a de facto arrest" when they held defendant "in a cell for two to three hours before placing him in a lineup for an identification procedure"); *People v. Baily*, 216 A.D.2d 1, 2 (1st Dep't 1995) ("[T]he police turned a proper investigative detention into a full-blown arrest by placing defendant in a hold cell for approximately one hour before arresting her for the crime charged."); *see also People v. Hunter*, 270 A.D.2d 712, 713 (3d Dep't 2000) (defendant told to exit the taxi and interviewed by police officer); *People v. Ocasio*, 241 A.D.2d 933, 934 (4th Dep't 1997) (defendant patted down, placed in police car, and taken to scene of crime).

they were already physically restrained. But case law demonstrates that this view is mistaken.[13]

## POINT II

NEW YORK LAW FORBIDS ARRESTS BASED SOLELY ON AN ICE DETAINER AND ACCOMPANYING ADMINISTRATIVE WARRANT

A.   **State and Local Officers Lack a Statutory or Common-Law Basis to Arrest People Based Solely on Administrative Immigration Warrants.**

The C.P.L. permits state and local law-enforcement officers to execute judicially issued warrants to arrest, *see* C.P.L. § 1.20(28)–(30), and has been interpreted to make such officers "other authorized officer[s]" who can execute arrest warrants for federal crimes under Federal Rule of Criminal Procedure 4, *see LaFontaine*, 92 N.Y.2d at 475. But the C.P.L. makes no mention of any federal administrative warrants, much less the immigration warrants at issue here.

---

[13] *See, e.g.*, *People v. Current*, 147 A.D.3d 1235, 1235 (3d Dep't 2017) ("While in jail" awaiting trial on another charge, "defendant was arrested on criminal contempt charges"); *People v. Fisher*, 76 A.D.3d 1122, 1122 (3d Dep't 2010) ("defendant had been arrested for assault in the second degree while in jail").

Nor do the C.P.L.'s warrantless-arrest provisions allow state and local law-enforcement officers to undertake arrests based solely on the information contained in an ICE detainer and accompanying administrative warrant. The C.P.L. permits warrantless arrests only if an officer has reasonable cause to believe that the arrestee has committed a crime or offense—that is, has broken a law that allows for a sentence of imprisonment or a fine. See *supra* at 11–12. ICE detainers and the warrants that ordinarily accompany them, however, do not specify any crime or offense. See *supra* at 7–8. Thus, standing alone, those documents do not give state and local officials grounds to arrest the subject of the detainer.

Suffolk County contends that state and local law-enforcement officers may draw on "residual authority" deriving from the State's common-law police powers in order to undertake arrests that the C.P.L. does not authorize. *See* Mem. in Opp. to Pet. for Writ of Habeas Corpus ("Mem.") at 13–16. But binding precedent demonstrates that no such residual authority exists. In *People v. Williams*, the Court of Appeals invalidated a warrantless arrest by two peace officers because it was not made under the limited

21

circumstances that the C.P.L. permits for such arrests. *See* 4 N.Y.3d 535, 538 (2005). The Court rejected the People's contention that the C.P.L.'s provisions governing warrantless arrests by citizens justified the officers' arrest of the defendant, adhering to the distinction between law-enforcement officers and the power of citizens that "the Legislature has specified." *Id.* The Court never suggested that law-enforcement officers have any power to make arrests beyond what the Legislature prescribes. *See id.* Likewise, in *People v. Bratton*, the Court of Appeals held that a peace officer's arrest of a parolee for refusing to submit to a urine test was an improper arrest because the officers lacked any statutory basis for such an arrest. *See* 8 N.Y.3d 637, 641–43 (2007). As in *Williams*, the Court considered no other source of arrest authority beyond what the Legislature had specified in statute.

The C.P.L.'s legislative history further supports a conclusion that New York statutes specify the sole circumstances in which police officers and peace officers can make warrantless arrests. As the Commission on the Revision of the Penal Law and Criminal Code wrote: "The proposed CPL preserves the dichotomy between

22

peace and police officers and attempts, as well, to delineate with some degree of precision the arrest powers of each group." Mem. of the Commn. on the Revision of the Penal Law & Crim. Code in Supp. & Explanation of the Proposed Crim. Procedure Law at 3, dated Mar. 1970, *reprinted in* Bill Jacket for ch. 996 (1970), at 8. The legislative history thus suggests that the Legislature delineated these arrest powers without regard for any parallel body of common-law arrest authority.

