UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

JOAQUIN ORELLANA CASTANEDA and
GERMAN HERNANDEZ ARGUETA,
on behalf of themselves and all others similarly situated,

                              Plaintiffs-Petitioners,                  Docket No.: 17cv4267
                                                               (Mauskopf, J.)
              v.                                                     (Lindsay, M.J.)

COUNTY OF SUFFOLK, *et al.*,

                              Defendants-Respondents.

-------------------------------------------------------------------------X

## STATEMENT OF INTEREST OF THE UNITED STATES

JOSEPH H. HUNT
*Assistant Attorney General*

WILLIAM C. PEACHEY                   RICHARD P. DONOGHUE
*Director*, Office of Immigration Litigation     *United States Attorney*

EREZ REUVENI
*Assistant Director*

LAUREN C. BINGHAM
*Senior Litigation Counsel*

By:   /s/Francesca Genova               /s/Joseph A. Marutollo
     FRANCESCA GENOVA                 JOSEPH A. MARUTOLLO
     *Trial Attorney*                             *Assistant U.S. Attorney*
     U.S. Department of Justice, Civil Division     271 Cadman Plaza East
     P.O. Box 868, Ben Franklin Station          Brooklyn, NY 11201
     Washington, D.C. 20044                  Tel: 718-254-6288
     Tel: 202-305-1062                        Joseph.Marutollo@usdoj.gov
     Francesca.M.Genova@usdoj.gov

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

LEGAL BACKGROUND ......................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................................. 6

   I.   SCSO's cooperation with ICE ................................................................................. 6

   II.   Plaintiffs' claims .................................................................................................... 7

         A.  Plaintiff Joaquin Orellana Castaneda ......................................................... 7

         B.  Plaintiff German Hernandez Argueta .......................................................... 8

   III.   The present action ................................................................................................. 9

ARGUMENT ............................................................................................................................. 9

   I.   Plaintiffs' claims should be dismissed under Fed. R. Civ. P. 12(b)(1) ................. 9

   II.   Even if the Court had jurisdiction, Plaintiffs' claims would need to be
       dismissed under Fed. R. Civ. P. 12(b)(6) ............................................................. 11

         A.  Cooperation with ICE Detainers is consistent with federal
            statutory law ................................................................................................ 11

         B.  Cooperation with ICE Detainers is consistent with the
            Fourth Amendment, the Fourteenth Amendment and thus
            also with Article I, Section 12 of the New York Constitution ..................... 16

CONCLUSION ....................................................................................................................... 23

## TABLE OF AUTHORITIES

### CASES

*Abel v. United States,*
   362 U.S. 217 (1960) ........................................................................................................ 18, 19

*Abriq v. Nashville,*
   3:17-cv-690 (M. D. Tenn. Sept. 17, 2018) ................................................................. 13

*Aetna Life Ins. Co. v. Haworth,*
   300 U.S. 227 (1937) ............................................................................................................. 9

*Akande v. U.S. Marshals Serv.,*
   659 F. App'x 681 (2d Cir. 2016) ................................................................................... 13

*Allen v. Wright,*
   468 U.S. 737 (1984) ............................................................................................................. 9

*Arias v. ICE,*
   No. 07-1959, 2008 WL 1827604 (D. Minn. Apr. 23, 2008) ................................ 14

*Arizona v. United States,*
   567 U.S. 387 (2012) ................................................................................................. *passim*

*La Raza v. Herbert,*
   26 F. Supp. 3d 1125 (D. Utah 2014) .......................................................................... 14

*Baker v. Carr,*
   369 U.S. 186 (1962) ............................................................................................................. 9

*Blondin v. Dubois,*
   78 F. Supp. 2d 283 (S.D.N.Y. 2000) ............................................................................. 1

*Brower v. Cty. of Inyo,*
   489 U.S. 593 (1989) .......................................................................................................... 21

*Brown v. Venango Cty.,*
   No. 09–268, 2010 WL 5293906 (W.D. Pa. Dec. 17, 2010) ............................... 21

*Bryant v. City of New York,*
   404 F.3d 128 (2d Cir. 2005) ......................................................................................... 16

*City of El Cenizo, Texas v. Texas,*
   890 F.3d 164 (5th Cir. 2018) ................................................................................ *passim*

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ...................................................................................................... 10, 11

*City of New York v. United States,*
179 F.3d 29 (2d Cir. 1999) ...................................................................................12

*City of S. Miami v. Desantis,*
408 F. Supp. 3d 1266 (S.D. Fla. 2019) ...............................................................13

*Clark v. Suarez Martinez,*
543 U.S. 371 (2005) ..............................................................................................2

*Coleman v. Gillespie,*
424 F. App'x 267 (5th Cir. 2011) ........................................................................21

*Comm. for Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma,*
644 F. Supp. 2d 1177 (N.D. Cal. 2009) ........................................................13, 14

*Compton v. State of Alabama,*
214 U.S. 1 (1909) ................................................................................................18

*Demore v. Kim,*
538 U.S. 510 (2003) ............................................................................................17

*Faulcon v. Jordan,*
911 F. Supp. 52 (N.D.N.Y. 1995) .......................................................................10

*Freund v. Societe Nationale des Chemins de fer Francais,*
391 F. App'x 939 (2d Cir. 2010) ...........................................................................1

*Freund v. Republic of France,*
592 F. Supp. 2d 540 (S.D.N.Y. 2008) ...................................................................1

*Fuller v. BIA,*
702 F.3d 83 (2d Cir. 2012) ..................................................................................11

*Furrow v. U.S. Bd. of Parole,*
418 F. Supp. 1309 (D. Me. 1976) ........................................................................23

*Galarza v. Szalczyk,*
745 F.3d 634 (3d Cir. 2014) ................................................................................12

*Gravitte v. N. Carolina Div. of Motor Vehicles,*
33 F. App'x 45 (4th Cir. 2002) ......................................................................16, 17

*Hafez v. City of Schenectady,*
894 F. Supp. 2d 207 (N.D.N.Y. 2012) ................................................................17

*Heath v. U.S. Parole Comm'n,*
788 F.2d 85 (2d Cir. 1986) ..................................................................................16

*Henderson v. INS,*
    157 F.3d 106 (2d Cir. 1998) ................................................................................12

*Hernandez v. United States,*
    939 F.3d 191 (2d Cir. 2019) ................................................................................22

*Keil v. Spinella,*
    2011 WL 43491 (S.D. Mo. Jan. 6, 2011) ............................................................16

*Lamar Advert. v. Town of Orchard Park,*
    356 F.3d 365 (2d Cir. 2004) ................................................................................10

*Lewis v. Casey,*
    518 U.S. 343 (1996) ............................................................................................11

*Lopez v. INS,*
    758 F.2d 1390 (10th Cir. 1985) .....................................................................18, 19

*Lopez-Lopez v. Cty. of Allegan,*
    321 F. Supp. 3d 794 (W.D. Mich. 2018) ........................................ 12, 14, 18, 20

*Mahon v. Ticor Title Ins. Co.,*
    683 F.3d 59 (2d Cir. 2012) ..................................................................................11

*Manuel v. City of Joliet,*
    137 S. Ct. 911 (2017) ...........................................................................................16

*Martinez-Medina v. Holder,*
    673 F.3d 1029 (9th Cir. 2011) .............................................................................19

*McLean v. Crabtree,*
    173 F.3d 1176 (9th Cir. 1998) .............................................................................13

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012) ...............................................................................20

*Mendez v. United States,*
    No. 02 CR 745 (RPP), 2009 WL 4857490 n.2 (S.D.N.Y. Dec. 11, 2009) .........13

*Mendoza v. U.S.,*
    ICE, 849 F.3d 408 (8th Cir. 2017) ......................................................................22

*Nasious v. Two Unkonwn B.I.C.E. Agents at Arapahoe Cty. Justice Ctr.,*
    657 F. Supp. 2d 1218 ...........................................................................................16

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
    538 U.S. 803 (2003) ............................................................................................10

*New York v. U.S. Dep't of Justice*,
    --- F.3d ----, 2020 WL 911417 (2d Cir. Feb. 26, 2020) ...................................................5, 15, 18

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ........................................................................................................ 10, 11

*Oyeniran v. Holder*,
    672 F.3d 800 (9th Cir. 2012) ................................................................................................11

*Perez-Ramirez v. Norwood*,
    322 F. Supp. 3d 1169 (D. Kan. 2018)............................................................................. 12, 18

*Rios v. Jenkins*,
    390 F. Supp. 3d 714 (W.D. Va. 2019) ............................................................... 14, 16, 20, 22

*Roman v. Ashcroft*,
    340 F.3d 314 (6th Cir. 2003) ......................................................................................3, 6, 12

*Rosario v. New York City*, No. 12 Civ. 4795 (PAE),
    2013 WL 20992547 (S.D.N.Y. May 15, 2013)......................................................................13

*Sanchez v. Sessions*,
    885 F.3d 782 (4th Cir. 2018)................................................................................................20

*Santos v. Frederick Cty. Bd. of Comm'rs*,
    725 F.3d 451 (4th Cir. 2013) ......................................................................................... 13, 22

*Santoyo v. United States*,
    No. 16-855, 2017 WL 6033861 (W.D. Tex. Oct. 18, 2017) .................................................13

*Shadwick v. City of Tampa*,
    407 U.S. 345 (1972) .............................................................................................................18

