**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOAQUIN ORELLANA CASTANEDA, et al., | |
| *Plaintiffs-Petitioners*, | Case No. 2:17-cv-04267-RRM-ARL |
| v. | |
| COUNTY OF SUFFOLK, et al., | |
| *Defendants-Respondents*. | |

**BRIEF AMICUS CURIAE OF STATE OF NEW YORK**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION AND INTERESTS OF AMICUS ....................................................... 1

BACKGROUND ............................................................................................................... 3

    A.    Statutory and Regulatory Background ............................................................... 3

        1.    Detention requests issued by United States Immigration and Customs
            Enforcement (ICE) .......................................................................................... 3

        2.    Written agreements under 8 U.S.C. § 1357(g) ............................................. 5

    B.    Procedural Background ..................................................................................... 6

ARGUMENT ..................................................................................................................... 7

   I.    AS THE NEW YORK APPELLATE DIVISION RECENTLY CONFIRMED, NEW YORK
       LAW FORBIDS ARRESTS BASED SOLELY ON AN ICE DETAINER AND
       ACCOMPANYING ADMINISTRATIVE WARRANT ................................................. 7

   II.   FEDERAL LAW DOES NOT GIVE STATE AND LOCAL OFFICERS AUTHORITY TO
       MAKE CIVIL IMMIGRATION ARRESTS THAT STATE LAW FORBIDS ................... 9

   III.   *WELLS* IS CONTROLLING AUTHORITY ON NEW YORK LAW .......................... 15

CONCLUSION ................................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Arizona v. United States*,
    567 U.S. 387 (2012)..................................................................................................... passim

*Brown v. Venango Cty.*,
    No. C.A. 09-268 ERIE, 2010 WL 5293906 (W.D. Pa. Dec. 17, 2010)...................................7

*Chery v. Sheriff of Nassau County*,
    No. 8100/15, 2015 WL 13665005 (Sup. Ct. Nassau County 2015) ........................................15

*City of El Cenizo, Texas v. Texas*,
    890 F.3d 164 (5th Cir. 2018) .................................................................................................12

*Clark v. Martinez*,
    543 U.S. 371 (2005)................................................................................................................3

*Coleman v. Gillespie*,
    424 F. App'x 267 (5th Cir. 2011) ............................................................................................7

*Creedle v. Miami-Dade Cty.*,
    349 F. Supp. 3d 1276 (S.D. Fla. 2018) ...................................................................................14

*Davila v. Northern Reg'l Joint Police Bd.*,
    370 F. Supp. 3d 498 (W.D. Pa. 2019).....................................................................................14

*DiGuglielmo v. Smith*,
    366 F.3d 130 (2d Cir. 2004)....................................................................................................15

*Hernandez v. United States*,
    939 F.3d 191 (2d Cir. 2019)....................................................................................................14

*Liranzo v. United States*,
    690 F.3d 78 (2d Cir. 2012)......................................................................................................10

*Lunn v. Commonwealth*,
    477 Mass. 517 (2017) .......................................................................................................12, 13

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ..................................................................................................14

*Moreno v. Napolitano*,
    213 F. Supp. 3d 999 (N.D. Ill. 2016) .......................................................................................7

**Cases**  Page(s)

*Mountain View Coach Lines, Inc. v. Storms*,
  102 A.D.2d 663 (2d Dep't 1984) .......................................................................15

*Ochoa v. Campbell*,
  266 F. Supp. 3d 1237 (E.D. Wash. 2017) ..........................................................14

*People ex rel. Wells v. DeMarco*,
  168 A.D.3d 31 (2d Dep't 2018) ................................................................... passim

*People v. Johnson*,
  66 N.Y.2d 398 (1985) .........................................................................................9

*People v. P.J. Video*,
  68 N.Y.2d 296 (1986) .........................................................................................9

*People v. Scott*,
  79 N.Y.2d 474 (1992) .........................................................................................9

*People v. Shakur*,
  215 A.D.2d 184 (1st Dep't 1995) .......................................................................15

*People v. Stultz*,
  2 N.Y.3d 277 (2004) ...........................................................................................9

*People v. Xirum*,
  45 Misc. 3d 785 (Sup. Ct. Kings County 2014) ................................................15

*Ramon v. Short*,
  2020 MT 69, 2020 WL 1445272 (Mont. 2020) ................................................12

*Sanchez v. Sessions*,
  885 F.3d 782 (4th Cir. 2018) .............................................................................13

*Santos v. Frederick Cty. Bd. of Comm'rs*,
  725 F.3d 451 (4th Cir. 2013) .......................................................................13, 14

