UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
JOAQUIN ORELLANA CASTANEDA and                    :
GERMAN HERNANDEZ ARGUETA,                          :
                                                   :
               Plaintiffs,                         :
                                                   :
        v.                                         :          **DECISION & ORDER**
                                                   :          17-CV-4267 (WFK)
COUNTY OF SUFFOLK, STEVEN BELLONE                   :
*County Executive, County of Suffolk, in his Official* :
*Capacity,* SUFFOLK COUNTY SHERIFF'S OFFICE,        :
VINCENT F. DEMARCO *Sheriff, Suffolk County Sheriff's* :
*Office, in his Official Capacity,* OTHER INDIVIDUALS :
IN CHARGE TO BE IDENTIFIED and                     :
ERROL TOULON, JR. *Sheriff, Suffolk County*         :
*Sheriff's Office, in his Official Capacity,*       :
                                                   :
                                                   :
               Defendants.                         :
----------------------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge**:
Named Plaintiffs Joaquin Orellana Castaneda ("Plaintiff Orellana") and German Hernandez
Argueta ("Plaintiff Hernandez"), bring this class action against the County of Suffolk, the
Suffolk County Sheriff's Office, County Executive Steven Bellone in his official capacity, and
Suffolk County Sheriff Errol Toulon, Jr. in his official capacity (collectively, "Defendants"),
alleging violations of Plaintiffs' rights under the Fourth and Fourteenth Amendments of the
United States Constitution and under the First Article of the New York State Constitution.
Before the Court are the parties' cross motions for summary judgment. For the reasons stated
herein, Plaintiffs' motion is GRANTED and Defendants' motion is GRANTED in part and
DENIED in part.

## I.    INTRODUCTION

        Pursuant to the Immigration and Nationality Act ("INA"), codified as amended at 8

U.S.C. 1101 *et seq*., the Attorney General of the United States "can exercise discretion to issue a

warrant for an alien's arrest and detention 'pending a decision on whether the alien is to be

removed from the United States.'" *Arizona v. United States*, 567 U.S. 387, 407 (2012) (quoting

8. U.S.C. § 1226(a)). While the INA gives federal officers significant discretion to apprehend

individuals believed to be removable aliens, "federal law specifies limited circumstances in

which state officers may perform the functions of an immigration officer." *Id.* at 408. Section 287(g) of the INA, codified at 8 U.S.C. 1357(g), empowers the Attorney General to authorize certain state or local officers to "perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States" in instances where the Attorney General has entered into a written agreement with the relevant state or local entity. 8 U.S.C. § 1357(g)(1). State or local officers covered by these 287(g) agreements "are subject to the Attorney General's direction and supervision." *Arizona*, 567 U.S. at 409. Section 287(g) also permits local law enforcement "to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States" absent an agreement. 8 U.S.C. § 1357(g)(10)(B). As the Supreme Court has remarked, "[t]here may be some ambiguity as to what constitutes cooperation under the federal law; but no coherent understanding of the term would incorporate the unilateral decision of state officers to arrest an alien for being removable absent any request, approval, or other instruction from the Federal Government." *Arizona*, 567 U.S. at 410.

The federal regulation governing immigration detainers, promulgated pursuant to the INA, details what the delegation process to local law enforcement entails:

> Any authorized immigration officer may at any time issue a Form I–247, Immigration Detainer–Notice of Action, to any other Federal, State, or local law enforcement agency. A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible. . . . Upon a determination by the Department to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department.

8 C.F.R. § 287.7.  As the language suggests, a detainer is merely a request.  Just as state and local agencies have the choice to enter into a 287(g) agreement, the regulation governing detainers does not impose mandatory obligations on state and local law enforcement agencies to honor detainer requests issued by federal officers.  *See Galarza v. Szalczyk*, 745 F.3d 634, 639-43 (3d Cir. 2014).

## II.    BACKGROUND

Plaintiffs Orellana and Hernandez brought this suit against Defendants on behalf of a class of all persons who, from July 18, 2014 through November 15, 2018, were detained by the Suffolk County Sheriff's Office ("SCSO") pursuant to an ICE immigration detainer request after the SCSO's detention authority had expired, alleging violations of their rights under the Fourth and Fourteenth Amendments of the United States Constitution and under the First Article of the New York State Constitution.  Second Amended Complaint ("SAC"), ECF No. 37; Report and Recommendation ("R&R"), ECF No. 129, Order Adopting R&R, ECF No. 143.  On July 1, 2024, following oral argument, this Court granted Plaintiffs' Motion for class certification and directed the parties to refile their cross-motions for summary judgment.  *See* Order Adopting R&R.  Plaintiffs' renewed motion, which was fully briefed on October 23, 2024, argues Plaintiffs are entitled to summary judgment as to liability on their state law and Fourth Amendment claims.  *See* Pls'. Mem. Supp. Summ. J. ("Pls. Mem."), ECF No. 150-1; Defs.' Mem. Opp'n Summ. J. ("Defs. Opp'n"), ECF No. 152; Pls.' Reply Supp. Summ. J., ECF No. 150-30.  Defendants' renewed motion, which was fully briefed on December 6, 2024, argues Defendants are entitled to summary judgment on all Plaintiffs' claims.  *See* Defs.' Mem. Supp. Summ. J. ("Defs. Mem."), ECF No. 160-39; Pls.' Mem. Opp'n Summ. J. ("Pls. Opp'n"), ECF No. 161, Defs.' Reply Supp. Summ. J. ("Defs.' Reply") ECF No. 160-41.

A. ***Factual Background***

Unless otherwise stated, the following facts are undisputed and drawn from the parties' Local Rule 56.1 Statements, declarations, deposition testimony, and other evidence submitted in support of the motion. Fed. R. Civ. P. 56(c). *See generally* Pls.' Local Rule 56.1(a) Stmt. of Undisputed Material Facts ("Pls.' Stmt."), ECF No. 150-2; Defs.' Resp. to Pls.' Local Rule 56.1(a) Stmt. ("Defs.' Resp. Stmt."), ECF No. 152-1; Pls.' Reply to Defs.' Resp. Stmt. ("Pls.' Reply Stmt."); ECF No. 150-31; Defs.' Local Rule 56.1(a) Stmt. of Undisputed Material Facts ("Defs.' Stmt."), ECF No. 160-38; Pls.' Resp. to Defs.' Local Rule 56.1(a) Stmt. ("Pls.' Resp. Stmt."), ECF No. 161-1; Defs.' Reply to Pls.' Resp. Stmt. ("Defs.' Reply Stmt."); ECF No. 160-40; *see also* Defs.' Resp. to Pls.' Original Local Rule 56.1 Stmt. of Undisputed Material Facts ("Defs.' Original Resp. Stmt."), ECF No. 34.[1]

Defendant County of Suffolk is a municipal corporation of the State of New York that has direct authority over Defendant Suffolk County Sherriff's Office ("SCSO"), an entity, agency, and/or subdivision of the County. Pls.' Stmt. ¶¶ 4-5, 8. Defendant Steven Bellone served as the County Executive of the County of Suffolk during the relevant period. *Id.* ¶ 6. Defendant Errol Toulon, Jr., who is the Suffolk County Sheriff, has direct authority over the SCSO. *Id.* ¶ 9.

