UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOAQUIN ORELLANA CASTANEDA and GERMAN
HERNANDEZ ARGUETA, on behalf of
themselves and all others similarly situated,

                                        Plaintiffs,

                    -against-

COUNTY OF SUFFOLK; STEVEN BELLONE,
*County Executive, County of Suffolk, in his Official
Capacity*; SUFFOLK COUNTY SHERIFF'S OFFICE;
ERROL TOULON, JR., *Sheriff, Suffolk County Sheriff's
Office, in his Official Capacity*; and other individuals in
charge to be identified,

                                        Defendants.

17-cv-04267(WFK)(ARL)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Served: July 25, 2025

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 3

    A.    Litigation Commences ............................................................................... 3

    B.    Federal Defendants Voluntarily Dismissed After Raising Sovereign Immunity
        Defense ..................................................................................................... 4

    C.    The Second Amended Complaint................................................................ 4

    D.    Class Certification and Summary Judgment ............................................... 5

    E.    Appeal and Subsequent Developments ...................................................... 6

ARGUMENT ....................................................................................................................... 6

    I.    Statutory Scheme of Immigration Detainers............................................... 6

        A.    Federal Law Contemplates Close Cooperation with State and Local
            Officials in Enforcement of Immigration Law ............................... 6

        B.    Immigration Detainers ................................................................... 8

    II.    Defendants Are Immune From Suit Against Plaintiffs' Claims .............................. 9

        A.    Defendants Acted Under Color of Federal Authority When Honoring ICE
            Detainers ....................................................................................... 9

        B.    Under 8 U.S.C. § 1357(g)(8), Defendants Are Immune From Suit For
            Actionws Taken Under Color of Federal Law.......................................... 12

CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

*Cases*                                                                                                      *Page(s)*

*Arizona v. U.S.*,
    567 U.S. 387 (2012)......................................................................................................6, 8

*Carey v. New York Gaslight Club, Inc.*,
    598 F.2d 1253 (2d Cir. 1979).....................................................................................9

*Castillo v. Snyders*,
    497 F. Supp. 3d 299 (N.D. Ill. 2020) ......................................................................10

*Chin v. Wilhelm*,
    291 F. Supp. 2d 400 (D. Md. 2003) .........................................................................13

*City of El Cenizo v. Texas*,
    890 F.3d 164 (5th Cir. 2018) ...........................................................................7, 8, 10

*Clark v. Martinez*,
    543 U.S. 371 (2005)....................................................................................................1

*Cuevas v. Dep't of Homeland Sec.*,
    233 Fed. App'x 642 (9th Cir. 2007) .......................................................................12

*Dossett v. First State Bank*,
    399 F.3d 940 (8th Cir. 2005) ...................................................................................10

*Flores v. United States*,
    No. 09-cv-00838-ADM-SER (D. Minn. Apr. 1, 2010),
    *report and recommendation adopted*, No. 09-CV-838 (JMR/SRN),
    2010 WL 11646663 (D. Minn. Aug. 12, 2010) ....................................................11

*Hernandez v. United States*,
    939 F.3d 191 (2d Cir. 2019)................................................................................2, 12

*Keller v. District of Columbia*,
    809 F. Supp. 432 (E.D. Va. 1993) ..........................................................................10

*Kotlyarsky v. U.S.*,
    No. 1:20-cv-09230 (PGG) (SDA), 2021 WL 6055267 (S.D.N.Y. Aug. 18, 2021),
    *report and recommendation adopted*, No. 20CIV9230PGGSDA,
    2022 WL 4547410 (S.D.N.Y. Sept. 28, 2022)..................................................2, 12

*Leonhard v. U.S.*,
    633 F.2d 599 (2d Cir., 1980)......................................................................................2

*Cases*                                                                                                                                  *Page(s)*

*Liffiton v. Keuker*,
     850 F.2d 73 (2d Cir. 1988)..............................................................................................12

