UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JOAQUIN ORELLANA CASTANEDA and            :
GERMAN HERNANDEZ ARGUETA,                  :
                                           :
               Plaintiffs,                 :
                                           :
       v.                                  :      **DECISION & ORDER**
                                           :      17-CV-4267 (WFK) (ARL)
COUNTY OF SUFFOLK, *et al.*,               :
                                           :
               Defendants.                 :
-----------------------------------------------------------------------X

**WILLIAM F. KUNTZ II, United States District Judge:**

Joaquin Orellana Castaneda ("Plaintiff Orellana") and German Hernandez Argueta ("Plaintiff Hernandez," and together with Plaintiff Orellana, "Plaintiffs") bring this class action against the County of Suffolk, the Suffolk County Sheriff's Office ("SCSO"), the Suffolk County Executive, in his official capacity, and the Suffolk County Sheriff, in his official capacity (collectively, "Defendants"). On January 2, 2025, this Court granted Plaintiffs' motion for summary judgment as to liability on their Fourth Amendment and state law claims, granted Defendants' motion for summary judgment on Plaintiffs' substantive due process claim, and otherwise denied Defendants' motion for summary judgment. *See generally* Decision and Order, ECF No. 166. Defendants now move to dismiss the Second Amended Complaint ("SAC") under Fed. R. Civ. P. 12(b)(1), arguing they are entitled to federal sovereign immunity. For the reasons stated below, Defendants' motion to dismiss is **DENIED**.

## I.      BACKGROUND

The Court assumes the parties' familiarity with the facts and adopts the case summary set forth in the Decision and Order dated January 2, 2025. Decision and Order at 1–7, ECF No. 166. For clarity, the Court briefly recounts the relevant, undisputed facts and procedural history.

This litigation began over eight years ago on July 18, 2017, when Plaintiff Orellana filed his initial complaint alleging constitutional violations related to his detention by the Suffolk County Sheriff's Office ("SCSO") pursuant to an Immigration and Customs Enforcement ("ICE") detainer. Compl., ECF No. 1.[1] On May 29, 2018, Plaintiffs Orellana and Hernandez

---

[1] On January 2, 2018, the Honorable Joseph Bianco granted the parties' joint stipulation and entered an order dismissing the Federal Defendants without prejudice. Order, ECF No. 30.

(collectively, "Plaintiffs") filed a Second Amended Complaint ("SAC") on behalf of themselves and all others similarly situated. Plaintiffs claim the "SCSO's policy of unquestioning compliance with these [detainer] requests" violated their rights under the Fourth and Fourteenth Amendments of the United States Constitution and Article I of the New York Constitution. SAC ¶ 1, ECF No. 37.

After the Court certified the class, both parties refiled their motions for summary judgment. Order Adopting R&R, ECF No. 143; Pls.' Mot. for Summ. J., ECF No. 150; Defs.' Mot. for Summ. J., ECF No. 160. On January 2, 2025, this Court granted Plaintiffs' motion for summary judgment as to liability on their Fourth Amendment and state law claims, granted Defendants' motion for summary judgment on Plaintiffs' substantive due process claim, and otherwise denied Defendants' motion. *See generally* Decision and Order. The Court held federal law did not authorize the arrests at issue because (1) "the SCSO did not have a formal Section 287(g) agreement"; and (2) "New York itself has stated that the cooperation provision of 8 U.S.C. § 1357(g)(10) does not apply here and would in fact be inconsistent with state law."[2] Decision and Order at 24.

---

[2] On January 2, 2025, the Office of the New York State Attorney General updated its guidance for local authorities performing immigration enforcement. OFF. OF N.Y. STATE ATT'Y GEN., GUIDANCE CONCERNING LOCAL AUTHORITIES' PARTICIPATION IN IMMIGRATION ENFORCEMENT AND MODEL PROVISIONS (2025). The guidance concludes "[a]n arrest and seizure occurs under the Fourth Amendment and the New York Constitution when state or local authorities detain an individual beyond the time authorized under state law in order to transfer that individual to the custody of federal immigration authorities." *Id.* at 3 (citing *People ex rel. Wells v. DeMarco*, 168 A.D.3d 31, 39–40 (2d Dep't 2018)). In support of this conclusion, the guidance cites this Court's January 2, 2025 Decision and Order, stating "some federal courts—including a federal district court in New York—also have held that [a local law enforcement agency] violated the Fourth Amendment rights of an individual whom the [local law enforcement agency] held past his or her normal release date in response to a detainer request from federal immigration authorities." *Id.* at 4 & n.26 (citing, *inter alia*, *Orellana-Castaneda v. Cnty. of Suffolk*, 17-CV-04267, Dkt. No. 166 (E.D.N.Y. Jan. 2, 2025) (Kuntz, J.)).

