UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOAQUIN ORELLANA CASTANEDA and GERMAN
HERNANDEZ ARGUETA, on behalf of
themselves and all others similarly situated,

                                        Plaintiffs,

                                                              17-cv-04267(WFK)(ARL)

                    -against-

COUNTY OF SUFFOLK; STEVEN BELLONE,
*County Executive, County of Suffolk, in his Official*
*Capacity*; SUFFOLK COUNTY SHERIFF'S OFFICE;
ERROL TOULON, JR., *Sheriff, Suffolk County Sheriff's*
*Office, in his Official Capacity*; and other individuals in
charge to be identified,

                                        Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OMNIBUS MOTION
FOR POSTJUDGMENT RELIEF**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

LEGAL STANDARDS ............................................................................................2

ARGUMENT ...........................................................................................................4

I.    No Properly Instructed Jury Could Have Found Defendants Liable on Class Plaintiffs' Procedural Due Process Claim ...........................................4

    A.  The Court Should Grant Judgement as a Matter of Law under Rule 50(b) Because the Jury's Verdict Was Completely Unsupported by the Evidence ...........................................................................................4

        i.    Actual Notice Is a Complete Defense to a Procedural Due Process Claim ..........................................................................4

        ii.    The Record Is Clear that Plaintiffs Had Actual Notice .............................5

        iii.    The Record Reflects that Plaintiffs Had the Opportunity to Challenge Their Detention—and Did So .................................................6

        iv.    Multiple Avenues to Challenge the Detainer Were Available to Plaintiffs ........................................................................6

    B.  Alternatively, the Court Should Order a New Trial under Rule 59 .........................7

        i.    The Court Erred in Excluding Certain Pleadings, Evidence of Defendants' Good Faith, and Plaintiffs' Criminal Histories ...........................................................................................7

        ii.    The Court Jury's Instructions Constituted Prejudicial Error by Failing to Instruct the Jury on Actual Notice ........................................11

        iii.    The Court Committed Prejudicial Error by Instructing the Jury that a Hearing Should be Held "Before" the Detainer ......................13

II.    The Jury's Damages Award Cannot Be Sustained (Rule 59) ......................................13

    A.  Plaintiffs Failed to Present Sufficient Evidence of Damages ...............................14

    B.  The Court Erroneously Permitted Evidence and Argument on Damages that Should Have Been Excluded ...........................................................16

i.       The Court Wrongly Permitted Plaintiffs to Request a Prejudicial Specific Dollar Amount Without a Cautionary Jury Instruction ..........................................................................................16

ii.     The Court Erroneously Admitted the Testimony of Plaintiffs' Expert and His Undisclosed (Third or Fourth) Analysis.................................................................................................17

C.  The Court's Jury Charge on Damages Was Erroneous and Prejudicial .............................................................................................18

i.       The Jury Instructions Erroneously Repeated, Over and Over, That Plaintiffs Were Entitled to Damages for Loss of Liberty Without Providing the Legal Limits ..............................18

ii.     The Court Erroneously Instructed the Jury That Mental and Emotional Distress Damages For Denial of Procedural Due Process Were Available to Plaintiffs ......................................21

D.  The Jury's Award Was Obviously Excessive .......................................21

i.       Procedural Due Process Damages ............................................21

ii.     Loss-Of-Liberty Damages .......................................................23

III.     The Plaintiff Class Must Be Decertified....................................................24

CONCLUSION...........................................................................................................25

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Andrews v. Metro N. Commuter R.R. Co.*,
  882 F.2d 705, 707 (2d Cir. 1989).................................................................. 9

*Annis v. Cnty. of Westchester*,
  136 F.3d 239, 249 (2d Cir. 1998)................................................................ 14

*Augustin v. Jablonsky*,
  819 F. Supp. 2d 153, 161 (E.D.N.Y. 2011) ......................................... 16, 19, 25

*Baker v. Latham Sparrowbush Assocs.*,
  72 F.3d 246, 255 (2d Cir. 1995)................................................................... 4

*Banushi v. Palmer*,
  2011 WL 13894 (E.D.N.Y. 2011)............................................................... 10

*Bermudez v. City of New York*,
  2019 WL 136633 (E.D.N.Y. 2019)............................................................... 8

*Boyle v. Revici*,
  961 F.2d 1060 (2d Cir. 1992)..................................................................... 12

*Calhoun v. New York State Division of Parole Officers*,
  999 F.2d 647 (2d Cir. 1993)...................................................................... 13

*Callahan v. Wilson*,
  863 F.3d 144 (2d Cir. 2017)................................................................. 11, 18

*Carey v. Piphus*,
  435 U.S. 247 (1978)................................................... 14, 15, 20, 21, 22

*Carvel Corp. v. Diversified Management Group, Inc.*,
  930 F.2d 228 (2d Cir. 1991)............................................................... 11, 17

*Champagne v. Columbia Dental PC*,
  2023 WL 6053001 (2d Cir. 2023)............................................................... 18

*Cipley v. Cty. of Nassau*,
  2025 WL 1319006 (E.D.N.Y. 2025)............................................................. 3

*Consorti v. Armstrong World Industries, Inc.*,
  72 F.3d 1003 (2d Cir. 1995)..................................................................... 16

*Cutlass Prods., Inc. v. Bregman*,
   682 F.2d 323, 325 (2d Cir. 1982) ........................................................................... 12

*Dugan v. EMS Helicopters, Inc.*,
   915 F.2d 1428 (10th Cir. 1990) ................................................................................. 9

*Dunnigan v. Metropolitan Life Ins. Co.*,
   214 F.R.D. 125 (S.D.N.Y. 2003) ............................................................................. 24

*Gardner v. Federated Dep't Stores, Inc.*,
   907 F.2d 1348 (2d Cir. 1990) ................................................................................... 23

*Gordon v. N.Y.C. Bd. of Educ.*,
   232 F.3d 111, 116 (2d Cir. 2000) ............................................................................ 24

*Ismail v. Cohen*,
   899 F.2d 183 (2d Cir. 1990) ................................................................................. 3, 14

*Jackson v. Tellado*,
   295 F. Supp. 3d 164, 181 (E.D.N.Y. 2018) ............................................................... 3

*Jackson v. State of New York*,
   2009 WL 6810548 (N.Y. Ct. Cl. 2009) ................................................................... 23

*Johnson v. State*,
   588 N.Y.S.2d 722, 725 (N.Y. Ct. Cl. 1992) ............................................................ 24

*Kerman v. City of New York*,
   374 F.3d 93 (2d Cir. 2004) ......................................................................... 15, 19, 20

*King v. Macri*,
   993 F.2d 294 (2d Cir. 1993) ................................................................................... 23

*Kosmynka v. Polaris Indus., Inc.*,
   462 F.3d 74 (2d Cir. 2006) ................................................................................... 3, 16

*Koufakis v. Carvel*,
   425 F.2d 892 (2d Cir. 1970) ................................................................................... 17

*Lee v. Edwards*,
   101 F.3d 805 (2d Cir.1996) ..................................................................................... 24

*Maalouf v. Salomon Smith Barney, Inc.*,
   2004 WL 2008848 (S.D.N.Y. 2004) ....................................................................... 19

v

*Manley v. Ambase Corp.*,
 337 F.3d 237 (2d Cir. 2003) ................................................................................................ 3

