UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOAQUIN ORELLANA CASTANEDA , et al.,

                                        Plaintiffs,

                    -against-

                                                        17-cv-04267(WFK)(ARL)

COUNTY OF SUFFOLK and SUFFOLK COUNTY
SHERIFF'S OFFICE, et al.,

                                        Defendants.


**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR
ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I.    This Motion Is Not Ripe and Should Be Decided After Defendants'
      Postjudgment Motions and, If Necessary, Appeal ............................................................ 3

II.   The Number of Hours Purportedly Expended by Plaintiffs' Counsel
      Is Unproven and Unreasonable ........................................................................................ 3

      A.  Plaintiffs' Counsel Have Utterly Failed to Prove Their Hours ............................... 5

      B.  The Hours Billed Are Unreasonable ..................................................................... 6

      C.  Plaintiffs' Counsel Improperly Include Hours Not Chargeable to Defendants ....... 9

III.  Plaintiffs' Counsel's Requested Hourly Rates Are Unreasonable and Excessive ............. 10

      A.  Plaintiffs' Proposed Rates Far Exceed Prevailing Rates in this District ............... 11

      B.  A Further Reduced Hourly Rate Is Appropriate in this Case ............................... 13

IV.   Plaintiffs' Counsel's Costs Are Unsupported and Unrecoverable .................................... 16

CONCLUSION ...................................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

Cases

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
522 F.3d 182 (2d Cir. 2008)..................................................................11, 13, 14, 16

*Blanchard v. Bergeron*,
489 U.S. 87 (1989)........................................................................................14

*Blanding v. O'Malley*,
2024 WL 2293156 (D. Conn. May 21, 2024)......................................................9

*Bliven v. Hunt*,
579 F.3d (2d Cir. 2009)..................................................................................1

*Cidoni v. Woodhaven Center of Care*,
2023 WL 2465167 (E.D.N.Y. March 10, 2023) ..................................................5

*Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*,
34 F.3d 1148 (2d Cir. 1994)............................................................................4

*Custodio v. Am. Chain Link & Const., Inc.*,
2014 WL 116147 (S.D.N.Y. Jan. 13, 2014) ......................................................4

*Errant Gene Therapeutic, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*,
286 F. Supp. 3d 585 (S.D.N.Y. 2018)............................................................6, 7

Finkel v. Omega Comm'n Svcs., Inc.,
543 F. Supp. 2d 156 (E.D.N.Y. 2008) ............................................................10

*Fisher v. SD Prot. Inc.*,
948 F.3d 593 (2d Cir. 2020)............................................................................4

*Gem Fin. Serv., Inc. v. City of New York*,
2023 WL 5831129 (E.D.N.Y. Sept. 8, 2023) ....................................................4

*General Electric Co. v. Compagnie Euralair, S.A.*,
1997 WL 397627 (S.D.N.Y. July 3, 1997) ......................................................7

*Gillberg v. Shea*,
1996 WL 406682 (S.D.N.Y. May 31, 1996) ....................................................7

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)......................................................................................1

ii

Page(s)

*Houston v. Cotter*,
  234 F. Supp. 3d 392 (E.D.N.Y. 2017) ..................................................................7, 13

*Hugee v. Kimso Apartments, LLC*,
  852 F. Supp. 2d 281 (E.D.N.Y. 2012) ..................................................................2, 15

*In re Arbitration Between Okyere and Houslanger & Assocs., PLLC*,
  2015 WL 4366865 (S.D.N.Y. 2015)......................................................................10

*Johnson  v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ................................................................................14

*Kindle v. Dejana*,
  308 F. Supp. 3d 698 (E.D.N.Y. 2018) ..................................................................4, 16

*King World Productions, Inc. v. Financial News Network, Inc.*,
  674 F. Supp. 438 (S.D.N.Y. 1987) .......................................................................7

*Kirsch v. Fleet St., Ltd.*,
  148 F.3d 149 (2d Cir. 1998)..................................................................................5

*Lilly v. City of New York*,
  934 F.3d 222 (2d Cir. 2019)..................................................................................11

*Mayo-Coleman v. Am. Sugars Holding, Inc.*,
  2019 WL 1034078 (S.D.N.Y. March 5, 2019) .....................................................16

*McDaniel v. Cnty. of Schenectady*,
  595 F.3d 411 (2d Cir. 2010)..................................................................................8

*Mhany Mgmt. v. Inc. Vill. of Garden City & Garden City Bd. of Trs.*,
  44 F. Supp. 3d 283 (E.D.N.Y. 2014) ....................................................................1, 3, 4

*Moore v. Rubin*,
  766 F. Supp. 3d 423 (E.D.N.Y. Feb. 14, 2025) ...................................................11, 13, 14

*People ex rel. Wells v. DeMarco*,
  168 A.D.3d 31 (N.Y. App. Div. 2d Dep't 2018) ..................................................15

*Prime Contractors Inc. v. APS Contractors Inc.*,
  786 F.Supp.3d 524 (E.D.N.Y. 2025) ....................................................................2, 5, 9

*Raja v. Burns*,
  43 F.4th 80 (2d Cir. 2022) ....................................................................................7