Suffolk County's claim that state and local law-enforcement officers retain common-law nonstatutory arrest authority finds no support in the cases it cites. In *Marsh v. United States* (cited in Mem. at 14), the Second Circuit concluded that the C.P.L.'s predecessor—a *statute*—authorized warrantless arrests for federal crimes.[14] 29 F.2d 172, 173 (2d Cir. 1928). And two other cases on

---

[14] *Marsh* noted the apparent "universal practice of police officers in New York to arrest for federal crimes" when seeking to determine "the understanding of [New York] officials as to the meaning of" the relevant statute. 29 F.2d at 173. The court never suggested that, in the statute's absence, the officers could have made the arrests. The United States is therefore wrong in claiming (*see* U.S. Stmt. in *Florez Rojas* at 28) that *Marsh* represents an "expression of New York's common law of criminal procedure."

23

which the County relies (Mem. at 14) likewise concern authority derived from a state statute rather than from some unbounded body of residual common law. *United States v. Janik* held that Illinois' warrantless-arrest statute gave state officers "implicit authority to make federal arrests." 723 F.2d 537, 548 (7th Cir. 1983). *United States v. Bowdach* held that a Florida statute gave police officers authority to arrest "for an offense against the United States." 561 F.2d 1160, 1168 (5th Cir. 1977).

Suffolk County is also incorrect in claiming that *United States v. Polito*, 583 F.2d 48 (2d Cir. 1978), establishes that the authority of state and local officials to effect arrests pursuant to a warrant includes the authority to arrest pursuant to the federal administrative warrant at issue here. *Polito*, a federal case, cannot establish a binding rule of state law.[15] In any event, *Polito* did not actually address whether a state police officer "acted outside his authority under state law." 583 F.2d at 52–53. *Polito* instead held

---

[15] *See, e.g., Conergics Corp. v. Dearborn Mid-W. Conveyor Co.*, 144 A.D.3d 516, 526 n.9 (1st Dep't 2016); *Hartnett v. New York City Transit Auth.*, 200 A.D.2d 27, 32 (2d Dep't 1994).

24

that where state officers had executed a federal administrative warrant for a federal parole violator, evidence obtained as a result should not have been suppressed, because the legality of the seizure under state law was not relevant to the suppression of evidence in a federal criminal case.[16] *Polito* thus did not decide any question of state law, and did not establish a generally applicable rule about arrests pursuant to administrative warrants in New York.[17]

The County similarly misreads (Mem. at 15) *People v. Xirum*, 45 Misc. 3d 785 (Sup. Ct. Kings County 2014), which also did not have occasion to issue a ruling on the scope of state-law authority

---

[16] The court considered only whether an arrest pursuant to an administrative parole warrant violated the Federal Constitution—and concluded that it did not, given the lower standard applicable to arrests of parolees. As the court observed, a "warrant issued by the parole board for the arrest of a paroled prisoner is not to be judged by the same standards as a warrant for the arrest of one merely charged with a crime," because the "prisoner's guilt of crime has already been adjudged." *Polito*, 583 F.2d at 55 (quotation marks omitted).

[17] *Polito* also did not purport to find that the warrant satisfied the requirements for an arrest pursuant to warrant under New York law, as the County suggests (Mem. at 15). Instead, *Polito* analyzed the case as involving a warrant that did not need to meet Fourth Amendment standards because a parolee is already in a form of custody. 583 F.2d at 54–55.

25

to execute a federal administrative warrant. Because the defendant in *Xirum* was still in state custody on criminal charges and had not posted bail, *see id.* at 787–88, state officials did not make a new arrest when they continued to hold him after receiving a notification that he was subject to an order of deportation or removal (see *supra* at 15–16). Insofar as *Xirum* in dicta suggests that state and local officials may arrest a person solely in response to an ICE detainer, it is wrongly decided for the reasons discussed *supra* at 20–21.

In any event, as the County concedes (Mem. at 13), any residual arrest authority under New York law could be no greater than the power that existed at common law. And common law did not permit arrests based on administrative immigration warrants or warrantless arrests for civil immigration violations.