*Sherman v. U.S. Parole Comm'n*,
    502 F.3d 869 (9th Cir. 2007) .......................................................................................... 18, 19

*Soberanes v. Comfort*,
    388 F.3d 1305 (10th Cir. 2004)............................................................................................17

*Spencer v. Kemna*,
    523 U.S. 1 (2003) .................................................................................................................10

*Spinella v. Esperdy*,
    188 F. Supp. 535 (S.D.N.Y. 1960) .......................................................................................19

*Tenorio-Serrano v. Driscoll*,
    324 F. Supp. 3d 1053 (D. Ariz. 2018)............................................................................12, 20, 22

*Themeus v. U.S. Dep't of Justice,*
    643 F. App'x 830 (11th Cir. 2016) ........................................................................................17

*Tie Liu v. Kerry,*
    266 F. Supp. 3d 645 (E.D.N.Y. 2017) ..................................................................................11

*U. S. ex rel. Randazzo v. Follette,*
    418 F.2d 1319 (2d 1969) ........................................................................................................19

*U.S. ex rel. Vanorsby v. Acevedo,*
    No. 11 C, 7384, 2012 WL 3686787 (N.D. Ill. Aug. 24, 2012) ............................................21

*U.S. v. Polito,*
    583 F.2d 48 (2d Cir. 1978) ....................................................................................................22

*Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc.,*
    757 F. Supp. 2d 218 (E.D.N.Y. 2010) ..................................................................................11

*United States v. Bernacet,*
    724 F.3d 269 (2d Cir. 2013) ..................................................................................................20

*United States v. Cardona,*
    903 F.2d 60 (1st Cir. 1990) ...................................................................................................23

*United States v. Colon,*
    250 F.3d 130 (2d Cir. 2002) ..................................................................................................21

*United States v. Fleming,*
    No. 18-CR-197 (KAM), 2019 WL 486073 (E.D.N.Y. Feb. 6, 2019) ...................................21

*United States v. Gomez-Robles,*
    No. 17-730, 2017 WL 6558595 (D. Ariz. Nov. 28, 2017) ...................................................13

*United States v. Hensley,*
    469 U.S. 221 (1985) .........................................................................................................21, 22

*United States v. Laville,*
    480 F.3d 187 (3d Cir. 2007) ..................................................................................................21

*United States v. Lucas,*
    499 F.3d 769 (8th Cir. 2007) ................................................................................................19

*United States v. Ovando-Garzo,*
    752 F.3d 1161 (8th Cir. 2014) .......................................................................................*passim*

*United States v. Phillips,*
    834 F.3d 1176 (11th Cir. 2016) ............................................................................................17

*United States v. Spencer,*
   684 F.2d 220 (2d Cir. 1982) ................................................................. 17, 18

*Virginia v. Moore,*
   553 U.S. 164 (2008) ................................................................. 18, 19, 20

*Warth v. Seldin,*
   422 U.S. 490 (1975) ................................................................. 9

## STATE CASES

*Andrews v. State,*
   962 So. 2d 971 (Fla. Dist. Ct. App. 2007) ................................................................. 23

*Chery v. Sheriff of Nassau Cty.,*
   2015 WL 13665005 (N.Y. Sup. Ct. Dec. 3, 2015) ................................................................. 22

*People ex rel. Wells v. DeMarco,*
   168 A.D.3d 31, (2d Dep't 2018) ................................................................. *passim*

*People v. Johnson,*
   66 N.Y.2d 398 (1985) ................................................................. 17

*People v. P.J. Video, Inc.,*
   68 N.Y.2d 296 (1986) ................................................................. 17

*People v. Rosario,*
   78 N.Y.2d 583 (1991) ................................................................. 22

*People v. Xirum,*
   45 Misc.3d 785 (Sup. Ct. Kings Cty. 2014) ................................................................. 17

## STATUTES

6 U.S.C. § 557 ................................................................. 2

8 U.S.C. § 1101 ................................................................. 2

8 U.S.C. § 1103(a)(3) ................................................................. 4, 13

8 U.S.C. § 1103(a)(11)(A) ................................................................. 3, 12, 14

8 U.S.C. § 1182(a)(6)(A)(i) ................................................................. 7, 8

8 U.S.C. § 1226 ................................................................. 5, 19

8 U.S.C. § 1226(a) ................................................................. 2, 4, 13, 17

8 U.S.C. § 1226(b) ................................................................. 3

8 U.S.C. § 1226(c) ................................................................. 4, 13

8 U.S.C. § 1226(c)(1) ................................................................................................2

8 U.S.C. § 1229 .........................................................................................................7

8 U.S.C. § 1229(b)(1) .............................................................................................19

8 U.S.C. § 1231 .........................................................................................................5

8 U.S.C. § 1231(a) ............................................................................................. 4, 13

8 U.S.C. § 1231(a)(1)(A) ..........................................................................................2

8 U.S.C. § 1231(a)(2) ................................................................................................2

8 U.S.C. § 1231(g)(1) ...............................................................................................3

8 U.S.C. § 1252(a)(5) .............................................................................................11

8 U.S.C. § 1252 (b)(9) ...........................................................................................11

8 U.S.C. § 1252 (d) ................................................................................................11

8 U.S.C. § 1357(d) ............................................................................................. 4, 13

8 U.S.C. § 1357(g) ....................................................................................................2

8 U.S.C. § 1357(g)(1) ........................................................................................ 2, 15

8 U.S.C. § 1357(g)(3) ................................................................................................2

8 U.S.C. § 1357(g)(8) ........................................................................................ 6, 14

8 U.S.C. § 1357(g)(10) ................................................................................... 3, 4, 13

8 U.S.C. § 1357(g)(10)(B) .............................................................................2, 6, 11,15

8 U.S.C. § 1373(a) ....................................................................................................2

28 U.S.C. § 517 .........................................................................................................1

28 U.S.C. § 518(b) ....................................................................................................1

**REGULATIONS**

8 C.F.R. § 236.1 .........................................................................................................5

8 C.F.R. § 236.1(c)(8) ...................................................................................... 17, 19

8 C.F.R. § 236.1(d)(1) .............................................................................................19

8 C.F.R. § 241.2 ........................................................................................................5

8 C.F.R. § 287.3(d) ............................................................................................ 17, 19

8 C.F.R. § 287.5 ........................................................................................................5

8 C.F.R. § 287.7(a) ...................................................................................................4

8 C.F.R. § 287.7(d) ................................................................................................ 4)

## OTHER AUTHORITIES

Wayne R. LaFave, *Search and Seizure* § 3.5(b) (2016) ..............................................22

ICE Policy No. 10074.2 (Mar. 24, 2017),
    https://www.ice.gov/sites/default/files/documents/Document/2017/10074-2.pdf.....................5

# INTRODUCTION

The United States respectfully submits this statement of interest in accordance with federal statutes that authorize the United States Department of Justice "to attend to the interests of the United States" by "argu[ing] any case in a court of the United States in which the United States is interested." 28 U.S.C. §§ 517, 518(b).[1]

This memorandum of law explains why the Suffolk County Sheriff's Office's (SCSO) cooperation with federal immigration detainers and federal immigration arrest warrants issued by U.S. Immigration and Customs Enforcement (ICE) is lawful.[2] A detainer asks local law enforcement to aid federal immigration-enforcement efforts by notifying ICE prior to the release of an individual for whom there is probable cause to believe that he or she is a removable alien, and by maintaining custody of that alien briefly (up to 48 hours beyond when the alien would otherwise be released) so that ICE can take custody of the alien in an orderly way. Without such cooperation, removable aliens, including individuals who have committed crimes, would be released into local communities, where it is harder and more dangerous for ICE to take custody of them.

ICE's use of—and the SCSO's cooperation with—detainers and federal arrest warrants is consistent with federal and New York law. Federal statutes authorize ICE to use detainers and warrants, and allow States and localities to cooperate with them. Such cooperation is consistent with both the Fourth Amendment to the U.S. Constitution and Article I, § 12 of the New York Constitution. The Court should grant SCSO's motion to dismiss the second amended complaint.

# LEGAL BACKGROUND

The federal government has "broad, undoubted power of the subject of immigration and the

---

[1] Under 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States . . . ." *See also* 28 U.S.C. § 518(b) (authorizing Attorney General to send Department attorneys to argue such cases). These statutes provide a mechanism for the United States to submit its views in cases in which the United States is not a party. *See, e.g., Application of Blondin v. Dubois*, 78 F. Supp. 2d 283, 288 n.4 (S.D.N.Y. 2000); *see also Freund v. Republic of France*, 592 F. Supp. 2d 540, 568 (S.D.N.Y. 2008) (Sullivan, J.), *aff'd sub nom. Freund v. Societe Nationale des Chemins de fer Francais*, 391 F. App'x 939 (2d Cir. 2010) (affording deference to the United States' statement of interest "because of both its source and the persuasiveness of its reasoning.").
[2] Another component of the Department of Homeland Security (DHS), U.S. Customs and Border Protection (CBP), also issues detainers. As the detainers here were issued by ICE, this brief analyzes ICE detainer practices only.

status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). This includes authority to interview, arrest, and detain removable aliens. *See* 8 U.S.C. § 1226(a) (Secretary of Homeland Security may issue administrative arrest warrants and may arrest and detain aliens pending removal decision); *id.* § 1226(c)(1) (Secretary "shall take into custody" aliens who have committed certain crimes when "released"); *id.* § 1231(a)(1)(A), (2) (Secretary may detain and remove aliens ordered removed); *id.* § 1357(a)(1), (2) (authorizing certain warrantless interrogations and arrests).[3]

In enforcing the immigration laws, the federal government works closely with state and local governments. "Consultation between federal and state officials is an important feature of the immigration system." *Arizona*, 567 U.S. at 411. Congress therefore has directed that a federal, state, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, DHS "information regarding the citizenship or immigration status ... of any individual." 8 U.S.C. § 1373(a); *see id.* § 1644 (same); *see also id.* § 1357(g)(10)(A) (providing for state and local "communicat[ion] with [DHS] regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States"). Congress also expressly authorized states and localities "to cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." *Id.* § 1357(g)(10)(B).