*Six Companies of Cal. v. Joint Highway Dist. No. 13 of State of Cal.*,
  311 U.S. 180 (1940) ...........................................................................................15

*United States ex rel. Vanorsby v. Acevedo*,
  No. 11-c-7384, 2012 WL 3686787 (N.D. Ill. Aug. 24, 2012) ..............................7

*United States v. Laville*,
  480 F.3d 187 (3d Cir. 2007) ................................................................................7

*United States v. Ovando-Garzo*,
  752 F.3d 1161 (8th Cir. 2014) ...........................................................................13

**Cases**                                                                                    **Page(s)**

*United States v. Quintana*,
    623 F.3d 1237 (8th Cir. 2010) ...............................................................13

*Virginia v. Moore*,
    553 U.S. 164 (2008)...............................................................................14

**Laws**

8 U.S.C.
    § 1103 ................................................................................6, 10, 11
    § 1226 ..........................................................................................3
    § 1227 ..........................................................................................3
    § 1231 ..........................................................................................3
    § 1252c ..................................................................................10, 11
    § 1324 ........................................................................................11
    § 1357 ................................................................................. passim

N.Y. Criminal Procedure Law § 1.20 ...........................................................8

8 C.F.R.
    § 241.2...................................................................................3, 10
    § 287.5................................................................................3, 10, 11
    § 287.7.........................................................................................4

**Miscellaneous Authorities**

Department of Homeland Sec., *History of ICE*, https://www.ice.gov/history (last
    updated Mar. 4, 2019)....................................................................4

Department of Homeland Sec., Off. of Inspector Gen., OIG-10-63, *The
    Performance of 287(g) Agreements* (Mar. 2010),
    https://www.oig.dhs.gov/assets/Mgmt/OIG_10-63_Mar10.pdf ........................5, 11

Department of Homeland Sec., Sample Form I-247A (Mar. 2017),
    https://www.ice.gov/sites/default/files/documents/Document/2017/I-247A.pdf ...................4

Immigration & Customs Enf't, Policy No. 10074.2, *Issuance of Immigration
    Detainers by ICE Immigration Officers* (Mar. 24, 2017),
    https://www.ice.gov/sites/default/files/documents/Document/2017/10074-2.pdf...............4, 5

Immigration & Customs Enf't, Sample Form I-200: Warrant for Arrest of Alien (Sept.
    2016), https://www.ice.gov/sites/default/files/documents/Document/2017/I-
    200_SAMPLE.PDF ......................................................................5

**Miscellaneous Authorities**                                                    **Page(s)**

Immigration & Customs Enf't, Sample Form I-205: Warrant of
    Removal/Deportation (Aug. 2007),
    https://www.ice.gov/sites/default/files/documents/Document/2017/I-
    205_SAMPLE.PDF ...................................................................................................5

Mem. of the Comm'n on the Revision of the Penal Law & Crim. Code in Supp.
    & Explanation of the Proposed Crim. Proc. Law (Mar. 1970), *in* Bill Jacket
    for ch. 996 (1970) ..................................................................................................8

## INTRODUCTION AND INTERESTS OF AMICUS

The New York State Attorney General (the "State") files this amicus curiae brief to provide the Court with an accurate statement of New York law concerning the scope of authority of New York law enforcement officials. Inaccurate or incomplete representations of New York law on that subject appear in both defendants' renewed motion to dismiss (*e.g.*, ECF No. 78-8, at 12-13) and the United States' statement of interest (*e.g.*, ECF No. 80, at 16-17, 20).

This brief addresses a central legal issue being disputed by the parties: whether state and local officers in New York may arrest and detain a person based solely on a federal notice stating that the person has committed a civil immigration violation, and a request to detain that person (commonly known as an "ICE detainer" or a "civil immigration detainer").[1] For the reasons set forth below, such an arrest is not authorized under state or federal law.

As the New York Appellate Division held in *People ex rel. Wells v. DeMarco*, 168 A.D.3d 31 (2d Dep't 2018)—and as defendants and the United States do not dispute—a state or local law enforcement officer effects an arrest when the officer keeps a person in custody, pursuant to new authority, beyond the period of detention supported by the original grounds for custody. As *Wells* also held, such an arrest is unauthorized by state law if its sole basis is a request from federal immigration authorities to hold the person because the person is purportedly present in this country unlawfully: conduct that, standing alone, is a civil and not a criminal violation. *Wells* is controlling on this Court because it is the only Appellate Division opinion addressing the central issue in this case, and this Court must defer to state appellate courts' interpretations of state law.