Federal regulation 8 C.F.R. § 287.7, which was promulgated pursuant to Section 103(a)(3) of the Immigration and Nationality Act, permits the Department of Homeland Security ("DHS"), through its division of U.S. Immigration and Customs Enforcement ("ICE"), to issue

---

[1] On October 23, 2024, Plaintiffs filed a motion to strike certain of Defendants' responses to Plaintiffs' renewed local 56.1 statements, arguing those responses differed from their responses to Plaintiffs' original motion, despite the facts remaining the same. *See* ECF No. 151-1. On December 19, 2024, the Court granted Plaintiffs' motion. ECF No. 165. As a result, the Court relies on Defendants' original responses, ECF No. 34, where the renewed responses are inconsistent.

immigration detainer requests to local law enforcement agencies.  Ex. H. to Badini Decl., ECF No. 150-11.  These detainer requests (Form I-247D or Form I-247X), which are generally accompanied by a DHS administrative warrant for the arrest of an alien (Form I-200) or for removal/deportation (Form I-205), which are both civil in nature, communicate to local law enforcement that ICE has reason to believe an individual currently in the custody of local law enforcement is subject to removal from the United States.  Defs.' Stmt. ¶ 41; Ex. H to Badini Decl.; Ex. J. to Badini Decl. at 113:7-13, ECF No. 150-13.  These detainer requests ask local law enforcement to detain the subject individual for up to 48 hours after he or she would otherwise be subject to release to allow ICE to assume custody.  Defs.' Stmt. ¶ 41; Ex. H. to Badini Decl.  A detainer request requires the local law enforcement agency to serve the detainer request on the subject individual.  Ex. I to Badini Decl. at COS 00000003, ECF No. 150-1 ("The alien must be served with a copy of this form for the detainer to take effect."); *see also* Ex. J. to Badini Dec. at 149-50.

It is undisputed that, between December 2, 2016 and November 15, 2018, the SCSO had an official policy of honoring ICE detainer requests and corresponding warrants.  Pls.' Stmt. ¶ 19.  On November 15, 2018, Defendant Sheriff Toulon, Jr. issued a memorandum to SCSO personnel explaining that the SCSO's policy, as of that date, was not to hold individuals on the basis of ICE detainer requests.  Pls.' Stmt. ¶ 27; Def. Resp. ¶ 23.  While the SCSO continued to *accept* detainer requests and alert ICE of suspected undocumented individuals through at least October 2021, Pls.' Stmt. ¶ 28; Defs.' Original Resp. Stmt. ¶ 24., no individuals were detained past November 15, 2018, Defs.' Stmt. ¶ 43.

On April 23, 2017, Plaintiff Orellana was arrested by the Suffolk County Policy Department ("SCPD") for traffic violations and remanded to the custody of the SCSO.  Defs.'

Stmt. ¶¶ 4, 6.  On April 24, 2017, ICE issued a detainer request and accompanying I-200 administrative warrant for Plaintiff Orellana.  Defs.' Stmt. ¶ 9.  The certificate of service on Plaintiff Orellana's detainer request, which was to be filled out by the SCSO after Plaintiff Orellana was served, was left blank.  Pls.' Stmt. ¶ 32.  Also on April 24, 2017, Plaintiff Orellana's bail was posted by his cousin.  *Id.* ¶33.  However, instead of being released, Plaintiff Orellana was detained by the SCSO pursuant to the ICE detainer and corresponding administrative warrant.  *Id.* ¶¶ 34-35.  The SCSO sent a memorandum to ICE informing the agency that Plaintiff Orellana was being held "ON YOUR DETAINER ONLY AND NO LONGER HA[S] CHARGES IN SUFFOLK COUNTY."  Ex. I to Badini Decl. at COS00000009.  Plaintiff Orellana was held by the SCSO until April 26, 2017, at which time ICE assumed custody of him.  Pls.' Stmt. ¶¶ 37-38.

On July 2, 2017, Plaintiff Hernandez was arrested by the SCPD on a charge of false personation and subsequently remanded to the custody of the SCSO.  Pls.' Stmt. ¶ 39-40.  On July 7, 2017, ICE issued a detainer and accompanying I-200 administrative warrant for Plaintiff Hernandez.  *Id.* ¶ 41.  The certificate of service on Plaintiff Hernandez's detainer request, which was to be filled out by the SCSO after Plaintiff Hernandez was served, was left blank.  *Id.* ¶ 42.  On August 18, 2017, Plaintiff Hernandez pled guilty to a disorderly conduct violation and was sentenced to time served.  *Id.* ¶ 43.  Despite receiving a sentence of time served, Plaintiff Hernandez was detained by the SCSO until later that same evening, at which time he was transferred to ICE custody.  *Id.* ¶ 44.  On January 23, 2018, Plaintiff Hernandez was released on bond from ICE custody.  *Id.* ¶ 45.

On March 9, 2018, Plaintiff Hernandez was again arrested by officers of the SCPD on charges of false personation and criminal possession of a weapon.  *Id.* ¶ 46.  Plaintiff Hernandez

was taken into SCSO custody on March 10, 2018.  *Id.* ¶ 47.  Also on March 10, 2018, ICE issued

a detainer request for Plaintiff Hernandez.  *Id.* ¶ 48.  Again, the certificate of service was left

blank.  *Id.* ¶ 49.  On March 30, 2018, Plaintiff Hernandez took a plea agreement of one day's

adjournment in contemplation of dismissal.  *Id.* ¶ 50.  That same day, the SCSO sent a

memorandum to ICE with language identical to that in the memorandum pertaining to Plaintiff

Orellana, explaining Plaintiff Hernandez no longer had charges in Suffolk County and was

instead being held solely pursuant to the ICE detainer.  *Id.* ¶ 51.  Despite his plea, Plaintiff

Hernandez remained in the custody of the SCSO until April 2, 2018, at which time he was

transferred to ICE custody.  *Id.* ¶ 52.

     As previously noted, the certificates of service on the detainers were left blank for both

Plaintiff Orellana and Plaintiff Hernandez.  Pls. Stmt. ¶¶ 32, 42, 49.  The SCSO did not serve the

ICE detainer requests on Plaintiffs.  *Id.* ¶ 17; Defs.' Original Resp. Stmt. ¶ 14.  Further, the

SCSO did not take any steps to notify Plaintiffs of the detainer requests lodged against them.

Pls.' Stmt. ¶ 18.  In addition to Plaintiffs Orellana and Hernandez, Defendants have produced

hundreds of inmate jackets[2] for individuals held solely on detainer request beyond the time they

otherwise would have been released.  *Id.* ¶ 55.  Approximately 650 of these individuals make up

the class.  *Id.* ¶ 57.  If not for the detainer requests, these individuals would have been released

from SCSO custody upon resolution of their state cases.  *Id.* ¶ 55; Defs. Original Resp. Stmt. ¶

55.

**B.**    ***Procedural History***

     On July 18, 2017, Plaintiff Joaquin Orellana Castaneda filed his initial complaint, naming

as defendants (1) the U.S. Department Of Homeland Security ("DHS"); (2) John F. Kelly,

---

[2] An inmate jacket is a compilation of records kept by the SCSO containing the processing documents and warrants related to a particular inmate.  Pls. Stmt. ¶ 56.