*Mitchell v. Forsyth*,
     472 U.S. 511 (1985)....................................................................................................2

*People ex rel. Wells v. Demarco*,
     168 A.D.3d 31 (N.Y. App. Div. 2d Dep't 2018) ....................................................4

*Screws v. United States,*
     325 U.S. 91 (1945)....................................................................................................10

*Settles v. U.S. Parole Comm'n*,
     429 F.3d 1098 (D.C. Cir. 2005) ..............................................................................12

*Shoman v. U.S. Customs and Border Protection*,
     No. 07-994, 2008 WL 203384 (W.D. Pa. Jan. 24, 2008) .....................................12

*U.S. v. Ovando-Garzo*,
     752 F.3d 1161 (8th Cir. 2014) ............................................................................8, 10

*United States v. Classic*,
     313 U.S. 299 (1941)..................................................................................................11

*Webb v. Smith*,
     No. CIV-15-213-DLR, 2016 WL 7666119 (D. Utah Jan. 22, 2016)...................12

*Statutes & Other Authorities*                                                                                     *Page(s)*

8 C.F.R. §§ 287.7(a), (d)..................................................................................................9

8 U.S.C. §§ 1103(a)(3)......................................................................................................8

8 U.S.C. § 1226.............................................................................................................. 6-8

8 U.S.C. §§ 1231(a) ..........................................................................................................8

8 U.S.C. § 1357.................................................................................................... 1, 2, 6-13

42 U.S. § 1983 .....................................................................................................1, 2, 4, 11, 12

Black's Law Dictionary (12th ed. 2024)........................................................................11

Fed. R. Civ. P. 12(h)(3).....................................................................................................2

## PRELIMINARY STATEMENT

From Defendants' perspective, Congress has given local law enforcement the authority to cooperate with the Department of Homeland Security ("DHS") in the detention of aliens not lawfully present in the United States. *See* 8 U.S.C. § 1357(g)(10) ("[A]ny officer or employee of a State or political subdivision of a State" may "cooperate with the Attorney General[1] in the identification, apprehension, *detention*, or removal of aliens not lawfully present in the United States.") (emphasis added). To support that cooperation, and to ensure that local law enforcement is placed on the same footing as federal actors, Congress extended to local actors the same immunities as federal actors. *See* 8 U.S.C § 1357(g)(8) ("An officer or employee of a State or political subdivision of a State acting under color of authority under this subsection, or any agreement entered under this subsection, shall be considered to be acting under color of Federal authority for purposes of determining the liability, and immunity from suit, of the officer or employee in a civil action brought under Federal or State law.").

The challenged conduct here is Defendants' past practice of honoring Immigration and Customs Enforcement's ("ICE") detainers and warrants—precisely the type of cooperation between federal and state authorities that § 1357(g)(10) contemplates. Accordingly, under the plain language of § 1357(g)(8), Defendants are entitled to be treated as federal actors for the purpose of determining their immunity from suit. And Federal actors have sovereign immunity from Plaintiffs' claims, which are brought under 42 U.S. § 1983 and the New York Constitution. These claims could not be sustained against federal actors (and, indeed, Plaintiffs acknowledged as much when they stipulated to the dismissal of the federal defendants in this action, *see infra* at

---

[1] Following passage of the Homeland Security Act of 2002, references to the "Attorney General" are understood to mean the Secretary of Homeland Security. *See, e.g., Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

4), and so they cannot be sustained against Defendants here.  *See, e.g.*, *Hernandez v. United States*, 939 F.3d 191, 205 (2d Cir. 2019) (plaintiff cannot sue federal actors for violation of New York constitution because Congress has not waived sovereign immunity to such claims); *Kotlyarsky v. United States Dep't of Just.*, No. 120CV09230PGGSDA, 2021 WL 6055267, at \*4 n.2 (S.D.N.Y. Aug. 18, 2021), *report and recommendation adopted*, No. 20CIV9230PGGSDA, 2022 WL 4547410 (S.D.N.Y. Sept. 28, 2022) (Section 1983 claims against federal agency and officers in official capacities barred as "[d]efendants are protected from suit under Section 1983 by sovereign immunity").