Defendants sought interlocutory review of the Court's decision, arguing the Court erroneously denied their federal sovereign immunity defense. Notice of Appeal, ECF No. 171; Mot. to Stay Pending Appeal, ECF No. 174. Plaintiffs moved to dismiss the appeal because the Court had not definitively ruled on the immunity question. *Orellana Castaneda, et al. v. U.S. Dep't of Homeland Sec., et al.*, 25-321, ECF No. 14 (2d Cir.). The Second Circuit agreed with Plaintiffs, holding "the district court did not rule on whether Appellants were entitled to immunity under [S]ection 1357(g)(8), and therefore this is not an appeal of an immunity ruling." Second Circuit Mandate at 2, ECF No. 193. Defendants now move to dismiss the SAC under Fed. R. Civ. P. 12(b)(1), arguing they are entitled to federal sovereign immunity. Defs.' Mot. to Dismiss, ECF No. 189-1 ("Defs.' Mot."). The parties completed briefing on August 29, 2025. Plaintiffs subsequently filed a sur-reply, and Defendants filed a response letter. *See* ECF Nos. 199, 200. This Court held oral argument on September 19, 2025, after which the parties submitted supplemental briefing. *See* Defs.' Supp. Mot., ECF Nos. 208–09; Pls.' Supp. Opp'n, ECF No. 207. Trial is scheduled to commence on Monday, November 3, 2025. Order, ECF No. 183.

## II.    LEGAL STANDARD

District courts properly dismiss a case for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." *Green v. Dep't of Educ. of New York*, 16 F.4th 1070, 1075 (2d Cir. 2021) (internal citation and quotation marks omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

## III.    DISCUSSION

### A.  Statutory Framework and Defendants' Argument

This case concerns the SCSO's then-practice of holding Plaintiffs in custody beyond their scheduled release dates pursuant to ICE detainer requests.  SAC ¶ 1; *see generally* Decision and Order.  Defendants contend 8 U.S.C. § 1357(g)(8) grants them federal sovereign immunity from suit based on this past practice.  Section 1357(g)(8) provides: "[a]n officer or employee of a State or political subdivision of a State acting under color of authority under this subsection, or any agreement entered into under this subsection, shall be considered to be acting under color of Federal authority for the purposes of determining the liability, and immunity from suit, of the officer or employee in a civil action brought under Federal or State law."  8 U.S.C. § 1357(g)(8).

Both parties agree the SCSO did not have a formal agreement with ICE to honor detainer requests or to effectuate civil arrests.  Decision and Order at 24.  Defendants maintain they did not need an agreement to "cooperate" with ICE "in the . . . detention . . . of aliens not lawfully present in the United States."  Defs.' Mot. at 8. (quoting 8 U.S.C. § 1357(g)(10)).  True.[3]  But the "SCSO's policy of 'directing the retention of prisoners, who would otherwise be released, pursuant to ICE detainers and administrative warrants' violates New York law."  Decision and Order at 23 (quoting *People ex rel. Wells v. DeMarco*, 168 A.D.3d 31, 53 (2d Dep't 2018)).  And the Court "decline[d] to read 8 U.S.C. § 1357(g)(10) as providing the authority for the SCSO to effectuate civil immigration arrests, without a formal agreement, when such arrests would

---

[3] *See* DEP'T OF HOMELAND SEC., GUIDANCE ON STATE AND LOC. GOV'TS' ASSISTANCE IN IMMIGR. ENFORCEMENT AND RELATED MATTERS (2022) ("[O]utside of the written agreements provided for by paragraphs (1) – (9) of subsection 1357(g) . . . state and local law enforcement officers render assistance to DHS on a case-by-case basis as immigration matters come to their attention in the performance of their regular duties under state or local law.").

contravene state law." *Id.* at 25. Accordingly, the Court held "the SCSO derived no authority from provisions of 8 U.S.C. § 1357(g)." *Id.* at 31.