*Mathews v. Eldridge*,
 424 U.S. 319 (1976) ................................................................................................... 9, 13

*McClellan v. Smith,*
 2009 WL 3587431 (N.D.N.Y. 2009) ................................................................................... 23

*Meloff v. New York Life Ins. Co.*,
 40 F.3d 138 (2d Cir. 2001) .................................................................................................. 3

*Merrill Lynch Interfunding, Inc. v. Argenti*,
 155 F.3d 113 (2d Cir. 1998) ................................................................................................ 3

*Nnebe v. Daus*,
 2022 WL 615039 (S.D.N.Y. 2022) ..................................................................................... 21

*Nolasco v. Holder*,
 637 F.3d 159 (2d Cir. 2011) ................................................................................................ 4

*Nunez v. Diedrick*,
 2017 WL 4350572 (S.D.N.Y. 2017) ................................................................................... 17

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
 322 F.3d 147 (2d Cir. 2003) ................................................................................................ 8

*Pappas v. Middle Earth Condominium Ass'n*,
 963 F.2d 534 (2d Cir. 1992) .............................................................................................. 17

*Plagianos v. American Airlines, Inc.*,
 912 F.2d 57, 59 (2d Cir.1990) ........................................................................................... 11

*Reed v. Medford Fire Dept., Inc.*,
 806 F. Supp. 2d 594 (E.D.N.Y. 2011) ................................................................................. 5

*Ross v. Guy*,
 2022 WL 768196 (E.D.N.Y. 2022) ............................................................................... 10, 16

*Royal Consulting, Inc. v. Agri-Mark*,
 1990 WL 83445 (S.D.N.Y. 1990) ........................................................................................ 8

*Sanabria v. State*,
 908 N.Y.S.2d 527 (N.Y. Ct. Cl. 2010) ............................................................................... 23

*Satchell v. Clark,*
  725 F.Supp. 691 (E.D.N.Y. 1989) ............................................................................... 22

*Schneider v. Revici,*
  817 F.2d 987, 996 (2d Cir. 1987)................................................................................. 11

*Skinner v. City of New York,*
  No. 15-CV-6126, 2017 U.S. Dist. LEXIS 104650 (E.D.N.Y. 2017)........................ 10

*Sussman v. New York City Health & Hosps. Corp.,*
  1997 WL 334964 (S.D.N.Y. 1997)............................................................................... 13

*Tretola v. Cty. of Nassau,*
  14 F. Supp. 3d 58, 80 (E.D.N.Y. 2014) ........................................................................ 3

*United States v. Garcia,*
  291 F.3d 127 (2d Cir. 2002).......................................................................................... 10

*United States v. Gladden,*
  394 F. Supp. 3d 465 (S.D.N.Y. 2019).......................................................................... 15

*United States v. Lopez,*
  445 F.3d 90 (2d Cir. 2006)............................................................................................... 7

*United Student Aid Funds, Inc. v. Espinosa,*
  559 U.S. 260 (2010).......................................................................................................... 4

*U.S. v. Amrep Corp.,*
  545 F.2d 797 (2d Cir. 1976)............................................................................................. 7

*U.S. (Drug Enf't Agency) v. One 1987 Jeep Wrangler Auto. VIN No. 2BCCL8132HBS12835,*
  972 F.2d 472 (2d Cir. 1992)........................................................................................ 5, 6

*Velez v. City of New York,*
  730 F.3d 128 (2d Cir. 2013).......................................................................................... 18

*Waldorf v. Shuta,*
  896 F.2d 723 (3d Cir. 1990).......................................................................................... 16

*Walker v. Schult,*
  45 F.4th 598 (2d Cir. 2022) .......................................................................................... 14

*Warren v. Pataki,*
  823 F.3d 125 (2d Cir. 2016)........................................................................... 9, 15, 18, 20

**Rules**

Fed. R. Civ. P. Rule 26(a) ............................................................................................ 18

Fed. R. Civ. P. Rule 37(c) ............................................................................................ 18

Fed. R. Civ. P. Rule 50(b) .......................................................................... 1, 2, 4, 21, 25

Fed. R. Civ. P. Rule 59 ........................................................................................ *passim*

# PRELIMINARY STATEMENT

On November 7, 2025, the jury found Defendants liable on Plaintiffs' procedural due process claim and awarded a total of $112 million in damages—$37 million for the procedural due process claim and $75 million on Plaintiffs' loss of liberty claims under the Fourth Amendment and New York Constitution, on which the Court had already decided liability. Defendants respectfully maintain their position that they were entitled to judgment as matter of law on *all* Plaintiffs' claims, and contend that the jury's verdict was fundamentally flawed for multiple different independently sufficient reasons and cannot stand.

*First*, the jury's decision that Defendants violated Plaintiffs' procedural due process rights was directly contrary to the unrebutted evidence that: (1) ICE detainers and warrants were served by ICE agents on inmates in SCSO custody; (2) both class representatives were served with, or told about, their detainers and warrants; and (3) inmates held in SCSO custody on ICE detainers and warrants had ample ability to challenge their confinement—indeed, one of the class representatives filed a habeas petition *while held on an ICE detainer*. The Court should grant judgment as a matter of law under Rule 50(b) for Defendants on that claim.

*Second*, in the alternative, a new trial is required under Rule 59 because the jury's liability finding was the product of evidentiary rulings and jury charges that were erroneous. In particular, the Court's decision to exclude pleadings that contained (among other things) highly relevant admissions that a class representative had been served with a detainer and warrant by ICE agents before his detention started, as well as evidence that Defendants acted in good faith in honoring ICE detainers and warrants and of Plaintiffs' criminal records, deprived the jury of highly probative evidence that precluded a finding of a procedural due process violation. Further, several of the Court's jury instructions, for example, the Court's rejection of Defendants' requests to charge the jury that a party's "actual notice" is a defense to a procedural

due process claim and that an opportunity for a hearing need only be made available "as soon as practicable", effectively and unfairly imposed strict liability on the Defendants. And that is all the more problematic since the Court and Plaintiffs, during the five-day trial, told the jury *at least 35* times that the Court had *already* found that Defendants had engaged in illegal conduct. (*E.g.,* Tr. 905 ("the court has already determined the defendants are liable for the unlawful detention of class plaintiffs."))

*Third*, the jury's preposterous and unjust damages award cannot stand. Plaintiffs presented totally insufficient evidence—either of injury or of causation—to support *any* damages award, let alone a combined award of $112 million. The Court also erred by permitting Plaintiffs to request a specific dollar amount in damages—a request that plainly influenced the amount of the jury's final award—without *any* evidence to support that request. Further, Defendants respectfully submit that the Court erred in admitting the "expert" testimony of Sean Kruskol, whose opinions were totally unreliable, ever evolving and not properly disclosed to Defendants pretrial. Defendants are accordingly entitled to a new trial, or remittitur of this obviously excessive award, under Rule 59.

*Finally*, because the evidence demonstrated that the two class representatives—to say nothing of the class as a whole—were differentially situated in relevant respects, Defendants respectfully submit the Court erred in not decertifying the class on Defendants' motion.

## LEGAL STANDARDS

**Rule 50(b): Renewed Motion for Judgment as a Matter of Law.** A renewed motion for judgment as a matter of law pursuant to Rule 50(b) is appropriately granted when the court determines that "there is no legally sufficient evidentiary basis for a reasonable jury to find for a

party." *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 120 (2d Cir. 1998).[1] A jury verdict should be set aside under Rule 50 where there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or ... such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him." *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 79 (2d Cir. 2006) (ellipsis in original).