Page(s)

*Reda v. Momentum Advanced Plan., LLC*,
  2025 WL 3460932 (E.D.N.Y. Aug. 29, 2025)..................................................................11

*Rosas v. Balter Sales Co. Inc.*,
  2018 WL 3199253 (S.D.N.Y. June 29, 2018) ...................................................................4

*Rubin v. HSBC Bank USA, NA*,
  763 F. Supp. 3d 233 (E.D.N.Y. 2025) ..............................................................2, 5, 11, 12

*Sprague v. T.C. Inn*,
  2021 WL 4901494 (N.D.N.Y. Oct. 21, 2021) ...................................................................3

*Stanbro Palou Stanbro v. Westchester Cnty. Health Care Corp.*,
  2024 WL 1214560 (S.D.N.Y. Mar. 21, 2024) .................................................................13

*Thompson v. Spota*,
  2019 WL 2602062 (E.D.N.Y. June 25, 2019) ...................................................................6

*Torcivia v. Suffolk Cnty.*,
  437 F. Supp. 3d 239 (E.D.N.Y. 2020) ......................................................................13, 15

*Volpe v. Nassau Cnty.*,
  2016 WL 6238525 (E.D.N.Y. Oct. 24, 2016) .................................................................16

*We Shall Overcome Found. v. Richmond Org., Inc.*,
  330 F. Supp. 3d 960 (S.D.N.Y. 2018)......................................................................13, 16

Rules
Fed. R. Civ. P. 50(b) ...............................................................................................................4

Fed. R. Civ. P. 54(d) ...............................................................................................................6

Fed. R. Civ. P. 59 ....................................................................................................................4

## PRELIMINARY STATEMENT

Plaintiffs' motion for attorneys' fees and costs—seeking an eye-watering $6 million for work on a case that Plaintiff's Counsel at Winston & Strawn publicly advertises as "pro bono"[1]—is premature, totally unsupported by any records, and far in excess of clear forum rules on reasonable rates for prevailing counsel. The motion should accordingly be deferred or denied entirely—and if it is not, Plaintiffs' Counsel should be awarded only a fraction of what they seek.

*First*, Plaintiffs' motion is premature because this case is far from over. Defendants have already moved for post-judgment relief and intend to appeal if that relief is not granted. As Defendants more fully explain in those papers (*see* Dkt. 302-1), there were several substantial errors in the conduct of the trial that Defendants submit warrant judgment as a matter of law or at the very least a new trial—to say nothing of the various legal rulings from earlier in the case that Defendants intend to challenge on appeal. Courts have discretion to stay adjudication of a prevailing party's motion for attorney fees and costs when "prudent." *See Mhany Mgmt. v. Inc. Vill. of Garden City & Garden City Bd. of Trs*., 44 F. Supp. 3d 283, 285-86 (E.D.N.Y. 2014). And Defendants respectfully submit the Court should do so here.

*Second*, if the Court does not defer decision, it should decline to award Plaintiffs any fees. They have patently failed to carry their burden of proving the reasonableness of the hours purportedly worked by Plaintiffs' Counsel. Despite crystal clear guidance from the Second Circuit and this Court that "applications for awards of fees must be documented by time records," *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (citing, *e.g.*, *Hensley v. Eckerhart*,

---

[1] *See, e.g.,* "Pro Bono in Action: Winston Wins $112 Million Verdict for Immigrants Unlawfully Held by Suffolk County Sheriffs' Office," Winston & Strawn LLP (Nov. 12, 2025), https://www.winston.com/en/insights-news/winston-wins-dollar112-million-jury-verdict-for-immigrants-unlawfully-held-by-suffolk-county-sheriffs-office.

1

461 U.S. 424, 437 (1983)), Plaintiffs failed to produce *any* time records supporting the hours Plaintiffs' Counsel claimed to have worked. *See Prime Contractors Inc. v. APS Contractors Inc.*, 786 F.Supp.3d 524, 537 (E.D.N.Y. 2025) (Kuntz, J.) ("Plaintiff must submit contemporaneous billing and time records in addition to documents as to expenses in order to recover attorneys' fees and costs.") (internal citation omitted). And the barebones summaries Plaintiffs submitted in lieu of the required time records themselves reflect preposterous over-staffing and/or bill-padding: for example, Plaintiffs' Counsel claim to have collectively worked approximately 867 hours solely on the trial of this matter—separate and apart from all pre-trial preparation—which, for a five-day trial, amounts to 15 attorneys billing over 14 hours a day.

*Third*, the hourly rates that Plaintiffs request for the work Plaintiffs have failed to substantiate are ludicrous—all the more so given the standard rate range adopted by courts considering fee requests in this District and Plaintiffs' complete failure to offer any reasons why the Court should depart from that range. For example, Plaintiffs assert that the work of Mr. Badini, a Winston & Strawn partner, should be compensated at $1,337 an hour, though the accepted range in this forum for partner rates is $450-$650, *see Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 239 (E.D.N.Y. 2025), and despite clear guidance that an award near the top of that range should go only to attorneys with substantial experience in civil rights litigation, *see Hugee v. Kimso Apartments, LLC,* 852 F. Supp. 2d 281, 300 (E.D.N.Y. 2012), of which Mr. Badini discloses none.