First, administrative immigration warrants were historically creatures not of common law but of statute. *See Abel v. United States*, 362 U.S. 217, 233 (1960) (discussing early federal statutes setting forth "administrative arrest procedure in deportation cases"). Second, as noted by Charles Evans Hughes—later the Chief Justice of the United States—arrests for civil matters were not

26

recognized at common law. *See* Charles E. Hughes, *Arrest and Imprisonment on Civil Process*, in *Report of the Twenty-Eighth Annual Meeting of the New York State Bar Association* 151, 152–53 (1905). Third, at common law, warrants were issued by judges or magistrates, not administrative officials adverse to the arrestee.[18] *See People v. LaFontaine*, 235 A.D.2d 93, 103 (1st Dep't 1997) (Tom, J., dissenting) (discussing common-law arrest warrants), *rev'd on other grounds*, 92 N.Y.2d 470. Thus, no residual arrest authority exists to permit arrests under administrative immigration warrants for solely civil violations.

Just as the common law did not recognize arrests based on administrative immigration warrants, it also did not recognize warrantless arrests for civil immigration violations. Courts have

---

[18] Though the Supreme Court has explained that the term "magistrate" was not a rigid one, it was traditionally understood to encompass someone "neutral and detached." *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972). By contrast, the Secretary of Homeland Security is not a "neutral and disinterested magistrate," *United States v. United States Dist. Ct. for the E. Dist. of Mich., S. Div.*, 407 U.S. 297, 317 (1972), since she is "engaged in the often competitive enterprise of ferreting out" immigration violations. *Shadwick*, 407 U.S. at 350 (quotation marks omitted).

27

long recognized that at common law, a state or local law-enforcement officer could arrest a person without a warrant only if the officer had probable cause to believe that the person had committed a crime. *See, e.g., People v. Phillips*, 284 N.Y. 235, 237 (1940); *People v. Hamilton*, 183 A.D. 55, 64 (1st Dep't 1918); *Philips v. Leary*, 114 A.D. 871, 872 (2d Dep't 1906); *see also United States v. Watson*, 423 U.S. 411, 418 (1976). Thus, even if the County were correct that state and local officials possess common law warrantless-arrest authority, that authority would not embrace purely civil violations, such as being in the United States illegally (see *supra* at 4–5).[19]

---

[19] Moreover, any such residual authority that might once have existed has been federally preempted. *See Arizona*, 567 U.S. at 407–10; *Lunn v. Commonwealth*, 477 Mass. 517, 533 (2017); see also *infra* at 37–39.

28

**B.   The New York Constitution Likely Prohibits State and Local Officers from Arresting People for Civil Immigration Violations.**

Even if state and local officials had statutory authority to arrest people for civil immigration violations, doing so would risk violating the New York Constitution. Although article I, § 12 of the State Constitution generally confers the same rights as the Fourth Amendment of the Federal Constitution, *see People v. Robinson*, 97 N.Y.2d 341, 350 (2001), the two provisions are not coextensive. The Court of Appeals has "not hesitated in the past to interpret article I, § 12 of the State Constitution independently of its Federal counterpart when necessary to assure that our State's citizens are adequately protected from unreasonable governmental intrusions." *People v. Scott*, 79 N.Y.2d 474, 496–97 (1992). As that Court has explained, "the Federal Constitution sets a minimum level of rights—a floor—to which states must adhere, but may surpass." *People v. Stultz*, 2 N.Y.3d 277, 284 n.12 (2004).

Thus, the Court of Appeals has held that a provision of the Vehicle and Traffic Law allowing warrantless administrative searches of vehicle-dismantling operations, while permissible under

29

the Fourth Amendment, violates article I, § 12. *See Scott*, 79 N.Y.2d at 498–501. The Court grounded that ruling in the principle that "our constitutional privacy guarantee generally requires probable cause and warrants, with their attendant case-by-case judicial oversight, as a condition to official entries on, and searches of, private premises." *Id.* at 501; *see also People v. Johnson*, 66 N.Y.2d 398, 406 (1985) (expressing preference for "determinations made by a magistrate issuing a warrant over those based on the hurried judgment of law enforcement officers" (quotation marks omitted)).