The Immigration and Nationality Act (INA), 8 U.S.C. § 1101, *et seq.*, contemplates these cooperative efforts, which are critical to enabling the federal government to identify and remove the hundreds of thousands of aliens who violate immigration laws each year. There are three categories of cooperation.

First, the INA specifically authorizes DHS to enter into cooperative agreements with States and localities, *see* 8 U.S.C. § 1357(g), also known as 287(g) agreements, under which state and local officers may, "subject to the direction and supervision of the [Secretary]," *id.* § 1357(g)(3), perform the "functions of an immigration officer in relation to the investigation, apprehension, or detention of aliens." *Id.* § 1357(g)(1). SCSO currently has no such agreement with ICE.

---

[3] Following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" are now read to mean the Secretary of Homeland Security. *See* 6 U.S.C. § 557; *Clark v. Suarez Martinez,* 543 U.S. 371, 374 n.1 (2005).

Second, Congress has authorized DHS to enter into agreements, referred to as intergovernmental services agreements (IGSAs), with localities for the "housing, care, and security of persons detained by [DHS] pursuant to Federal law." *Id.* § 1103(a)(11)(A). In such circumstances, ICE has arrested a detainee and the alien is in ICE's custody, but ICE uses the IGSA to house the alien temporarily in a state or local facility. *See, e.g., Roman v. Ashcroft*, 340 F.3d 314, 320–21 (6th Cir. 2003). Such agreements, unlike 287(g) agreements, have no formal training requirements. *See* 8 U.S.C. § 1103(a)(11)(A); *accord id.* § 1231(g)(1). Until an immigration officer arrests the detainee, a detainee cannot be held under an IGSA.[4]

If, however, ICE has previously arrested an alien through service of an administrative warrant, and should that alien later come into state or local custody following the commission of a new criminal offense, the state or locality may administratively transfer the alien to federal custody upon completion of the alien's state charges should ICE request that it do so in limited circumstances. Where ICE has previously released an alien on bond, and that alien has reoffended, ICE may reinstate the prior administrative warrant after revoking bond. *See* 8 U.S.C. § 1226(b) ("The [Secretary] at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien."). In such circumstances, ICE has already served the warrant and effected an arrest, so the alien could be returned to ICE custody without issuance of a new arrest warrant. In addition, if ICE has issued a new arrest warrant based on the new state criminal charges, and serves that warrant on the alien while still in state custody, the locality may, following a request from ICE to do so, administratively transfer the alien to federal custody when eligible for release from state custody. In either scenario, such transfers are permissible cooperative "apprehension[s]" or "detention[s]" made at ICE's request, so long as they are preceded by a request from ICE to a locality that has an IGSA with the federal government that authorizes the locality to house aliens on behalf of ICE in exchange for payment from ICE for those services. *See* 8 U.S.C. § 1357(g)(10). As discussed below, SCSO had an IGSA with ICE.

Third, even without a formal 287(g) agreement or IGSA detention contract, States and

---

[4] An IGSA does not deputize state law enforcement to unilaterally perform the functions of a federal immigration officer. Rather, it governs the housing, at federal government request and cost, of federal detainees in state facilities. Therefore, an IGSA is distinct from a 287(g) agreement. *Compare* 8 U.S.C. § 1103(a)(11)(A) (authority for IGSAs), *with id.* § 1357(g)(1)-(9) (authority for 287(g) agreements).

localities such as SCSO may "communicate with the [Secretary] regarding the immigration status of any individual" or "cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States," 8 U.S.C. § 1357(g)(10), when that cooperation is following a "request, approval, or other instruction from the Federal Government," *Arizona*, 567 U.S. at 410. Such cooperation may include: "participat[ing] in a joint task force with federal officers"; "provid[ing] operational support in executing a warrant"; "allow[ing] federal immigration officials to gain access to detainees held in state facilities"; "arrest[ing] an alien for being removable" when the federal government requests such cooperation; and "responding to requests for information about when an alien will be released from their custody." *Id.* The INA permits such cooperation whether it is directed by state statute or is implemented *ad hoc* by a local sheriff. *See id.* at 413. To comply with the Supremacy Clause, which invalidates undesired intrusions on the federal government's expansive immigration authority, a state or local government may not cooperate beyond the terms of the federal government's "request, approval, or other instruction." *Arizona*, 567 U.S. at 403. Thus, compliance with ICE policy, as expressed in the detainer request, is essential to the lawfulness of the local action.

States and localities frequently cooperate with federal immigration enforcement by responding to federal requests for assistance, often contained in federal immigration detainers, including those issued by ICE, a component of DHS responsible for immigration enforcement in the interior of the country. An immigration detainer notifies a State or locality that ICE intends to take custody of a removable alien who is detained in state or local criminal custody, and asks the State or locality to cooperate with ICE in that effort. A detainer asks a State or locality to cooperate in two main respects: (1) by providing ICE with advance notification of the alien's release from criminal custody; and (2) by maintaining custody of the alien for up to 48 hours, based on ICE's determination that it has probable cause to believe that the alien is removable, until DHS can take custody. *See* 8 C.F.R. § 287.7(a) (describing notification of release), (d) (describing request for continued detention). Statutes authorizing such action include 8 U.S.C. §§ 1103(a)(3), 1226(a) and (c), 1231(a), and 1357(d).

DHS's detainer form, Form I-247A, sets forth the basis for DHS's determination that it has probable cause to believe that the subject is a removable alien. The form states that DHS's probable cause is based on: (1) a final order of removal against the alien; (2) the pendency of removal

proceedings against the alien; (3) biometric confirmation of the alien's identity and a records match in federal databases that indicate, by themselves or with other reliable information, that the alien either lacks lawful immigration status or, despite such status, is removable; or (4) the alien's voluntary statements to an immigration officer, or other reliable evidence that the alien either lacks lawful immigration status or, despite such status, is removable. Form I-247A at 1, https://www.ice.gov/sites/default/files/documents/Document/2017/I-247A.pdf.

Specifically, the current detainer form requests that the State or locality "[m]aintain custody of the alien for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from your custody." *Id.* (emphasis in original). The form makes clear that, "[t]his detainer arises from DHS authorities and should not impact decisions about the alien's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters." *Id.* The form also says that the "alien must be served with a copy of this form for the detainer to take effect." *Id.* The form encourages local law enforcement and the alien to contact ICE with "any questions or concerns" about a detainer. *Id.*

As of April 2, 2017, ICE policy requires that detainers be accompanied by a signed administrative warrant issued under 8 U.S.C. §§ 1226 or 1231(a). *See* ICE Policy No. 10074.2 ¶¶ 2.4, 2.5, https://www.ice.gov/sites/default/files/documents/Document/2017/10074-2.pdf. That warrant—either a Form I-200, Warrant for Arrest of Alien (issued for aliens not yet subject to a removal order under 8 U.S.C. § 1226) or a Form I-205, Warrant of Removal/Deportation (issued for aliens subject to a final removal order under 8 U.S.C. § 1231)—is issued by an executive immigration officer and sets forth the basis for that officer's probable-cause determination. *See* 8 C.F.R. §§ 236.1, 241.2, 287.5. It is this detainer and warrant which authorize a county to detain inmates who are otherwise scheduled for release. *See New York v. U.S. Dep't of Justice*, --- F.3d ----, 2020 WL 911417, *7 n.10 (2d Cir. Feb. 26, 2020) ("Supported by an administrative warrant issued on a showing of probable cause, the detainer generally requests the agency then having custody of the alien to . . . detain the alien for a brief time to allow federal authorities to assume custody.").