---

[1] Defendants and the United States raise certain other issues on which the State takes no position in this case, including standing and jurisdiction. *See* Statement of Interest at 9-11 & n.7.

Contrary to the contention of defendants and the United States, federal law does not independently authorize state or local officers to make the civil immigration arrests at issue here. The federal Immigration and Nationality Act (INA) generally permits only federal officers to execute civil immigration arrests. Where the statute allows state and local officers to perform functions of federal immigration officers, it is in limited circumstances of a type that are not present here, and only to the extent consistent with state and local law.

In deciding not to permit state and local officers to effect civil immigration arrests and associated detentions, the New York legislature made a decision about use of the State's limited law enforcement resources. The time and money that a local jurisdiction like defendant Suffolk County expends to pursue non-criminal immigration charges comes at a cost to the critical law enforcement functions that state and local law charges Suffolk with carrying out. If the State wanted to dedicate its limited state and local law enforcement resources to pursuing civil immigration violations, notwithstanding the federal government's role in that area, it could pass laws authorizing state or local officers to pursue such violations to the extent permitted by federal law. But New York has chosen not to do so. Basic principles of federalism require federal courts to respect the State's choice.

# BACKGROUND

**A.    Statutory and Regulatory Background**

**1.    Detention requests issued by United States Immigration and Customs Enforcement (ICE)**

a. The INA identifies certain categories of people as subject to removal. *See* 8 U.S.C. § 1227. "Removal is a civil, not criminal, matter" and, "[a]s a general rule, it is not a crime for a removable alien to remain present in the United States." *Arizona v. United States*, 567 U.S. 387, 396, 407 (2012).

Under the INA, the Secretary of Homeland Security may issue an administrative warrant for the arrest of an apparently removable person "pending a decision on whether" that person "is to be removed from the United States." 8 U.S.C. § 1226(a).[2] The Secretary may also issue administrative arrest warrants for people who have already been adjudicated removable from the United States. *See id.* § 1231(a)(2); 8 C.F.R. § 241.2(a)(1). The Secretary has delegated both types of issuance authority to various federal immigration officers. 8 C.F.R. §§ 241.2(a)(1), 287.5(e)(2). And the Secretary has further provided that various types of "immigration officers who have successfully completed basic immigration law enforcement training" can "execute warrants of arrest for administrative immigration violations," *id.* § 287.5(e)(3), and warrants of removal, *id.* § 241.2(b).

The INA contains separate provisions governing arrests for criminal acts. *See, e.g.*, 8 U.S.C. § 1357(a)(4)-(5).

---

[2] References in the INA to the Attorney General now refer to the Secretary of Homeland Security, and references to the Immigration and Naturalization Service (INS) now correspond to the Department of Homeland Security. *See Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

b. When ICE—an agency within the Department of Homeland Security (DHS)[3]—learns that a removable person is in the custody of another law enforcement agency, ICE may issue a "detainer," which "advise[s] another law enforcement agency that the Department seeks custody of an alien presently in custody of that agency, for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a). A detainer asks that the other agency inform ICE "prior to the release of the alien," *id.*, and maintain custody of that person for up to forty-eight hours past when the person would be otherwise detained by that agency "in order to permit assumption of custody by the Department," *id.* § 287.7(d).

ICE notifies law enforcement agencies of detainers by sending them a form titled "Immigration Detainer—Notice of Action." *See* DHS, Sample Form I-247A (Mar. 2017) (internet) ("Sample Detainer"). The current Notice of Action that ICE uses, Form I-247A, has been in effect since April 2017. *See* ICE, Policy No. 10074.2, *Issuance of Immigration Detainers by ICE Immigration Officers* § 2.1 (Mar. 24, 2017) (internet) ("*Immigration Detainers*").

As relevant here, the Notice of Action states that "DHS has determined that probable cause exists that the subject" of the detainer "is a removable alien," and sets forth four potential bases for that determination, none of which suggests that the person has committed a crime. *See* Sample Detainer at 1. The Notice of Action also "request[s]" that the receiving agency notify DHS "as early as practicable" before releasing the person from custody, and that the receiving agency "[m]aintain custody" of the person "for a period not to exceed 48 hours beyond the time when he/she would otherwise have been released from [the agency's] custody to allow DHS to assume custody." *Id.* (emphasis omitted). As a matter of ICE policy, "all detainers issued by ICE must be

---

[3] *See* DHS, *History of ICE* (internet) (last updated Mar. 4, 2019). For authorities available on the internet, full URLs appear in the Table of Authorities.