Secretary, U.S. Department of Homeland Security, in his official capacity; (3) Elaine C. Duke, Deputy Secretary, DHS, in her official capacity; (4) ICE; (5) Thomas D. Homan, Acting Director, ICE, in his official capacity; (6) Matthew T. Albence, Executive Associate Director, ICE, in his official capacity; (7) County of Suffolk; (8) Steven Bellone, County Executive, County of Suffolk, in his official capacity; (9) Suffolk County Sheriff's Office; (10) Vincent F. DeMarco, Sheriff, Suffolk County Sheriff's Office, in his official capacity.  ECF No. 1.

On August 18, 2017, Plaintiff Orellana filed an amended complaint in which Plaintiff Hernandez was added as a plaintiff, and the titles and names of certain defendants were altered. ECF Nos. 12-13.  Plaintiff Hernandez also filed a petition for a writ of habeas corpus with the amended complaint.  *Id.*

On January 1, 2018, the action was dismissed with respect to the federal Defendants. ECF No. 30.

On May 9, 2018, Plaintiff Orellana and Plaintiff Hernandez filed a second amended complaint, now operative, against (1) County of Suffolk; (2) Steven Bellone, County Executive, County of Suffolk, in his official capacity; (3) Suffolk County Sheriff's Office; and (4) Errol Toulon, Jr., Sheriff, Suffolk County Sheriff's Office, in his official capacity.  *See generally* SAC. In their second amended complaint, Plaintiffs allege the "SCSO's policy of unquestioning compliance" with "'detainer' requests from the federal government agency Immigrations and Customs Enforcement" violated Plaintiffs' rights under the Fourth and Fourteenth Amendments of the United States Constitution and the First Article of the New York Constitution.  *Id.* ¶ 1.  In addition to these constitutional claims, Plaintiff Hernandez seeks, on his behalf and on behalf of similarly situated individuals, declaratory and injunctive relief under the Administrative

Procedures Act, 5 U.S.C. § 706(a) and under the Fourth and Tenth Amendments of the United States Constitution.  *Id.* ¶ 7.

On May 8, 2020, Defendants filed a fully briefed motion to dismiss the second amended complaint, which Plaintiffs opposed.  ECF No. 84.

On July 30, 2021, Plaintiffs filed a fully briefed motion to certify a class, ECF Nos. 98, 100, 101, which Defendants opposed, ECF No. 99.

On November 12, 2021, Defendants filed a motion for summary judgment, ECF No. 113, which Plaintiffs opposed, ECF No. 115.  That same day, Plaintiffs filed a cross-motion for summary judgment, ECF No. 114, which Defendants opposed, ECF No. 116.

On May 9, 2022, the Court denied both motions for summary judgment, without opinion and without prejudice, with leave to renew.  ECF No. 123.  The Court reaffirmed its denial on May 12, 2022.  ECF No. 125.

On August 31, 2022, Magistrate Judge Arlene R. Lindsay issued a Report and Recommendation ("R&R"), in which she recommended granting Plaintiffs' motion for class certification.  R&R, ECF No. 129.  On September 14, 2022, Defendants timely filed objections to the R&R.  ECF No. 130.  On September 27, 2022, Plaintiffs filed a response in opposition to Defendants' objections to the R&R.  ECF No. 132.

On July 1, 2024, following oral argument, the Court granted Plaintiffs' Motion for class certification and directed the parties to refile their cross-motions for summary judgment, which are currently before the Court.  *See* Order Adopting R&R.

## C.    *People ex rel. Wells v. DeMarco*

On November 14, 2018, during the pendency of this litigation, the Second Department issued a decision in *People ex rel. Wells v. DeMarco*, in which they considered the issue of

"whether New York law permits New York state and local law enforcement officers to effectuate civil immigration arrests." 168 A.D.3d 31, 34 (N.Y. App. Div. 2d Dep't 2018).

The *Wells* case centers on Susai Francis, a citizen of India who entered the United States on a work visa in 1996 which allowed him to remain in the country for six months. *Id.* Francis did not leave the United States after the term of his visa expired, but rather stayed in Long Island for over two decades with his family. *Id.* On June 14, 2017, Francis was arrested on two misdemeanor counts and was held in Nassau County Correctional Center. *Id.* Upon his arrest by local law enforcement, ICE provided a detainer and arrest warrant to the Nassau County Policy Department, requesting "the Police Department notify ICE as soon as practicable before Francis was released from custody, on at least 48 hours' notice, if possible." *Id.* at 35. On December 4, 2017, after being transferred to the custody of Suffolk County for proceedings in his case, Francis pled guilty to one count of disorderly conduct in Suffolk County District Court and was sentenced to time served. *Id.* However, Francis was not released and was instead remanded from the Nassau County Correctional Center to the Suffolk County Correctional Facility in Riverhead (the "Riverhead facility"). *Id.* Francis's paperwork was "'re-written' from being an 'adult male misdemeanor' case to be being an 'adult male warrant' case based on the ICE warrant, and Francis was regarded by the Sheriff as being in the custody of ICE. Francis was placed in a jail cell rented by ICE." *Id.* at 36. This action, the *Wells* court found, was consistent with policy issued by the SCSO on December 2, 2016, "under which inmates subject to either an ICE detainer accompanied by a United States Department of Homeland Security (hereinafter DHS) Warrant for Arrest of Alien, and/or DHS Warrant of Removal/Deportation, are to be held for up to 48 hours after the time they would otherwise have been released, with ICE to be notified immediately." *Id.* at 35.

10

While Francis was at the Riverhead facility, Jordan Wells, an attorney with the New York Civil Liberties Union Foundation, filed a habeas petition on Francis's behalf, challenging the constitutionality of Francis's confinement and detention pursuant to the ICE warrant and detainer. *Id.* at 36.

Two days after being remanded to the Riverhead facility, ICE agents retrieved Francis and transferred him to a long-term ICE detention facility. *Id.* As of January 5, 2018, Francis was in ICE custody at the Bergen County Jail in Hackensack, New Jersey, pending removal proceedings in Immigration Court. *Id.*

The *Wells* court focused primarily on the question of whether detention pursuant to an ICE detainer and warrant constitutes an arrest, and, if so, whether New York State law enforcement officials have authority to make such arrests. *Id.* at 39-40. The *Wells* court first discussed the issue of the arrest:

> New York state and federal law mirror each other regarding what constitutes an arrest (*see Florida v Royer*, 460 US 491, 502 [1983] [a showing of official authority such that "a reasonable person would have believed that he was not free to leave" indicates that an arrest has occurred under the Fourth Amendment of the United State Constitution (internal quotation marks omitted)]; *People v Yukl*, 25 NY2d 585, 589 [1969] [a suspect is in custody when a reasonable person innocent of any crime would not have believed he or she was free to leave the presence of the police]). With respect to immigration detainers, the federal courts have held that a continued detention on that basis after an inmate is entitled to release constitutes a new arrest (*see Morales v Chadbourne*, 793 F3d 208, 217 [1st Cir 2015] [since an individual was "kept in custody for a new purpose after she was entitled to release, she was subjected to a new seizure for Fourth Amendment purposes—one that must be supported by a new probable cause justification"]; *Moreno v Napolitano*, 213 F Supp 3d 999, 1005 [ND Ill 2016] [federal government conceded that detention of an individual pursuant to an ICE detainer constitutes an arrest]).