We recognize, of course, that the Court has previously ruled that Suffolk County Sheriff's Office ("SCSO") "derived no authority from provisions of 8 U.S.C. § 1357(g)" (Dkt. 166, at 31), a conclusion with which we respectfully disagree.   But even if that conclusion were correct, it is unquestionably the case that Defendants were acting "under color of" 1357(g)(8).  By its terms, 1357(g)(8) applies to actions taken "*under color of authority*" of 1357(g), not only to actions that were in fact authorized under the subsection, and so by cooperating with ICE to detain Plaintiffs, whether or not they were in fact authorized to do so, Defendants are entitled to the protections and immunities provided by § 1357(g)(8).

Further, because "sovereign immunity is a jurisdictional defect, it can be raised at any time." *Leonhard v. U.S.*, 633 F.2d 599, 618 (2d Cir., 1980); see Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action") (emphasis added).  And because federal sovereign immunity constitutes "immunity from suit rather than a mere defense to liability . . . [it] is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).

Accordingly, Defendants respectfully submit that Plaintiffs claims must be dismissed in their entirety before trial begins.

## STATEMENT OF FACTS

### A.    Litigation Commences

This litigation began in July 2017, when Plaintiff Joaquin Orellana Castaneda sued several federal agencies and officials (the "Federal Defendants")[2] and Defendants, challenging ICE's policy and practice of issuing detainers to law enforcement agencies and Defendants' then-policy and practice of complying with such detainers. (Compl. Dkt. 1, ¶¶3-4). Mr. Orellana claimed that the Federal Defendants' issuance of detainers and Defendants' compliance with the detainers, violated the U.S. and New York Constitutions and sought money damages and declaratory relief. (*Id.* ¶¶47-76).

The next month, Plaintiff Orellana filed an Amended Complaint, along with a newly-added Plaintiff, German Hernandez Argueta, purporting to seek relief "on behalf of themselves and all others similarly situated"—*i.e.*, individuals detained by Defendants in compliance with detainers issued by ICE. (Amended Compl. Dkt. 12, at 1-2.)  The Amended Complaint sought declaratory and injunctive relief, in addition to money damages.[3]  (*Id.*, at 22).

_____

[2] The Federal Defendants named in the Complaint included: the Department of Homeland Security; John F. Kelly, then-Secretary of Homeland Security, in his official capacity; Elaine C. Duke, then-Deputy Secretary of Homeland Security, in her official capacity; ICE; Thomas D. Homan, then-Acting Director of ICE, in his official capacity; and Matthew T. Albence, then-Executive Associate Director of ICE, in his official capacity.  (Dkt. 1).

[3] The Amended Complaint also sought *habeas corpus* relief on behalf of Plaintiff Hernandez (and others similarly situated), who was purportedly unlawfully detained by Defendants when they complied with an ICE detainer requesting his continued custody. (Dkt. 12, at 22).  The petition for a writ of *habeas corpus* was omitted in the Second Amended Complaint.  (*See* Dkt. 37).

B.    Federal Defendants Voluntarily Dismissed After Raising Sovereign Immunity Defense

In September 2017, all Defendants sought to move to dismiss the Amended Complaint. (Dkts. 14, 16).  In seeking leave to file their motion to dismiss, the Federal Defendants explained that Plaintiffs' claims against the Federal Defendants for compensatory damages were barred by sovereign immunity.  (Dkt. 14, at 3).  Plaintiffs appeared to agree, stating in response that they were "willing to withdraw their claim for compensatory damages" against the Federal Defendants. (Dkt. 17, at 1).  After the Defendants filed their motions to dismiss, the Federal Defendants told the Court that Plaintiffs' remaining claims against them—which sought only prospective declaratory and injunctive relief—were rendered moot as ICE had entered into an agreement with Defendants by which aliens subject to ICE detainers would no longer be held in Defendants' custody solely on the basis of an ICE detainer.[4]  (Dkt. 25.)  Again, Plaintiffs appeared to agree, and, in January 2018, the Court so-ordered a stipulation dismissing the Federal Defendants from the action.  (Dkt. 30.)