Nevertheless, Defendants argue Section 1357(g)(8)'s grant of immunity extends to "actions taken pursuant to apparent authority regardless of whether such actions were in fact proper." Defs.' Mot. at 10. So, despite the Court's holding that Defendants' actions were not authorized by Section 1357(g), Defendants contend they are "entitled to be treated as federal actors for the purpose of determining their immunity from suit" because they acted "under color of § 1357(g)(10)." *Id.* at 1, 9. And because "[f]ederal actors have sovereign immunity from Plaintiffs' claims," Defendants conclude they do too. *Id.*; *see also* Defs.' Supp. Mot. at 2 ("Because federal actors would unquestionably be immune from this suit, so, too, are Defendants.").

### B. Defendants Waived Their Statutory Federal Sovereign Immunity Defense.

Defendants waived their statutory federal sovereign immunity defense because they did not raise it until their reply brief in support of their motion for summary judgment. "Most immunities are affirmative defenses . . . includ[ing] common law immunity [and] statutory immunity." *In re Stock Exchs. Options Trading Antitrust Litig.*, 317 F.3d 174, 151 (2d Cir. 2003). Generally, "affirmative defenses are waived unless they are raised in a responsive pleading." *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 7 F.4th 50, 63 (2d Cir. 2021) (citing Fed. R. Civ. P. 8(c)) (internal quotation marks omitted). However, courts may "entertain [unpleaded] affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." *Rose v. AmSouth Bank of Fla.*, 391 F.3d 63, 65 (2d Cir. 2004) (quoting *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003)) (alteration in original).

Courts may also consider unpleaded affirmative defenses where they are "raised at the first pragmatically possible time and applying [them] at that time would not unfairly prejudice the opposing party." *Id.* (quoting *Am. Fed. Group, Ltd. v. Rothenberg*, 136 F.3d 897, 910 (2d Cir. 1998) (internal quotation marks omitted)).

But these limited exceptions do not apply where, as here, the affirmative defense is raised eight years after the commencement of litigation; the parties have already filed their responsive pleadings and summary judgment motions; the Court has already ruled on these summary judgment motions; and trial is scheduled to commence in less than two months. Indeed, on Defendants' appeal of this Court's summary judgment decision, the Second Circuit found Defendants "did not properly raise this point in the district court." Second Circuit Mandate at 1–2 (quoting *AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 139 F.3d 980, 981 n.1 (2d Cir. 1998)) (internal quotation marks omitted). The Second Circuit explained that "[w]hile Appellants contend that they are appealing a denial of immunity under 8 U.S.C. § 1357(g)(8), their motion for summary judgment before the district court did not argue that they were entitled to such immunity." Second Circuit Mandate at 1. Entertaining Defendants' newly asserted affirmative defense—raised at the eleventh hour and not at "the first pragmatically possible time"—would cause undue prejudice to Plaintiffs and an undue delay to these proceedings.

Nevertheless, Defendants contend their lateness in raising this defense is irrelevant because "sovereign immunity is jurisdictional in nature, [and] questions of sovereign immunity implicate a court's subject matter jurisdiction." *Hyped Holdings LLC v. United States*, 22-CV-5340, 2023 WL 6121784, at *3 (E.D.N.Y. Sept. 19, 2023) (Gonzalez, J.) (collecting cases). Therefore, Defendants believe their immunity defense cannot be waived. Defs.' Reply at 1, ECF

6

No. 197. This argument—while in error here—proceeds from generally true legal principles.

"The sovereign immunity of the United States may only be waived by federal statute."

*Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urb. Dev.*, 175 F.3d 132, 139 (2d

Cir. 1999) (internal citation omitted).[4] And "[t]he United States has not waived sovereign

immunity with respect to constitutional tort claims against the United States, its agencies, or

federal employees sued in their official capacities." *Holloway v. United States*, 05-CV-5908,

2006 WL 516826, at *2 (E.D.N.Y. Feb. 28, 2006) (Ross, J.). Where sovereign immunity has not

been waived by statute, federal officials cannot waive it by simply appearing in a case. *United*

*States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 660 (1947) ("[O]fficers of the United States

possess no power through their actions to waive an immunity of the United States or to confer

jurisdiction on a court in the absence of some express provision by Congress."); *Dep't of Army v.*

*Fed. Lab. Rels. Auth.*, 56 F.3d 273, 275 (D.C. Cir. 1995) (holding "federal sovereign immunity is

not waived by appearance in any forum"). Because there is no federal statute waiving sovereign

immunity for Plaintiffs' claims, and such immunity cannot be waived by federal officials'

litigation conduct, federal entities or officials could theoretically raise this argument at this stage

in the litigation. Defendants seek to extend that logic when they contend "[f]ederal sovereign

immunity immunizes federal defendants—*and Defendants here*—from suit on Plaintiffs'

---

[4] In contrast, other immunity defenses may be waived by a party's choice to actively litigate in federal court. *Gunter v. Atl. Coast Line R.R.*, 200 U.S. 273, 284 (1906) ("Although a state may not be sued without its consent, such immunity is a privilege which may be waived [such as] where a state voluntarily becomes a party to a cause, and submits its rights for judicial determination."); *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997) ("The qualified immunity defense can be waived, either by failure to raise it in a timely fashion . . . or by failure to raise it with sufficient particularity."); *N.Y. by James v. Pa. Higher Educ. Assistance Agency*, 19-CV-9155, 2020 WL 2097640, at *7 (S.D.N.Y. May 1, 2020) (Ramos, J.) (holding defendants waived the derivative sovereign immunity defense for contractors by failing to raise it properly).

claims." Defs.' Mot. at 12 (emphasis added). In other words, because *federal* entities or officials could raise this argument, Defendants, who are *state* actors, insist they can too. They are wrong.

To understand why, the Court returns to a bedrock principle: federal sovereign immunity extends to the United States, federal agencies, and federal officers acting in their official capacities. *Wright v. United States*, 162 F. Supp. 3d 118, 127 (E.D.N.Y. 2016) (Bianco, J.). Defendants are not the federal government, its agencies, or its officers; they are state actors. As *state* actors, Defendants are not entitled to an unwaivable presumption of *federal* sovereign immunity. *See* Tr. of Oral Argument at 9:25–10:4, ECF 207-1 (statement by defense counsel that "the waiver argument . . . turns entirely on the threshold question of whether [D]efendants have the same federal sovereign immunity as the United States and federal actors"). And while Defendants argue they should be treated as federal officers under Section 1357(g)(8) for purposes of this suit, that is ultimately a question pertaining to the merits of the immunity claim. *See, e.g.*, *Davila v. N. Reg'l Joint Police Bd.*, 370 F. Supp. 3d 498, 552 (W.D. Pa. 2019) ("[I]t strikes the Court as a perverse reading of § 1357 to suggest that a local law enforcement officer acts under federal authority whenever the local officer responds to an informal request from a federal agent. Otherwise, a state officer would need only to ask permission from an ICE agent to assist with arresting suspected deportable aliens and that local officer would then essentially have all of the powers and immunities of a federal agent enforcing civil immigration laws.").

Unlike the federal government's inherent sovereign immunity, statutory federal sovereign immunity under Section 1357(g)(8) is akin to the statutory sovereign immunity conferred on foreign states, their agencies, and their instrumentalities under the Foreign Sovereign Immunities Act ("FSIA"). Parties can impliedly waive FSIA immunity by their conduct during litigation. *See Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*, 727 F.2d 274, 278 (2d

8

Cir. 1984) ("[D]istrict courts have discretion to determine that the conduct of a party in litigation does constitute a waiver of foreign sovereign immunity [under FSIA] in light of the circumstances of a particular case."). Defendants contend the sovereign immunity conferred by FSIA is different because it "creates a wholly new category of statutory immunity, while Section 1357(g)(8) simply extends the immunities enjoyed by federal actors to local actors." Defs.' Reply at 8 n.11.