**Rule 59: Motion for a New Trial.** The standard for granting a new trial under Rule 59 is less stringent than that for judgment as a matter of law. *See Manley v. Ambase Corp.,* 337 F.3d 237, 244-45 (2d Cir. 2003). "Grounds for granting a new trial include verdicts that are against the weight of the evidence, substantial errors in the admission or rejection of evidence, and non-harmless errors in jury instructions and verdict sheets." *Jackson v. Tellado*, 295 F. Supp. 3d 164, 181 (E.D.N.Y. 2018) (citing cases). The decision whether to grant a new trial under Rule 59 is "committed to the sound discretion of the trial judge," who may weigh the evidence and need not view it in the light most favorable to non-moving party. *Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 147 (2d Cir. 2001) (Under Rule 59, "the district court could examine the evidence through its own eyes.").

**Rule 59: Motion for Remittitur.** Where a jury award "is so high as to shock the judicial conscience," a court may compel remittitur. *See Cipley v. Cty. of Nassau*, 2025 WL 1319006, at *8 (E.D.N.Y. May 7, 2025) (award for false arrest and confinement required remittitur); *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990). To determine whether an award is so high as to "shock the judicial conscience," the court must consider the amounts awarded in other comparable cases. *Id.*; *Tretola v. Cty. of Nassau*, 14 F. Supp. 3d 58, 80 (E.D.N.Y. 2014).

---

[1] Unless otherwise specified, internal citations and quotations are omitted throughout this memorandum and all emphasis is added.

**ARGUMENT**

I.   **No Properly Instructed Jury Could Have Found Defendants Liable on Plaintiffs' Procedural Due Process Claim.**

The jury's verdict that Defendants were liable on Plaintiffs' procedural due process claim was both completely unsupported by the evidence and the product of erroneous rulings and jury instructions. The Court should accordingly enter judgment for Defendants on this claim under Rule 50(b) or, in the alternative, grant Defendants' motion for a new trial under Rule 59.

A.   **The Court Should Grant Judgment as a Matter of Law Under Rule 50(b) Because the Jury's Verdict Was Completely Unsupported by the Evidence.**

Plaintiffs' procedural due process claim was belied by the undisputed fact that Plaintiffs had constitutionally sufficient *actual notice* and SCSO personnel uniformly and appropriately relied on ICE agents to serve detainers and warrants. Defendants also presented unrebutted evidence that inmates held on ICE detainers and warrants had ample opportunity to challenge their detention—indeed one class representative filed a habeas petition while held on an ICE detainer. Thus there was no basis for the jury's liability verdict, which must be set aside.

i.   ***Actual Notice Is a Complete Defense to a Procedural Due Process Claim.***

There can be no procedural due process claim when the plaintiff has received actual notice. *See Nolasco v. Holder*, 637 F.3d 159, 164 (2d Cir. 2011) ("DHS's failure to make proper service" was immaterial because the plaintiff "was aware of the nature of the immigration proceedings" and "counsel appeared on her behalf"); *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) ("United received actual notice of the filing and contents of Espinosa's plan. This more than satisfied United's due process rights."); *Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 255 (2d Cir. 1995) (plaintiff "having received actual notice of the Albany County action … cannot now claim that service upon it was constitutionally defective"); *U.S.*

*(D.E.A.) v. One 1987 Jeep Wrangler Auto. VIN No. 2BCCL8132HBS12835*, 972 F.2d 472, 482

(2d Cir. 1992) (Plaintiff's "possess[ion of] actual knowledge of the seizure [was] sufficient to

satisfy the demands of due process."); *Reed v. Medford Fire Dept., Inc.*, 806 F. Supp. 2d 594,

615 (E.D.N.Y. 2011) ("[I]f a party receives actual notice that apprises it of the pendency of the

action and affords an opportunity to respond, the due process clause is not offended."); *Lopes v.*

*United States*, 862 F. Supp. 1178, 1188 (S.D.N.Y. 1994) ("[W]here there is actual notice there is

no due process violation.").

### ii.      The Record Is Clear that Plaintiffs Had Actual Notice.

*First,* Mr. Hernandez confirmed he received actual notice: he testified that ICE notified

him of the detainer and the warrant in 2017 (Tr. 730:1-18 ("And when the ICE agent was there,

did the ICE agent ever tell you that there was a detainer and warrant from ICE, based upon your

immigration status? A: Yes.")), and that he was served during his second detention in 2018

(Tr. 741:13-23 (In 2018 "they took me to an ICE agent who was at his -- he was in his office. Q

Was that office in the jail in Yaphank? A Yes. Q Did the ICE agent give you any papers?

A Yes.")).[2]

*Second,* Mr. Orellana, *the only one of the over 674 class members who testified live,*

remembered very little of anything, including nothing about his conversations with ICE, what

they gave him or what they told him. (*E.g.,* Tr. 480-481.)   However, he testified that ICE put

papers in front of him on April 24, the day his detainer would have gone into effect and the date

reflected on the ICE warrant. (Tr. 481:2-7, 486:11-18; ECF 37-3.)

*Third*, *every witness* who testified for Defendants testified that ICE was responsible for

serving the detainers and warrants, and did so. (*E.g.,* Ervolino (Tr. 171:17-19; Tr. 172:2-4);

---

[2] Plaintiffs admitted in the operative Complaint—which this Court excluded—that these papers included the ICE detainer and warrant, which were "served" by "an ICE agent".  (*See* ECF 37 ¶ 31.)

Hennigan (Tr. 305:12-19; 315:14-16; 316:11-18; 318:25 – 319:1) McCarthy (Tr. 518:5-14);

DeMarco (Tr. 540:4–13; 562:15-23; 563:14-17); Toulon (Tr. 703:12-17)).

### iii. The Record Reflects that Plaintiffs Had the Opportunity to Challenge Their Detention—and Did So.

Mr. Hernandez actively challenged the ICE detainer by filing a *habeas* petition. (Tr.

724:20-22; 730:7-11). That filing stated that "On August 18th, 2017, instead of releasing Mr.

Hernandez, SCSO retained him in custody pursuant to the detainer request issued by ICE. Within

48 hours, absent relief from this court, SCSO will transfer custody of Mr. Hernandez to ICE."

(Tr 730:7-11.) Where, as here, the party had actual notice and thereby contests the government

action, any due process claim is "counter intuitive." *One 1987 Jeep Wrangler*, 972 F.2d at 482.

While Mr. Orellana did not dispute his detainer at the time, no doubt because he refused

to accept the papers from the ICE officer (Tr. 481:2-7; 486:11-18), he challenged it in

Immigration Court—a challenge that was soundly rejected by the Immigration Judge. (DX56.)

### iv. Multiple Avenues to Challenge the Detainer Were Available to Plaintiffs.

The uncontroverted evidence made clear that there were multiple avenues available to

Plaintiffs, in addition to Mr. Hernandez's *habeas* petition, to challenge their detentions:

- Phone calls to attorneys were unrestricted, unmonitored and free (Tr. 639:11-12)

- The number for Legal Aid was widely available (Tr. 638:22-639:10)

- Meetings with lawyers in the jail were accommodated at virtually all times (DX90 at 34; Tr. 639-640)

- The Inmate Handbook, available in Spanish, set forth a grievance procedure to lodge complaints (DX90 at 12; Tr. 736:8-10).