*Finally,* Plaintiffs' request for reimbursement of costs suffers from the same infirmities as their request for fees: they have failed to produce documentation supporting the more than $100,000 they seek, and the summary charts they produced instead reflect outlandish and manifestly improper charges. Plaintiffs, for example, seek to charge Defendants—public

2

officials and entities—for $6,390 in "Business Meals" (separate and apart from $855 in "Overtime Meals"), apparently including $625 for a celebratory dinner attended by over a dozen Plaintiffs' lawyers on the night of the verdict.  (Dkt. 305-4 at 17.)  One hopes that Plaintiffs' Counsel would have the good sense not to attempt to charge paying clients for such extravagances—and there is certainly no basis for Plaintiffs to stick Defendants with that bill.

Plaintiffs' motion for attorneys' fees and costs should accordingly be deferred, denied entirely, or in the alternative, massively reduced in light of Plaintiffs' failure to produce required records and clear case law dictating hourly rates at a fraction of those claimed by Plaintiffs' counsel.[2]

## ARGUMENT

### I.    THIS MOTION IS NOT RIPE AND SHOULD BE DECIDED AFTER DEFENDANTS' POSTJUDGMENT MOTIONS AND, IF NECESSARY, APPEAL.

District courts have discretion to defer ruling on a prevailing party's motion for attorneys' fees and will stay adjudication when that is "the more prudent course of action." Mhany Mgmt., 44 F. Supp. 3d at 285 (E.D.N.Y. 2014) (citation omitted); *see Sprague v. T.C. Inn*, 2021 WL 4901494, at *2 (N.D.N.Y. Oct. 21, 2021) (listing cases).  Deferring litigation on Plaintiffs' attorneys' fees is prudent here, and Defendants respectfully request this Court deny Plaintiffs' Counsel's motions for attorneys' fees and costs (Dkts. 298, 304, 305) without prejudice.

---

[2] Plaintiffs also move for "service awards" in the amounts of $30,000 and $25,000 respectively, payable out of the class common fund and not in addition to the amounts already awarded by the jury, for class representatives Mr. Orellana Castaneda and Mr. Hernandez-Argueta.  Defendants maintain that the jury's verdict was erroneous, and that there is no legal basis for any payments to any class members in this action, and oppose the requested service awards on those grounds.

As the Court is aware, Defendants have moved for post-judgment relief under Federal Rules of Civil Procedure 50(b) and 59. (Dkt. 302.) Should the Court grant Defendants post-judgment relief—which we respectfully submit it should—Plaintiffs' fee application will be moot and will have wasted both the Court's and the Parties' time and effort. *See Rosas v. Balter Sales Co. Inc.*, 2018 WL 3199253, at *1 (S.D.N.Y. June 29, 2018). If, on the other hand, the Court denies post-trial relief, Defendants plan to appeal. *See Mhany Mgmt.*, 44 F. Supp. 3d at 286–87 (deferring ruling on motion for attorneys' fees until after appeal decided). Moreover, both parties will continue to accrue fees in post-trial litigation, which will likely lead to additional supplemental motions for fees and costs similar to that submitted by Plaintiffs on December 12, 2025. (Dkt. 304.) Efficiency and economy support this request to defer litigation over fees and costs until after the Court decides Defendants' post-judgment motions and/or after resolution of any appeal.

## II.    THE NUMBER OF HOURS PURPORTEDLY EXPENDED BY PLAINTIFFS' COUNSEL IS UNPROVEN AND UNREASONABLE.

In the Second Circuit, a party seeking attorneys' fees and costs "bears the burden to 'demonstrate the reasonableness and necessity of hours spent and rates charged,' *Kindle v. Dejana*, 308 F. Supp. 3d 698, 703 (E.D.N.Y. 2018) (citation omitted), and 'must submit adequate documentation supporting the requested attorneys' fees and costs,' *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020)." *Gem Fin. Serv., Inc. v. City of New York*, , 2023 WL 5831129, at *3 (E.D.N.Y. Sept. 8, 2023); *see Custodio v. Am. Chain Link & Const., Inc.*, 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014) ("The party seeking attorney's fees also bears the burden of establishing that the number of hours for which compensation is sought is reasonable.") (*citing Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)).

4

Here, Plaintiffs have completely failed to shoulder their burden of demonstrating that the number of hours for which they seek compensation are reasonable. Therefore their motion should be denied.

### A.      Plaintiffs' Counsel Have Utterly Failed to Prove Their Hours

"Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) *see also Rubin v. HSBC Bank*, 763 F.Supp.3d at 245; *Cidoni v. Woodhaven Center of Care*, 2023 WL 2465167, at *5 (E.D.N.Y. March 10, 2023) ("Attorneys must submit contemporaneous records with their fee applications to document the hours reasonably billed."); *Prime Contractors Inc.*, 786 F.Supp.3d at 537 ("Plaintiff must submit contemporaneous billing and time records in addition to documents as to expenses in order to recover attorneys' fees and costs. The party seeking to recover costs bears the burden of adequately documenting and itemizing the costs requested.") (internal citations and quotations omitted).