The principle underpinning the Court of Appeals' ruling in *Scott* would seem to apply equally to official searches and seizures of a person.[20] If so, the prerequisites to search and seizure that New York's "constitutional privacy guarantee" requires, *see Scott*, 79 N.Y.2d 501, would not be satisfied by an administrative

---

[20] *See, e.g., United States v. Flores-Montano*, 541 U.S. 149, 152 (2004) (comparing "routine search of a vehicle" with "more intrusive search of a person," which implicates "dignity and privacy interests of the person being searched" (quotation marks omitted)); *see also People v. LePera*, 197 A.D.2d 43, 45 (4th Dep't 1994) ("search of defendant's pockets" is a "[g]reater instrusion[]" than "inspection of luggage or other property").

immigration warrant, which lacks the judicial oversight needed to satisfy the State Constitution.[21] Accordingly, whether or not the Federal Constitution prohibits an arrest on an ICE detainer and administrative immigration warrant (and it does, see *infra* at 37–42), the State Constitution likely prohibits such an arrest.

---

[21] To be sure, the State Constitution permits warrantless searches and seizures of persons—like warrantless searches of premises—in limited circumstances. *See, e.g., Scott,* 79 N.Y.2d at 501; *People v. Hernandez,* 40 A.D.3d 777, 779 (2d Dep't 2007) (warrantless search incident to arrest permitted to protect "safety of the officers or the public"); *see also Kerman v. City of New York,* 261 F.3d 229, 237 (2d Cir. 2001) (Fourth Amendment permits officers "to handcuff and detain a person" they believe "presented a risk of harm to himself or others"). But the existence of an administrative immigration warrant, standing alone, neither triggers those circumstances nor establishes their existence. See also *infra* at 43–44 (Point IV.B).

31

## POINT III

### FEDERAL LAW LIKEWISE PROHIBITS STATE AND LOCAL LAW-ENFORCEMENT OFFICERS FROM ARRESTING A PERSON BASED SOLELY ON AN IMMIGRATION DETAINER AND ACCOMPANYING WARRANT

A. **The INA Authorizes State and Local Officials to Help Enforce Federal Immigration Law Only to the Extent Consistent with State and Local Law.**

The INA vests the bulk of its enforcement authority in federal officials. Section 287(a) provides that "an officer or employee of" DHS may execute warrants under regulations promulgated by the Secretary of Homeland Security. 8 U.S.C. § 1357(a). Those regulations, in turn, specify precisely which officers "who have successfully completed basic immigration law enforcement training" may execute warrants of arrest for administrative immigration violations and warrants of removal. 8 C.F.R. § 287.5(e); *see id.* § 241.2(b). Nowhere are state or local officials mentioned among the eight categories of officials who are authorized to execute such warrants. *See id.* § 287.5(e)(i)–(viii).

That exclusion is likely because the INA elsewhere allows state and local officials to carry out the functions of federal immigration officials in certain limited circumstances. *See Arizona,*

32

567 U.S. at 408–09. Read as a whole, the statute thus reflects Congress's intent to exclude state and local officials from performing the functions of federal immigration officials—including by executing warrants for civil immigration violations—except in those limited circumstances. *See, e.g.,* 8 U.S.C. § 1357(g)(1).

One of the limited circumstances in which state and local officials may help enforce federal immigration law is through a written agreement under INA § 287(g)(1).[22] Such an agreement allows state and local officers to perform certain functions of federal immigration officers—including serving warrants for immigration violations—so long as they are acting under a written agreement

---

[22] Section 287(g)'s legislative history confirms that Congress did not view local law-enforcement agents as having the power to enforce civil immigration laws without congressional authorization. As the legislative sponsor of an earlier version of § 287(g) explained, state and local officials had grown "frustrated" because "there is legally nothing that a State or local law enforcement agency can do about a violation of immigration law other than calling the local INS officer to report the case." 142 Cong. Rec. H2476 (daily ed. Mar. 20, 1996) (statement of Rep. Latham). Section 287(g) was thus conceived of as providing additional recourse by "allowing—not mandating—State and local agencies to join the fight against illegal immigration." *Id.* at H2477. If state and local officials had the power to enforce federal immigration law from the outset, § 287(g) would have been unnecessary.