In sum, a state or local law enforcement agency may generally physically detain an alien suspected of being removable in three scenarios: (1) the jurisdiction has a 287(g) agreement with ICE, under which "state and local officials become de facto immigration officers, competent to act on their

own initiative," *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 180 (5th Cir. 2018); (2) the jurisdiction has an IGSA with ICE, which authorizes local law enforcement to house aliens at ICE's request, after ICE initially takes custody of those aliens and then decides to book those aliens into the local facility as ICE detainees, *see Roman*, 340 F.3d at 320–21; or (3) ICE requests cooperation from the law enforcement agency through a detainer, accompanied by an administrative warrant, thereby authorizing the locality to maintain custody of the alien for up to 48 hours, and "under color of Federal authority" for purposes of liability or immunity from suit. 8 U.S.C. § 1357(g)(8), (10)(B). Outside of those scenarios or absent a "predicate federal request" to detain, *see El Cenizo*, 890 F.3d at 189, a local government's seizure based on suspected removability is unilateral and thus in many cases unlawful as state action preempted by federal law. *Arizona*, 567 U.S. at 410.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    SCSO's cooperation with ICE

The SCSO had an IGSA with the United States Marshals Service from 1994 to November 14, 2018. *See* Declaration of ICE Assistant Field Office Director Jacob Antoninis (Antoninis Decl.) ¶¶ 5, 14. The IGSA was modified in October 2017 to allow ICE to house immigration detainees in ICE custody at SCSO facilities located in Riverhead, New York. *See* Antoninis Decl. ¶ 5. Under ICE policy, if ICE wants to be notified of the impending release of an alien in state criminal custody for whom ICE has probable cause to believe he or she is removable from the United States, it will lodge a detainer and administrative warrant with the alien's state or local custodian. *See* ICE Policy No. 10074.2 ¶¶ 2.3–2.7. Once grounds for state custody lapse—that is, once the state charge does not authorize further detention—if ICE wants to take physical custody of the alien, ICE will do so within 48 hours. *Id.* ¶ 2.7. Alternatively, if ICE wanted to use bed space at Riverhead under the IGSA, ICE would arrest the alien upon his release Riverhead, or from SCSO's detention facility located in Yaphank, New York, through the personal service of an administrative warrant, after which ICE would book the alien back into SCSO physical custody at Riverhead subject to the IGSA as an ICE detainee. *See* Antoninis Decl. ¶¶ 9–13.

On November 14, 2018, the New York State Appellate Division, Second Department, issued a decision in *People ex rel. Wells v. DeMarco*, 168 A.D.3d 31, 88 N.Y.S.3d 518 (N.Y. App. Div. 2018). Pursuant to this decision, SCSO no longer holds any alien in their custody pursuant to an ICE detainer.

SCSO also no longer operates under an IGSA with ICE. Antoninis Decl. ¶ 14.


## II.    Plaintiffs' claims[5]

### A.    Plaintiff Joaquin Orellana Castaneda

According to court paperwork, at about 4:15 a.m. on April 23, 2017, the Suffolk County Police Department (SCPD) observed Castaneda driving through a steady red light, driving on the sidewalk, and otherwise failing to stay in his lane. *See* Antoninis Decl. ¶ 7. Standardized field sobriety tests indicated Castaneda was intoxicated and SCPD arrested Castaneda for driving while intoxicated (DWI). *Id.* Castaneda was then placed in SCSO custody. Based on Castaneda's voluntary statements and other reliable evidence, ICE had probable cause to believe that he lacked lawful immigration status and was subject to removal for being present in the United States without having been inspected and admitted or paroled. *Id.*; *see also* 8 U.S.C. § 1182(a)(6)(A)(i). At around 12:15 p.m. the next day, ICE provided SCSO with a detainer, signed by an ICE deportation officer. *See* Ex. D. At the same time, ICE provided SCSO with an administrative warrant for Castaneda's arrest, signed by an ICE supervisory officer. *See* Antoninis Decl. ¶ 7. ICE also issued Castaneda a Notice to Appear (NTA).[6] *Id.* At 4:12 p.m. that day, Castaneda posted bond with SCSO, but was not released. *Id.* SCSO notified ICE that, at this time, Castaneda remained in detention "only" due to ICE's detainer and arrest warrant, and requested that ICE make arrangements for a "pick-up no later than 48 hours of this notification." *Id.* Less than 48 hours later, at 5:03 a.m. on April 26, Castaneda was released to ICE. *Id.* That day, Castaneda received the NTA and a notice stating the basis for ICE's custody determination. *Id.* On August 25, 2017 an immigration judge (IJ) denied Castaneda's request for release on bond, finding that Castaneda posed a danger to society because of DWI charges. *Id.* Castaneda moved to terminate his proceedings, or, alternatively, to suppress evidence obtained by ICE based on the detainer, alleging that ICE's actions violated his Fourth and Fifth Amendment rights and exceeded ICE's statutory authority under the INA. *See id.* On October 17, 2017, an IJ denied the motions and

---

[5] Exhibits specific to each individual plaintiff, including pertinent arrest reports and ICE warrants, were previously filed with the Court with the United States' motion to dismiss. *See* ECF 24, Exhibits A through V (ECF 24:3 through 24:24).

[6] An NTA provides the alien with written notice of the charges of inadmissibility or deportability; legal authority of immigration proceedings, notice, counsel and failure to appear requirements. 8 U.S.C. § 1229.

found him removable as charged. *Id.* Castaneda subsequently was removed to Guatemala on December 13, 2017. *Id.*.

### B.    Plaintiff German Hernandez Argueta

On July 2, 2017, SCPD arrested German Hernandez Argueta, also known as "Jose Amilcar Romero," for false personation and for "creat[ing] a hazardous or physically offensive condition by some act which served no legitimate purpose." Antoninis Decl. ¶ 8. Hernandez was detained in SCSO's custody. *Id.* While in custody, ICE officers interviewed Hernandez. *Id.* Based on Hernandez's voluntary statements and other reliable evidence, ICE had probable cause to believe that Hernandez lacked lawful U.S. immigration status and was subject to removal under 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* On July 7, 2017, ICE issued Hernandez a NTA. *Id.* That same day, ICE provided SCSO with a detainer, signed by a deportation officer, and an administrative warrant for Hernandez's arrest, signed by a supervisory deportation officer. *Id.* On August 18, 2017, Hernandez pleaded guilty to disorderly conduct in Suffolk County criminal court and was sentenced to time served. *Id.* That day Hernandez was transferred from SCSO custody to ICE custody, pending the outcome of his removal proceedings. *Id.* During his removal proceedings, an IJ granted Hernandez release from ICE custody on bond of $6,000. *Id.*

Hernandez was arrested again by SCPD on March 9, 2018, for criminal possession of a weapon and false personation. *Id.* On March 10, 2018, ICE lodged a detainer and a second administrative warrant with SCPD for Hernandez's arrest. *Id.* An ICE officer then served the detainer and arrest warrant on Hernandez in person on March 12, 2018. *Id.* On March 30, 2018, Hernandez became eligible for release from SCPD custody. *Id.* ICE requested that SCSO detain Hernandez pursuant to the IGSA and the outstanding administrative warrant that ICE had previously served on Hernandez. *Id.* SCSO then administratively transferred Hernandez into ICE custody consistent with the IGSA and the ICE request. *Id.* ICE paid SCSO to house Hernandez during this time. *Id.* On April 2, 2018, ICE transferred Hernandez to another ICE detention facility. *Id.* On May 8, 2018, ICE cancelled Hernandez's previously posted $6,000 bond. *Id.* On June 22, 2018, an IJ granted Hernandez another bond in the amount of $5,000, and ICE released Hernandez on August 3, 2018 when he posted that bond. *Id.* Hernandez appeared before an IJ on September 17, 2018, and his merits hearing is now scheduled for August 3, 2020. *Id.*

### III.    The present action

Castaneda filed suit on July 18, 2017, against Suffolk County and the federal government (DHS, ICE, and several ICE officials in their official capacity). *See* ECF 1. On August 18, Castaneda filed an amended complaint that added Hernandez as a plaintiff and added a claim for a writ of habeas corpus. *See* ECF 12. On November 9, 2017, the federal government and the Suffolk County defendants each moved to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *See* ECF 23, 24. On January 2, 2018, the Court so ordered dismissal upon the Plaintiffs and the federal government's stipulation, whereby this action was dismissed against the federal government without prejudice under Fed. R. Civ. P. 41(a)(2). ECF 30. On May 29, Plaintiffs filed a second amended complaint solely against defendants County of Suffolk, Steven Bellone, SCSO, Errol Toulon, Jr., and "other individuals in charge to be identified" (collectively "Suffolk Defendants"); no federal government officials are named as defendants. *See* 2AC. The second amended complaint also presents a putative class and sub-class. *See id.* On August 9, 2018, Suffolk Defendants filed a motion to dismiss the second amended complaint. ECF 40. Plaintiffs and the Suffolk Defendants then attempted to negotiate a settlement, but to no avail. ECF 71. On December 13, 2019, Plaintiffs sought permission to file a motion for summary judgment on liability. ECF 72. That motion was denied. *See* Order, dated Jan. 14, 2020. Suffolk Defendants renewed their motion to dismiss on February 11, 2020. Plaintiffs' opposition is due to be served by March 10, 2020.

### ARGUMENT

### I.    Plaintiffs' claims should be dismissed under Fed. R. Civ. P. 12(b)(1)

This action should be dismissed under Fed. R. Civ. P 12(b)(1) because Plaintiffs lack Article III standing to raise claims for prospective equitable relief—both injunctive and declaratory relief—on behalf of themselves or anyone else. To invoke federal subject matter jurisdiction, a party must establish the existence of a "justiciable controversy" with the adverse party—one that is "definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937). In other words, a plaintiff must demonstrate "'a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify the exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). For this reason, plaintiffs bringing suit in

federal courts must demonstrate that they have standing to seek the relief sought in the complaint. *See Allen v. Wright*, 468 U.S. 737, 751 (1984).