4

accompanied by" either a warrant for the arrest of a person whom an immigration officer believes to be removable or a warrant for removal of a person who has already been designated removable. *Immigration Detainers* § 2.4. Both warrants are issued by an ICE immigration officer, rather than a judge. *Id.* Neither warrant states on its face that the person has committed a crime.[4]

### 2.     Written agreements under 8 U.S.C. § 1357(g)

Section 287(g) of the INA, which is codified at 8 U.S.C. § 1357(g), allows States and their political subdivisions to enter into written agreements that permit any state or local law enforcement officer "who is determined by the [Secretary] to be qualified to perform a function of an immigration officer in relation to the investigation, apprehension or detention of aliens in the United States" to "carry out such function at the expense of the State or political subdivision and to the extent consistent with State and local law." 8 U.S.C. § 1357(g)(1).

State and local officers performing functions under such an agreement are "subject to the direction and supervision of" the Secretary. *Id.* § 1357(g)(3). They must also "have received adequate training to carry out the duties of an immigration officer." *Arizona*, 567 U.S. at 409 (citing 8 U.S.C. § 1357(g)(2)). And they must "pass examinations equivalent to those given to ICE officers." DHS, Off. of Inspector Gen., OIG-10-63, *The Performance of 287(g) Agreements* 27 (Mar. 2010) (internet) ("*287(g) Report*").

---

[4] *See* ICE, Sample Form I-200: Warrant for Arrest of Alien (Sept. 2016) (internet); ICE, Sample Form I-205: Warrant of Removal/Deportation (Aug. 2007) (internet).

The defendant local jurisdiction in this case, Suffolk County, has no agreement with the United States pursuant to 8 U.S.C. § 1357(g). Statement of Interest at 2.[5]

## B.     Procedural Background

When the Suffolk County defendants originally moved to dismiss the plaintiffs' operative complaint in 2018, plaintiffs provided this Court with a copy of an amicus brief the State had filed in *People ex rel. Wells v. DeMarco*, 168 A.D.3d 31 (2d Dep't 2018), which addressed the central legal issue before this Court: whether New York and federal law permit state and local officers to arrest and detain a person based solely on an ICE detainer and accompanying administrative warrant. ECF No. 51-1. The Court subsequently accepted the State's *Wells* amicus brief for filing and granted the State's request for leave to participate in the oral argument scheduled in this case. Minute Order (Nov. 15, 2018). Shortly thereafter, the Court granted the parties' request to stay this case in order to facilitate settlement discussions. Minute Order (Dec. 10, 2018); Minute Order (Jan. 29, 2019).

While this case was stayed pending settlement discussions, the Appellate Division held in *Wells* that state and local officers may not arrest and detain based on an ICE detainer and administrative warrant alone. *See* 168 A.D.3d 31. When the parties' settlement discussions in this case were unsuccessful, defendants filed the renewed motion to dismiss now pending before the Court, and the United States filed a statement of interest supporting defendants. The State now files this amicus brief to respond to defendants' and the United States' latest assertions regarding

---

[5] State or local authorities also may enter into intergovernmental services agreements (IGSAs) with the United States to provide "bed space for persons detained by the [Secretary]," 8 U.S.C. § 1103(a)(11), as Suffolk County has (Statement of Interest at 3, 6). But, as the United States acknowledges, "[u]ntil an immigration officer arrests the detainee, a detainee cannot be held under an IGSA." *Id.* at 3.

New York law and the scope of authority of New York law enforcement officials, in light of the Appellate Division's decision in *Wells*.

## ARGUMENT

**I.     AS THE NEW YORK APPELLATE DIVISION RECENTLY CONFIRMED, NEW YORK LAW FORBIDS ARRESTS BASED SOLELY ON AN ICE DETAINER AND ACCOMPANYING ADMINISTRATIVE WARRANT**

As the Appellate Division recently explained in *Wells*, 168 A.D.3d 31—and as defendants and the United States do not dispute—holding a person who is in lawful custody beyond the time authorized, based on an ICE detainer, constitutes a new arrest under New York law, and a seizure under both the Fourth Amendment to the U.S. Constitution and article I, § 12 of the State Constitution. *See* 168 A.D.3d at 39-40.[6]

As *Wells* held, *id.* at 42-47—and defendants and the United States again do not seriously dispute—New York law does not authorize state or local officers to make new arrests based only on an ICE detainer and accompanying administrative warrant. Thus, state and local officers have no such authority.