*Id.* Because Francis was entitled to release after being sentenced to time served on his state charges but was nonetheless held following that date pursuant to an ICE warrant and detainer,

the *Wells* court found "he was subjected to a new arrest and seizure under both New York law and the Fourth Amendment of the United States Constitution." *Id.* at 40.

Having determined that there was a subsequent arrest pursuant to the ICE detainer, and after noting that the arrest warrant pursuant to which Francis was held was civil, as opposed to criminal, in nature, the Court then turned to the question of whether local law enforcement had authority to effectuate those arrests. *Id.* at 40-41.

The court first looked to New York Statutory Law for authority for these arrests but found the civil warrants at issue did not fall under one of the "three types of warrants" recognized for bringing a defendant before a court. *Id.* at 42 (citing CPL 120.10; CPL 210.10; CPL 530.70). While the court recognized there are some additional situations in which a local law enforcement officer can make an arrest, all of those situations involve a judicial or quasi-judicial determination. *Id.* Further, the *Wells* court found these officers, while empowered to make warrantless arrests in some circumstances, are not authorized to effectuate warrantless arrests for civil violations. *Id.* at 43. Therefore, the *Wells* court concluded the officers had no authority under New York Statutory law to effectuate these arrests. *Id.* at 44.

The court also rejected the SCSO and DOJ's argument that "even if New York state and local law enforcement officers are not statutorily authorized to execute federal immigration arrest warrants, such arrests are nevertheless permissible under the broad state police powers recognized at common law, there being no New York statute that prohibits such arrests." *Id.* The court found that, "while it may be acknowledged that New York possesses broad reserved police powers, it does not follow that the existence of such powers supports civil immigration arrests by state and local law enforcement." *Id.* at 45.

The *Wells* court also declined to find that the fellow officer rule provided authority for these arrests. *Id.* at 47. The fellow officer rule allows a local law enforcement officer to "make a lawful arrest even without personal knowledge sufficient to establish probable cause, so long as the officer is acting upon the direction of an officer in possession of information sufficient to constitute probable cause for the arrest." *Id.* (quoting *People v Ketcham*, 93 NY2d 416, 419 (1999) (internal quotation marks omitted). The *Wells* court explained: "even if it is assumed that an ICE officer has probable cause to arrest for an immigration violation, the fellow officer, in this case the Sheriff's officers, must still make a 'lawful' arrest. If there is no authority to arrest for a civil matter, such arrest cannot be considered 'lawful.' To adopt the position advocated by the Sheriff here would permit state and local law enforcement to assume the authority of an ICE officer, though not granted by state law, based upon nothing more than a request from ICE." *Id.*

Finally, the *Wells* court turned to the question of whether state and local law enforcement officers are authorized by federal law to make civil immigration arrest. *Id.* "Assuming, without deciding," the *Wells* court wrote, "that the Congress may constitutionally convey authority to state and local officials to effectuate arrests which state law does not authorize, we conclude that the Congress has not done so with regard to the circumstances presented by this case." *Id.* at 48.

In reaching this conclusion, the court first looked to Rule 4 of the Federal Rules of Criminal Procedure, which governs the execution of federal arrest warrants. *Id.* The court found "[w]hile there is no question that New York law enforcement officers may execute federal court arrest warrants issued for the purpose of bringing to court individuals accused of the commission of federal immigration crimes, the ICE warrant at issue here was not issued in the context of a criminal action and was not signed by, or on behalf of, a court and was not returnable in a court.

Thus, the Federal Rules of Criminal Procedure do not empower New York state and local law enforcement officers to execute ICE administrative arrest warrants." *Id.*

The court then turned to the question of whether the SCSO was authorized under the INA to make these arrests. The court found the SCSO "does not have a 287 (g) agreement with DHS. Rather, the Sheriff has long had an agreement with the United States Marshals Service pursuant to which federal detainees may be housed at the Riverhead facility." *Id.*

After determining that there was no formal agreement pursuant to Section 287(g), the *Wells* court then addressed whether this conduct was authorized under subsection 287(g)(10), which allows "'any officer or employee of a State or political subdivision of a State' [to] 'cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States' without any formal agreement." *Id.* at 50 (quoting 8 USC § 1357(g)(10)(B)). The *Wells* court found there was no informal agreement justifying these arrests:

> In those instances where the Congress has chosen to permit local officers to enforce federal immigration laws absent a formal 287 (g) agreement, it has explicitly allowed that power only in narrowly drawn circumstances. Given that Tenth Amendment concerns may prevent the Congress from mandating that local entities enforce immigration law (*see City of El Cenizo, Texas v Texas*, 890 F3d at 180-181), and the resulting circumspection with which the Congress has approached the issue of state and local involvement in matters of federal immigration policy, we cannot accede to the view that the Congress, through its provision for voluntary informal cooperation, thereby authorized state and local law enforcement officers to undertake actions not allowed them by state law.

*Id.* at 52.

In conclusion, the court explained the "narrow issue in this case is whether New York law permits New York state and local law enforcement officers to effectuate civil immigration arrests, and not whether federal civil immigration officers have the authority to effectuate such

14

arrests." *Id.* at 53. The Court maintained it was not "decid[ing] any issues under federal law deputizing state and local law enforcement officers to act as federal immigration officers." *Id.* "Determining only the narrow issue before us, we conclude that the Sheriff's policy, issued on December 2, 2016, directing the retention of prisoners, who would otherwise be released, pursuant to ICE detainers and administrative warrants is unlawful, and that Francis's detention by the Sheriff on December 11, 2017, which detention commenced after the termination of Francis's court proceeding that day, was thus unlawful." *Id.* Notably, the *Wells* court said it did not reach the question of whether there was a Fourth Amendment violation: "In view of our determination on a narrow issue of New York law, we need not consider the petitioner's contention that Francis's Fourth Amendment rights were violated." *Id.* at 54 n. 9.

**D.    *The Parties' Summary Judgment Motions***

In their motion for summary judgment, Defendants first argue Plaintiffs' claims that the County violated Plaintiffs' rights under the federal and New York state constitutions should be dismissed as a matter of law. *See generally* Defs.' Mem. Defendants first contend Plaintiffs do not have standing to sue the County for complying with federal detainer requests. *Id.* at 3-5, 7. Second, Defendants argue Plaintiffs claim that Defendants violated the state constitution should be dismissed as a matter of law because (i) *Wells* is not determinative of Plaintiffs' constitutional claim, because (ii) any rule of liability stemming from *Wells* would be preempted, and because (iii) the Court should decline to exercise pendent jurisdiction. *Id.* at 6-11. Third, Defendants argue Plaintiffs' federal claims must be dismissed because Plaintiffs have failed to meet the requirements of 42 U.S.C. § 1983 ("Section 1983") and *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). *Id.* at 11-15. Fourth, Defendants argue Plaintiffs have failed to show, as a matter of law, Defendants violated Plaintiffs' Fourteenth Amendment rights. *Id.* at 15-17.

Fifth and finally, Defendants argue they are entitled to summary judgment on Plaintiffs' Fourth Amendment claims because the detainers were based on probable cause and because Plaintiffs did not possess a Fourth Amendment right to be brought before a magistrate within 48 hours. *Id.* at 17-25.