C.    The Second Amended Complaint

In May 2018, Plaintiffs filed their Second Amended Complaint ("SAC") against Defendants, again asserting claims for violations of the U.S. Constitution, under Section 1983, and the New York Constitution arising from Defendants' then-practice of complying with ICE-issued detainers.  (Dkt. 37).  No claims were asserted against any Federal Defendants.

---

[4] On November 14, 2018, the Appellate Division, Second Department, issued its decision in *People ex rel. Wells v. Demarco*, holding that "New York state and local law enforcement officers are not authorized by New York law to effectuate arrests for civil law immigration violations."  168 A.D.3d 31, 34 (N.Y. App. Div. 2d Dep't 2018).  By November 15, 2018, Defendants stopped honoring ICE detainer requests.  (Dkt. 150-2, ¶19).

In the SAC, Plaintiffs "challenge the [then-]policy and practice of the SCSO and its officials of complying with 'detainer' requests from [ICE]." (*Id.* ¶1.) Plaintiffs further alleged that Defendants' "policy of unquestioning compliance with these [detainer] requests . . . violated their rights under the Fourth and Fourteenth Amendments of the United States Constitution and under the First Article of the New York Constitution." (*Id.*) More specifically, Plaintiffs alleged that Defendants' holding of Plaintiffs pursuant to the detainers constituted deprivation of liberty without due process of law in violation of the New York Constitution and the Fourteenth Amendment, and an unreasonable seizure under the Fourth Amendment. (*Id.* ¶¶62-79.) Plaintiffs further alleged that they were not given proper notice and an opportunity to be heard in violation of the due process clause of the Fourteenth Amendment. (*Id.* ¶70.) As to the named plaintiffs, Plaintiffs alleged that Defendants "continued to hold Mr. Orrellana . . . pursuant to an ICE detainer after his bail had been paid," and that Defendants "retained [Mr. Hernandez] in custody pursuant to the detainer request issued by ICE." (*Id.* ¶¶21, 29.)

D.    Class Certification and Summary Judgment

On July 1, 2024, the Court certified a Plaintiff class of approximately 650 individuals detained by Defendants pursuant to ICE detainers between July 18, 2014 and November 15, 2018. (Dkts. 129, at 23-24; 143),

After class certification, both parties moved for summary judgment. Defendants sought to dismiss Plaintiffs' claims in their entirety, while Plaintiffs sought summary judgment on liability only as to their state law and Fourth Amendment claims. (Dkts. 150, 160.) The Court issued its Decision and Order on January 2, 2025. (Dkt. 166.) The Court granted the branch of Defendants' motion seeking dismissal of Plaintiffs' Fourteenth Amendment substantive due process claim, but otherwise denied Defendants' motion. (*Id.*, at 34.) The Court granted Plaintiffs' motion for summary judgment, holding that Defendants are liable on Plaintiffs' state law and Fourth

5

Amendment claims.  (*Id.*)  The Court ruled, *inter alia*, that Defendants were not acting under color

of federal law because they lacked a formal agreement with ICE under 8 U.S.C. § 1357—a "287(g)

agreement."  (*Id.*, at 24-26).  .