The Court agrees Section 1357(g)(8) extends federal immunity to some non-federal actors for actions authorized by Section 1357.[5] But like FSIA, Section 1357(g)(8) confers immunity on an official or entity who does not inherently possess such immunity. Such statutory immunity is categorically different from the federal sovereign immunity inherently enjoyed by the United States and its officials, whose "waiver cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4 (1969); *see also Weisman v. C.I.R.*, 103 F. Supp. 2d 621, 626 (E.D.N.Y. 2000) (Trager, J.) ("No suit may be brought against the United States unless it has explicitly consented, by statute, to be sued.").

Defendants attempt to distinguish between Section 1357(g)(8)'s and FSIA's statutory immunities by pointing to FSIA's waiver provision, which states: "A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case in which the foreign state has waived its immunity either explicitly or by implication." 28 U.S.C.

---

[5] Defendants' asserted immunity defense may "derive" from federal sovereign immunity in a way that resembles *Yearsley* immunity. *Yearsley* immunity is a derivative sovereign immunity applicable to government contractors "in connection with work which they do pursuant to their contractual undertakings with the United States." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016) (holding a marketing firm that contracted with the Navy to send recruiting messages was not entitled to derivative immunity because the firm "violate[d] both federal law and the Government's explicit instructions" in doing so) (internal citation and quotation marks omitted). *Yearsley* immunity is waivable, and "unlike the sovereign's, [it] is not absolute." *Id.*

§ 1605(a)(1); Defs.' Reply at 4 n.4.   Defendants correctly note that Section 1357(g)(8) does not include a similar waiver provision.  Defs.' Reply at 3.  But the absence of this provision does not require the Court to make the negative inference that *state* actors—to whom *federal* sovereign immunity does not facially apply—cannot waive a statutory federal immunity defense.  And Defendants fail to address the logical mismatch in this case between the kind of immunity claimed and the party claiming it.[6]  Neither Plaintiffs nor the Court would have reason to expect state actors to be subject to a federal sovereign immunity defense, which obviates the need for an affirmative waiver provision like the one found in the FSIA.  Accordingly, the absence of an implied waiver provision does not necessitate the conclusion that state actors cannot waive Section 1357(g)(8) immunity.

Local authorities who have a policy and practice of unilaterally honoring ICE detainers without a written agreement are not entitled to an unwaivable presumption of federal sovereign immunity.  That being the case, it is clear Defendants' statute-based federal sovereign immunity defense is waivable, and is waived, here.  To hold otherwise would be to permit any individual or agency—regardless of its relationship to the federal government—to raise federal sovereign

---

[6] To demonstrate why, consider *Canadian Overseas Ores Ltd.*, a case addressed in both parties' briefs.  727 F.2d 274 (2d Cir. 1984); Pls.' Opp'n at 11 n.3; Defs.' Reply at 4 n.4.  There, the Second Circuit considered whether the defendant, an instrumentality of the Chilean government, waived its foreign sovereign immunity defense.  The defendant had participated in the litigation for four months but had reserved its immunity defense on three occasions.  727 F.2d at 276.  While the Second Circuit noted the district court "might have found a waiver," it held the district court's "failure to do so was not clearly erroneous" because Plaintiff "itself had full notice that [the defendant] had reserved the defense." *Id.* at 278.  In contrast, here the Court must consider whether state actors and entities waived a federal immunity defense by failing to raise or reserve it in a case stretching back eight years.  The Second Circuit's finding in *Canadian Overseas Ores Ltd.*—that a foreign sovereign can waive foreign sovereign immunity—does not help resolve the logical mismatch in this case between the type of immunity raised and the party raising it. *Canadian Overseas Ores* is otherwise distinguishable based on the defendant's express reservation of its immunity defense in that case.

immunity as a blanket defense at any point in litigation.  Parties may even keep such an immunity argument in reserve for late-stage deployment following an adverse ruling. Defendants did not properly raise their sovereign immunity defense before this Court.  Second Circuit Mandate at 1–2 ("[Defendants] did not mention such immunity until their reply brief below.").  Accordingly, Defendants waived that defense, and the Court denies Defendants' motion to dismiss on that basis.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **DENIED**.  In the United States of America, the rule of law defines the power of the police:  not the other way around. Because the Court denies Defendants' motion to dismiss on the grounds that it was waived, the Court does not reach the merits of Defendants' contention.

SO ORDERED.

**s/WFK**

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 29, 2025
          Brooklyn, New York

11