- The detainer itself included a number to call if the detention was incorrect. (PX01B)

Plaintiffs submitted no evidence that contravened the availability of these multiple

avenues for challenging their detention, and both class representatives ultimately did so. While

Mr. Orellana did not make any complaint during his detention although he could have (indeed, he could not even remember if he asked how to use the phones) (Tr. 488:3-4), he did oppose it before the immigration judge. Mr. Hernandez, of course, was actively challenging his detention in this Court before it had even begun. (Tr. 724, 730.) Nor can Plaintiffs dispute the availability of legal assistance, as both named plaintiffs got lawyers. (Id., Tr. 502:10-12.) *See United States v. Lopez*, 445 F.3d 90, 96 (2d Cir. 2006) ("where judicial remedies are readily available in case law and statutes, due process is not offended where no notice of those remedies is provided"). There was no basis whatsoever for the jury to find Defendants liable on this claim.

### B. Alternatively, the Court Should Order a New Trial Under Rule 59.

Alternatively, this Court should grant Defendants' motion for a new trial under Rule 59 because the verdict was the product of erroneous evidentiary decisions and jury instructions.

#### i. *The Court Erred in Excluding Certain Pleadings, Evidence of Defendants' Good Faith, and Plaintiffs' Criminal Histories.*

*First,* the Court erred in refusing to admit pleadings that included admissions by Plaintiffs directly undercutting Plaintiffs' procedural due process claim. *See United States v. Amrep Corp.*, 545 F.2d 797, 800 (2d Cir. 1976) ("Relevant evidence should be admitted and not excluded.").

The First Amended Complaint (ECF 12, "FAC"), filed on August 18, 2017, alleges that on that same date, "instead of releasing Mr. Hernandez, SCSO retained him in custody pursuant to the detainer request issued by ICE. Within 48 hours, absent relief from this Court, SCSO will transfer custody of Mr. Hernandez to ICE." (*Id.* ¶ 28.) The FAC also admitted that Mr. Hernandez (like Mr. Orellana) had been given forms by ICE agents, which he refused to sign. (*Id.* ¶ 27.) The FAC accordingly acknowledged that Mr. Hernandez was both on notice of his detention, and had an opportunity to contest it as he filed the FAC the very day he was detained.

The Second Amended Complaint (ECF 37, "SAC") *explicitly stated that* "an ICE agent *served* Mr. Hernandez with copies of [the ICE detainer request and warrant]," *expressly conceding* that Mr. Hernandez was provided with actual notice of his detention, and corroborating Defendants' position at trial that ICE agents served the detainers. (*Id*. ¶ 31.) It further acknowledged that Mr. Orellana had received an ICE detainer, and that some class members being held in SCSO jails were held in ICE custody. (*Id*. ¶¶ 43, 45.) Mr. Hernandez acknowledged that the Complaints were true and accurate as best he knew. (Tr. 731:1-9.)

Despite these highly probative admissions, the Court precluded Defendants from introducing either Complaint under FRE 403, even after it was clear that Mr. Hernandez would be unable to testify and Defendants thus would be unable to question him on these admissions. (*See* ECF 276 at 40 (Pre-trial Order excluding SAC); Tr. 101:11-12 ("I am not going [to] let complaints go to the jury room"); *id*. at 602 (Court again excluding both Complaints)). *But see Royal Consulting, Inc. v. Agri-Mark*, 1990 WL 83445, at *3 (S.D.N.Y. June 13, 1990) ("It is a basic rule that statements made in a Complaint may be admitted against the pleader as evidence in the form of judicial admissions."); *see also Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("[A]llegations in the Second Amended Complaint are judicial admission[s] by which [plaintiff] was bound throughout the course of the proceeding.") (internal citations and quotations omitted); *Bermudez v. City of New York*, 2019 WL 136633, at *16 (E.D.N.Y. Jan. 8, 2019) ("plaintiff's pleadings are admissible for impeachment purposes and as party admissions, excepted from the definition of hearsay.").

This Court's decision was immensely prejudicial. Plaintiffs were allowed to imply that ICE was not in fact serving detainers—going so far as to rhetorically ask the jury at closing, "where are the documents showing ICE did serve the detainers," (Tr. 840:5-6), knowing that this

Court excluded the documents demonstrating that, by Plaintiffs' own admission, ICE did exactly that. This Court's decision was all-the-more impactful given that Defendants had no opportunity to question Mr. Hernandez at trial. *See Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989) (awarding new trial on finding that "[t]he district court erred in refusing to permit the original complaint to be received in evidence" where the complaint was inconsistent with Plaintiffs' later allegations); *Dugan v. EMS Helicopters, Inc.*, 915 F.2d 1428, 1435 (10th Cir. 1990) ("the complaint is so material, and so obviously relevant, that the failure to allow its introduction is harmful error requiring a new trial."); *Arnold v. Groose*, 109 F.3d 1292, 1297 (8th Cir. 1997) (remanding for new trial because "the district court's refusal to admit the prior versions [of pleadings] as admissions was a clear and prejudicial abuse of discretion.").[3]

*Second,* the Court erred in precluding Defendants from presenting evidence of their good faith belief, based in part on the advice of counsel, that SCSO's detainer policy complied with the law (ECF 266), which was directly relevant to Plaintiffs' procedural due process claim. To determine whether procedures are constitutionally sufficient, a fact-finder balances (1) the private interests; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) the government's interests. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Here, Defendants' good faith belief in the lawfulness of the detainer policy reduces the "the probable value, if any, of additional or substitute procedural safeguards," *id.*, because further opportunities to contest the lawfulness of their detention would not have provided a different outcome or affected Plaintiffs' loss of liberty. *See Warren v. Pataki*, 823 F.3d 125, 143–44 (2d Cir. 2016).

---

[3] The Court's ruling also erroneously barred Defendants from introducing Mr. Hernandez's brief in support of his habeas corpus petition (ECF 13), and Mr. Orellana's Motion to Terminate Proceedings in immigration court, wherein Mr. Orellana testified that he was told while in SCSO custody that "there had been a change in his paperwork." (DX48 at 4.)

Further, Plaintiffs opened the door to Defendants' admission of this evidence.  For example, in his opening statement to the jury, Plaintiffs' counsel argued,

> Now, as I said, you will -- the evidence, you will probably hear from Defendants -- I'm pretty sure of this -- is that they did this because ICE sent them these detainer requests … That is the excuse you will hear. The evidence will show that *this excuse does not justify what happened* and, more importantly, the Court has already determined that the detention was unlawful.

(Tr. 127:19-128:1; *see also* Tr. 125:9-22.)  Counsel also implied SCSO made changes to its detainer policies in bad faith.  (Tr. 131:10-23.)  Accordingly, it was certainly error to exclude good-faith evidence after Plaintiffs opened the door.