Here, however, Plaintiffs have provided no contemporaneously created records,[3] and instead only the following information supporting their hours: *First*, the total hours allegedly worked by each attorney or support team member (Dkts. 298-3, 298-10), without regard to the dates each person worked on the case, or nature of the work they did; and, *second*, the total amount of hours charged by each "phase" of litigation activity, where the phases often span

---

[3] Worse, counsel *did* submit at least some contemporaneous records in connection with their application for bill of costs (Dkt. 305-4), but intentionally and affirmatively redacted all information regarding their contemporaneous time records (and probably billed defendants for the effort).

multiple years.  (*E.g.*, Dkt. 298-5 (seeking $720,892.79 for "Early Litigation and First Two Motions to Dismiss (2017-2018)")).

None of these records are "contemporaneously created," as is required by law, and none approach the level of detail required to prove that Plaintiffs' Counsels' hours were reasonable. For instance, Winston & Strawn seeks reimbursement for over 3,000 hours worked (totaling over $2.3 million) in 2025 on "Post-Judgment Motions, Appellate Briefing, Pre-Trial Preparation, and Fourth Motion to Dismiss."  (*Id.*)  Self-evidently, it is impossible to tell whether a reasonable amount of time was spent on "Pre-Trial Preparation" (although it seems unlikely), as there is no way to judge how much time was spent on such preparation, as opposed to the other listed activities.

Plaintiffs' Counsel should not be permitted to flout this black-letter law, nor can counsel cure this deficiency in reply.  *See, e.g., Thompson v. Spota*, 2019 WL 2602062, at *3 (E.D.N.Y. June 25, 2019) (noting "[i]t is plainly improper submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden" (citations omitted)).  Plaintiffs' deadline to seek fees and costs under Fed. R. Civ. Proc 54(d) has come and gone, and Plaintiffs have completely failed to shoulder their burden.  Accordingly, Plaintiffs should not be awarded any attorneys' fees. .

### B.    The Hours Billed Are Unreasonable

Although Plaintiffs' failure to provide required billing records precludes any detailed analysis of the reasonableness of the hours Plaintiffs' Counsel spent on various tasks, it is clear from the scant documentation Plaintiffs did provide that their hours are drastically inflated and completely unreasonable. "If the number of hours recorded by counsel is disproportionate to the work performed, the Court should reduce the stated hours in making its fee award." *Errant Gene*

*Therapeutic, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*, 286 F. Supp. 3d 585, 588 (S.D.N.Y. 2018), *aff'd sub nom. Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*, 2018 WL 3094913 (S.D.N.Y. June 21, 2018), *aff'd*, 768 F. App'x 141 (2d Cir. 2019). A court "properly excludes … excessive, redundant, or otherwise unnecessary" hours. *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022) (internal quotation marks omitted).

As an initial matter, Plaintiffs seek to recover fees for a total of *28 attorneys* between Plaintiffs' two firms.  (*See* Dkts. 304-4, 298-10.)  "While parties to a litigation may fashion it according to their purse and indulge themselves and their attorneys ... they may not foist their extravagances upon their unsuccessful adversaries." *King World Productions, Inc. v. Financial News Network*, *Inc*. 674 F.Supp. 438, 440 (S.D.N.Y. 1987)); *see also Gen. Elec. Co. v. Compagnie Euralair, S.A.*, 1997 WL 397627, at *4 (S.D.N.Y. July 3, 1997) ("It is well recognized, of course, that when more lawyers than are necessary are assigned to a case, the level of duplication of efforts increases." (footnote omitted)); *Gillberg v. Shea*, 1996 WL 406682, at *5 (S.D.N.Y. May 31, 1996) ("Obviously, more lawyers leads to more 'conference' time as well as to a certain amount of repetition or 'learning curve' billing which should not be compensable." (footnote omitted)).[4]  This is self-evidently excessive.  *Compare supra with Houston v. Cotter*, 234 F. Supp. 3d 392, 406-07 (E.D.N.Y. 2017) (holding, in § 1983 case lasting 5 years, that plaintiffs' use of "10 different attorneys" was "unreasonably excessive.").  And while Plaintiffs did not provide sufficient detail to show how many attorneys were billing for attendance at trial, Courts routinely hold that billing for "more than two attorneys for court

---

[4] Defendants note that Winston and Strawn alone had *eighteen* different associates billing on this file, ten of whom departed the firm during the pendency of this case. (*See* Dkt.298-3.) The departure of ten associates surely prompted restaffing with ten new associates, which necessarily entailed a substantial amount of repetition and 'learning curve' billing that would ordinarily be written off.

appearances" is unreasonable. *Id.* at 407 (collecting cases) *see also id.* at 408 ("this Court heard a six-day Section 1983 trial… where the plaintiff was ably represented by only two attorneys who secured a favorable verdict in a case comparable to the instant lawsuit in factual and legal scope."). This Court should discard or substantially reduce Plaintiffs' requested fees based on the unjustifiable number of attorneys working on the matter.