33

with the Secretary of Homeland Security, *id.*, and "have received adequate training to carry out the duties of an immigration officer," *Arizona*, 567 U.S. at 409 (citing 8 U.S.C. § 1357(g)(2)); *see also* 8 U.S.C. § 1357(g)(1); 8 C.F.R. § 287.5(e); *287(g) Report* at 3. They must also "pass examinations equivalent to those given to ICE officers." *287(g) Report* at 27.

But while the INA allows state and local law-enforcement officers to perform the functions of federal immigration officers, the statute contains a critical limitation: state and local officers performing such functions can do so only "to the extent consistent with State and local law." 8 U.S.C. § 1357(g)(1). Thus, § 287(g), by its plain terms, contemplates that state and local officials will act within the bounds of state and local law. And other provisions of the INA conferring authority on state and local officials recognize similar restrictions.[23]

---

[23] *See* 8 U.S.C. § 1252c(a) (state and local officials may make certain arrests "to the extent permitted by relevant State and local law"); *id.* § 1103(a)(10) (state and local official may enforce federal immigration laws in certain "urgent circumstances," with "the consent of" their supervisors); *see also Liranzo v. United States,*

34

Suffolk County erroneously looks to INA § 287(g)(10)(B) as a source of authority for an arrest based solely on an ICE detainer and accompanying warrant.[24] *See* Mem. at 10. But as the Supreme Judicial Court of Massachusetts has recently explained, § 287(g)(10)(B) does not authorize cooperation "with Federal immigration officers in immigration enforcement" to a greater extent than state and local officials "are authorized to do so by their State law." *Lunn v. Commonwealth*, 477 Mass. 517, 535–36 (2017). For instance, a State need not enter into a 287(g) agreement, in an exercise of its existing police powers, if it wishes to "participate in a joint task force with federal officers, provide operational support in executing a warrant, or allow federal immigration officials to

---

690 F.3d 78, 97 (2d Cir. 2012) (8 U.S.C. §§ 1252c(a) and 1103(a)(1) must be exercised "consistent with state law").

[24] Section 287(g)(10)(B) permits States and their localities "to cooperate with the [Secretary of Homeland Security] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States" even without a written agreement. 8 U.S.C. § 1357(g)(10)(B).

35

gain access to detainees held in state facilities."[25] *Arizona*, 567 U.S. at 410.

Nothing in § 287(g)(10)(B) "affirmatively grants" state and local officials arrest authority that they do not already have.[26] *Lunn*, 477 Mass. at 535. When the INA "affirmatively grants authority to State and local officers to arrest, it does so in more explicit terms," such as in 8 U.S.C. § 1103(a)(10), which permits the federal government to deputize state and local officers in certain "urgent circumstances."[27] *Id.* at 536.

---

[25] Such operational support might include "providing perimeter security" or other support for federal officers executing a warrant. DHS, *Guidance on State and Local Governments' Assistance in Immigration Enforcement and Related Matters* 13, https://www.dhs.gov/sites/default/files/publications/guidance-state-local-assistance-immigration-enforcement.pdf (last visited Jan. 30, 2018).

[26] The County (Mem. at 10–11) cites *United States v. Ovando-Garzo*, 752 F.3d 1161 (8th Cir. 2014), as an example of a case in which the court held that § 287(g)(10)(B) affirmatively authorized a state trooper, in consultation with a federal border patrol agent, to detain people illegally present in the. But *Ovando-Garzo* did not consider whether the officer had the power to conduct the detention under state law. *See* 752 F.3d at 1164. If the arrest was in fact in violation of state or local law, then *Ovando-Garzo* was wrongly decided.

[27] The County is incorrect in asserting that *Arizona v. United States* "implicitly" held that honoring an ICE detainer and warrant

36

**B.**   **State and Local Officers Violate Federal Constitutional Protections When Making Arrests Based Solely on ICE Detainers and Accompanying Warrants.**

Suffolk County is incorrect in arguing (Mem. at 22) that because the validity of an arrest under state law does not affect the arrest's validity under the Fourth Amendment, a seizure that satisfies the Fourth Amendment when conducted by federal officials likewise satisfies the Fourth Amendment when conducted by state or local officials. The County is also wrong in contending that the collective-knowledge doctrine allows state and local officials to rely on a federal official's determination that there is probable cause to believe that the subject of an administrative immigration warrant should be detained. *See id.* at 18–21.