Even if a party has standing to obtain damages to redress *past* injury, an individual asserting constitutional violations must demonstrate that he is "likely to suffer future injury from" the challenged conduct in order to justify prospective equitable relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *Faulcon v. Jordan*, 911 F. Supp. 52, 54 (N.D.N.Y. 1995) ("Although the plaintiff's past record suggests a certain recidivism, that alone, particularly given that there are no threats of arrest against the plaintiff will not confer standing."). That showing requires demonstrating a "likelihood of substantial and immediate irreparable injury," *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974), *i.e.*, a demonstration that the plaintiff faces "a real and *immediate* threat that he again" will suffer the same alleged harm. *Lyons*, 461 U.S. at 105.

Plaintiffs fail to allege any likelihood that they *will again* be subject to an ICE detainer acted upon by Suffolk County. Indeed, following the New York Appellate Division's November 2018 decision *People ex rel. Wells v. DeMarco*, 168 A.D.3d 31, 88 N.Y.S.3d 518 (N.Y. App. Div. 2018), SCSO no longer holds any alien in their custody pursuant to an ICE detainer. Antoninis Decl. ¶ 14. SCSO also no longer operates under an IGSA with ICE. *Id.; see Lamar Advertising of Penn., LLC v. Town of Orchard Park*, 356 F.3d 365, 377 (2d Cir. 2004) (holding that, when a government entity repeals a challenged provision, courts find the plaintiff's claims moot "absent *evidence* that the defendant intends to reinstate the challenged [provision] after the litigation is dismissed") (emphasis added).

And such a showing in any event would require showing they are likely to be arrested *yet again* for new *criminal* conduct, which cannot support standing because Plaintiffs "themselves are able—and indeed required by law—to prevent such a possibility from occurring." *Spencer v. Kemna*, 523 U.S. 1, 15 (2003). They accordingly cannot "show[] that the police [are] likely to do this to [them] again." *Lyons*, 461 U.S. at 107. Plaintiffs thus have no personal stake in the outcome of the controversy, and their claims must be dismissed as unripe. *See Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (ripeness doctrine is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way [].").

Plaintiffs may not rely on alleged injury to unnamed putative class members. They "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified" individuals. *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) (same). Plaintiffs cannot "show[] that the police [are] likely to do this to [them] again," as required for seeking prospective injunctive or declaratory relief. *Lyons*, 461 U.S. at 107; *see O'Shea*, 414 U.S. at 497 ("[A]ttempting to anticipate whether and when these respondents will be charged with crime and will be made to appear before either petitioner takes us into the area of speculation and conjecture.") (citations omitted). Indeed, Castaneda has been removed from the United States and Hernandez has been released on bond and is in pending removal proceedings. So neither Plaintiff is now subject to a detainer acted upon by Suffolk County, nor is there any alleged likelihood that they will be subject to such a detainer in the future. Plaintiffs' lack of justification for equitable relief also renders their claims as moot, and therefore the Court must dismiss them for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See, e.g.*, *Fuller v. BIA*, 702 F.3d 83, 86 (2d Cir. 2012) (a claim becomes moot when "event[s] occur … that make[] it impossible for the court to grant any effectual relief whatever to a prevailing party."); *Xian Yong Zeng on behalf of Tie Liu v. Kerry*, 266 F. Supp. 3d 645, 647 (E.D.N.Y. 2017) ("When a court is presented with issues that 'are no longer live' or when the parties 'lack a legally cognizable interest in the outcome,' the case is moot.").[7]

## II.   Even if the Court had jurisdiction, Plaintiffs' claims would need to be dismissed under Fed. R. Civ. P. 12(b)(6)

### A.   Cooperation with ICE Detainers is consistent with federal statutory law

The INA authorizes cooperation with ICE detainers or administrative transfers if the local government acts following a "request, approval, or other instruction from the Federal Government."

---

[7] As the Government argued previously, see ECF 24-1 at 9–14, there are two other reasons why these issues are not properly before this Court. First, the INA provides that Plaintiffs must raise their constitutional claims in their pending removal proceedings—before the immigration court, before the Board of Immigration Appeals, and (if need be) before the Second Circuit. *See* ECF 24-1 at 11–14; 8 U.S.C. §§ 1252(a)(5), (b)(9), (d). Second, Castaneda is collaterally estopped from re-litigating claims that were already litigated and decided in immigration court. *See* ECF 24-1 at 14; *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012) (doctrine applies to "administrative agency's determination of certain issues of law or fact"). The immigration judge's decision on Castaneda's claims was necessarily determined antecedent to the IJ's decision that Castaneda was subject to a removal from the United States. *See Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc.*, 757 F. Supp. 2d 218, 226 (E.D.N.Y. 2010) (Bianco, J.).

*Arizona*, 567 U.S. at 410. Upon receiving the request or instruction from ICE, local officers are permitted by the INA to "cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(10)(B).

The SCSO's cooperation with ICE detainers or administrative transfers satisfies these requirements. *First,* detainers are "request[s] . . . from the Federal Government" to a State or locality to assist its efforts to detain a particular alien, so complying with those requests is necessarily permissible cooperation at the federal government's "request, approval, or other instruction." *Arizona*, 567 U.S. at 410; *accord El Cenizo,* 890 F.3d at 189 (assistance with detainers occurs "only when there is already federal direction—namely, an ICE-detainer *request*") (emphasis added); *accord Lopez-Lopez v. Cty. of Allegan*, 321 F. Supp. 3d 794, 799 (W.D. Mich. 2018) (similar)*; Tenorio-Serrano v. Driscoll*, 324 F. Supp. 3d 1053, 1065 (D. Ariz. 2018) (similar); *see also Perez-Ramirez v. Norwood*, 322 F. Supp. 3d 1169, 1171 (D. Kan. 2018) (holding that compliance with ICE detainer was lawful).[8]

Likewise, a request that a locality administratively transfer an alien to ICE custody following release from state custody when ICE has previously served an arrest warrant is a "request" for assistance. SCSO administratively transferred Hernandez to ICE following his second arrest after ICE personally served an arrest warrant on Hernandez, pursuant to federal law, which permits ICE to pay localities for the housing of aliens arrested and detained by ICE "pursuant to Federal law under an agreement" with any locality for "detention services" including "guaranteed bed space for persons detained by the" federal government. 8 U.S.C. § 1103(a)(11)(A); *see, e.g., Henderson v. INS*, 157 F.3d 106, 122 (2d Cir. 1998) (although the warden of each detention facility technically has day-to-day control over alien detainees, INS District Director for the district where detention facility is located "has power over" such alien habeas corpus petitioners); *Roman*, 340 F.3d at 320–21 (addressing section

---

[8] Plaintiffs suggest that such cooperation may violate the Tenth Amendment, based on their view that detainers "require state and local law enforcement officials to hold individuals in custody." 2AC ¶ 7. That suggestion is wrong. It is well-settled that detainers are *requests*, and do not compel States and localities to take any action. *See, e.g., Galarza v. Szalczyk*, 745 F.3d 634, 643 (3d Cir. 2014). But whatever limits there may be on federal compulsion of localities, there is no such compulsion as detainers seek voluntary cooperation, not compulsion. And even if the federal government cannot compel cooperation by a locality, the county has authority to require county-wide cooperation with detainers—just as it may impose innumerable other county-wide measures. *See, e.g., El Cenizo*, 890 F.3d at 181. And Suffolk County may do so without raising preemption concerns. In short, even where the federal government may lack authority to mandate state or local action, States and localities may still use the "powers . . . reserved to the[m]," U.S. Const. amend. X, to accomplish the same end. *See City of New York v. United States*, 179 F.3d 29, 36 (2d Cir. 1999).

1103(a)(11)(A) and holding ICE is the proper defendant in habeas cases involving persons detained at ICE's request in state and local contract detention facilities). In short, once ICE served an arrest warrant on Hernandez and later invoked its authority pursuant to the agreement to house Hernandez at the SCSO facility at Riverhead, Hernandez was detained there as an ICE detainee subject to ICE's custody. SCSO's facilitation of that transfer at ICE's express request is permitted cooperation under federal law. *See, e.g.*, *Abriq v. Nashville*, 3:17-cv-690, slip op. at 6–9 (M. D. Tenn. Sept. 17, 2018) (observing that section 1357(g)(10) permits "transfer of the detainee [] from state/territorial custody to federal custody").

*Second,* the INA authorizes ICE to request local cooperation "either to hold the prisoner for the agency or to notify the agency when release [] is imminent." *McLean v. Crabtree*, 173 F.3d 1176, 1185 n.12 (9th Cir. 1998) (defining a detainer as a request "to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent" and holding that DHS "has authority to lodge a detainer against a prisoner"); *accord El Cenizo*, 890 F.3d at 188 (similar). This detainer "authority," formalized by 8 U.S.C. §§ 1103(a)(3), 1226(a) and (c), 1231(a), and 1357(d), "predates the INA and has long been viewed as implied by federal immigration enforcers' authority to arrest those suspected of being removable." *Santoyo v. United States*, No. 16-855, 2017 WL 6033861, *3 (W.D. Tex. Oct. 18, 2017); *see United States v. Gomez-Robles*, No. 17-730, 2017 WL 6558595, *3 (D. Ariz. Nov. 28, 2017) (similar); *Mendez v. United States*, No. 02 CR 745 (RPP), 2009 WL 4857490, at *1 n.2 (S.D.N.Y. Dec. 11, 2009) (similar); *Comm. for Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma*, 644 F. Supp. 2d 1177, 1199 (N.D. Cal. 2009) (similar); *see also Akande v. U.S. Marshals Serv.*, 659 F. App'x 681, 684 (2d Cir. 2016) ("[T]he immigration detainer would appear . . . to justify an additional 48 hours of detention beyond the expiration of the prisoner's term"); *Rosario v. New York City*, No. 12 Civ. 4795 (PAE), 2013 WL 20992547, at *3 (S.D.N.Y. May 15, 2013) (noting INA "authority to detain [alien] under [] detainer").