The New York Criminal Procedure Law (CPL) permits state and local officers to execute only judicially-issued warrants to arrest, and makes no mention of any federal administrative

---

[6] The cases cited by the United States for the proposition that transfers of custody need not effect new seizures (*see* Statement of Interest at 21) concern transfers of custody of individuals who continue to be detained for the same purpose. *See Coleman v. Gillespie*, 424 F. App'x 267, 270 (5th Cir. 2011); *United States v. Laville*, 480 F.3d 187, 196 (3d Cir. 2007); *United States ex rel. Vanorsby v. Acevedo*, No. 11-c-7384, 2012 WL 3686787, at *5 (N.D. Ill. Aug. 24, 2012); *Brown v. Venango Cty.*, No. C.A. 09-268 ERIE, 2010 WL 5293906, at *5 (W.D. Pa. Dec. 17, 2010). There is no dispute that when an individual whom state or local authorities were holding on criminal charges is transferred to ICE for the new purpose of pursuing unrelated civil immigration charges, there is a new seizure. *See Wells*, 168 A.D.3d at 39; *see also Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1005 (N.D. Ill. 2016) (U.S. "concede[s]" that ICE detainer constitutes new seizure).

7

warrants, much less the immigration warrants at issue here. *See id.* at 42. And the CPL permits warrantless arrests only if an officer has reasonable cause to believe that the arrestee has committed a crime or offense: that is, has broken a law that allows for a sentence of imprisonment or a fine. *See id.* at 43-44 (citing CPL § 140.10; Penal Law § 10.00(1), (6)); *see also* CPL § 1.20 (incorporating Penal Law § 10.00 definitions into CPL). ICE detainers and the warrants that ordinarily accompany them, however, do not specify any crime or offense. Thus, standing alone, those documents do not give state or local officers grounds to arrest the subject of the detainer. *See* 168 A.D.3d at 43-44.

Moreover, no common-law police power permits New York law enforcement officials to make arrests based only on an ICE detainer and accompanying administrative warrant. The New York legislature has "codified the traditional common-law varieties of arrests" and thus "New York courts have consistently looked to statutory law in determining arrest authority." *Id.* at 44-46 (citing, inter alia, *People v. Bratton*, 8 N.Y.3d 637, 643 (2007); *People v. Williams*, 4 N.Y.3d 535, 538 (2005)). The CPL's legislative history further supports a conclusion that New York statutes specify the sole circumstances in which state and local officers can make warrantless arrests. As the Commission on the Revision of the Penal Law and Criminal Code wrote: the proposed CPL aimed "to delineate with some degree of precision the arrest powers" of state and local officers—without regard for any parallel body of common-law arrest authority. Mem. of the Comm'n on the Revision of the Penal Law & Crim. Code in Supp. & Explanation of the Proposed Crim. Proc. Law (Mar. 1970), *in* Bill Jacket for ch. 996 (1970), at 8. Indeed, the United States acknowledges that

historical authority to arrest immigrants was legislative in nature and not grounded in the common law. Statement of Interest at 19 (citing *Abel v. United States*, 362 U.S. 217, 232 (1960)).[7]

## II.   FEDERAL LAW DOES NOT GIVE STATE AND LOCAL OFFICERS AUTHORITY TO MAKE CIVIL IMMIGRATION ARRESTS THAT STATE LAW FORBIDS

As *Wells* correctly recognized, federal law does not authorize New York law enforcement officers to make arrests that New York law prohibits. *See* 168 A.D. 3d at 47-51. Defendants and the United States are mistaken in suggesting otherwise.[8]

The INA vests the bulk of its enforcement authority in federal—not state and local— officers. *See, e.g., Arizona*, 567 U.S. at 408-09. For example, it provides that "an officer or employee of" DHS may execute warrants under regulations promulgated by the Secretary of Homeland Security. 8 U.S.C. § 1357(a). Consistent with that assignment of responsibility, the INA's implementing regulations nowhere mention state or local officers as being among the eight

---

[7] Even if state and local officers had statutory authority to arrest people for civil immigration violations, there is a substantial risk that such arrests would violate the New York Constitution unless conducted pursuant to a judicially-issued warrant. Contrary to the United States' contention (Statement of Interest at 16-17), article I, § 12 of the State Constitution provides broader protection than the Fourth Amendment of the U.S. Constitution. *See, e.g., People v. Stultz*, 2 N.Y.3d 277, 284 n.12 (2004); *People v. Scott*, 79 N.Y.2d 474, 496-97 (1992); *People v. P.J. Video*, 68 N.Y.2d 296, 304 (1986). As relevant here, the New York Court of Appeals has interpreted the State Constitution to express a strong preference for warrants made by "detached and neutral" judges, "over those based upon the hurried judgment of law enforcement officers"— particularly where, as here, the stakes are high. *People v. Johnson*, 66 N.Y.2d 398, 407 (1985) (quotation marks omitted)); *see Scott*, 79 N.Y.2d at 501. An administrative immigration warrant accompanying an ICE detainer lacks any judicial oversight even though it may result in the weighty consequence of removal from the United States; thus, an arrest based solely on such a warrant may well violate the State Constitution.