Plaintiffs moved for summary judgment as to liability on their Fourth Amendment and state law claims. *See generally* Pls.' Mem. Plaintiffs argue first that Defendants' failure to serve detainer requests on Plaintiffs rendered those detainers unenforceable, in violation of state and federal law. *Id.* at 8-9. Plaintiffs then argue, under the Framework laid out in *Monell*, they are entitled to summary judgment on their federal claims. *Id.* at 10-14. Finally, Plaintiffs argue Defendants are liable as a matter of law with respect to Plaintiffs' state law claims because *Wells* is binding on Defendants. *Id.* at 14-17.

### III.    STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" based on the materials in the record. Fed. R. Civ. P. 56(a). A genuine dispute exists if a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001). Courts evaluating motions for summary judgment must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation and internal quotation marks omitted). Once the moving party offers evidence that there is no genuine issue of material fact, the non-moving party then "must show the presence of a genuine issue by coming forward with evidence that would be sufficient, if all reasonable inferences were

16

drawn in his favor, to establish the existence of that element at trial." *United States v. Rem*, 38 F.3d 634, 643 (2d Cir. 1994). The role of the district court is not to weigh the evidence and to determine the truth of the matter, but rather to answer "the threshold inquiry" of "whether there is the need for a trial." *Anderson*, 477 U.S. at 249-50.

### IV.    APPLICABLE LAW

### E.    *Federal Claims*

#### a)    *Section 1983:*

42 U.S.C. § 1983 ("Section 1983") provides a cause of action to individuals challenging the constitutionality of actions taken by state or local government officials. Section 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978)). While an "official policy" can be one embodied in a municipal regulation, it is not true that "senior officials must have formally adopted or promulgated a policy before their conduct may be treated as 'official.'" *Turpin v. Mailet*, 619 F.2d 196, 200 (2d Cir. 1980). Indeed, if a

municipality "impliedly or tacitly authorized, approved or encouraged" certain conduct, "it promulgated an official policy within the meaning of *Monell*." *Id.* at 201.

        b)     <u>*Fourth Amendment*:</u>

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

"The Fourth Amendment prohibits unreasonable seizures; it is not a general prohibition of all conduct that may be deemed unreasonable, unjustified or outrageous." *Medeiros v. O'Connell*, 150 F.3d 164, 167 (2d Cir. 1998). The "first step in any Fourth Amendment claim (or, as in this case, any section 1983 claim predicated on the Fourth Amendment) is to determine whether there has been a constitutionally cognizable seizure." *Id.*

Once it has been determined that a seizure occurred, a court must then determine whether that seizure was reasonable. *Caldarola v. Cnty. of Westchester*, 343 F.3d 570, 574 (2d Cir. 2003). "Generally, a seizure amounting to an arrest 'is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause.'" *Jones v. Cnty. of Suffolk*, 936 F.3d 108, 114 (2d Cir. 2019) (quoting *Skinner v. Ry. Labor Execs.' Ass'n,*, 489 U.S. 602, 619, (1989).

        c)     <u>*Fourteenth Amendment*:</u>

The constitutional guarantees of procedural and substantive due process are found in the Fourteenth Amendment of the United States Constitution. U.S. Const. amend. XIV. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty'

or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

As to substantive due process, "[w]hen a right is 'fundamental,' governmental regulation must be narrowly tailored to serve a compelling state interest. Rights are fundamental in the substantive due process framework when they are implicit in the concept of ordered liberty, or deeply rooted in this Nation's history and tradition." *Molinari v. Bloomberg*, 596 F. Supp. 2d 546, 567 (E.D.N.Y.) (Sifton, J.), *aff'd*, 564 F.3d 587 (2d Cir. 2009).

### F.    *State Law Claims*

#### a)    *N.Y. Const. Art. I § 12*

The protections against unreasonable searches or seizures guaranteed by the Fourth Amendment of the United States Constitution are mirrored in Article I, Section 12 of the New York State Constitution, which reads in relevant part:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

N.Y. Const. Art. I § 12. "Both the Fourth Amendment to the United States Constitution and Article I, § 12 of the New York Constitution prohibit 'unreasonable searches and seizures' (U.S. Const Amend IV; NY Const, art I, § 12). Under the Fourth Amendment, 'a person is seized only when, by means of physical force or a show of authority, [their] freedom of movement is restrained' and, to determine this, courts examine 'all of the circumstances surrounding the incident' and ask whether 'a reasonable person would have believed that [they were] not free to leave.'" *People v.*

*Rodriguez,* 229 N.E.3d 1120, 1123–24 (2023) (quoting *United States v. Mendenhall*, 446 U.S. 544, 553 [1980]).

## V.     ANALYSIS

### A.     *Standing*

Article III of the United States Constitution limits federal courts to resolving "Cases" and "Controversies."  Art. III, § 2.  Article III standing contains three elements:  "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotation marks omitted) (cleaned up).

Defendants argue the Court should not reach the merits because Plaintiffs "cannot establish even one of the three irreducible elements of standing, let alone all three."  Defs.' Mem. at 4.  They first cite *United States v. Texas*, 599 U.S. 670 (2023), for the proposition that standing cannot be established because "the judiciary's interference" in the area of immigration policy is prohibited.  *Id.*  However, as Defendants correctly point out, *Texas* involved a challenge, brought by Texas and Louisiana, to DHS immigration enforcement Guidelines on the grounds the "new Guidelines violate federal statutes that purportedly require the Department to arrest more criminal noncitizens pending their removal."  *Texas*, 599 U.S. at 673-74.  In other words, Texas

and Louisiana wanted the federal government to arrest *more* people than the new Guidelines permitted, arguing those Guidelines were inconsistent with the statute pursuant to which they were promulgated. *Id.* The Supreme Court found the states lacked standing for the same reason "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Id.* (quoting *Linda R. S. v. Richard D*., 410 U. S. 614, 619, (1973)). Because the federal government's decision not to prosecute did not "infringe upon interests that courts often are called upon to protect," such as "an individual's liberty or property," the Court could not entertain the case. *Id.* at 678. Plaintiffs in this case clearly do allege their liberty interests were infringed. As such, the reasoning in *Texas* does not apply.

With respect to injury-in-fact, Defendants contend Plaintiffs have not demonstrated a cognizable theory of harm because "an arrest pursuant to ICE detainers and warrants based on probable cause" does not constitute a Fourth Amendment violation. Defs.' Mem at 5. However, Plaintiffs have alleged and provided evidentiary support for the proposition the detainers were ineffective, having never been served, as well as for the proposition Defendants lacked the statutory authority required to *confer* probable cause. *See generally* Pls.' Mem; Exs. to Badini Decl.; 8 U.S.C. 1357(g). The Court finds Plaintiffs, who argue they were detained past the time the SCSO had authority to hold them, have satisfied the injury requirement of Article III standing.