        E.        Appeal and Subsequent Developments

Defendants filed a notice of appeal seeking interlocutory review of the Court's Order under

the collateral order doctrine on grounds that they were entitled to federal sovereign immunity under

8 U.S.C. § 1357g(8).  (Dkts. 171, 174).  Plaintiffs moved to dismiss the appeal, arguing, *inter alia*,

that there was no appellate jurisdiction because the Court had not definitively ruled on whether

Defendants were entitled to federal sovereign immunity, though the Court had already found that

8 U.S.C. § 1357 did not apply to Defendants.  *Orellana Castaneda et al. v. U.S. Department of*

*Homeland Security et al.*, 25-321 at Dkt. 14 (2d Cir.).  The Second Circuit, by a 2-1 vote,  granted

Plaintiffs' Motion, finding that "the district court did not rule on whether Appellants were entitled

to immunity under section 1357(g), and therefore this is not an appeal of an immunity ruling." (*Id.*,

Dkt. 28.1 at 1-2.)

On July 9, 2025, Defendants filed a pre-motion letter seeking leave to file this motion,

which the Court granted on July 10, 2025.  (Dkts. 187, 188.)

## **ARGUMENT**

I.    **Statutory Scheme of Immigration Detainers**

    A.    Federal Law Contemplates Close Cooperation with State and Local Officials
             in Enforcement of Immigration Law

The federal government "has broad, undoubted power over the subject of immigration and

the status of aliens."  *Arizona v. U.S.*, 567 U.S. 387, 394 (2012); *see id.* at 396 ("Congress has

specified which aliens may be removed from the United States and the procedures for doing so.").

This includes the power to interview, arrest, and detain removable aliens.  *See* 8 U.S.C. §§ 1226(a),

(a)(1) ("On a warrant issued by the [Secretary of Homeland Security], an alien may be arrested and detained pending a decision on whether the alien is to be removed . . . pending such decision, the [Secretary] may continue to detain the arrested alien"); 8 U.S.C. § 1226(c)(1) ("[Secretary] shall take into custody any alien" who committed certain enumerated crimes "when the alien is released"); 8 U.S.C. § 1357(a)(1) (power to, without warrant, "interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States").

Federal law contemplates close cooperation between federal and state and local officials in enforcing immigration law. One way in which such cooperation is authorized is through formal agreements between DHS and state and local authorities under 8 U.S.C. § 1357(g). These agreements—known as "287(g) agreements"—allow state and local official to act as "de facto immigration officers, competent to act on their own initiative," *City of El Cenizo v. Texas*, 890 F.3d 164, 180 (5th Cir. 2018), in "performin[ing] a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States," 8 U.S.C. § 1357(g)(1). In other words, when state and local officials act pursuant to 287(g) agreements, they are authorized to engage in unilateral enforcement activity. *See City of El Cenizo*, 890 F.3d at 179-80.

8 U.S.C. § 1357(g)(10) provides a second avenue through which state and local officials may cooperate with the federal government. That subsection provides:

> Nothing in this subsection shall be construed to require an agreement under this subsection in order for any office or employee of a State or political subdivision of a State [] to communicate with the [Secretary] regarding the immigration status of any individual . . . or [] otherwise to cooperate with the [Secretary] in the identification, apprehension, *detention*, or removal of aliens not lawfully present in the United States.

8 U.S.C. § 1357(g)(10)(A)-(B) (emphasis added).

Thus, federal law expressly authorizes state and local officials to "cooperate" with the federal government in the "detention" of "aliens not lawfully present in the United States" even without a formal 287(g) agreement, so long as such cooperation is precipitated by a "request, approval, or other instruction from the Federal Government." *Arizona*, 567 U.S. at 410; *see Arizona*, 567 U.S at 455 (Alito, J.) (concurring in part and dissenting in part) ("[T]o say that state and local officers have no power to arrest criminal aliens based on their removability . . . would fly in the face of 8 U.S.C. § 1357(g)(10)."); *City of El Cenizo*, 890 F.3d at 179 ("This provision indicates that Congress intended local cooperation without a formal agreement in a range of key enforcement functions."); *U.S. v. Ovando-Garzo*, 752 F.3d 1161, 1164 (8th Cir. 2014) ("[N]o written agreement is required for a state official to cooperate with the Attorney General in identifying, apprehending, and detaining any individual unlawfully present in the United States.") (citing 8 U.S.C. § 1357(g)(10)).