*Third*, the Court erroneously barred Defendants from offering evidence "about the specifics of, or reasons for, any prior arrests or periods of incarceration."  (ECF 256 at 2.)  The Second Circuit allows such evidence 'for any purpose other than to show a defendant's criminal propensity,'" *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002), "as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403," *Skinner v. City of New York*, No. 15-CV-6126, 2017 U.S. Dist. LEXIS 104650, at *10 (E.D.N.Y. Apr. 7, 2017).  Under that standard, this Court regularly permits a defendant to submit evidence of a plaintiff's criminal history to mitigate damages claims. *See Ross v. Guy*, 2022 WL 768196, at *7 (E.D.N.Y. Mar. 14, 2022) (Kuntz, J.) ("[T]he guilt or innocence of an arrested person may still be relevant to the jury in considering a false arrest claim.").  Criminal history is particularly relevant here as relevant to determining the extent of the harm a plaintiff suffers by a subsequent loss of liberty. *See Banushi v. Palmer*, 2011 WL 13894, at *3 (E.D.N.Y. Jan. 4, 2011) ("a plaintiff who has had a number of prior arrests and detentions is likely to have suffered less distress than one who has never before been detained"), *aff'd*, 500 Fed. Appx. 84 (2d Cir. 2012).

Moreover, Plaintiffs opened the door to evidence of Plaintiffs' criminal history and the disposition of their criminal cases by asking Mr. Orellana, over Defendants' objection, whether he had ever been convicted of a crime. (Tr. 477:8-11; *see also* Tr. 459-60.) The Court's decision not to allow that and similar evidence here warrants a new trial.

### ii. The Court Jury's Instructions Constituted Prejudicial Error by Failing to Instruct the Jury on Actual Notice

A separate, independently sufficient basis for a new trial is that the Court's jury instructions were erroneous. "An erroneous jury instruction requires a new trial unless the error is harmless." *Callahan v. Wilson*, 863 F.3d 144, 148 (2d Cir. 2017). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Carvel Corp. v. Diversified Mgmt. Grp., Inc.*, 930 F.2d 228, 232 (2d Cir. 1991); *see also Plagianos v. American Airlines, Inc.,* 912 F.2d 57, 59 (2d Cir.1990). Here, the jury instructions were provided to the jurors during their deliberations. (*See* Tr. 923.)

Here, the Court declined to charge the jury on actual notice. Instead, instructing:

> It is your role as the jury to decide if defendants provided enough notice and opportunity to class plaintiffs to adequately dispute their unlawful detentions. If your answer is yes, then you must find for the defendants on the claim. If your answer is no, then you must find for the class plaintiffs on their procedural due process claim.

(Tr. 903:13-903:18; *see also* Tr. 902:17-903:18.) The Court rejected Defendants' efforts to include instruction on actual notice. (Tr. 781:18-782:11; *see also* Tr. 780:4-781:7.)

It is error to fail to instruct on actual notice, where, as here, there is substantial evidentiary support for that defense. In *Schneider v. Revici,* 817 F.2d 987, 996 (2d Cir. 1987), the Second Circuit held that "the district court erred in refusing to charge the jury with the affirmative defense of express assumption of risk." It reversed because there was "sufficient evidence . . . to allow the jury to consider express assumption of risk as an affirmative defense

that would totally bar recovery, [i]t was therefore error for the district court to deny the defendants' request for a jury charge on the issue." *Id.*; *Boyle v. Revici,* 961 F.2d 1060, 1062-63 (2d Cir. 1992) ("Where a litigant's claim or defense is supported by evidence of probative value, the litigant is entitled to have the district judge inform the jury of that claim or defense" and holding that "[f]ailure to give such an instruction is error."); *Cutlass Prods., Inc. v. Bregman*, 682 F.2d 323, 325, 328-29 (2d Cir. 1982) (remanding for new trial where jury not charged with "a valid theory of defense upon which defendant has produced sufficient evidence").

Here, Plaintiffs had actual notice of their detainers, and at the very least, there was sufficient evidence of actual notice to obligate the Court to put the matter to the jury. Defendants should be afforded a new trial as a result.

The Court's erroneous jury instruction was especially harmful given the jury charge that the Court did give: "It is your role as the jury to decide *if defendants provided* enough notice and opportunity to class plaintiffs to adequately dispute their unlawful detentions…. If your answer is no, then you must find for the class plaintiffs on their procedural due process claim." (Tr. 903:13-903:18; *see also* Tr. 902:17-903:18; Tr. 780:4-781:7 (Defendants objecting to instruction at charge conference). Without an accompanying instruction on *actual notice*, the Court's instruction directed the jury that—no matter what Plaintiffs knew about their detainer, no matter that at least one of them was actively challenging it—Defendants' failure to *serve the detainer themselves* meant Defendants were liable. But where Plaintiffs had notice and opportunity to protect their rights, there can be no injury.

Indeed, Plaintiffs took full advantage of these jury instructions, suggesting to the jury at closing: "the fact that one or two of these people found out that they were being illegally

detained," does not excuse the lack of notice by Defendants. (Tr. 829:9-11.) The law is that it matters very much.

### iii. The Court Committed Prejudicial Error by Instructing the Jury that a Hearing Should be Held "Before" the Detainer.

The Court instructed the jury that "the defendants must have provided class plaintiffs with constitutionally sufficient notice and opportunity for hearing *before* depriving class plaintiffs of their liberty interests." (Tr. 902: 17-20.) But the law requires only that the proffered process be consistent with the circumstances, *Mathews*, 424 U.S. at 334, taking into account government interests and likelihood of an erroneous deprivation. *See Calhoun v. N.Y. State Division of Parole Officers*, 999 F.2d 647, 654 (2nd Cir. 1993) ("the period between Calhoun's arrest for the new crime and his reincarceration in the Steuben County jail [was] only five days. . . . the state's failure to provide a final parole revocation hearing when time constraints make it impracticable to do so is not a constitutional violation."); *see also Mathews,* 424 U.S. 319 at 334 (1976) ("(D)ue process is flexible and calls for such procedural protections as the particular situation demands"); *Sussman v. N.Y. City Health & Hosps. Corp.*, 1997 WL 334964, at *11 (S.D.N.Y. June 16, 1997) ("a *post*-deprivation hearing—which plaintiff received the following month—is all the process that was constitutionally required").

The Court's erroneous instruction was crucial here because the detainer periods did not typically extend for more than a few hours or days. (Tr. 778:28-780:1.) Defendants should be afforded a new trial in which the jury is correctly instructed on procedural due process.

## II. The Jury's Damages Awards Cannot Be Sustained.

Defendants are also entitled to a new trial, or remittitur in lieu of a new trial, under Rule 59, because the jury's damages awards—for both loss of liberty and procedural due process—are not only seriously erroneous and against the weight of the evidence, but also

13

egregious and unjust. *See DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir.1998). *First*, the jury's awards are against the weight of the evidence; indeed, Plaintiffs utterly failed to adduce *any* evidence of damages. *Second*, the Court's instructions to the jury on damages were improper. *Third*, the Court erroneously prohibited Defendants from introducing evidence relevant to damages. *Fourth*, the jury's award is flagrantly and unjustly excessive. *See Ismail*, 899 F.2d at 186.

### A. Plaintiffs Failed to Present Sufficient Evidence of Damages.

As the Court explained at the trial's outset, the jury had to determine "the amount of damages, *if any*, owed to class plaintiffs for the defendants' violation of class plaintiffs' rights under the United States Constitution and the New York Constitution," (Tr. 16:15-20), and "whether or not class plaintiffs suffered damages as a result of [the alleged] denial of adequate [procedural] due process." (Tr. 17:7-10.)