Unsurprisingly, Plaintiffs' unreasonable number of attorneys yielded an unreasonable number of hours billed. Once again, Plaintiffs have not provided sufficient detail for Defendants to review most individual motions, but Plaintiffs' submissions do demonstrate the following:

- Plaintiffs seek compensation for *155 hours* (totaling over $110,000) for their (woefully under-supported) attorneys' fees motion alone. (Dkt. 304 at 3-4).

- Plaintiffs billed approximately *448 hours* on the second round of summary judgment motions, despite these motions being nearly identical to the summary judgment motions filed during the first round (for which some fraction of 950 hours was billed). (Dkts. 298-5, 298-10.)

- Plaintiffs billed approximately 200 hours to "settlement efforts." (*Id.*)

- Plaintiffs billed approximately 867 hours (approximately $500,000) to "trial," which, for a five-day trial, amounts to 15 attorneys billing over 14 hours a day. (*Id.*)

More fundamentally, Plaintiffs' Counsel's bills show that once Plaintiffs prevailed on their motion for summary judgment, and could argue that they were entitled to attorneys' fees, Plaintiffs dramatically increased their billing. *Cf. McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 425 (2d Cir. 2010) (blessing trial court's note that "risk was of little importance to counsel" because "liability was reasonably certain" and § 1988 entitled counsel to fees even if only nominal damages awarded). Indeed, Plaintiffs' Counsel are attempting to recoup more in fees

8

for the eleven months following their summary judgment victory than they are for the entirety of the first eight years of litigation. (*See id*.) In the ordinary course, this Court should thus closely scrutinize such bills, but here Plaintiffs have not even provided their bills to be scrutinized. If this Court does not deny Plaintiffs' fee motion in its entirety, it should thus draw every inference against Plaintiffs with respect to what was reasonably necessary to prosecute the final stages of this litigation.

### C.     Plaintiffs' Counsel Improperly Include Hours Not Chargeable to Defendants

While it is impossible to tell precisely what work Plaintiffs are seeking fees for due to their incomplete records, it appears likely that they have billed for a substantial amount of work that is not properly chargeable to Defendants.

*First*, Plaintiffs may be improperly including bills for work undertaken with respect to claims against the long-dismissed federal defendants in this action. The federal defendants were dismissed by stipulation on December 28, 2017, and there is no indication that Plaintiffs have made an attempt to exclude bills related to work spent litigating against those defendants. *But see Prime Contractors Inc.*, 786 F.Supp.3d at 537 ("An attorney is not entitled to fees arising from claims against other unrelated defendants.").

*Second*, there is no indication that Plaintiffs have excluded bills for clerical or ministerial work. *See Blanding v. O'Malley*, 2024 WL 2293156, at *3 (D. Conn. May 21, 2024) ("it is well-settled that purely clerical tasks are not billable under a fee-shifting statute."). Yet Plaintiffs seek to recoup over 800 hours of time billed by paralegals and other support staff. Of course, since Plaintiffs have not submitted any bills, it is impossible to say what work these staff members were doing, further underscoring the importance of Plaintiffs' failure to provide their contemporaneously-created billing records.

9

*Finally*, while Defendants do not dispute that fees are recoverable on a pendant state-law claim that is "inextricably intertwined" with a federal claim subject to fee-shifting provisions, much of the work Plaintiffs have performed on their state law claim is clearly distinct from, and in no way intertwined with, their § 1983 work.   (*See, e.g.,* Dkt. 114-1 at 11 ("Alternatively, Plaintiffs are Entitled to Summary Judgment on their New York State Constitutional Claims"); Dkt. 115 at 21 ("Defendants Are Not Immune to Plaintiffs' State Law Claims.").)  Plaintiffs therefore cannot recover for this work, as these arguments had no bearing on the claims that are subject to a fee-shifting provision. *See In re Arbitration Between Okyere and Houslanger & Assocs., PLLC*, 2015 WL 4366865, at *10 (S.D.N.Y. May 28, 2015) ("The general rule is that hours spent solely on non-fee-shifting claims are not eligible for reimbursement.").

Again, these issues demonstrate the deficiencies in the evidentiary support underlying Plaintiffs' claim for fees.  Plaintiffs' submission does not provide sufficient information to judge how many hours have been improperly included in Plaintiffs' fee application, and does not meet Plaintiffs' burden of proof.  As set forth above, this Court should draw all inferences against Plaintiffs.