After the Supreme Court's decision in *Arizona*—which held that a state law permitting officers to arrest people based on

_____

can constitute cooperation under § 287(g)(10)(B). *See* Mem. at 10. That decision simply does not address the issue in dispute here—what type of cooperation § 287(g)(10)(B) envisions—because Arizona's "unilateral" actions could not have constituted "cooperation" under any "coherent understanding of the term." *Arizona*, 567 U.S. at 410.

37

probable cause of removability was preempted by federal immigration law, *see* 567 U.S. at 407–10—courts have universally concluded that state and local law-enforcement officers are preempted from arresting the subject of an administrative immigration warrant "absent express direction or authorization by federal statute or federal officials." *Santos v. Frederick County Bd. of Commrs.*, 725 F.3d 451, 465 (4th Cir. 2013); *see also Melendres v. Arpaio*, 695 F.3d 990, 1001 (9th Cir. 2012) (state officials may "enforce only immigration-related laws that are criminal in nature"). Thus, outside the "specifie[d] limited circumstances in which state officers may perform the functions of an immigration officer," *Arizona*, 567 U.S. at 408—such as entry into a 287(g) agreement—federal law does not permit States to detain people for being in the United States illegally.

Recent appellate case law confirms that conclusion. In *Santos*, the Fourth Circuit concluded that two deputy county sheriffs violated an arrestee's Fourth Amendment rights by arresting her upon learning that she was the subject of "an outstanding ICE warrant for immediate deportation." 725 F.3d at 458 (quotation

38

marks omitted). The court interpreted *Arizona* as "precluding local law enforcement officers from arresting individuals solely based on known or suspected civil immigration violations." *Id.* at 464. Similarly, in *Melendres*, the Ninth Circuit held that a detention constitutes an unlawful seizure if the detention was "*solely* because an officer ha[d] reasonable suspicion or knowledge that [a person was] not authorized to be present in the United States." 695 F.3d at 998. Thus, state and local officers violate the Fourth Amendment by arresting the subject of an administrative immigration warrant without "express direction or authorization by federal statute or federal officials." *Santos*, 725 F.3d at 465.

An ICE detainer does not provide the "express direction or authorization" that *Santos* held was required for state and local officials to enforce civil immigration law. *See id.* As several courts have recognized, ICE detainers "by their express terms are simply requests" and so "impose no mandatory obligations on the State authorities to which they are directed." *Lunn*, 477 Mass. at 526; *see, e.g.*, *Galarza v. Szalczyk*, 745 F.3d 634, 640–42 (3d Cir. 2014). Because state and local officials are "free to disregard [an] ICE

detainer," *Galarza*, 745 F.3d at 645, they retain discretion over which detainers to honor and thus which people to detain. But a process that allows state and local officers "to decide whether an alien should be detained" for civil immigration violations "violates the principle that the removal process is entrusted to the discretion of the Federal Government." *Arizona*, 567 U.S. at 409. Accordingly, the detention process is authorized under federal law only when the federal government directs that process—as it does under a 287(g) agreement, *see* 8 U.S.C. § 1357(g)(3). If state officials seize a person for a federal immigration violation without federal authorization, that seizure is unreasonable and thus violates the Fourth Amendment. *See Santos*, 725 F.3d at 465 (local officers "lacked authority to enforce civil immigration law" and thus violated the Fourth Amendment by seizing plaintiff "solely on the basis of the outstanding civil ICE warrant").

Although the County seeks to rely (*see* Mem. at 19–20) on *Mendoza v. United States Immigration & Customs Enforcement*, 849 F.3d 408 (8th Cir. 2017), that case does not support the County's Fourth Amendment analysis. In *Mendoza*, local officials

40

detained the plaintiff not solely because of an ICE detainer but also because a report from the National Crime Information Center (NCIC) suggested that the plaintiff was an aggravated felon who had previously been removed from the country. 849 F.3d at 414, 419. The officers thus had probable cause to believe that he had committed the felony of illegal reentry, and therefore independent authority to arrest him. *See* 8 U.S.C. § 1326(b)(2) (illegal reentry when prior removal was based on aggravated felony); *id.* § 1252c(a) (local law enforcement may arrest previously deported felons illegally present in country); see also *infra* at 42–44 (Point IV). At any rate, *Mendoza* concerns whether the county officials acted reasonably and were entitled to qualified immunity as a result, not whether the arrest violated the Fourth Amendment. *See* 849 F.3d at 418–19.