Courts have thus recognized that federal law, through the INA in 8 U.S.C. § 1357(g)(10)(B), permits local cooperation with federal notification and detention requests. *See, e.g.*, *Santos v. Frederick Cty. Bd. of Comm'rs*, 725 F.3d 451, 467 (4th Cir. 2013) (holding local cooperation is lawful when "at ICE's express direction"); *United States v. Ovando-Garzo*, 752 F.3d 1161, 1164 (8th Cir. 2014) (holding local cooperation without "written agreement" is lawful if it is "not unilateral"); *City of S. Miami v.*

*Desantis*, 408 F. Supp. 3d 1266, 1301 (S.D. Fla. 2019) ("Based upon the plain language of § 1357(g)(10)(B), [the state's] Detainer Mandate on its face is not preempted because it falls within the scope of 'cooperat[ion]. . . in the . . . detention . . . of aliens not lawfully present in the United States.'") (citing § 1357(g)(10)(B)); *Rios v. Jenkins*, 390 F. Supp. 3d 714, 725 (W.D. Va. 2019) (holding that *Arizona* "can be read to suggest that . . . detaining an individual in accordance with an ICE detainer" was within the scope of a sheriff's "authority to cooperate with federal immigration enforcement efforts"); *Lopez-Lopez*, 321 F. Supp. 3d at 799 (W.D. Mich. 2018); *Comm. for Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma*, 644 F. Supp. 2d 1177 (N.D. Cal. 2009). Cooperation with an immigration detainer "provide[s] operational support" to the federal government. *Lopez-Lopez*, 321 F. Supp. 3d at 799 (citing 8 U.S.C. § 1357(g)(10)). That action is taken at the "request, approval, or other instruction from the Federal Government." *Arizona*, 567 U.S. at 410, and for purposes of liability or immunity from suit, "[a]n *officer* or *employee* of a State or political subdivision of a State acting *under color of authority* under this subsection . . . shall be considered to be acting under *color of Federal authority*." 8 U.S.C. § 1357(g)(8) (emphases added); *see also Arias v. ICE*, No. 07-1959, 2008 WL 1827604, *13–15 (D. Minn. Apr. 23, 2008) (joint immigration task force resulting in arrests). Federal law thus does not preempt SCSO's cooperation with detainers supported by a federal warrant.

*Third*, such cooperation is permitted even if the County lacks a formal 287(g) agreement or does not satisfy the training and certification requirements that accompany such agreements. As the Fifth Circuit explained, the INA, through section 1357(g)(10)(B), "indicates that Congress intended local cooperation without a formal agreement," and without "a written agreement, training, and direct supervision by DHS . . . in a range of key enforcement functions." *El Cenizo*, 890 F.3d at 179. That is, cooperation with immigration detainers is permitted and envisioned by the INA without any of the formal training and certification requirements necessary for "state and local officials [to] become de facto immigration officers, competent to act on their own initiative" under a formal 287(g) agreement. *Id.* Likewise, cooperation with ICE through an IGSA pursuant to 8 U.S.C. § 1103(a)(11)(A) at ICE's express request and after ICE has already served an arrest warrant on the alien previously is permissible cooperation under section 1357(g)(10)(B). *See La Raza v. Herbert*, 26 F. Supp. 3d 1125, 1142 (D. Utah 2014) (federal law permits and does not preempt state law requiring local law enforcement to transfer aliens to federal custody following their release from state custody).

14

Indeed, the U.S. Supreme Court in *Arizona* did not purport to define the outer limits of cooperation permitted by section 1357(g)(10). Instead, it listed a number of examples of permissible cooperation that States and localities may undertake without the training and certification requirements of a formal agreement under 8 U.S.C. § 1357(g)(1), including "arrest[ing] an alien for being removable" if that arrest is made in response to a "request" from the federal government. 567 U.S. at 410. *Arizona* distinguished between such a scenario—which is permissible under section 1357(g)(10)(B)—and the scenario authorized by the law at issue in *Arizona*: "unilateral state action to detain . . . aliens in custody for possible unlawful presence without federal direction and supervision" and without any federal "request" to do so. *Id.* at 410, 413; *accord El Cenizo*, 890 F.3d at 179–80 (state law requiring cooperation with federal detainers "permit[s] no unilateral enforcement activity" because cooperation only occurs following "a predicate federal request for assistance").

Moreover, there is no requirement under the INA that a State or locality may cooperate only if it has a formal cooperation agreement under 8 U.S.C. § 1357(g)(1) and its officers are trained and certified under that provision. *See* 8 U.S.C. § 1357(g)(10)(B). The Fifth Circuit rejected that assertion, *El Cenizo*, 890 F.3d at 179–80, and rightly so: Section 1357(g)(10) says that *no* formal "agreement under" section 1357(g) is required for local officers to "cooperate with" federal immigration officers. Formal agreements are quite different from informal cooperation. Under formal agreements, local officers undergo the training necessary to "perform [the] function of an immigration officer," 8 U.S.C. § 1357(g)(1)—allowing them to enforce immigration law without any triggering request from the federal government to do so. *See Arizona*, 567 U.S. at 409–10 (explaining when DHS "grant[s] that authority to specific officers" through formal agreement). Under section 1357(g)(10), officers not subject to such agreements may still cooperate absent any formal training, so long as such cooperation is not "unilateral," but at the "request, approval, or other instruction from the Federal Government." *Id.* at 410; *see United States v. Ovando-Garzo*, 752 F.3d 1161, 1164 (8th Cir. 2014) (argument to the contrary is "meritless"). The County's cooperation with federal immigration detainers or administrative transfers thus presumes that such cooperation will occur *consistent with* federal law, because a detainer "always requires a predicate federal *request* before local officers may detain aliens for the additional 48 hours." *El Cenizo*, 890 F.3d at 189 (emphasis added); *see New York*, 2020 WL 911417, at *7 n.10.

15

Cooperation is thus permitted irrespective of whether it is directed by a state statute or by a local sheriff: in neither case does it exceed the bounds of the cooperation permitted by Congress. *See Arizona*, 567 U.S. at 410, 413 (affirming state legislative mandate "requiring state officials to contact ICE as a routine matter"). The only limitation is that state-mandated cooperation may not "authorize state and local officers to engage in [] enforcement activities as a general matter" without "any input from the Federal Government." *Id.* at 408, 410. While "unilateral decision[s] of state officers to arrest an alien for being removable" are preempted, cooperation under a "request, approval, or other instruction from the Federal Government" is not. *Id.* at 410. Courts have thus recognized that federal law permits States and localities to cooperate, without formal training or certification, with federal requests to detain a removable alien. *See, e.g., El Cenizo*, 890 F.3d at 180 (holding that "[s]tate action under" the state-law provision requiring local cooperation with federal immigration enforcement does "not conflict with federal priorities or limit federal discretion [] because it requires a predicate federal request," and therefore "does not permit local officials to act without federal direction and supervision"); *Ovando-Garzo*, 752 F.3d at 1164 (cooperation without "written agreement" is lawful if "not unilateral"). Federal statutory law thus permits the County's cooperation with detainers or administrative transfer requests here because that cooperation is not unilateral and occurs following a request or direction from the federal government.

## B. Cooperation with ICE Detainers is consistent with the Fourth Amendment, the Fourteenth Amendment and thus also with Article I, Section 12 of the New York Constitution

The cooperation at issue here is also permitted under the Fourth Amendment, the Fourteenth Amendment,[9] and the New York State Constitution. At the outset, as the New York Court of Appeals

---

[9] Where a party raises both Fourth and Fourteenth Amendment challenges to the same nexus of events, as here, the "independent" Fourteenth Amendment due process claim collapses into the Fourth Amendment claim and cannot serve as a separate, freestanding claim. *See Bryant v. City of New York*, 404 F.3d 128, 135–36 (2d Cir. 2005); *Rios*, 390 F. Supp. 3d at 722. Indeed, as the Supreme Court explained, "[i]f the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment," and not the "due process clause." *Manuel v. City of Joliet*, 137 S. Ct. 911, 919 (2017). Moreover, a prerequisite to any due process claim, whether procedural or substantive, is an assertion of a cognizable liberty or property interest. *See, e.g., Gravitte v. N. Carolina Div. of Motor Vehicles*, 33 F. App'x 45, 48 (4th Cir. 2002). But the lodging of any detainer generally has no "immediate effect upon protected liberty interests," because the subject of a detainer is "not entitled to a hearing prior to the execution of the warrant or to compelled execution of the warrant" on which the detainer relies. *Heath v. U.S. Parole Comm'n*, 788

has explained, Article I, Section 12 of the New York Constitution is interpreted co-extensively with the Fourth Amendment to the U.S. Constitution. *People v. P.J. Video, Inc.*, 68 N.Y.2d 296, 304 (N.Y. 1986). "[T]he history of section 12 supports the presumption that the provision against unlawful searches and seizures contained in N.Y. Constitution, article I, § 12 conforms with that found in the 4th Amendment, and that this identity of language supports a policy of uniformity between State and Federal courts." *Id.* Accordingly, the Fourth Amendment and its New York equivalent are analyzed the same way in this context. *People v. Xirum*, 45 Misc. 3d 785, 787 (N.Y. Sup. Ct 2014); *see People v. P.J. Video*, 68 N.Y.2d 296, 304 (1986); *People v. Johnson*, 66 N.Y.2d 398, 406 (N.Y. 1985). For ease of reference, the United States will generally refer only to the Fourth Amendment. *See, e.g.*, *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 219 n.20 (N.D.N.Y. 2012) ("[I]f the Court finds that Plaintiff's Fourth Amendment rights have not been violated, it will also conclude that Plaintiff's parallel rights under the New York State Constitution have not been violated.").