[8] Defendants (Mem. of Law in Supp. of Mot. to Dismiss (Mem.) at 12-13) and the United States (Statement of Interest at 20) also err in asserting that *Wells* addressed state and local officers' authority only under New York law. After concluding that New York law does not authorize state or local officers to make civil immigration arrests, *Wells* separately held that federal law also does not provide such authorization. *See* 168 A.D.3d at 47-48.

categories of officers who are authorized by those regulations to execute immigration arrest warrants. *See* 8 C.F.R. § 287.5(e)(3)(i)-(viii); *see also id.* § 241.2(b).

Although defendants (Mem. at 15-17) and the United States (Statement of Interest at 11-16) argue that 8 U.S.C. § 1357(g) (INA § 287(g)) authorizes state and local authorities to arrest and detain individuals pursuant to ICE detainers, that provision permits state and local officers to carry out functions of federal immigration officers only in certain limited circumstances. And as relevant here, those circumstances are limited to instances where the carrying out of such functions by state and local officers is consistent with state or local law, and where the state or local jurisdiction has a written agreement with the Secretary of Homeland Security pursuant to § 1357(g)(1).

*First*, § 1357(g) provides that state and local officers may be authorized to perform functions of federal immigration officers only "to the extent consistent with State and local law." 8 U.S.C. § 1357(g)(1). Thus, by its plain terms, that provision contemplates that state and local officers will act within the bounds of state and local law—which in New York's case prohibits them from making civil immigration arrests (see *supra* Part I). *See also Wells*, 168 A.D. 3d at 49-50. Other provisions of the INA conferring authority on state and local officers recognize similar restrictions. For instance, state and local officers may arrest previously deported convicted felons only "to the extent permitted by relevant State and local law." *See* 8 U.S.C. § 1252c(a). Likewise, state and local officers may enforce federal immigration laws in certain "urgent circumstances" of mass influx only with "the consent of" the head of their department or agency. *See id.* § 1103(a)(10); *see also Liranzo v. United States*, 690 F.3d 78, 97 (2d Cir. 2012) (8 U.S.C. §§ 1252c(a) and 1103(a)(10) must be exercised "consistent with state law").

*Second*, § 1357(g) permits state and local officers to perform functions of federal officers only if they are acting under a written agreement with the Secretary of Homeland Security, *see*

10

8 U.S.C. § 1357(g)(1), and "have received adequate training to carry out the duties of an immigration officer." *Arizona*, 567 U.S. at 409 (citing 8 U.S.C. § 1357(g)(2)); *see also* 8 C.F.R. § 287.5(e); *287(g) Report* at 3. Here, however, it is undisputed that Suffolk County has had no such written agreement. Statement of Interest at 2. Nor do defendants contend that they have received the requisite training to carry out the duties of a federal immigration officer.

Defendants and the United States erroneously look to 8 U.S.C. § 1357(g)(10)(B) as a source of authority for an arrest based solely on an ICE detainer and accompanying warrant. Section 1357(g)(10)(B) permits States and their localities "to cooperate with the [Secretary of Homeland Security] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States" without a written agreement. 8 U.S.C. § 1357(g)(10)(B). But the text of § 1357(g)(10)(B) does not grant state or local officers authority to arrest for immigration violations, which is significant because "'[i]n those limited instances where the [Immigration and Nationality Act] affirmatively grants authority to State and local officers to arrest, it does so in more explicit terms,'" *Wells*, 168 A.D.3d at 51 (quoting *Lunn v. Commonwealth*, 477 Mass. 517, 536 (2017)).[9] Moreover, "[n]othing in the legislative history of 8 U.S.C. § 1357(g) or the [Homeland Security] department's very thorough 'Guidance on State and Local Governments' Assistance in Immigration

---

[9] *See* 8 U.S.C. § 1103(a)(10) (in certain "urgent circumstances," federal authorities may authorize state or local officers "to perform or exercise any of the powers, privileges, or duties" of federal immigration officers); *id.* § 1252c (State and local law officers "are authorized to arrest and detain" previously deported convicted felons); *id.* § 1324(c) (officers whose duty it is to enforce criminal laws may make "arrests" for criminal offense of illegally bringing in, transporting, or harboring aliens); *id.* § 1357(g)(1)-(9) (State or local officer trained to perform function of federal immigration officer "may carry out such function" by written agreement).