Defendants' contention that Plaintiffs failed to establish causation fails for similar reasons. Defendants assert it was ICE, not Defendants, who were the cause of Plaintiffs harm. Defs.' Mem. at 5. However, Plaintiffs allege it was Defendants who arrested them, without state or federal authority to do so, resulting in their loss of liberty. *See generally* SAC; Pls.' Mem. It

is undisputed that the SCSO had a policy of honoring detainer requests absent a Section 287(g) agreement. *See supra* Part II-A. Indeed, Defendants assert their actions were "in compliance with N.Y. Const. art. I § 12." Defs.' Opp'n at 21. While that compliance is in dispute, there is no question that the SCSO's arrest authority is generally derived from the state and its police power. This is not to say the alleged harms may not also be traceable to the actions of the federal government, but that does not negate the causation element with respect to Defendants.

As for redressability, Defendants argue that, because Plaintiffs are noncitizens seeking money damages, the alleged harms cannot be redressed because this is not the type of case historically heard by the Court. Defs.' Mem. at 6. However, as Plaintiffs note, whether a person's rights can be vindicated in federal court does not turn on whether they are a citizen. *See* Pls.' Opp'n at 15 (citing *Zuniga-Perez v. Sessions*, 897 F.3d 114, 122 (2d Cir. 2018); *Miranda-Olivares v. Clackamas County*, 12-CV-02317, 2014 WL 1414305 (D. Or. Apr. 11, 2014); *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1046 (1984)). These kinds of harms have been redressed in the past and the Court sees no reason why that cannot be the case here.

The Court is satisfied Plaintiffs have established the elements of Article III standing.

**B.**    **_State Law Claims_**

Plaintiffs allege Defendants "deprived Plaintiffs and other members of the proposed Class and Sub-Class of liberty without due process of law in contravention of the First Article of the New York Constitution." SAC ¶ 63.

Plaintiffs argue the Second Department's decision in *Wells* is determinative of Plaintiffs' state law claims in this case and, as a result, they are entitled to summary judgment on those claims. Pls.' Mem. at 14-17. Defendants argue they are entitled to summary judgment on Plaintiffs state law claims because the detention did not violate the constitution, the Supremacy

Clause preempts state law, and because the Court should decline to exercise pendent jurisdiction. *See* Defs.' Mem. at 6-11; Defs.' Opp'n at 20-24.

As discussed above, the Second Department, in a case with the same Defendants, determined that civil arrests such as the ones in question are not authorized under New York law. *See generally People ex rel. Wells v. DeMarco*, 168 A.D.3d 31, 34 (N.Y. App. Div. 2d Dep't 2018); *supra* Part II-C. The Second Department's determination that the SCSO's policy of "directing the retention of prisoners, who would otherwise be released, pursuant to ICE detainers and administrative warrants" violates New York law is binding on Defendant's under the doctrine of collateral estoppel. *Well*s, 168 A.D.3d at 53. "Under New York law, the doctrine of collateral estoppel, or issue preclusion, 'bars a party from relitigating in a subsequent proceeding an issue clearly raised in a prior proceeding and decided against that party where the party to be precluded had a full and fair opportunity to contest the prior determination.'" *Johnson v. Watkins*, 101 F.3d 792, 794 (2d Cir. 1996) (quoting *Weiss v. Manfredi*, 83 N.Y.2d 974, 976 (1994)). The exact issue addressed in Wells is at issue here. *See supra* Part II-C. Further, as Plaintiffs point out, the *Wells* proceeding "included several opportunities for the parties to be heard. Oral argument was held on December 12, 2017, before a panel of the Second Department. The *Wells* court also invited the parties and various amici to file supplemental pleadings and briefs, which they did." Pls.' Opp'n at 5. Defendants' contention that the fact *Wells* was a habeas proceeding bars collateral estoppel is unavailing, as issues litigated in habeas corpus proceedings have provided the basis for collateral estoppel in this circuit in the past. *See, e.g., Kulak v. City of New York*, 88 F.3d 63, 71-72 (2d Cir. 1996).

Nonetheless, Defendants argue the Court should reject the analysis of the *Wells* court, arguing its reasoning was "unsound." Defs.' Mem. at 8. Specifically, Defendants argue the

*Wells* decision "overlook[s] and disregard[s] the binding nature upon state courts of US Supreme Court determinations that an immigration detention is a civil arrest which may be effectuated pursuant to an administrative warrant issued by a federal agent in accordance with federal statutes." Defs.' Mem. at 8-9. However, as explained above, whether a state or local officer has authority to effectuate these arrests turns on whether Section 287(g) applies to those officers. The *Wells* court found federal law did not authorize the arrests because there was no Section 287(g) agreement and the cooperation provision of 8 U.S.C. § 1357(g)(10) did not apply. Reading that subsection to allow local officers to effectuate arrests absent a formal agreement would, the *Wells* court reasoned, be in inconsistent with the purposes of Congress in enacting the legislation and would itself raise Tenth Amendment Concerns. *See Wells*, 168 A.D.3d at 52.

We agree that federal law does not authorize these arrests. It is undisputed that the SCSO did not have a formal Section 287(g) agreement. Statement of Interest of the United States at 2, ECF No. 80; Brief Amicus Curiae of State of New York at 6, 11, ECF No. 159-1. Further, New York itself has stated that the cooperation provision of 8 U.S.C. § 1357(g)(10) does not apply here and would in fact be inconsistent with state law. Brief Amicus Curiae of State of New York at 11-12; *see also Wells*, 168 A.D.3d at 48-52. As discussed above, *see supra* Part I, whether a local law enforcement agency assists ICE in its apprehension of aliens pursuant to the INA is voluntary. The statute itself only contemplates such assistance where it is "consistent with State and local law." 8 U.S.C. § 1357(g)(1). Where, as here, the law of the state prohibits the conduct that the cooperation subsection contemplates, that subsection cannot reasonably be interpreted as applying.

Indeed, the suggestion that 8 U.S.C. § 1357(g)(10) renders all detainers issued to local law enforcement officials enforceable *regardless* of whether the state itself allows such

enforcement would potentially run afoul of the Tenth Amendment of the United States Constitution.  *See Galarza v. Szalczyk,* 745 F.3d 634, 643 (3d Cir. 2014) ("Under the Tenth Amendment, immigration officials may not order state and local officials to imprison suspected aliens subject to removal at the request of the federal government."); *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 178 (5th Cir. 2018) ("[T]he Tenth Amendment prevents Congress from compelling Texas municipalities to cooperate in immigration enforcement" (citing *Printz v. United States*, 521 U.S. 898 (1997))).  The Court declines to read 8 U.S.C. § 1357(g)(10) as providing the authority for the SCSO to effectuate civil immigration arrests, without a formal agreement, when such arrests would contravene state law.

The cases Defendants cite for the proposition that inconsistency with state law should have no bearing on the applicability of the INA detainer provisions are inapposite.  *City of El Cenizo, Texas v. Texas*, 890 F.3d 164 (5th Cir. 2018), involved a Texas law that "specifically mandated that Texas law enforcement agencies comply with ICE detainer requests."  *See* 168 A.D.3d at 52 (citing 890 F.3d at 174).  As such, the Court determined the cooperation provision of 8 U.S.C. § 1357(g)(10) applied.  While Defendants are correct that the court in *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788 (9th Cir. 2020), stated the "constitutionality of a warrantless arrest under the Fourth Amendment does not depend on whether state law authorizes state or local officers to make the arrest, but on whether there is probable cause," Defs.' Mem. at 22 (quoting *Gonzalez*, 975 F.3d at 818), *Gonzalez* involved no discussion of 1357(g) and instead was concerned with another statutory provision.  Defendants have provided no caselaw suggesting an immigration arrest made in violation of state law and undertaken by local law enforcement officers who do *not* fall within the purview of 8 U.S.C. 1357(g) is nonetheless proper.