Given the extensive cooperation contemplated by this statutory scheme, it is no surprise that Congress also determined that, in certain contexts, state and local officials and employees should be treated as federal actors. Namely, 8 U.S.C. § 1357(g)(8) expressly provides that state and local officials should be treated as federal actors when determining their immunity from suit:

> An officer or employee of a State or political subdivision of a State acting under color of authority under this subsection, or any agreement entered into under this subsection, shall be considered to be acting under color of Federal authority for purposes of determining the liability, and immunity from suit, of the officer or employee in a civil action brought under Federal or State law.

### B.    Immigration Detainers

A common way through which the federal government requests local cooperation is the issuance of detainers and warrants by the ICE. *See, e.g.,* 8 U.S.C. §§ 1103(a)(3), 1226(a), (c), 1231(a), 1357(d). An immigration detainer notifies the State or local law enforcement agency that ICE intends to take custody of a removable alien who is detained in state or local custody. The

detainer requests that the recipient notify ICE of the alien's release date and hold the alien for up to 48 hours to allow DHS to take custody of the alien, based on ICE's determination, memorialized in the accompanying warrant, that there is probable cause of removability. *See* 8 C.F.R. §§ 287.7(a), (d). Local actors are authorized by 8 U.S.C. § 1357(g)(10) to cooperate with those requests, and under 8 U.S.C. § 1357(g)(8) have all the immunities from suit that apply to federal actors when they do.

II.   **Defendants Are Immune From Suit Against Plaintiffs' Claims[5]**

A.   Defendants Acted Under Color of Federal Authority When Honoring ICE Detainers

Defendants acted under the color of authority provided by 8 U.S.C. § 1357(g) when detaining Plaintiffs, and accordingly should be considered as acting under color of federal authority for purposes of considering immunity from suit.

There is no dispute that Defendants were acting in cooperation with ICE: Defendants' former policy of cooperation with ICE detainers is precisely the conduct at issue in this action, *see, e.g.,* Compl. ¶¶ 35, 51, and falls squarely within the ambit of § 1357(g)(10)'s grant of authority to local law enforcement to "cooperate" in the "detention" of aliens not lawfully present in the United States. Accordingly, Defendants were acting under the color of authority of § 1357(g)(10). The non-existence of a formal 1357(g) agreement is immaterial here, as § 1357(g)(10)'s grant of authority explicitly does not "require an agreement," and § 1357 (g)(8) applies whether officials were acting "under color of authority under this subsection, *or* any agreement entered into under this subsection." (emphasis added). Given that "[s]tatutes should be interpreted whenever possible so as not to render any clause, sentence or word superfluous or redundant," *Carey v. New York*

_____

[5] Defendants reserve the right to raise any other immunity defenses to which they may be entitled in addition to federal sovereign immunity.

*Gaslight Club, Inc.*, 598 F.2d 1253, 1257 n.6 (2d Cir. 1979), § 1357(g)(8)'s use of the disjunctive must be read to indicate that Congress intended that state officials act under color of federal law when cooperating with ICE to detain suspected unlawful aliens even without a formal agreement.

In *Castillo v. Snyders*, 497 F. Supp. 3d 299 (N.D. Ill. 2020), the court rejected arguments that 1357(g)(8) applies only where there is a formal agreement: "[plaintiff] argues that the Sheriff was not acting pursuant to any written agreement…. but the plain language of the statue allows for just that." *Id*. at 305 (finding that sheriff's detention of suspected unlawful alien was under color of federal law "notwithstanding any lack of a written agreement."). S*ee also U.S. v. Ovando-Garzo*, 752 F.3d 1161, 1164 (8th Cir. 2014) ("[N]o written agreement is required for a state official to cooperate with the Attorney General in identifying, apprehending, and detaining any individual unlawfully present in the United States") (citing 8 U.S.C. § 1357(g)(10)); *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 179 (5th Cir. 2018) ("8 U.S.C. § 1357(g)(10)(B)… explicitly provides that a 287(g) agreement is *not required* for states to" to cooperate in detention of aliens not lawfully present in the United States) (emphasis in original).