*First*, with regard to procedural due process, to recover non-nominal compensatory damages, Plaintiffs must submit evidence of actual injury. *See Carey v. Piphus*, 435 U.S. 247, 257 (1978); *Walker v. Schult*, 45 F.4th 598, 617 (2d Cir. 2022). *No such evidence was submitted here*. Mr. Orellana's testimony on procedural-due process "damages" was as follows: "Well, I was sad. I didn't know why they were doing this to me." (Tr. 482:17-21.) That's it, in full: the *only* evidence of damages the jury used to award the Class $37 million in purported compensation. (Tr. 527:3-10 (raising evidentiary deficiency at trial during oral motion for Judgment as a Matter of Law).) Mr. Hernandez provided on such testimony.

Furthermore, that testimony was uncorroborated by evidence of physical manifestations of distress and, thus, is obviously insufficient to support compensatory damages for procedural due process. *See Annis v. Cnty. of Westchester*, 136 F.3d 239, 249 (2d Cir. 1998) ("[W]e find that the only evidence of Annis's emotional distress—her own testimony—is insufficient to

warrant an award of compensatory damages for that injury.").  Moreover, in any case, to recover for mental and emotional distress on an individual basis for a violation of his procedural due process rights, a plaintiff must prove that such distress was proximately *caused* by the procedural violation.  *Carey*, 435 U.S. at 264–65; *see also Warren*, 823 F.3d at 143 ("In the procedural due-process context, actual damages are based on the compensation for injuries that resulted from the plaintiff's receipt of deficient process.").  And, Mr. Orellana's testimony was not only meager, but also full of holes and not entitled to full weight.  *See, e.g.*, *United States v. Gladden*, 394 F. Supp. 3d 465, 479 (S.D.N.Y. 2019) ("[G]iven her inability to remember virtually all the relevant details, the Court cannot be confident that any of [Witness's] hearing testimony accurately reflects the events of this case.").  Mr. Orellana answered "I don't remember" in one form or another 21 times over the course of his brief testimony.

*Second,* the evidence supporting damages for loss of liberty was non-existent. Of the approximately 674 members of the Class, Plaintiffs called only Mr. Orellana.  Neither he, nor Mr. Hernandez via deposition, presented any testimony that would support any finding of injury or non-nominal damage for loss of liberty.  *See Rentas v. Ruffin*, 816 F.3d 214, 223-24 (2d Cir. 2016) (finding trial court "did not err in in instructing the jury that it was entitled to award nominal rather than compensatory damages on [] fair trial claim"); *see also Kerman v. City of New York*, 374 F.3d 93, 123 (2d Cir. 2004) ("A finding that the plaintiff has been deprived of a constitutional right does not automatically entitle him to a substantial award of damages.")

*Third*, without proof of injury other than loss of liberty, Class Members' injury under the Fourth and Fourteenth Amendments are undeniably coextensive.  *See Warren*, 823 F.3d at 144 (affirming verdict awarding no general damages for humiliation and mental suffering caused by Fourth Amendment violation where jury "necessarily concluded that the plaintiffs had failed to

prove any such injury."). Because Plaintiffs' compensatory damages must be limited to one recovery for the one injury, *Augustin v. Jablonsky*, 819 F. Supp. 2d 153, 161 (E.D.N.Y. 2011), and because the evidence—if any—of actual compensable injury is insufficient, there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture." *Kosmynka*, 462 F.3d at 79.

## B. The Court Erroneously Permitted Evidence and Argument on Damages That Should Have Been Excluded.

### i. The Court Wrongly Permitted Plaintiffs to Request a Prejudicial Specific Dollar Amount Without a Cautionary Jury Instruction.

Defendants are also entitled to a new trial because it was error to allow Plaintiffs to request a specific dollar amount from the jury without supporting evidence. The request was unfairly prejudicial and invited the jury to engage in "sheer speculation." *See Waldorf v. Shuta*, 896 F.2d 723, 744 (3d Cir. 1990) (specific dollar requests are prohibited because "a jury trial should be an appeal to the rational instincts of a jury rather than a masked attempt to import into the trial elements of 'sheer speculation'"). The unfair influence of the request is clear in the jury's award, which was clearly anchored by Plaintiffs' request. (Compare Tr. 855-56 (Plaintiffs' summation) to Tr. 943 (Verdict).)

The Second Circuit has "emphasize[d] that specifying target amounts for the jury to award is disfavored" because "[a] jury is likely to infer that counsel's choice of a particular number is backed by some authority or legal precedent." *Consorti v. Armstrong World Industries, Inc.,* 72 F.3d 1003, 1016 (2d Cir. 1995) ("Such suggestions anchor the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence."), *vacated on other grounds sub nom.,* 518 U.S. 1031 (1996)). And courts regularly prohibit plaintiffs "from submitting to the jury a request for a specific dollar amount regarding [] non-economic damages." *Ross*, 2022 WL 768196, at *7 (listing cases). "[A]bsent a specific reason to

contravene the [C]ircuit's well-established policy disfavoring suggestions of specific damages figures, courts within this Circuit have routinely granted motions to 'preclude plaintiffs from requesting a specific dollar amount from the jury.'" *Nunez v. Diedrick*, 2017 WL 4350572, at *2 (S.D.N.Y. June 12, 2017) (listing cases). The Court therefore erred by deviating from Circuit precedent and its own ruling (ECF 259) to allow counsel to request a specific dollar amount unsupported by any evidence. *See Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 540 (2d Cir. 1992) ("when the conduct of counsel in argument causes prejudice to the opposing party and unfairly influences a jury's verdict, a new trial should be granted"); *Koufakis v. Carvel*, 425 F.2d 892, 904 (2d Cir. 1970).

### ii. *The Court Erroneously Admitted the Testimony of Plaintiffs' Expert and His Undisclosed (Third or Fourth) Analysis.*

The Court improperly admitted the "expert opinions" of Mr. Kruskol despite his acknowledged lack of expertise (Tr. 398:7-12) and flawed methodology (*see, e.g.,* Tr. 403, 428, 441.) An expert opinion may be admitted only if (1) it is based on sufficient facts or data, (2) it is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. Rules Evid. 702. Mr. Kruskol's testimony flunked these criteria. *First*, Mr. Kruskol admitted multiple times that he lacked sufficient facts—not to mention expertise interpreting inmate jackets—to form reliable conclusions that would not mislead the jury. (*See, e.g.*, Tr. 411, 426, 433.) *Second*, his methods were unreliable and failed to account for the nuances of the Class Members' incarceration histories and general lack of commonality within the class. (*See, e.g.,* Tr. 433:11 – 439:7.) *Third*, Mr. Kruskol did not reliably apply his methodology, as evidenced by the multiple alternate (and unproduced) calculations he purportedly ran to try to make up for the missing data and flawed methodology. (*See* Tr. 459:24 – 463:20.)

Moreover, in denying Defendants' motion to strike Mr. Kruskol's unproduced opinion testimony, (ECF 282), the Court characterized the unproduced evidence as a trivial, "technical infraction of Rule 26(a)." (ECF 285 at 2.) Respectfully, both the characterization and the Court's decision were incorrect: Mr. Kruskol's failure to disclose the basis and underlying data for his new opinion was neither justified nor harmless. *See Champagne v. Columbia Dental PC*, 2023 WL 6053001, at *2 (2d Cir. Sept. 18, 2023) (noting the exception to Rule 37(c)(1)'s prohibition on using undisclosed expert opinion applies where the failure "'was substantially justified or [is] harmless'"). Under Fed. R. Civ. Proc. 26(a)(2)(B), expert reports must contain "(i) a *complete* statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them." Plaintiffs' failure to disclose Mr. Kruskol's calculations denied Defendants' right to fully cross-examine him. The Court erred in permitting Mr. Kruskol's opinion to go before the jury and by denying Defendants' request to strike. Defendants are thus entitled to a new trial.