## III.    PLAINTIFFS' COUNSEL'S REQUESTED HOURLY RATES ARE UNREASONABLE AND EXCESSIVE.

Even if Plaintiffs had submitted sufficient records to support their application for fees and costs—which they have not—Plaintiffs also have not met their burden of establishing the reasonableness and necessity of the rates Plaintiffs' Counsel charged in their application. *See  Finkel v. Omega Comm'n Svcs., Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) ("The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged.").  Plaintiffs fail to provide *any* reason that this Court should

10

depart from the "forum rule" generally used by courts in this Circuit; nor does the fee application address the numerous case-specific factors that suggest a reduction of the district rate to be appropriate in finding the reasonable hourly rate for this case. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008). A reasonable hourly rate is "the rate a paying client would be willing to pay ... bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019) (quoting *Arbor Hill*, 522 F.3d at 183-84). No reasonable civil plaintiff—even Counsel's typical corporate clients— would agree to pay the inflated rates claimed by the 28 lawyers and 6 paralegals here.[5]

    **A.**    **Plaintiffs' Proposed Rates Far Exceed Prevailing Rates in this District.**

"Determining the reasonable hourly rate begins by applying the 'forum rule," which requires courts to generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 239 (E.D.N.Y. 2025) (internal quotation marks omitted). Plaintiff Counsel's requested rates are far outside the accepted range of reasonable hourly rates for this District, as recently adjusted for inflation and market conditions in *Rubin v. HSBC Bank USA, NA et.al. See id.* at 243; *Moore v. Rubin*, 766 F. Supp. 3d 423, 427-28 (E.D.N.Y. Feb. 14, 2025); *Reda v. Momentum Advanced Plan., LLC*, 2025 WL 3460932, at *9 (E.D.N.Y. Aug. 29, 2025) (Kuntz, J.) (applying *Rubin v. HSBC Bank* rates).

---

[5] Further, in the era of bespoke billing at white-shoe law firms like Winston & Strawn, Plaintiffs' Counsel's claim to have reduced "timekeepers' current prevailing rates" by 30% means absolutely nothing—particularly as Counsel has failed to provide evidence of what rates its paying clients actually pay—and fails to remedy the excessive fees. (*See* Dkt. 298-1 at 12; Dkt. 304 at 3.)

The prevailing forum rates in the Eastern District are $450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals. *Rubin v. HSBC Bank*, 763 F. Supp. 3d at 243-44. The following table, which compares the midpoint of this District's rates to the requested rates of Winston & Strawn's timekeepers, demonstrates just how unreasonable Counsel's requests are.[6]

| Timekeeper | Role | Avg. District Rate[7] (D) | Requested Rate[8] (R) | Inflation = %(R / D) |
|---|---|---|---|---|
| Badini, Aldo | Partner | $550.00 | $1,337.00 | 243% |
| Tuma, Michelle | Associate | $375.00 | $906.00 | 242% |
| Chu, Jeremy | Associate | $375.00 | $749.00 | 200% |
| Jacobson, Jara | Associate | $375.00 | $689.00 | 184% |
| Kopp, Jennifer | Associate | $375.00 | $689.00 | 184% |
| Bannon, Patrick | Associate | $375.00 | $654.00 | 174% |
| Ou, Becca | Associate | $375.00 | $647.00 | 173% |
| Schoen, Arthur | Associate | $375.00 | $647.00 | 173% |
| Restagno, Frank | Associate | $375.00 | $633.00 | 169% |
| Foglia, Andrew | Associate | $375.00 | $602.00 | 161% |
| Borne, Sophie | Associate | $200.00 | $595.00 | 298% |
| King, Andrew | Associate | $200.00 | $595.00 | 298% |
| Correa Gaviria, Hector | Associate | $200.00 | $595.00 | 298% |
| Wexler, Jay | Associate | $200.00 | $567.00 | 284% |
| Maclean, Margaret | Associate | $200.00 | $556.00 | 278% |
| Baldwin, Erin | Associate | $200.00 | $514.50 | 257% |
| Skopec, Allison | Associate | $200.00 | $462.00 | 231% |
| Maredia, Zain | Associate | $200.00 | $427.00 | 214% |
| Lehrman, Shanna | Associate | $200.00 | $409.00 | 205% |

[6] LatinoJustice also requests unreasonably inflated rates without justification. Indeed, while LatinoJustice PRLDEF proposes "a lodestar rate…lowered by at least 10% than its timekeepers' current prevailing rates" (Dkt. 304 at 3), it is misleading to say that LatinoJustice has 'current prevailing rates' at all. As acknowledged in Jose Perez's declaration "[a]s a non-profit legal organization, LatinoJustice has never charged [its] clients for its services," and instead "regularly seek fee awards after successful litigation," and "frequently negotiates and receives fee awards through case settlements" (Dkt. 298-8 ¶6).

[7] Average District Rates are calculated using the midpoint of the rate range provided by *Rubin v. HSBC Bank*, 763 F. Supp. 3d at 243-44. Defendants applied the average rate for Senior Associates to Winston & Strawn associates whose requested rates are $600 or more.