Finally, state and local law-enforcement officers who are barred from executing administrative immigration warrants without federal oversight cannot rely on Fourth Amendment exceptions permitting warrantless arrests. The Fourth Amendment permits such arrests only where an officer has probable cause to believe that

41

the arrestee has committed a crime. *See Maryland v. Pringle*, 540 U.S. 366, 370 (2003). But an ICE detainer and accompanying immigration warrant on their own do not provide any such probable cause.

## POINT IV

STATE AND LOCAL OFFICIALS MAY, IN CERTAIN CIRCUMSTANCES, DETAIN THE SUBJECT OF AN ICE DETAINER IF THEY HAVE REASON TO BELIEVE THAT PERSON HAS COMMITTED A FEDERAL CRIME

**A.    If the Subject of a Detainer Is Also the Subject of a Federal Criminal Arrest Warrant, Police Officers May Arrest Him in New York.**

New York courts have interpreted the Federal Rules of Criminal Procedure as permitting federal arrest warrants to be executed by any officer authorized to execute a warrant in a state. *See LaFontaine*, 92 N.Y.2d at 475; *Floyd*, 56 Misc. 2d at 376. And in New York, state law authorizes police officers to execute criminal arrest warrants, *see* C.P.L. § 120.60(1), including federal warrants, *see LaFontaine*, 92 N.Y.2d at 475. Thus, if a person who qualifies as a police officer, *see* C.P.L. § 1.20(34), learns of an outstanding federal criminal warrant—for instance, by speaking with ICE

42

officials who transmit the detainer—she may execute that warrant by arresting the subject of the warrant. *See, e.g., People v. Rosario*, 78 N.Y.2d 583, 588 (1991) ("transmitted information" from another officer that the arrestee has committed a crime gives the arresting officer probable cause to arrest). Such an arrest, under a warrant supported by probable cause, satisfies the Federal and State Constitutions as well. See *supra* at 30–31.

B.   **If a New York Police Officer or Peace Officer Has Reason to Believe That the Subject of a Detainer Has Committed a Crime, That Person May Be Arrested Without a Criminal Warrant.**

Under New York law, police officers and peace officers may arrest a person without a warrant if the officer has reasonable cause to believe that the person has committed a crime. *See* C.P.L. § 140.10(1); *id.* § 140.25(1), (3)–(4). The Fourth Amendment likewise permits warrantless arrests based on probable cause to believe that the arrestee has committed a crime.[28] *Pringle*, 540 U.S. at 370.

---

[28] The Supreme Court has expressly reserved the question whether the Fourth Amendment permits warrantless arrests for misdemeanors committed outside an officer's presence. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 340 n.11 (2011)

43

Thus, a state or local officer may detain the subject of an ICE detainer without a criminal arrest warrant, if he has probable cause to believe the subject committed a state or federal crime. And the arresting officer may obtain the requisite probable cause from information transmitted from another officer. *See, e.g., Rosario,* 78 N.Y.2d at 588.

## CONCLUSION

State and local officials' continued detention of people past the point when they would otherwise be free, based solely on an ICE detainer and administrative warrant, is an invalid arrest and unconstitutional seizure. If the arresting officer receives information establishing probable cause to believe the subject has committed a crime, that receipt of information could support a valid and constitutional arrest.

Dated:  New York, NY
        January 31, 2018

                                    Respectfully submitted,

                                    ERIC T. SCHNEIDERMAN
                                    *Attorney General*
                                    *State of New York*


                          By:  _____
                               SCOTT A. EISMAN
                               Assistant Solicitor General

BARBARA D. UNDERWOOD                120 Broadway
  *Solicitor General*               New York, NY 10271
ANISHA S. DASGUPTA                  (212) 416-8019
  *Deputy Solicitor General*
SCOTT A. EISMAN
  *Assistant Solicitor General*
    *of Counsel*

Reproduced on Recycled Paper

45