Three points establish that local cooperation with detainers or administrative transfers accords with both the Fourth Amendment and its New York equivalent: (1) federal officials can constitutionally arrest aliens under a federal administrative warrant (which accompanies each ICE detainer); (2) the lawfulness of that practice does not change when local officials help effectuate such an arrest at ICE's request; and (3) local officials may constitutionally rely upon federal officials'

---

F.2d 85, 91 (2d Cir. 1986); *see Nasious v. Two Unkonwn B.I.C.E. Agents at Arapahoe Cty. Justice Ctr.*, 657 F. Supp. 2d 1218, 1223, 1225, *aff'd*, 366 F. App'x 894 ("Plaintiff's detention was imposed by the state of Colorado based on Plaintiff's pending criminal charges; it was not imposed by or in any way impacted by the ICE detainer," and "the ICE detainer could not, as a matter of law, constitute a restraint on or deprivation of a liberty"); *Keil v. Spinella*, 2011 WL 43491, *8–9 (S.D. Mo. Jan. 6, 2011) ("[A] detainer alone does not cause imprisonment or a seizure by ICE. Rather, a seizure only occurs when the agency to which the detainer was issued turns custody over to ICE."). This is especially true in the immigration context. Removable aliens generally lack any due process right to be free from detention pending resolution of their removal proceedings until such detention becomes prolonged. *See Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004). Until it does, detention remains "a constitutionally valid aspect of the deportation process," and impinges on no cognizable liberty interest. *Demore v. Kim*, 538 U.S. 510, 523 (2003). That is true whether the custodian of that detention is the federal government or a State or locality. *See, e.g., Themeus v. U.S. Dep't of Justice*, 643 F. App'x 830, 832-33 (11th Cir. 2016). To be sure, aliens who are not subject to mandatory detention may challenge their ongoing detention in their removal proceedings and seek release on bond. *See, e.g.*, 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(c)(8), 236.1(d)(1), 287.3(d). They may also seek to terminate their removal proceedings based on a pre-removal proceeding "deprivation of fundamental rights," including their Fourteenth Amendment rights. But the remedies available in removal proceedings do not create a freestanding due process right to avoid immigration detention. *See Demore*, 538 U.S. at 523. And absent such a cognizable liberty interest, there can be no procedural due process violation in the first place. *See Gravitte*, 33 F. App'x at 48. Thus, any claimed Fourteenth Amendment challenge fails.

probable-cause determinations.

*First*, the "Fourth Amendment does not require warrants to be based on probable cause of a crime, as opposed to a civil offense." *United States v. Phillips*, 834 F.3d 1176, 1181 (11th Cir. 2016) (collecting examples, including bench warrants for civil contempt and writs of replevin); *see, e.g.*, *United States v. Spencer*, 684 F.2d 220, 223 (2d Cir. 1982) (ruling that a New York statute authorizing police officers to execute civil bench warrants satisfies the Fourth Amendment). Arrests may be premised on probable cause of any legal violation, whether civil or criminal. *See, e.g.*, *El Cenizo*, 890 F.3d at 188 (collecting other constitutionally valid examples, including seizures of the mentally ill, those who pose a danger to themselves, and juvenile runaways); *Lopez-Lopez*, 321 F. Supp. 3d at 799 ("In fact, individuals may be arrested for any violation of law—civil or criminal."); *Perez-Ramirez*, 322 F. Supp. 3d at 1172 ("[T]he legality of an arrest of an alien based upon a civil immigration violation is well-established."). Indeed, given that "[i]n determining whether a search or seizure is unreasonable, [courts] begin with history," including "statutes and common law of the founding era," *Virginia v. Moore*, 553 U.S. 164, 168 (2008), that understanding is especially settled in the immigration context. There is an "overwhelming historical legislative recognition of the propriety of administrative arrest[s] for deportable aliens." *Abel v. United States*, 362 U.S. 217, 233 (1960); *see, e.g.*, *Lopez v. INS*, 758 F.2d 1390, 1393 (10th Cir. 1985) (aliens "may be arrested by administrative warrant issued without order of a magistrate"); *New York*, 2020 WL 911417, at *7 n.10.

Plaintiffs allege that detainers and administrative warrants "violate the Fourth Amendment's requirement that an individual arrested without a warrant be brought before a neutral magistrate for a probable cause hearing within 48 hours of arrest." *Id.* ¶ 78. They are mistaken. Given the civil context of federal immigration detainers, an executive immigration officer can constitutionally make the necessary probable-cause determination. It is well-settled that the term "magistrate" as it is understood in the arrest and presentment context is not limited to *judicial* officers; it in fact encompasses any "public civil officer, possessing such power—legislative, executive, or judicial—as the government appointing him may ordain." *Shadwick v. City of Tampa*, 407 U.S. 345, 349 (1972); *see Compton v. State of Alabama*, 214 U.S. 1, 7 (1909) ("the appellation of magistrate is not confined to justices of the peace, and other persons, *ejusdem generis*, who exercise general judicial powers; but it includes others *whose duties are strictly executive*") (emphasis added).

18

Indeed, it has long been the case that federal immigration officials in the Executive Branch may function as magistrates by issuing administrative warrants under federal statutes authorizing them to do so. *See, e.g.*, *Abel*, 362 U.S. at 234; *El Cenizo*, 890 F.3d at 187; *accord Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 876–80 (9th Cir. 2007) (in immigration context, warrants may be issued "outside the scope of the Fourth Amendment's Warrant Clause"); *Lopez*, 758 F.2d at 1393 (recognizing the validity of an "administrative warrant issued without an order of a magistrate"). And if Plaintiffs are brought into ICE custody, they may challenge their custody or removal proceedings before the "magistrate," *i.e.* ICE, as well as the immigration courts. *See* 8 U.S.C. §§ 1226, 1229(b)(1); 8 C.F.R. §§ 236.1(c)(8), 236.1(d)(1), 287.3(d). Given the civil context of immigration detainers, an executive officer can constitutionally make the necessary probable-cause determination outside the scope of the Fourth Amendment's Warrant Clause "without presentment to a judicial officer." *Sherman v. U.S. Parole Comm'n*, 502 F.3d at 876–80; *accord United States v. Lucas*, 499 F.3d 769, 776 (8th Cir. 2007) (en banc) (plurality) (administrative warrants need not be issued by a "neutral and detached magistrate in the sense of a judicial officer"); *U.S. ex rel. Randazzo v. Follette*, 418 F.2d 1319, 1322 (2d Cir. 1969) (a parole violator warrant designated as "administrative" under New York law was not subject to ordinary Fourth Amendment safeguards and thus did "not depend upon a showing of probable cause"); *Spinella v. Esperdy*, 188 F. Supp. 535, 540–41 (S.D.N.Y. 1960) (noting "unsoundness" of argument to the contrary). "[L]egislation giving authority to the Attorney General or his delegate to arrest aliens pending deportation proceedings under an administrative warrant, not a judicial warrant within the scope of the Fourth Amendment," has existed "from almost the beginning of the Nation." *Abel*, 362 U.S. at 234.

*Second*, because the Fourth Amendment allows federal immigration officers to arrest and detain based on an administrative warrant attesting to probable cause of removability, state and local officials can do the same when they act at the request or direction of the federal government. The Fourth Amendment does not apply differently when a local official, rather than a federal official, is detaining. "The Fourth Amendment's meaning [does] not change with local law enforcement practices." *Moore*, 553 U.S. at 172. To hold otherwise would cause Fourth Amendment "protections [to] vary if federal officers were not subject to the same statutory constraints as state officers." *Id.* at 176.

A police officer's "violation of [state] law [in arresting alien based on a violation of federal

immigration law] does not constitute a violation of the Fourth Amendment." *Martinez-Medina v. Holder*, 673 F.3d 1029, 1037 (9th Cir. 2011). Plaintiffs' contention is incorrect that *People ex rel. Wells v. DeMarco*, 168 A.D.3d 31, 88 N.Y.S.3d 518 (N.Y. App. Div. 2018), is dispositive here. *See* ECF 72. *Wells* is only controlling in one of New York's state appellate division and relies on interpretations of New York law. *Wells* does not affect this Court's analysis. *See United States v. Bernacet*, 724 F.3d 269, 276–77 (2d Cir. 2013) (explaining that if a seizure is legal under the Fourth Amendment when a federal officer effectuates it, then it is also constitutional when a state or local officer does so, even where state law does not authorize the arrest, because "state restrictions do not alter the Fourth Amendment's protections"). In addition, the Supreme Court has stated that "[t]he Fourth Amendment's meaning [does] not change with local law enforcement practices." *Virginia v. Moore*, 553 U.S. 164, 172 (2008). To hold otherwise would cause Fourth Amendment "protections [to] vary if federal officers were not subject to the same statutory constraints as state officers." *Id.* at 176.