Enforcement and Related Matters,'[10] suggests that § 1357(g)(10) constitutes an affirmative grant of immigration arrest authority to States." *Lunn*, 477 Mass. at 536 n.27.

Thus, read in the context of its neighboring provisions and the INA's other provisions on state and local cooperation, § 1357(g)(10)(B) is not reasonably interpreted to "confer 'authority on State and local officers to make arrests pursuant to civil immigration detainers, where none otherwise exists' under state law." *Wells*, 168 A.D.3d at 51 (quoting *Lunn,* 477 Mass. at 535); *accord Ramon v. Short*, 2020 MT 69, 2020 WL 1445272, at *9 (Mont. 2020). Rather, § 1357(g)(10)(B) merely clarifies that a State or locality need not enter into a § 1357(g) written agreement if, in an exercise of its existing, lawful police powers, it wishes to cooperate with an arrest being made by a federal immigration officer by "participat[ing] in a joint task force with federal officers, provid[ing] operational support in executing a warrant, or allow[ing] federal immigration officials to gain access to detainees held in state facilities," *Arizona*, 567 U.S. at 410.

None of the cases defendants and the United States cite support their reading of § 1357(g)(10)(B). Defendants and the United States rely heavily on *City of El Cenizo, Texas v. Texas*, 890 F.3d 164 (5th Cir. 2018). But, as the Appellate Division recognized in *Wells*, *El Cenizo* is inapposite because it involved a Texas law that "specifically mandated that Texas law enforcement agencies comply with ICE detainer requests." *See* 168 A.D.3d at 52 (citing 890 F.3d at 174). By contrast, no New York law permits New York law enforcement to comply with ICE detainers. *See id. El Cenizo* does not address whether § 1357(g)(10)(B) "permits state and local law enforcement to enforce ICE detainers and warrants in circumstances where"—as here—"state law gives them no authority to do so." *Id*. "Indeed, *El Cenizo* acknowledges this important distinction" in finding

---

[10]   *Available at*  https://dhs.gov/xlibrary/assets/guidance-state-local-assistance-immigration-enforcement.pdf.

*Lunn* "'easily distinguishable' because there was no Massachusetts state law authority to carry out detainer requests, while in Texas, the state law authorized state officers to carry out federal detainer requests." *Id.* (quoting 890 F.3d at 188).

Likewise, none of the other cases defendants and the United States cite addresses whether state or local officers are independently authorized by § 1357(g)(10)(B) to make arrests based on ICE detainers and administrative warrants alone where, as here, state law does not authorize such arrests. *See, e.g.*, *Sanchez v. Sessions*, 885 F.3d 782, 789 (4th Cir. 2018); *United States v. Ovando-Garzo*, 752 F.3d 1161, 1163-64 (8th Cir. 2014); *Santos v. Frederick Cty. Bd. of Comm'rs*, 725 F.3d 451, 465-66 (4th Cir. 2013); *United States v. Quintana*, 623 F.3d 1237, 1242 (8th Cir. 2010); *see also Lunn*, 477 Mass. at 536 n.27 (finding *Ovando-Garzo*, *Santos*, and *Quintana* inapposite for the same reason).

Defendants are incorrect in suggesting (Mem. at 16-17) that *Arizona v. United States* "implicitly" held that an arrest by a State or local officer pursuant to an ICE detainer and administrative warrant constitutes cooperation under § 1357(g)(10)(B). That case held that Arizona's enforcement of federal immigration laws was preempted, and did not address whether state or local execution of ICE detainers and administrative warrants constitutes "cooperation" envisioned under § 1357(g)(10)(B), because Arizona's "unilateral" actions could not have constituted "cooperation" under any "coherent understanding of the term," *Arizona*, 567 U.S. at 410. *See also Wells*, 168 A.D.3d at 51 ("*Arizona* does not support the assertion by the Sheriff and the Department of Justice that the informal cooperation provision explicitly authorizes local law enforcement to arrest aliens pursuant to ICE detainers.").