Defendants cite *Arizona v. United States*, 567 U.S. 387 (2012), for the proposition that Plaintiffs claims are preempted. Defs.' Mem. at 21-24. However, unlike Arizona, this case does not implicate the Supremacy clause. In *Arizona*, the state passed a law that "attempt[ed] to provide state officers even greater authority to arrest aliens on the basis of possible removability than Congress has given to trained federal immigration officers." *Arizona*, 567 U.S. at 408. By entrusting its state officers with authority *beyond* that envisioned by Congress, Arizona's statute "violate[d] the principle that the removal process is entrusted to the discretion of the Federal Government." *Id.* at 409. No legislation or policy, separate from that provided by Congress in 8 U.S.C. § 1357(g) is at issue in this case. Rather, this case raises the question of whether, in the absence of a *voluntary* agreement or cooperation pursuant to 8 U.S.C. § 1357(g), local law enforcement can nonetheless effectuate civil arrests pursuant to ICE detainers using the process laid out in that statute. As the Court explained in *Arizona*, "federal law specifies limited circumstances in which state officers may perform the functions of an immigration officer." *Id.* at 408. The question here is whether such a circumstance existed, and, if not, whether Plaintiffs rights were violated as a result.

The Court declines to declare the reasoning of the Wells court "unsound." Because the *Wells* court found the exact practice at issue here to be in violation of New York law, and because Defendants had a fair opportunity to litigate that issue, the doctrine of collateral estoppel precludes Defendants' argument. Further, even addressing the issues on the merits, we agree with the *Wells* court. Summary judgment in favor of Plaintiffs is warranted as to the state law claims.

**C.**    **_1983 Claims_**

Defendants seek summary judgment on Plaintiffs' Fourth and Fourteenth Amendment Claims, arguing Plaintiffs have not satisfied the requirements of Section 1983 and *Monell.* Defs.' Mem. at 11-15. Plaintiffs argue they are entitled to summary on their Fourth Amendment claim. Pls.' Mem. at 8-14. We will analyze each *Monell* element in turn.

a)    *Official Policy*

Defendants themselves admit they had an official policy of honoring detainer requests during the relevant time period. *See supra* Part II-A. Defendants argue, however, that because the SCSO was simply complying with the federal government's policy, it is properly understood as a federal, as opposed to a municipal, policy. Defs.' Mem. at 14. As a result, Defendants argue Plaintiffs cannot satisfy the first requirement of *Monell*. However, as discussed above, the power did not flow from the federal government. The County, without a formal agreement and in contravention of state law, honored immigration detainer requests and effectuated civil arrests, often without properly serving those detainers. The practice of honoring detainers without the authority of 8 U.S.C. § 1357 is a municipal policy.

b)    *Causation*

Defendants also argue Plaintiffs have failed to show the policy caused the alleged harm, as required for Section 1983 claims, because ICE "was the moving force behind the alleged deprivations." Defs.' Mem. at 14. However, the policy adopted by the SCSO was distinct from ICE's policy—indeed the issue stems from the fact the SCSO was acting *without* the federal statutory authority to do so. Additionally, as discussed *supra* Part V-A, while Defendants are correct that Plaintiffs' alleged harm is *also* traceable to ICE, the actual issuer of the detainers, that is not to say the SCSO's policy did not cause Plaintiffs' harm. The record demonstrates the

Plaintiffs' alleged Fourth Amendment violation was a result of the SCSO's policy of honoring detainer requests.

<em>c)    Deprivation of a Constitutional Right</em>

Plaintiffs move for summary judgment only with respect to their Fourth Amendment claim, while Defendants move for summary judgment on both the Fourth Amendment and Fourteenth Amendment claims.

(1)    Fourth Amendment

Plaintiffs allege their Fourth Amendment rights were violated because they were seized by the SCSO after they otherwise would have been released without probable cause. As discussed above, where an individual is seized without probable cause to believe he or she committed a crime, that seizure generally contravenes the Fourth Amendment. *See generally Bailey v. United States*, 568 U.S. 186, 192 (2013). Because Plaintiffs bring this claim pursuant to Section 1983, which was enacted against the backdrop of common-law tort principles, "[t]o determine the precise contours of a constitutional claim under § 1983 . . . a court should identify the 'most analogous' common-law tort to the constitutional harm." *Chiaverini v. City of Napoleon, Ohio,* 602 U.S. 556, 561 (2024) (quoting *Manuel v. Joliet*, 580 U.S. 357, 370 (2017)).

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause is substantially the same as a claim for false arrest under New York law." *Burden v. Inc. Vill. of Port Jefferson*, 664 F. Supp. 3d 276, 284–85 (E.D.N.Y. 2023)(Brown, J.) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). A false arrest claim requires a Plaintiff to demonstrate the following elements: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement

was not otherwise privileged." *Id.* at 285 (quoting *Savino v. City of New York,* 331 F.3d 63, 75 (2d Cir. 2003)).

Defendants argue the confinement was privileged because "an act of confinement is privileged if it stems from a lawful arrest supported by probable cause." Defs. Mem. at 19 (quoting *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019)). Defendants assert the ICE detainers provided probable cause. *Id.* They further contend it is immaterial that the arrests were civil in nature and ran contrary to state law. *Id.* at 15, 20-23.

Defendants are correct that various courts have held the absence of state authority to effectuate an arrest does not automatically mean an arrestee's Fourth Amendment rights were violated. In *Virginia v. Moore*, the Supreme Court addressed the question of "whether a police officer violates the Fourth Amendment by making an arrest based on probable cause but prohibited by state law." 553 U.S. 164, 166 (2008). In that case, Virginia police officers arrested Moore for driving with a suspended license. *Id.* at 166-67. Under Virginia law, driving with a suspended license is not an "arrestable" offense, and therefore the issuance of a summons would have been the proper approach under Virginia law. *Id.* at 167. However, the Court found that the unlawfulness of the arrest under state law did not mean the officers had violated Moore's Fourth Amendment when the seizure was otherwise reasonable and supported by probable cause: "We conclude that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Id.* at 176; *see also United States v. Turner*, 553 F.3d 1337, 1342 (10th Cir. 2009) ("Fourth Amendment search and seizure protections do not turn on local law enforcement policies.").

29

Defendants are also correct that certain courts have determined a civil immigration detainer, which is supported by the reasonable belief that a person is a removable alien, confers sufficient probable cause for an arrest under the Fourth Amendment. *Defs.' Mem* at 20-23; *see also* 8 U.S.C. § 1357. Defendants cite *Jimenez v. City of Cohoes Police Dep't,* for the proposition that circuits are split over the question of whether an ICE detainer and administrative warrant, which are civil in nature, provide probable cause under the Fourth Amendment for local law enforcement officers to effectuate an arrest. 23-955, 2024 WL 1551149, at *2 n.2 (2d Cir. Apr. 10, 2024) (describing circuit split). Defendants argue *Jimenez* suggests "that the Second Circuit would align with the well-reasoned and compelling decisions of circuits which have found that immigration detentions by local officials." Defs.' Mem. at 20.