Plaintiffs have argued, and the Court has held, that Defendants' actions were not actually authorized under § 1357(g)(10).  While Defendants respectfully disagree , the point is immaterial: § 1357(g)(8) applies to actions taken "*under color of authority* under [§ 1357(g)]," not only to actions actually authorized under the subsection.  Courts consistently interpret such language to encompass actions taken pursuant to apparent authority regardless of whether such actions were in fact proper.  *See, e.g., Dossett v. First State Bank*, 399 F.3d 940, 949 (8th Cir. 2005) ("'[U]nder color of law' means 'under pretense of law' and 'acts of officers to undertake to perform their official duties are included whether they hew to the line of their authority *or overstep it*'") (quoting *Screws v. United States,* 325 U.S. 91, 111 (1945) (plurality opinion)) (emphasis in original); *Keller*

10

*v. District of Columbia*, 809 F. Supp. 432, 435 (E.D. Va. 1993) ("The term 'under color of' state law includes not only legitimate exercise of power, but also '[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law…'") (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Black's Law Dictionary further defines color of authority as "The *appearance* or *presumption* of authority sanctioning a public officer's actions." Black's Law Dictionary (12th ed. 2024) (emphasis added). Here, by cooperating with ICE to detain Plaintiffs, whether or not they were in fact authorized to do so, Defendants were acting under the presumption that they were authorized to do so by § 1357(g). Accordingly, Defendants are entitled to the protections and immunities provided by § 1357(g)(8).

Given that Defendants acted "under color of authority" of 8 U.S.C. § 1357(g), Defendants "shall be considered acting under color of Federal authority[.]" In *Flores v. United States*, plaintiffs brought suit on behalf of their deceased relative who had died while detained by ICE in a detention center operated by the local county. Dkt. 201, No. 09-cv-00838-ADM-SER (D. Minn. Apr. 1, 2010), *report and recommendation adopted*, No. 09-CV-838 (JMR/SRN), 2010 WL 11646663 (D. Minn. Aug. 12, 2010). Plaintiff's Section 1983 claims against the county defendants were dismissed, however, because the county defendants—including the county itself and various subdivisions—did act not pursuant to state law when detaining the decedent. *Id.* at *3, *40. Rather, because the county defendants acted pursuant to 8 U.S.C. § 1357(g), they were "acting under color of federal law, not color of state law." *Id.* at *41.[6]

---

[6] Though the county defendants in *Flores* acted pursuant to an intergovernmental services agreement with ICE, that distinction is irrelevant here because, as explained *supra* at 9, 8 U.S.C. § 1357(g)(8) explicitly recognizes that its protections apply when a defendant acts "under color of authority under this subsection, *or* any agreement entered into under this subsection." (emphasis added).

B.      Under 8 U.S.C. § 1357(g)(8), Defendants Are Immune From Suit For Actions Taken Under Color of Federal Law

As Defendants were acting under color of federal authority under 8 U.S.C. § 1357(g)(8), they have the same immunities as federal actors.  Federal sovereign immunity immunizes federal defendants—and Defendants here—from suit on Plaintiffs' claims.