**C. The Court's Jury Charge on Damages Was Erroneous and Prejudicial.**

The award also cannot stand because the Court's charge on damages was erroneous. "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Velez v. City of New York*, 730 F.3d 128 (2d Cir. 2013). "An erroneous instruction requires a new trial unless the error is harmless ... [and] [a]n error is harmless only if the court is convinced that the error did not influence the jury's verdict." *Warren*, 823 F.3d at 137; *see also Callahan,* 863 F.3d at 148 (2d Cir. 2017).

> **i. *The Jury Instructions Erroneously Repeated, Over and Over, That That Plaintiffs Were Entitled to Damages for Loss of Liberty Without Providing The Legal Limits.***

The Court misled the jury by repeatedly instructing the jury that Plaintiffs were entitled to damages for loss of liberty without providing the law's boundaries to any such entitlement.

*First*, the Court erred in instructing the jury that, with respect to loss of liberty damages, "[a]ny monetary damages you award must be fair and reasonable and not de minimis or trivial." (ECF 288-1 at 36.)  This instruction misstates the standard, established by *Kerman*, 374 F.3d at 124, which holds that damages for loss of liberty may not be "nominal." (*See* Tr. 784:15 - 785:18 (objecting at charge conference).)  The distinction is significant: while "nominal" damages are damages in name only and awarded as an alternative to compensatory damages, *Maalouf v. Salomon Smith Barney, Inc.*, 2004 WL 2008848, at *5 n.65 (S.D.N.Y., Sept. 8, 2004) ("One dollar is the standard measure of nominal damages"), an instruction that damages may not be "trivial" or "de-minimis" improperly implicates the *amount* of compensatory damages that should be awarded, a question that is within the jury's discretion.  (Tr. 784:19-22 (objecting).)

*Second*, the Court erred in instructing the jury that it could presume damages for emotional suffering and humiliation.  (ECF 288-1 at 36.)  "Damages recoverable for loss of liberty for the period spent in a wrongful confinement are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering." *Kerman*, 374 F.3d at 125.  While the former can be presumed, the latter cannot.  *Id*. at 128 ("Kerman was, *independently* of his claims of physical, mental, emotional, or economic injury, entitled to be compensated for that loss of liberty.").  This charge was also erroneous because damages for emotional suffering are properly categorized as special damages, and thus are not awardable on a class basis *at all*.  *See Augustin*, 819 F. Supp. 2d at 166 ("emotional distress damages" require "individualized proof that must be presented by each class member separately.").

*Third*, the Court erred in not instructing the jury that it could only award damages on Plaintiffs' claims if it found Defendants had *caused* those damages.  Compensatory damages may only be awarded if the plaintiff shows that the defendant's actions were the proximate cause

of its injuries.  *See, e.g., Carey* at 255 ("The Court implicitly has recognized the applicability of this principle to actions under §1983 by stating that damages are available under that section for actions "found . . . to have been violative of . . . CONSTITUTIONAL RIGHTS *AND TO HAVE CAUSED COMPENSABLE INJURY* . . . ." (alterations in original).  The Second Circuit has reinforced this requirement.  *Kerman*, 374 F.3d at 124 ("[W]here the jury has found a constitutional violation *and there is no genuine dispute that the violation resulted in some injury to the plaintiff*, the plaintiff is entitled to an award of compensatory damages as a matter of law."); *Warren*, 823 F.3d at 141 ("It is well-settled that [a]bsent a showing of causation [of the plaintiffs' injuries by the defendants' unconstitutional acts] and actual injury, a plaintiff is entitled only to nominal damages.")  (*See* Tr. 783:20-784:13; 786:20-787:12 (Defendants objecting).

A properly instructed jury could not have awarded compensatory damages here because Plaintiffs did not dispute that: (1) class members were lawfully held by SCSO before their detention on ICE detainers (*see* Tr. 484:17-485:1; 728:2-17); both Mr. Orellana and Mr. Hernandez were lawfully subject to immigration enforcement actions (*see* Tr. 484:1-16; 731:16-732:14; 732:23-733:5); and they were directly transferred from SCSO to ICE custody (*see* Tr. 492:15-23; 732:15-17; 741:1-22).  Further, Defendants presented uncontroverted evidence that Plaintiffs could lawfully have been arrested and held by ICE during the same period they were held by Defendants.  (*See* Tr. 563:18-564:5).  Indeed, Plaintiffs had previously alleged that *ICE* caused their detentions.  (ECF #24-13) ("ICE's actions caused the [SCSO] to detain Mr. Orellana for than 48 hours after the SCSO no longer had reason to keep him in custody.")

### ii. The Court Erroneously Instructed the Jury That Mental and Emotional Distress Damages For Denial of Procedural Due Process Were Available to Plaintiffs.

The Court also erred by instructing the jury that mental and emotional distress damages were available for any procedural due process claim without properly limiting such damages. (*See* ECF 288-1 at 38-39; Tr. 793:09 – 794:17.)  To recover for mental and emotional distress caused by a violation of his procedural due process, a plaintiff must prove that such distress was directly caused by the procedural violation.  *See Carey*, 435 U.S. at  264–65.  A class action cannot provide the necessary proof for each class member because the injury (distress caused by the lack of process itself) is necessarily individualized to each class member's actual notice and personal emotional response.  *See, e.g.*, *Nnebe v. Daus*, 2022 WL 615039, at *8 (S.D.N.Y. Mar. 1, 2022) ("*[E]ach* plaintiff must establish that he suffered mental and emotional distress caused by the denial of procedural due process itself – not by other factors, such as the arrest itself or underlying criminal proceeding.")  Therefore, this set of injuries is legally not recoverable on a class-wide basis and the Court erred in not limiting its instructions as such.

### D. The Jury's Award Was Obviously Excessive.

The Court should order a new trial based on the jury's damages award *even if* it upholds the jury's verdict under Rule 50(b) and Rule 59(a)(1)(A) because the damages awarded are so excessive as to shock the conscience.

### i. Procedural Due Process Damages

As explained, the Court erred in allowing the jury to award damages for procedural due process *at all*, given that the only damages compensable on a class basis for procedural due process are for loss-of-liberty, which here are wholly coextensive with the damages awarded for Plaintiffs' other claims.  But assuming *arguendo* that such damages were awardable here, the

jury's $37,000,000 award of damages for procedural due process is shockingly excessive and justifies a new trial or remittitur.

The *only* injury on which the jury was charged for the procedural due process claim was "mental suffering and distress specifically experienced by Plaintiffs because they were denied fair process," excluding "any pain, suffering, injuries, or emotional distress the Plaintiffs may have experienced because of the additional time they spent in detention." (ECF 288-1 at 39.) Such injury for additional detention must be specifically proved and cannot be inferred based on the fact of the detention. *Carey*, 435 U.S. at 264. Here, the jury's award of approximately $57,000 to each class member for mental suffering in connection with the procedural due process violation is wholly exceptional and without foundation. As set forth above*, the *only* evidence of *any* distress was Mr. Orellana's testimony that he was "sad." Of course, any component of his sadness that was due to his incarceration, rather than a lack of process, is not compensable here. Moreover, Mr. Orellana would presumably have been suffering emotional distress *because* he knew he was being held on an ICE detainer and would soon face deportation proceedings— likewise not compensable here.