[8] (Dkt. 304-4 at 2.)

| Timekeeper | Role | Avg. District Rate (D) | Requested Rate (R) | Inflation = %(R / D) |
|---|---|---|---|---|
| Barry, Caroline | Associate | $200.00 | $346.00 | 173% |
| Kyritsopoulos, Corinne | Sr. Paralegal | $125.00 | $297.00 | 238% |
| Lobdell, Timothy | Paralegal | $125.00 | $227.00 | 182% |
| Martinez, Lindsay | Paralegal | $125.00 | $182.00 | 146% |
| Ryder, Joshua | Trial Support | $125.00 | $129.00 | 103% |

Rates up to 300% of the average forum rate cannot be justified.  *See, e.g.*, *Stanbro Palou Stanbro v. Westchester Cnty. Health Care Corp.*, 2024 WL 1214560, at *4 (S.D.N.Y. Mar. 21, 2024) (adopting the upper-end rate for experienced civil rights litigators in jury trial); *Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 252-53 (E.D.N.Y. 2020) (reducing rate for named partner with a decade of civil rights experience); *Houston v. Cotter*, 234 F. Supp. 3d 392, 402 (E.D.N.Y. 2017) (approving $400 hourly rate for partner at Cleary Gottlieb Steen & Hamilton LLP who litigated the §1983 claim pro bono).  More significantly, Plaintiffs have made no attempt to provide any such justification and, therefore, failed to demonstrate the reasonableness of the rates requested.

### B.    A Further Reduced Hourly Rate Is Appropriate in this Case.

As "there are different rates applicable to different kinds of cases," after determining the range of prevailing forum rates, courts next consider case-specific variables to determine where in the range to set the rates in a particular case.  *Moore*, 766 F. Supp. 3d at, 427; *see also Arbor Hill*, 522 F.3d at 190; *We Shall Overcome Found. v. Richmond Org., Inc.*, 330 F. Supp. 3d 960, 971 (S.D.N.Y. 2018).  In *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, the Second Circuit instructed district courts to "bear in mind *all* of the case-specific variables we and other courts have identified as relevant to the reasonableness of attorney's fees

13

in setting a reasonable hourly rate." 522 F.3d at 190 (emphasis in the original). In addition to the forum rule, these include the so-called "*Johnson* factors"[9] and in addition:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184; *see also id.* at 190. The factors are particularly important where it is difficult to ascertain a "going-rate" for the particular kind-of case at issue. *See Moore*, 766 F. Supp. 3d at 427.

Considering these factors, the reasonable hourly rate for Plaintiffs' Counsel should be set at or below the low end of the forum rate. *First*, Plaintiffs' Counsel at Winston & Strawn are—according to their own records submitted in support of Counsel's application—totally inexperienced in civil rights litigation. The sole partner who worked on this matter, Mr. Badini, discloses no civil rights or immigration experience whatsoever in either the declaration he submitted in support of the motion, or in the biographical webpage Plaintiffs submitted as an exhibit. (*See* Dkt. 304-2 & 304-6.) Indeed, the only mentions of such work in *any* of the

---

[9] These factors, articulated in *Johnson v. Georgia Highway Express, Inc.*, include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)); *Arbor Hill*, 522 F.3d at 186 n.3.

14

45 pages of the firm biographies submitted as exhibits are passing references to participation by junior lawyers in pro bono matters. (*See* Dkt. 304-6.) This alone is reason enough to set a rate at or below the low end of forum rates. *See, e.g., Hugee v. Kimso Apartments, LLC,* 852 F. Supp. 2d 281, 300 (E.D.N.Y. 2012) (noting that "[t]he highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields" and collecting cases in which rates at the high end are awarded only to experts in civil rights litigation).

*Second,* Plaintiffs' Counsel by their own admission took little risk in litigating the case. Plaintiffs have maintained that a successful outcome was likely given the decision in *People ex rel. Wells v. DeMarco* 168 A.D.3d 31, 53 (N.Y. App. Div. 2d Dep't 2018), (*see* Dkt. 150-1 at 14-17); and some degree of success was essentially guaranteed following this Court's summary judgment decision at the beginning of this year (Dkt. 166). *See Torcivia.*, 437 F. Supp. 3d at 252-53 (finding case-specific factors including the lower trial-complexity post-summary judgment to justify awarding a lower hourly rate to an experienced civil rights litigator).

*Third*, even if Plaintiffs do not ultimately succeed in this litigation, Plaintiffs' Counsel have reaped significant reputational and development awards. [10]  Had Plaintiffs been paying

---

[10] For example, note Counsel's post-verdict publicity spree. *See, e.g.*, "Wealthy County in New York Must Pay $112 Million Over Immigrant Rights Violations," Bloomberg (Dec. 4, 2025), https://www.bloomberg.com/news/articles/2025-12-04/suffolk-county-home-of-hamptons-hit-with-112-million-payout-to-detainees (citing Mr. Case); "Jury Awards $112 Million to 674 Immigrants Unlawfully Held by Suffolk County for ICE Handover," LatinoJustice PLDEF (Nov. 7, 2025), https://www.latinojustice.org/en/press/jury-awards-112-million-674-immigrants-unlawfully-held-suffolk-county-ice-handover;  "Winston Wins $112 Million Verdict for Immigrants Unlawfully Held by Suffolk County Sheriffs' Office," Winston & Strawn LLP (Nov. 12, 2025), https://www.winston.com/en/insights-news/winston-wins-dollar112-million-jury-verdict-for-immigrants-unlawfully-held-by-suffolk-county-sheriffs-office.