The legality of any seizure by a local officer is especially apparent where, as here, a local officer is detaining for a federal offense at the express request of the federal government supported by a federal warrant. Thus, any suggestion that the Fourth Amendment bars local—but not federal—officers from detaining aliens based upon probable cause of removability alone is incorrect. Such arrests are lawful if probable cause of removability exists and the officer does not act unilaterally. *See, e.g.*, *El Cenizo*, 890 F.3d at 179-80, 1889 (state law requiring cooperation with ICE detainers "permit[s] no unilateral enforcement activity" because cooperation only occurs following "a predicate federal request for assistance" supported by "probable cause"); *Sanchez v. Sessions*, 885 F.3d 782, 789 (4th Cir. 2018) ("[W]hen, *absent federal direction or authorization*, a state or local officer detains or arrests someone based *solely* on a civil immigration violation, the officer violates that individual's Fourth Amendment right to be free from unreasonable searches and seizures.") (first emphasis added)); *Rios*, 390 F. Supp. 3d at 727 ("[N]o circuit had held that it would violate the Fourth Amendment to comply with an ICE detainer and administrative warrant. The same is true today."); *Ovando-Garzo*, 752 F.3d at 1164 (cooperation without "written agreement" lawful if "not unilateral;" argument to the contrary "meritless"); *Tenorio-Serrano*, 324 F. Supp. 3d at 1066 ("if such arrests do not violate the Fourth Amendment when made by federal officers, they do not violate the Fourth Amendment when made by state officers"); *Lopez-Lopez*, 321 F. Supp. 3d at 801 (dismissing identical lawsuit because there is

20

no "plausible Fourth Amendment" claim that can be raised if state officer cooperates with a detainer and administrative warrant showing probable cause of removability); *cf. Melendres v. Arpaio*, 695 F.3d 990, 1001 (9th Cir. 2012) (detention of removable aliens is unilateral absent a formal agreement or request for cooperation from federal government).

The same would be true where a state or locality, relying on a request from the federal government supported by a detainer and administrative warrant, transfers an alien in their custody to federal custody, as occurred to Hernandez following his second criminal arrest. A Fourth Amendment seizure only occurs when a *new* "governmental termination of freedom of movement through means intentionally applied" occurs. *Brower v. Cty. of Inyo*, 489 U.S. 593, 596–97 (1989). But at the time Hernandez was eligible for release on his second arrest on March 30, 2018, his freedom of movement had already been terminated. SCSO's administrative transfer of Hernandez from its custody to ICE pursuant to the IGSA does not effect a new seizure, and even if it did, it was supported by the probable cause contained in the detainer and administrative warrant. *See, e.g., Coleman v. Gillespie*, 424 F. App'x 267, 270 (5th Cir. 2011) (transfer of arrestee from custody of one officer to another does not effect a separate arrest or seizure.); *United States v. Laville*, 480 F.3d 187, 196 (3d Cir. 2007) (custodial transfer does not constitute a new arrest requiring a separate showing of probable cause); *U.S. ex rel. Vanorsby v. Acevedo*, No. 11 C 7384, 2012 WL 3686787, at *5 (N.D. Ill. Aug. 24, 2012) ("Once an individual has been lawfully taken into custody, he has been seized for purposes of the Fourth Amendment; merely transferring custody of that individual from one law enforcement agency to another deprives him of nothing he has not already lost"); *Brown v. Venango Cty.*, No. 09–268, 2010 WL 5293906, *5 (W.D. Pa. Dec. 17, 2010) (transfer of federal prisoner to local custody did not constitute a Fourth Amendment seizure by local authorities because prisoner "had already been 'seized' for purposes of the Fourth Amendment").

*Third*, arrests or detentions based on probable cause may lawfully be effected where the probable-cause determination is made by one official (here, a federal ICE officer) and relied on by another official who serves under a different sovereign (here, a local SCSO officer). Put differently, local officers may rely on ICE's findings of probable cause, as articulated in a detainer and administrative warrant, to detain the subject of a detainer when the federal government so requests. Where one officer obtains an arrest warrant based on probable cause, other officers can make the

21

arrest even if they are "unaware of the specific facts that established probable cause." *United States v. Hensley*, 469 U.S. 221, 231 (1985). All that is required is that "sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." *United States v. Colon*, 250 F.3d 130, 134 (2d Cir. 2002); *United States v. Fleming*, No. 18-CR-197 (KAM), 2019 WL 486073, at *7 (E.D.N.Y. Feb. 6, 2019) ("Under the [collective knowledge] doctrine, a police officer may act reasonably in relying on information from other law enforcement officers, even if he is not personally aware of the facts that provided the probable cause underlying the information he received.") (citation omitted); *cf. Hernandez v. United States*, 939 F.3d 191, 209 (2d Cir. 2019) ("The collective knowledge doctrine does not help the City because, as the Complaint plausibly alleges, the DHS officer] who instigated Hernandez's detention [] lacked probable cause to issue the detainer and he failed to conduct an inquiry when a reasonable officer in the circumstances would have inquired."). Thus, an officer may arrest someone, even when the officer does not know the facts establishing probable cause, if the officer reasonably believed that the arrestee was the subject of a federal warrant. *See, e.g.*, *id.*; *United States v. Polito*, 583 F.2d 48, 51–52 (2d Cir 1978).

This rule of collective law-enforcement knowledge applies when "the communication [is] between federal and state or local authorities," 3 Wayne R. LaFave, *Search and Seizure* § 3.5(b) (2016) (collecting cases); *People v. Rosario*, 78 N.Y.2d 583, 588–89 (N.Y. 1991), including when a state or local officer arrests someone based upon probable cause from information received from an immigration officer. *See El Cenizo*, 890 F.3d at 188 ("Compliance with an ICE detainer [] constitutes a paradigmatic instance of the collective-knowledge doctrine, where the detainer request itself provides the required communication between the arresting officer and an officer who has knowledge of all the necessary facts."); *Mendoza v. U.S. ICE*, 849 F.3d 408, 419 (8th Cir. 2017) ("County employees . . . reasonably relied on [ICE agent's] probable cause determination for the detainer."); *Tenorio-Serrano v. Driscoll*, 324 F. Supp. 3d at 1066 ("[T]he [local] officer is acting on the probable cause determination of a federal officer empowered and trained to make such determinations."). Indeed, most courts that have considered cooperation with federal immigration detainers where those detainers are supported by probable cause of removability have found such cooperation permitted or not prohibited by state law. *See Ovando-Garzo*, 752 F.3d at 1164; *El Cenizo*, 890 F.3d at 189; *Santos*, 725 F.3d at 467; *Rios*, 390 F. Supp. 3d at 725; *Chery v. Sheriff of Nassau Cty.*, No. 8100/15, 2015 WL 13665005, at *4 (N.Y. Sup. Ct.

Dec. 3, 2015). An arresting officer "who acts in reliance on [another officer] is not required to have personal knowledge of the evidence creating a reasonable suspicion." *Hensley*, 469 U.S. at 231. And "an ICE-detainer request evidences probable cause of removability in every instance." *El Cenizo*, 890 F.3d at 187.[10]

## CONCLUSION

The Court should dismiss Plaintiffs' second amended complaint in its entirety.

Dated: March 3, 2020                                                    Respectfully submitted,


JOSEPH H. HUNT
*Assistant Attorney General*

WILLIAM C. PEACHEY                                    RICHARD P. DONOGHUE
*Director*, Office of Immigration Litigation          *United States Attorney*
District Court Section

EREZ REUVENI
*Assistant Director*

LAUREN C. BINGHAM
Senior Litigation Counsel

By:    /s/Francesca Genova                     By:    /s/Joseph A. Marutollo
       FRANCESCA GENOVA                               JOSEPH A. MARUTOLLO
       *Trial Attorney*                               *Assistant United States Attorney*
       U.S. Department of Justice                     271 Cadman Plaza East
       Civil Division                                 Brooklyn, NY 11201
       P.O. Box 868, Ben Franklin Station             Tel: 718-254-6288
       Washington, D.C. 20530                         joseph.marutollo@usdoj.gov
       Tel: 202-305-1062
       Francesca.M.Genova@usdoj.gov

---

[10] Courts routinely apply the collective-knowledge doctrine where one sovereign, like a federal or state government, possesses relevant probable-cause information, but seeks assistance from another sovereign to make the arrest, including where the request for assistance is premised on only a *civil* infraction or warrant. *See, e.g.*, *United States v. Cardona*, 903 F.2d 60, 63–64 (1st Cir. 1990) (parole-violator warrant issued by New York, effectuated by local police officers in Rhode Island); *Furrow v. U.S. Bd. of Parole*, 418 F. Supp. 1309, 1312 (D. Me. 1976) (warrant issued by federal government, effectuated by Maine); *Andrews v. State*, 962 So. 2d 971, 973 (Fla. Dist. Ct. App. 2007) (recounting how a DD Form 553 was issued for the desertion of a military officer and federal agents enlisted local police in the search of his residence and arrest).

23

**CERTIFICATE OF SERVICE**

I certify that March 3, 2020, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document to the attorneys of record for all parties.

By:    /s/Francesca Genova
FRANCESCA GENOVA