Defendants (Mem. at 13-15) and the United States (Statement of Interest at 21-23) also are incorrect in contending that the collective-knowledge doctrine (also known as the fellow-officer doctrine) allows state and local officers to rely on a federal officer's determination that there is

probable cause to arrest the subject of an ICE detainer and administrative warrant. As the Appellate Division explained in *Wells*, "even if it is assumed that an ICE officer has probable cause to arrest for an immigration violation, the fellow officer, in this case the Sheriff's officers, must still make a 'lawful' arrest." 168 A.D.3d at 47. And where, as here, the local officers have "no authority to arrest for a civil matter, such arrest cannot be considered 'lawful.'" *Id.*[11]

Accordingly, neither state nor federal law confers on defendants the authority to arrest or detain on the basis of ICE detainers and accompanying administrative warrants alone. As a result, their execution of such arrests appears to violate the Fourth Amendment of the U.S. Constitution. To be sure, not all violations of state law by arresting officers violate the Fourth Amendment. *See, e.g.*, *Virginia v. Moore*, 553 U.S. 164, 172 (2008). But numerous courts have held that when a state or local officer has no authority under state *or federal* law to conduct a civil immigration arrest, and no probable cause to believe that an arrestee committed a crime, the arrest is unreasonable and therefore violates the Fourth Amendment. *See, e.g.*, *Santos*, 725 F.3d at 464-65; *Melendres v. Arpaio*, 695 F.3d 990, 1000-01 (9th Cir. 2012); *Davila v. Northern Reg'l Joint Police Bd.*, 370 F. Supp. 3d 498, 547 (W.D. Pa. 2019) ("courts across the country" agree); *Creedle v. Miami-Dade Cty.*, 349 F. Supp. 3d 1276, 1304 (S.D. Fla. 2018) ("numerous courts" agree); *Ochoa v. Campbell*, 266 F. Supp. 3d 1237, 1258 (E.D. Wash. 2017) ("courts around the country" agree).

---

[11] *Hernandez v. United States*, 939 F.3d 191 (2d Cir. 2019), on which defendants and the United States rely, did not reach the question of whether a state officer's arrest on the basis of an ICE detainer and administrative warrant alone could be justified, because ICE "lacked probable cause to issue the detainer" in the first instance. *Id.* at 209.

III.   *WELLS* IS CONTROLLING AUTHORITY ON NEW YORK LAW

The United States is wrong to assert that "*Wells* is only controlling in one of New York's state appellate divisions." Statement of Interest at 20.[12]

*First*, in New York, the Appellate Division is a single statewide court, and if only one appellate department has reached an issue—such as the validity of an arrest on an ICE detainer— all trial courts throughout the State must follow that department's precedent.  *See, e.g.*, *Mountain View Coach Lines, Inc. v. Storms*, 102 A.D.2d 663, 664 (2d Dep't 1984); *People v. Shakur*, 215 A.D.2d 184, 185 (1st Dep't 1995) (same). Accordingly, *Wells* is the law of New York.[13]

*Second*, "federal courts must of course defer to state-court interpretations of the state's laws so long as those interpretations are themselves constitutional." *DiGuglielmo v. Smith*, 366 F.3d 130, 137 (2d Cir. 2004) (quotation marks omitted). That is so for a State's "intermediate appellate court" as well as the State's high court. *See, e.g.*, *Six Companies of Cal. v. Joint Highway Dist. No. 13 of State of Cal.*, 311 U.S. 180, 188 (1940). Because no party argues that any legal interpretation in *Wells* is unconstitutional, this Court is bound by *Wells*' holdings regarding New York law.

---

[12] Notably, defendants do not dispute that *Wells* is binding authority.

[13] Insofar as *People v. Xirum*, 45 Misc. 3d 785 (Sup. Ct. Kings County 2014) or *Chery v. Sheriff of Nassau County*, No. 8100/15, 2015 WL 13665005, at *4 (Sup. Ct. Nassau County 2015) (which followed *Xirum*) said anything inconsistent with *Wells*, the Appellate Division's subsequent opinion in *Wells* now governs.

## CONCLUSION

For these reasons, New York state and local officers may not lawfully arrest and detain on the basis of an ICE detainer and accompanying administrative warrant alone.

Dated this 24th day of April, 2020.

Respectfully submitted,

LETITIA JAMES
    *Attorney General*
    *State of New York*

By:    */s/ Lillian Marquez*
       Lillian Marquez
       Assistant Attorney General
       28 Liberty Street
       New York, NY 10005
       (212) 416-6401
       lillian.marquez@ag.ny.gov

| | |
|---|---|
| Jessica Clarke | Barbara D. Underwood |
|   *Civil Rights Bureau Chief* |   *Solicitor General* |
| Elena Goldstein | Anisha S. Dasgupta |
|   *Civil Rights Bureau Deputy Chief* |   *Deputy Solicitor General* |
| Lillian Marquez | Philip J. Levitz |
|   *Assistant Attorney General* |   *Assistant Solicitor General* |