As a preliminary matter, the Court does not read *Jimenez* as coming down on one side or the other: Because the officers in *Jimenez* had *criminal* probable cause to arrest the plaintiff, the Court did not reach the issue of whether an arrest based solely on the ICE detainer would be improper. *Jimenez*, 2024 WL 1551149, at *2.

However, of more significance here, the cases cited by the *Jimenez* court and Defendants differ in an important respect from the case before the Court today: The present case raises the question of whether, in the *absence* of federal authority, local law enforcement officers can effectuate civil immigration arrests that run contrary to state law, not whether the civil probable cause conferred by federal immigration officers on local officials is sufficient for Fourth Amendment purposes. Unlike the cited cases, that there is probable cause *at all*—for a civil violation or otherwise—is not a given here. If one assumes Section 287(g) is the vehicle which confers probable cause on local law enforcement, a premise which is disputed,[3] it follows that

---

[3] 8 U.S.C. 1357(g) does not contain any explicit language about probable cause. Instead, it empowers federal agents, and local law enforcement when they have been deputized pursuant to a formal agreement, to make arrests

local law enforcement agencies *not* falling under the purview of this section of the INA cannot rely on federal immigration officials' probable cause determinations. *See Abriq v. Hall*, 295 F. Supp. 3d 874, 880 (M.D. Tenn. 2018) (explaining 8 U.S.C. § 1357 does not "give local agencies the authority to provide that housing without probable cause, especially where, as here, no § 287 agreement exists between [the locality] and ICE").

We do not take a position as to whether local law enforcement officers violate the Fourth Amendment when making civil immigration arrests based on the "reasonable belief" conferred to local officials by federal immigration officers via the Immigration and Nationality Act. However, given that the SCSO derived no authority from provisions of 8 U.S.C. § 1357(g), as discussed above, we conclude the SCSO had no "reasonable belief," much less probable cause, for these arrests as the existence of that belief or probable cause is premised on the applicability of the statute. And because an arrest absent probable cause violates the Fourth Amendment, *see Jones v. Cnty. of Suffolk*, 936 F.3d 108, 114 (2d Cir. 2019). we conclude Defendants' seizures of Plaintiffs during the relevant period violated their Fourth Amendment rights.

(2)    Fourteenth Amendment

Plaintiffs assert Defendants violated Plaintiffs' substantive due process and procedural due process rights, in violation of the Fourteenth Amendment of the United States Constitution. *See* SAC ¶¶ 67-73. Defendants argue Plaintiffs' Fourteenth Amendment due process claims fail as a matter of law.

---

when they have "reason to believe" an alien is in violation of certain laws. Certain courts do not believe this can form the basis of a lawful arrest. *See Orellana v. Nobles Cnty.*, 230 F. Supp. 3d 934, 945 (D. Minn. 2017) ("having 'reason to believe [that Orellana] is an alien subject to removal from the United States' does not, without more, provide the probable cause needed to make a lawful arrest." (quoting *Arizona v. United States*, 567 U.S. 387 (2012))).

"To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Okin v. Vill. of Cornwall-On-Hudson Police Dep't,* 577 F.3d 415, 431 (2d Cir. 2009) (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)).

Defendants argue the substantive due process claim is improper because it is duplicative of Plaintiffs' Fourth Amendment claim. Defs.' Mem. at 16. Additionally, Defendants argue their conduct in the instant case does not rise to the level necessary to make out a substantive due process claim. *Id.* at 15-16.

We agree this claim is duplicative. "In general, where 'a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Hawthorne by Hawthorne v. Cnty. of Putnam*, 492 F. Supp. 3d 281, 303 (S.D.N.Y. 2020) (Román, J.), (quoting *Singer v. Fulton Cty. Sheriff,* 63 F.3d 110, 115 (2d Cir. 1995)); *see also Johnson v. City of Troy*, 2016 WL 5107124, at *15 (N.D.N.Y. Sept. 20, 2016) (Suddaby, J.) ("a substantive due process claim may not be maintained where the alleged misconduct is covered by another constitutional provision"); *Dorsainvil v. City of New York*, 19-CV-2323, 2020 WL 6482348, at *6 (E.D.N.Y. Nov. 4, 2020) (Kovner, J.) (dismissing a substantive due process claim based on reckless investigation where the claim "sounds entirely in the Fourth Amendment."). Here, Plaintiffs Fourteenth Amendment claims are premised on the same conduct underlying their Fourth Amendment claims. *See* SAC ¶¶ 67-73. For these reasons, Defendants' motion for summary judgment as to Plaintiffs' substantive due process claim is granted.

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Radwan v. Manuel*, 55 F.4th 101, 123 (2d Cir. 2022) (quoting *Bryant v. N.Y. State Educ. Dep't,* 692 F.3d 202, 218 (2d Cir. 2012)). Procedural due process requires that deprivation of an individual's liberty interest must "be preceded by notice and opportunity for hearing." *Cleveland Bd. of Educ v. Loudermill*, 470 U.S. 532, 542 (1985).

Defendants argue Plaintiffs' procedural due process claim fails as a matter of law because Plaintiffs did not "possess a liberty interest which shielded them from being arrested pursuant to ICE detainer requests and arrest warrants since '[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.'" Defs.' Mem. at 17 (quoting 8 U.S.C. §1226(a)). However, as discussed above, we find Defendants did not derive authority from the relevant federal statutes in effectuating these arrests. The Court finds Plaintiffs have demonstrated a liberty interest, namely their right to be free from seizures absent probable cause.

Defendants then argue Plaintiffs' due process claim must be dismissed because it is "predicated on the alleged unconstitutionality of their detention." *Id.* at 17. While it is true, as with substantive due process, that a plaintiff's "procedural due process claim cannot be predicated upon the same factual basis as his Fourth Amendment false arrest and false imprisonment claims," *Levantino v. Skala*, 56 F. Supp. 3d 191, 203 (E.D.N.Y. 2014) (Spatt, J.) (citing *Osuna v. City of New York*, 08-CV-4759, 2009 WL 2356424, at *6 (S.D.N.Y. July 30, 2009) (Rakoff, J.)), it is less obvious here that the conduct underlying the procedural due process claim is identical to that underlying the Fourth Amendment claim. While the Court finds Plaintiffs have established a Fourth Amendment violation because they were arrested without

33

probable cause or the applicable statutory authority, they also assert facts related to Defendants' failures to serve detainers and Defendants' failures to allow Plaintiffs to contest their detentions. *See supra* Part II-A; *see also* SAC ¶ 70 (alleging Plaintiffs had no opportunity to challenge their deprivation). The parties provide exceptionally little information concerning what opportunities Plaintiffs *did* have to challenge their detention. *See generally* Pls.' Stmt; Defs.' Stmt. As such, the Court finds there is a question of material fact as to whether the second prong of the procedural due process test has been met, rendering summary judgment for Defendants improper on this claim.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment as to liability is GRANTED, and Defendants' motion for summary judgment is GRANTED with respect to Plaintiffs' Fourteenth Amendment substantive due process claim and DENIED with respect to Plaintiffs' other claims.

**SO ORDERED.**

**s/ WFK**

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: January 2, 2025
         Brooklyn, New York