*First*, federal actors have sovereign immunity from § 1983 claims based on alleged violations of the U.S. Constitution.  *Liffiton v. Keuker*, 850 F.2d 73, 77 (2d Cir. 1988) (affirming dismissal of Section 1983 claims against federal agency "on the basis of sovereign immunity"); *see also Cuevas v. Dep't of Homeland Sec.*, 233 Fed. App'x 642, 643 (9th Cir. 2007) (affirming dismissal of Section 1983 claims as "doctrine of sovereign immunity extends to agencies of the federal government and federal employees acting within their official capacities"); *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005) (United States Parole Commission acted as "arm of the federal sovereign" and was thus immune from Section 1983 suit); *Kotlyarsky v. U.S.*, No. 1:20-cv-09230 (PGG) (SDA), 2021 WL 6055267, at *4 n.2 (S.D.N.Y. Aug. 18, 2021) (Section 1983 claims against federal agency and officers in official capacities barred as "[d]efendants are protected from suit under Section 1983 by sovereign immunity").

*Second*, federal sovereign immunity immunizes federal actors from suit on state constitutional claims.  *See, e.g.*, *Hernandez v. United States*, 939 F.3d 191, 205 (2d Cir. 2019) (plaintiff cannot sue federal actors for violation of New York constitution); *see also Webb v. Smith*, No. CIV-15-213-DLR, 2016 WL 7666119, at *1 (D. Utah Jan. 22, 2016) ("The United States has not waived its sovereign immunity for it and its officers to be sued for damages under the Utah Constitution"); *Shoman v. U.S. Customs and Border Protection*, No. 07-994, 2008 WL 203384, at *5 (W.D. Pa. Jan. 24, 2008) ("[T]here has been no showing that the United States has waived its sovereign immunity as to State constitutional claims"); *Chiang v. Gonzales*, No. CV 05-03273

12

MMM (Ex), 2005 WL 8168158, at *13 (C.D. Cal. Dec. 7, 2005) ("There is no statute that unequivocally waives the United States' sovereign immunity with respect to suits alleging violations of state constitutional provisions"); *Chin v. Wilhelm*, 291 F. Supp. 2d 400, 405 (D. Md. 2003) ("[T]he United States has not waived its sovereign immunity as to state constitutional claims").

In short, 8 U.S.C. § 1357(g)(8) commands that Defendants, acting under color of federal authority, be treated as if they were federal actors for purposes of determining their immunity from suit. Federal actors are immune from suit on Plaintiffs' claims under the doctrine of federal sovereign immunity. Indeed, Plaintiffs have tacitly conceded that federal sovereign immunity protects federal officers from suit on their claims; after the Federal Defendants informed the Court that they intended to move to dismiss the claims against them, invoking sovereign immunity, Plaintiffs agreed to dismiss its claims against them. (Dkts. 14, 17, 30.) Thus, Defendants are immune from suit on Plaintiffs' claims.

## CONCLUSION

Based on the foregoing, Defendants request that the Court dismiss Plaintiffs' claims in their entirety.

Dated: July 25, 2025                    Respectfully submitted,

                                        /s/ Thomas E.L. Dewey

                                        Thomas E.L. Dewey
                                        DEWEY PEGNO & KRAMARSKY LLP
                                        777 Third Avenue – 29th Floor
                                        New York, New York 10017
                                        Tel.: (212) 943-9000
                                        Fax: (212) 943-4325
                                        tdewey@dpklaw.com
                                        *Attorney for Defendants*

**CERTFICIATE OF COMPLIANCE**

I, Thomas E.L. Dewey, attorney for the Defendants, certify that this Memorandum of

Law complies with the requirements of Local Civ. Rule 7.1 and Rule III(F) of this Court's rules

because it contains 4031 words across 13 pages, excluding the caption, table of contents, table of

authorities, and signature blocks.

Dated: July 25, 2025
        New York, New York

By: /s/ Thomas E.L. Dewey

Thomas E.L. Dewey
DEWEY PEGNO & KRAMARSKY LLP
777 Third Avenue – 29th Floor
New York, New York 10017
Tel.: (212) 943-9000
Fax: (212) 943-4325
tdewey@dpklaw.com

*Attorney for Defendants*