Courts have overturned jury verdicts in similar circumstances. *See, e.g., Satchell v. Clark*, 725 F.Supp. 691, 696 (E.D.N.Y. 1989) (considering an award of procedural due process emotional-distress damages for *31 days* in confinement, and holding "that the jury's award of $100,000 actual damages is predicated on some arbitrary abstract value of Satchell's constitutional rights, but in all events was unreasonably high and totally lacking evidentiary support"). This Court should do so here, where the jury's award is so outrageously high that it must be improperly punitive, or otherwise not intended to compensate the Plaintiffs.

### ii. Loss-Of-Liberty Damages

Likewise, the jury's $75,000,000 verdict amounts to approximately $115,000 per class member in loss-of-liberty damages alone—an unsustainable total given the circumstances.

This case meaningfully differs from typical loss-of-liberty cases, which tend to encompass a false arrest and/or malicious prosecution, and involve a single plaintiff. Here, class members' initial arrests were valid, and they were all initially lawfully incarcerated, many of them for extended periods. Further, Plaintiffs could also have been lawfully detained *by ICE* on ICE's own authority. General damages for loss-of-liberty compensate for "denial of free movement and violation [to plaintiff's] dignity," *Gardner v. Federated Dep't Stores, Inc.,* 907 F.2d 1348, 1353 (2d Cir.1990), and any loss-of-dignity suffered by the Plaintiffs (in Defendants' view not actionable or compensable at all under these circumstances) is at least dramatically less than it would be where an individual was wrongfully detained in the first instance. Further, given that, as set forth above, special damages were not available here, the award cannot compensate for emotional and physical harm. And even according to the (significantly exaggerated) testimony of Plaintiffs' expert, Plaintiffs were unlawfully detained for an average of less than 36 hours. (Tr. 849:3-4.)

Even setting aside these factors, the jury's enormous $75 million award is significantly out of line with relevant precedent. *See King v. Macri,* 993 F.2d 294, 297 (2d Cir. 1993) ($75,000 award was reasonable for plaintiff who was incarcerated for two months, subjected to regular strip searches, and stood trial for the false charges); *McClellan v. Smith,* 2009 WL 3587431 at *5 (N.D.N.Y. Oct. 26, 2009) ($150,000 in compensatory damages for plaintiff who was falsely imprisoned for seven days and maliciously prosecuted for over a year); *Jackson v. State of New York,* 2009 WL 6810548 at *1 (N.Y. Ct. Cl. Dec. 21, 2009) ($125,000 award for individual wrongfully imprisoned for 105 days in a facility where he had previously suffered a

23

sexual assault, causing him great emotional distress); *Sanabria v. State of New York*, 908 N.Y.S.2d 527, 532–33 (N.Y. Ct. Cl. 2010) (awarding $20,000 in damages to individual falsely imprisoned for 91 days in part because "claimant has previously served extensive periods of incarceration," which diminished any emotional harm); *Johnson v. State of New York,* 588 N.Y.S.2d 722, 725 (N.Y. Ct. Cl. 1992) ($40,000 in compensation for claimant wrongfully imprisoned for 747 days based, in part, on the claimant's extensive criminal history which reduced any damage to his reputation, humiliation, or pain). Accordingly, the jury's $75,000,000 damages award is outrageous on its face and the Court must either offer remittitur or order a new trial. *Lee v. Edwards,* 101 F.3d 805, 808 (2d Cir.1996).

## III.     The Plaintiff Class Must Be Decertified.

Defendants also renew their oral motion for decertification. (Tr. 750-751.) As an initial matter, this Court's adopted Report and Recommendation certifying the class (ECF 129) did not even consider whether to certify a procedural due process class. The words "procedural due process" do not appear anywhere in the Report, and the Report's discussion of commonality and predominance focuses only on whether Plaintiffs' extended detention was lawful. *See, e.g., id*. at 22 ("the prevalent issue is whether the defendants implemented a policy to honor detainer requests from ICE that resulted in the unlawful detention of inmates without probable cause and, if so, whether the defendants are liable for doing so.").

In any event, there is no commonality among all class members. For example, with respect to the notice provided, there was materially different evidence adduced, even as to the two class representatives. (*Compare* Tr. 480:2-4 (Mr. Orellana testifying that he did not remember what he was told) *with* Tr. 730:7-14, *supra* § I.B.i (Mr. Hernandez filed a Complaint before detainer went into effect and admitted he was served)); *see Dunnigan v. Metropolitan Life*

*Ins. Co.*, 214 F.R.D. 125, 136 (S.D.N.Y. 2003) ("Commonality requires a showing that common issues of fact or law affect *all* class members."). If the two class representatives were themselves not similarly situated, there is no reason to believe the rest of the class was, and Plaintiffs have never made any showing that they were. Nor have Plaintiffs made any showing that process afforded the lead plaintiffs was typical of the class.

There likewise has never been any showing that common issues of fact united the class with respect to procedural due process damages, or that the lead plaintiffs are typical of the remainder of the class. As set forth above, the only "evidence" of any emotional damages relating to procedural due process came from Mr. Orellana. Given that this is self-evidently not the case for Mr. Hernandez, there can be no question that the class is not similarly situated here as well. *See, e.g., Augustin*, 819 F.Supp.2d at 174 (decertifying class as to damages).

Similarly, the Class lacks commonality and typicality with respect to loss-of-liberty. *First*, as Plaintiffs acknowledged (*see supra* at I.B.i.), many class members (including Mr. Hernandez, Tr. 742:1-12) were held in ICE custody—not Suffolk custody—for a portion of their detention, and cannot be compensated for that period of time. *Second*, Mr. Orellana is not typical of the class, as he is subject to a preclusion defense given that he contested the legality of his detention in immigration court unsuccessfully. (*See* DX48.)

Accordingly, the Class should be decertified, and the jury's verdict should be stricken.

## CONCLUSION

For the reasons above, the Court should grant Defendants' renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) and/or Defendants' motion for a new trial, or remitter in lieu of a new trial, pursuant to Rule 59.

Dated: December 10, 2025
New York, New York

Respectfully submitted,

DEWEY PEGNO & KRAMARSKY LLP

By: /s/ Thomas E.L. Dewey
       Thomas E.L. Dewey
       Sean K. Mullen
       777 Third Avenue – 29th Floor
       New York, New York 10017
       Tel.: (212) 943-9000
       tdewey@dpklaw.com
       smullen@dpklaw.com

**CERTFICIATE OF COMPLIANCE**

I, Thomas E.L. Dewey, attorney for the Defendants, certify that this Memorandum of

Law complies with the requirements of Local Civil Rule 7.1 and Rule III(F) of this Court's rules

because it contains 8,284 words across 25 pages, excluding the caption, table of contents, table

of authorities, and signature blocks.

Dated: December 10, 2025
      New York, New York

By: /s/ Thomas E.L. Dewey

Thomas E.L. Dewey
DEWEY PEGNO & KRAMARSKY LLP
777 Third Avenue – 29th Floor
New York, New York 10017
Tel.: (212) 943-9000
tdewey@dpklaw.com

*Attorney for Defendants*