15

clients, they would have had significant power to negotiate their counsel's hourly rates, institute budgets for discrete tasks, and limit the number of attorneys working on the matter. As the *Arbor Hill* court noted, a reasonable paying client might consider the lawyer's willingness to offer his services pro bono "or to promote the lawyer's own reputational or societal goals." *Arbor Hill*, 522 F.3d at 192; *We Shall Overcome Found.*, 330 F. Supp. 3d at 971-72.

Thus, the reasonable hourly rate for Plaintiffs' Counsel should be appropriately reduced to "approximat[e] the negotiation that might ensue were the client actually required to pay the attorney's fees." *Arbor Hill*, 522 F.3d at 192. A reasonable paying client, "who wished to pay no more than necessary," would not have needed to pay the excessive rates requested by Plaintiffs' Counsel to secure representation in this case and the rate should be reduced proportionately. *Id.*

## IV.  PLAINTIFFS' COUNSEL'S COSTS ARE UNSUPPORTED AND UNRECOVERABLE

Plaintiffs' costs submission, much like their fees submission, contains nearly no supporting documentation, includes blatantly unrecoverable entries, and is generally unreasonable. "Attorney's fees awards include reasonable out-of-pocket expenses incurred by attorneys… Plaintiff bears the burden of demonstrating that the costs requested are reasonable." *Mayo-Coleman v. Am. Sugars Holding, Inc.*, 2019 WL 1034078 at *7 (S.D.N.Y. March 5, 2019). "However, the party seeking reimbursement of its costs carries the burden of providing the Court adequate substantiation in the form of receipts and other documents not only showing such costs were incurred, but that they were paid." *Kindle*, 308 F. Supp. 3d at 705; *Volpe v. Nassau Cnty.*, 2016 WL 6238525, at *10 (E.D.N.Y. Oct. 24, 2016) ("The fee applicant bears the burden of

16

adequately documenting and itemizing the costs requested.").  Plaintiffs are far from meeting this burden.

Plaintiffs have provided no receipts and only the vaguest details regarding their costs. For instance, Plaintiffs purport to seek $34,454.22 in "lodging" costs and $9,180.26 in "travel" costs, with no further details explaining why any lodging or travel was necessary at all for a firm with a large New York office trying a case in downtown Brooklyn and with only one in-person witness.  (Dkt. 304-4.)  Of these costs, $31,515.45 in lodging and $5,030.66 in travel were submitted with Plaintiffs' supplemental application, reflecting costs associated with a 5-day trial and a single out-of-state in-person witness.  Such excess is presumptively unreasonable.[11] Similarly, Plaintiffs seek $5,388 in reimbursements for "color copies"; $6,390.74 for "business meals" (separate and apart from an additional $855.72 in "overtime meals"), $4,470.85 for video/equipment rental expenses, and $1,301.23 in "miscellaneous expenses."  (Dkt. 304-4).  As with travel and lodging costs, Plaintiffs offer no proof as to why these costs—or any costs—were reasonable or necessarily incurred.

Given the lack of evidentiary support for any of Plaintiffs' other costs, it is impossible to say which of the other costs Plaintiffs' Counsel seek are reasonable, much less recoverable. While Plaintiffs provide no receipts, attached to their Bill of Costs, they did provide an almost completely redacted "Client Detailed Time and Expense Report."  (Dkt. 305-4.)  Of the few unredacted entries in Plaintiffs' bill of costs, one purports to be a $625.04 charge on November 7, 2025, for "Dinner after final trial day," listing over a dozen attorneys.  (Dkt. 305-4 at 17.)

---

[11] To the extent that Plaintiffs procured lodging for out-of-state attorneys, as set forth *supra*, Plaintiffs staffed a plainly unreasonable number of attorneys on this matter, and had no need to expend lodging and travel costs for out-of-state attorneys.

Clearly what amounts to a celebration dinner following the trial verdict is not properly chargeable to Defendants. Given the lack of evidentiary support for any of Plaintiffs' other costs, it is impossible to say which of the other costs Plaintiffs' Counsel seek are properly recoverable, much less reasonable.

Once again, given Plaintiffs' total failure to meet their evidentiary burden, this Court should draw all inferences against Plaintiffs when reviewing the reasonableness of their costs, if it even considers the costs at all.

## CONCLUSION

For the reasons above, the Court should defer decision or deny outright Plaintiffs' motion for attorneys' fees and costs. Plaintiffs' fees and costs application not only violates settled precedent, but would itself set a terrible precedent, whereby parties' fee applications are not constrained by the watchful eye of the court, and hours are thus inflated, matters are overstaffed, and applications under-supported. If this Court does not deny the motion outright, the amount of fees and costs Plaintiffs seek should be substantially reduced in light of Plaintiffs failure to demonstrate the reasonableness of the hours worked or the rates sought.

Dated: January 09, 2026
New York, New York

Respectfully submitted,

DEWEY PEGNO & KRAMARSKY LLP

By:   /s/ Thomas E.L. Dewey

       Thomas E.L. Dewey
       Sean K. Mullen
       777 Third Avenue – 29th Floor
       New York, New York 10017
       Tel.: (212) 943-9000
       tdewey@dpklaw.com
       smullen@dpklaw.com